FILED BY __PG__ D.C.

FEB 28 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - MIAMI

United States District Court
for The
Southern District of Florida

ROY BELFAST | Civil Case : 20-20385-CV-ALTONAGA
| (06-20158-CR-ALTONAGA
v | Magistrate Judge Reid
|
United States of America | Sent Via Certified Slip No.
| 7019 0700 0000 8732 6093

Upon Grant of § 2255 and Supplemental Motion Petitioner
Requests The Court Take Judicial Notice of Evidence
And Facts Entered On The Record Prior To Any Formal
Ruling.

Here comes ROY BELFAST, pro-se before the district court
submitting evidence, and facts upon, the record, once grant
of the Second or Successive application is given by
the Eleventh Circuit Court of Appeals.

Petitioner formally requests upon grant of application by
the Eleventh Circuit, § 2255, and Supplemental motion
the court take judicial notice of the above mentioned,
and enter "new evidence" as well as facts on to court
record, based upon exhibits attached to motion.

1

Petitioner Submits The Following "New Evidence" Before The Honorable Court

Exhibit # 1 - May 17th, 2017 FOIA-2016-02166 Release Letter.

Exhibit # 2 - One Hundred Sixty Eight page release with FOIA-2016-02166, designation number A0091980 located at the bottom right hand side.

Exhibit # 3 - Petitioners appeal to the FOIA-2016-02166 release and May 17th, 2017 Letter.

Exhibit # 4 - Office of Information Policy Finding concerning appeal made as provided in Exhibit #3

Exhibit # 5 - Reuters press release, sourced from the Department of Justice.

Exhibit # 6 - Document # 14, Filed 11/26/18, Page 6 of 8, civil case 7:18-cv-00453-JLK-JCH, Belfast v. Breckon, U.S. District Court, Western District of Virginia, Fourth Circuit.

Petitioner formally enters Exhibits One, Two, Three, Four, and Six as "new evidence", not as "newly discovered", in support of supplemental motion, as this was information, "new evidence", previously unavailable in prior § 2255. Petitioner asks the court to take judicial notice of the following declarations, prior to any adjudication in this case:

### Exhibit # 1 Declaration by the EOUSA:

"All of the records you seek are being made available to you. We have processed your request under the Freedom of Information Act and are making all records required to be released, or considered appropriate for release, as a matter of discretion available to you. This letter is a full release of 168 page responsive to your request. No other responsive records were located." (Ex. # 1 May 17th, 2017, FOIA-2016-02166 letter)

### Exhibit # 2 Declarations found in 168 page

FOIA-2016-02166 release: In FOIA-2016, designation number A0091980_4-000000, Lead Prosecutor Karen Rochlin states:

"During presentation of its case-in-chief, however the United States elicited evidence that co-conspirator "D" David Cumpari, was Gambian, and that co-conspirator "C" Charles Taylor, was born in Africa. DE 586:34 ; DE 587:132 ; DE 590:174 ; 595:176. Nothing in record from the defendants trial suggests that any conspirator referenced in the indictment or not, was a United States citizen or present in the United States."

In FOIA-2016-02166 designation number A0091980-20-000000, Lead Prosecutor Karen Rochlin, A.K.A "The Rock", states:

"The trial record is devoid of any statement that any conspirators were citizens of or present in the United States. The defendant, if he did not know the information already, recieved disclosure of the identity of his conspirators well in advance of trial, yet raised no objection, meritorious or not, based on the status of his conspirators."

Exhibit # 3  Petitioner declares in formal appeal to the Office of Information Policy the following:

"Petitioner recieved a letter dated May 17th, 2017 (Ex. "A1") with the release of 2 168 pages. The contents released are after indictment date 11/08/2007, see criminal case no. 1:06-cr-20758-CMA, Document 257 on docket sheet, and trial verdict (on) Oct 30th 2008..... Appeal: The records released are non-responsive to request by petitioner (originally), as the records released by the E.O.U.S.A are post grand jury, and trial, which means the records presented cannot have been evidence used in prior proceedings. The FOIA request FOIA-2016-02166 is directly connected to a substantive due process violation and misconduct by prosecution including but not limited to 18 u.s.c. § 1001.

Petitioner seeks a release of FOIA information & expedited request based upon original request found in FOIA-2016-02166, and notification to an investigatory body that handles misconduct by prosecutors, as well as notification to the A.G.'s office on the violation of 18 u.s.c § 4001(a)."

(4)

Exhibit # 4 - The Office of Information Policy under Appeal No. DOJ-AP-2017-005286, Declares the following:

"You appealed from the action of the Executive Office for United States Attorneys (EOUSA) on your Freedom of Information Act request for access to records located in the United States Attorney's Office for the Southern District of Florida concerning co-conspirators in your criminal case and evidence relied on to prove violations of 18 U.S.C. § section 2340(c).

After carefully considering your appeal, I am affirming EOUSA's action on your request. By letter dated May 19, 2017, EOUSA released to you one hundred sixty-eight pages of responsive records in full. I have determined the EOUSA's response was correct and that it conducted an adequate, reasonable search for responsive records subject to the FOIA......

Please be advised that this office's decision was made only after a full review of this matter. Your appeal was assigned to an attorney with this office who thoroughly reviewed and analyzed your appeal, your underlying request, and the action of EOUSA in response to your request."

Exhibit # 6  The government declares in Belfast v. Breckon, U.S. District Court, Western District of Virginia, Civil case # 7:18-cv-00453-JLK-RSB, Document 14, page 6 of 8, the following: "While the petition could be liberally read to assert that information recently obtained through a FOIA request allegedly shows evidence that petitioner was wrongfully convicted. (Compl. ECF No. 1 at 24) that allegation is not properly brought in a § 2241 petition. Rather a claim of actual innocence based on allegedly new facts must be brought in a § 2255 petition. 28 U.S.C. § 2255 (h)."

(5)

Petitioner declares under the penalty of perjury 28 U.S.C. 1746 the FOIA documents, Petitioner Appeal, Office of Information Policy Appeal response entered on to record as exhibits One, Two, Three, Four, Six are the same records entered into § 2241 proceeding, Belfast v. Breckon, U.S. District Court, Western District of Virginia, civil Case # 7:18-cv-00453-JLK-RSB, Document 1, under exhibits 1, 2, 3, 4, 5, 6, 7, date filed 09/14/2018

It was the documents entered in under civil case 7:18-cv-00453, document 1, Belfast v. Breckon, U.S. District Court, Western District of Virginia, civil case under Senior Judge Kiser, that brought about the declaration under Exhibit #6, Document #14, page 6 of 8.

Petitioner asserts before the court "new evidence", (not "newly discovered") supports the following:

A.) No evidence at trial was entered under 801(D)(2)(E) [co-conspiratory testimony]

B.) Violation of Jackson v. Virginia, 61 L.E.D. 2D 560 (supreme court)

C.) Petitioner was placed in a "one man" conspiracy in violation of Pettibone v. United States, 37 L.E.D. 419, and Morrison v. California, 78 L.E.D. 664 (supreme court)

D.) Government failed to satisfy statutes jurisdictional section 18 U.S.C. 2340 A(b)(1), (2), at trial, concerning count 1 of the indictment.

Finally the declarations made by the lead prosecutor Karen Rochlin found in FOIA-2016-02166 in Exhibit #2, infers that then United States Attorney Alexander Acosta, advanced a prosecution that violated Congressional Intent based upon the statutes jurisdictional requirements, as determined by Congress, and lead prosecutors Christopher Graveline, Karen Rochlin, Caroline Heck Miller, advanced a trial under such knowledge. Only a evidentiary hearing can provide a conclusive determination, which will provide the following:

1. Production of Grand Jury transcripts, specifically related to data concerning 18 U.S.C. § 2340A(c).

2. Subpoena of case initiation report, prosecution memorandum, supporting affidavits concerning this prosecution.

3. In camera inspection of Federal Bureau of Investigation, investigative documents concerning prosecution.

4. Subpoena all emails and additional documents from the Department of Justice, Homeland Security, Federal Bureau of Investigations, concerning prosecution.

5. Subpoena the testimony of the following individuals, but not limited to:
A. Alexander Acosta former U.S.A, S.D. FL, and former United States Government cabinet official for the Trump administration
B. Arthur B. Cummings II, former Executive Assistant Director of the FBI National Security Division.
C. Matthew Friedrich, former head of the DOJ Criminal Division.
D. All F.B.I agents involved in this case.
E. All Homeland Security Agents involved in the case
F. John P. Torres, former acting Assistant Secretary for I.C.E

G. Present or former prosecutors for the Department of Justice:
1.) John F. Cox III
2.) Pragna Soni
3.) John-Alex Romano
4.) Michael Surgalla
5.) Catherine L. Dube
6.) Christopher Graveline
7.) Andrea G. Hoffman
8.) Caroline Heck Miller
9.) Karen Rochlin

A evidentiary hearing and subpoena request issued to above, stated individuals, will help to ascertain not if any parties had knowledge the DOJ was knowingly, willingly, and intentionally advancing a prosecution that violated Congressional Intent concerning 18 U.S.C. 2340 A(b)(1)(2) regarding count 1 (Conspiracy to Commit Torture), and defrauding American tax-payers, but also violated standing ethical rules under 28 C.F.R. 2635.101 et seq.

Absent a full waiver by the government upon grant of § 2255, and supplemental motion, it has no objection the relief sought in § 2255, and supplemental motion, and does not contest findings under Exhibit 1, 2, 4, 6.
Petitioner would be seeking a evidentiary hearing based upon the "new evidence" submitted under present motion, once grant of Application by 11th Cir. Court has been granted, and the court issue grant of supplemental issues relevant to the § 2255 motion...

(8)

Petitioner also brings to the courts attention that any response by Karen Rochlin, Caroline Heck Miller, Christopher Graveline in response to this matter before the court, upon grant of § 2255, and supplemental motion, may be a potential conflict of interest, as these individuals may be called to produce documents, and or give testimony, in relation any evidentiary hearing required.

## Conclusion and Request by Petitioner

1. Petitioner requests upon grant of § 2255 and Supplemental Motion, the court allow evidence provided under motion, and facts entered within motion, be formally entered on to record.

2. Request the government formally included response to "new evidence" along side original § 2255, supplemental motion upon grant of Second or Successive Application.

All Done Under The Penalty of Perjury 28 U.S.C. § 1746

/S/ Roy Belfast   2/23/2020

(9)

Certificate of Service

A copy has been mailed to the United States Attorneys Office for the Southern District of FL, 99 N.E 4th Street Miami, FL 33132

Exhibit # 1 - May 17th, 2017  FOIA-2016-02166  Release
Letter

Executive Office for United States Attorneys

Freedom of Information and Privacy Staff

Suite 7300, Bicentennial Building
600 E Street, NW
Washington, DC 20530

(202) 252-6020
FAX (202) 252-6047

May 17, 2017

Roy Belfast, Jr.
#76556-004
USP, P.O. Box 1000
Lewisburg, Pennsylvania  17837

Re: Request Number: <u>FOIA-2016-02166</u> Date of Receipt: <u>April 5, 2016</u>
Subject of Request: <u>Self /Specific Records - USAO Southern District of Florida</u>

Dear Mr. Belfast, Jr.:

Your request for records under the Freedom of Information Act/Privacy Act has been
processed. This letter constitutes a reply from the Executive Office for United States Attorneys,
the official record-keeper for all records located in this office and the various United States
Attorneys' Office. To provide you with the greatest degree of access authorized by the Freedom
of Information Act and the Privacy Act, we have considered your request in light of the
provisions of both statutes.

All of the records you seek are being made available to you. We have processed your
request under the Freedom of Information Act and are making all records required to be released,
or considered appropriate for release as a matter of discretion, available to you. This letter is a
full release of 168 pages responsive to your request. No other responsive records were located.

[  ]  A review of the material revealed:

[  ]  Our office located records that originated with another government component.
**These records were found in the U.S. Attorney's Office files.** Once we have received
the above payment, these records will be referred to the following component(s) listed for
review and direct response to you:

[  ]  There are public records which may be obtained from the clerk of the court or this
office, upon specific request. If you wish to obtain a copy of these records, you must
submit a new request. These records will be provided to you subject to copying fees.

[  ]  Please note that your original letter was split into separate files ("requests"), for
processing purposes, based on the nature of what you sought. Each file was given a
separate Request Number (listed below), for which you will receive a separate response:

response to this request, you may administratively appeal by writing to the Director, Office of Information Policy (OIP), United States Department of Justice, Suite 11050, 1425 New York Avenue, NW, Washington, DC 20530-0001, or you may submit an appeal through OIP's FOIAonline portal by creating an account on the following website: https://foiaonline.regulations.gov/foia/action/public/home. Your appeal must be postmarked or electronically transmitted within ninety (90) days of the date of my response to your request. If you submit your appeal by mail, both the letter and the envelope should be clearly marked "Freedom of Information Act Appeal."

You may contact our FOIA Public Liaison at the telephone number listed above for any further assistance and to discuss any aspect of your request. Additionally, you may contact the Office of Government Information Services (OGIS) at the National Archives and Records Administration to inquire about the FOIA mediation services they offer. The contact information for OGIS is as follows: Office of Government Information Services, National Archives and Records Administration, 8601 Adelphi Road-OGIS, College Park, Maryland 20740-6001; e-mail at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

Kevin Krebs
Assistant Director

Enclosure(s)

Form No. 0021A-nofee – 12/15

Exhibit # 2

One Hundred Sixty Eight page release with FOIA-2016-02166 designation number N009130 located at the bottom right hand side.

Certified Slip No.
7014 1820 0002 1285 8852

UNITED STATES DISTRICT COURT
FOR
THE SOUTHERN DISTRICT OF FLORIDA



FILED by ___ D.C.

APR 01 2016

STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA - MIAMI

UNITED STATES OF AMERICA ) CRIMINAL CASE NO. 06-20758
       PLAINTIFF ) CMA ALT
          )
          )
V.          )
          )
          )
ROY M BELFAST JR    )
      DEFENDANT )

MOTION FOR THE REVIEW, AND OR AMENDMENT
OF THE PSR DUE TO THE VIOLATION OF 18 U.S.C. §
4001(a), 28 U.S.C § 2072, AND CLEARLY ERRONEOUS
FACTS, FALSE ASSUMPTIONS, BASED UPON MATERIALLY
UNTRUE FACTS, MISINFORMATION OF A CONSTITUTIONAL
MAGNITUDE, ERRONEOUS JUDGMENT WHICH IS CAUSING
FRAUD, WASTE, AND ABUSE BY THE BUREAU OF PRISONS
IN VIOLATION OF 5.C.F.R. 2635.101 et seq, DOJ ORDER
2400.5A, DOJ ORDER 2860.3A  BOP(PS) 1210.23,
BOP (PS) 1210.24  EXECUTIVE ORDER 13107, AFFECTING
THE LEGAL AND FINANCIAL RIGHTS OF THE
GOVERNMENT AND PETITIONER

1

Here comes Roy M Belfast Jr, inmate no. 76556-004, presently held illegally at Federal Correctional Complex - USP 1, P.O. Box 1033, Coleman Florida 33521, Pro-se, and without counsel, before this court of the United States District Court of Cecilia M. Altonaga, and United States Department of Justice, United States Wilfredo Ferrer, based upon violations of 18 U.S.C. § 4001 (a), 5. C.F.R 2635.101 et seq. 18 U.S.C. § 241, D.O.J. Orders 2860.3A, 2900.5A

## PROCEDURAL HISTORY

Petitioner was indicted on 8 counts, found guilty with judgment issued on Jan 9th 2009, to Count 1  18 U.S.C. § 2340 A(c) Conspiracy to Commit 240, Count 2 Conspiracy to use, carry, and possess firearms during and in relation to a crime of violence 18 U.S.C. § 924(0), 240 months, Count 3 18 U.S.C. § 2340 Torture 120 months, Count 4 Torture 120 months, Count 5 Torture 120 months, Count 6 Torture 120 months, Count 7 Torture 120 months, Count 8  18 U.S.C. § 924 (c) Using, carrying and possessing a firearm during and in relation to a crime of violence.

2.

A0091980_2-000000

Petitioner filed timely petition, and was denied on appeal. A 2255 motion was filed by petitioner, and subsequently denied by Magistrate White, and District Court Judge Altonaga. The issue regarding the inaccurate information, materially untrue facts has never been raised in pre trial motions, direct appeal, and or 2255 motion, regarding PSR

## STANDARD OF REVIEW

18 U.S.C. § 4001(a): No citizen shall be imprisoned or otherwise detained by the United States except pursuant to an Act of Congress.

5 C.F.R. 2635.101 Basic Obligation of public Service.
(a) Public service is public trust. Each employee has a responsibility to the United States Government and it's citizen to place loyalty to the Constitution, laws and ethical principles above private gain. To ensure that every citizen can have a complete confidence in the integrity of the Federal Government, each employee shall respect and adhere to the principles of ethical conduct set forth in this section, as well as the implementing standards contained in this part and in supplemental agency regulations.

A0091980_3-000000

(b) General Principles. The following general principles apply to every employee and may form the basis for the standards contained in this part. Where a situation is not covered by the standards set forth in this part, employees shall apply the principles set forth in this section in determining whether conduct is proper.

(11) Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.

"Selecting a sentence based upon clearly erroneous facts", constitutes a "significant procedural error." Gall v. United States, 552 U.S. 38, 51, 128 S. Ct. 586, 169 L. Ed 2d 445 (2007).

"Our case law has underscored that holding, elucidating that "[I]n Townsend v. {504 Fed. Appx. 126} Burke... the Supreme Court made it clear that a sentence cannot be predicated on false information." Moore v. United States, 571 F.2d 179, 183 (3rd Cir. 1978). Moreover, we have else-where held that "due process may require resentencing when the information on which the sentencing court may have relied in a PSI is mistaken or unreliable."

4

A0091980_4-000000

(b) General Principles. The following general principles apply to every employee and may form the basis for the standards contained in this part. Where a situation is not covered by the standards set forth in this part, employees shall apply the principles set forth in this section in determining whether conduct is proper.

(11) Employees shall disclose waste, fraud, abuse, and corruption to appropriate authorities.

"Selecting a sentence based upon clearly erroneous facts", constitutes a "significant procedural error." Gall v. United States, 552 U.S. 38, 51, 128 S. Ct 586, 169 L. Ed 2d 445 (2007).

"Our case law has underscored that holding, eluci-dating that "[i]n Townsend v. {504 Fed. Appx. 126} Burke... the Supreme Court made it clear that a sentence cannot be predicated on false informa-tion." Moore v. United States, 571 F.2d 179, 183 (3rd Cir. 1978). Moreover, we have else-where held that "due process may require resentencing when the information on which the sentencing court may have relied in a PSI is mistaken or unreliable."

4

A0091980_4-000000

United States v. Katzin, 824 F.2d 234, 240 (3rd Cir. 1987) (See U.S. v. Griffiths, 504 Fed. Appx. 122 (3rd Cir. 2012)

"The principle adumberated in Townsend -- that a defendant should not be sentenced on the basis of information about him that is materially incorrect - has not been confined to situations in which a defendant can point to undisputed data that serves directly to invalidate some aspect of the presentence report. Rather, courts have extended the Townsend precept to situations in which the information utilized by the sentencing judge was so unreliable or untrustworthy -- even if not plainly false -- that it would be unfair to proceed with sentencing on the basis of it. Thus, in U.S v. Weston, 448 F.2d 626, 633-634 (9th Cir. 1971, cited with approval in United States v. Metz, 470 F.2d 1140, 1142 (3rd Cir. 1972), cert. denied, 411 U.S. 919, 93 S. CT. 1558, 36 L. Ed. 2d 311 (1973). (See Moore v. U.S. 571 F.2d 179)

A0091980_5-000000

(PS) 1351.05 (24)(a)  Release of Information, "Correction of Records"  (see Exhibit)

(PS) 5800.11(15)(c), now 5800.17  Inmate Central File, Privacy Folder, and Parole Mini-Files  (see Exhibit)

Congressional History of Statute 18 U.S.C. § 2340A et seq. (page 20) : "As discussed above, existing federal jurisdiction when the offense has allegedly been committed in any territory under U.S. jurisdiction or on board a ship or aircraft registered in the United States. See 18 USC § 7; 49 U.S.C. App § 1301 (38), 1472. Implementing legislation is therefore needed only to establish Article 5(1)(b) jurisdiction over offenses committed by U.S. nationals outside the United States, and establish Article 5(2) jurisdiction over foreign offenders committed torture abroad who are later found in territory under U.S. jurisdiction."

## Argument

Petitioner seeks correction/Amendment of Presentence Report (herein referred to PSR), due to the constitutionally adverse affect it is having on petitioner under the 14th, 4th, 8th, 13th Sec.1 Amd.

6

A0091980_6-000000

Petitioners life is also placed at great risk, as custody classification, scoring, security designation management variable due to the erroneous psr; which also places petition with greater security level and designation inmates, that creates civil liability. Petitioners civil rights are adversely affected, not to mention fraud, and erroneous/false records being entered into the Federal Records System, which are being used to request for American tax payer dollars, leading to mis-appropriations of Congressional tax-dollars

"Like a judgment, the PSR determines the rights and obligations of the defendant moving forward. As the Eight Circuit, observed, the PSR "not only affects the length of sentence, but might also determine the defendants place of incarceration, chances for parole, and relationships with social service, and correctional agencies after release from prison. "United States v. Brown, 715 F.2d 387, 389 n.2. (8th cir. 1983). Further like an order, the PSR contains "directions or instructions" about the defendants sentence. Because the PSR affects the right and obligations of the defendant, we

7

A0091980_7-000000

conclude it is of like kind or character, as a
"judgment" or "order". . . " (See U.S. v. Mackay
757 F.3d 195; 2014 U.S. App. Lexis 12049 5th Cir.)

The Eight Circuit in U.S. Brown 715 F.2d 387,
1983 U.S. App. lexis 25030, relied on an empirical
law review article that the authors wrote under
contract with the Federal Judicial Center. The
authors concluded that, if defendant is incar
cerated, the PSR is used for determining both
the proper institution, and the classification within
the institution, and the defendants classification
within the institution. The PSR also play a crucial
role in parole decisions and in aiding parole
supervision when the defendant return to the
community.

Finally, the PSR serves as a source of
information beyond it's use in the treatment, and
supervision of the offender, it is requested
frequently by correctional, social service, and
law enforcement agencies, by researchers, and by
others who come into contact with the offender.
Stephan A. Fennell and William N. Hall, Due Process
at Sentencing.

A0091980_8-000000

An Empirical and legal analysis of the disclosure of Presentence Reports in Federal Courts, 93 Harvaid, Law, Review. 1615, 1628 (1980)

Program Statement 1330.18, 28 C.F.R. § 542.10 (a) states: "The purpose of the administrative remedy program is to <u>allow an inmate to seek formal review of an issue relating to any aspect of his/her confinement...</u>"

The Ninth Circuit in Nigro v. Sullivan, 40 F.3d 990, 1994 U.S. App. Lexus 30051 states: "Neither Congress nor the courts fashion the procedural rules that apply in the Bureau of Prisons Administrative Remedy Procedure. Rather, this procedure is governed by administrative regulations promulgated and enforced by the executive branch under the authority of 5 U.S.C § 301; 18 U.S.C §§ 3621, 3622, 3624, 4001, 4042, 4081, and other sections of 18 U.S.C., and 28 U.S.C. §§ 509 and 510. See 28 C.F.R § 542 (1993). These statutes delegate authority to the executive to establish substantive rules governing prisons. Administrative Remedy Procedure regulations are therefore not interpretive, Rather, they are legislative.

A0091980_9-000000

See Fmali Herb, Inc. v. Heckler, 715 F.2d 1385, 1387 (9th Cir. 1983). Such "legislative regulations must be accorded their plain meaning where the language selected by the drafters is clear and unequivocal." Idaho First Nat'l Bank v. C.I.R., 997 F.2d 1285, 1289 (9th Cir 1993) (internal quotations omitted).

Petitioners files "Sensitive BP-9" requesting investigation, and criminal referral based upon, 1330.18 (PS) 28 C.F.R. 542.10 et seq, 1210.24 et seq (PS), due to a incomplete "Sellers Investigation" launched back in 2014 at U.S.P. Big Sandy, which involved failure to report, obstruction concealment, conspiracy against rights, by multiple Bureau of Prison Officials and United States Probation for the Southern District of Florida. In BP-9 rejected notice the administrative remedy coordinator, states that the matter is not sensitive, but issue has been referred to "appropriate department for review" based upon concealment and failure to report a crime, (See Exhibits of document filed with BP-9 dated 12/22/15, presently under remedy id no. 848589-F1, that launched review / investigation)

Petitioners PSR fails to contain any judicial facts
that petitioner violated 18 U.S.C § 2340 A (c),
according to Congressional intent under the statutes
jurisdictional section 18 U.S.C § 2340A(b)(1),(2).

It's important to bring before the attention of
the court, the government failed to provide any
judicial facts to support a violation of 18 U.S.C §
2340A(c), nor did the following take place
according to judicial standards:

A.) Indictment, trial record and PSR are void of
facts, on whether the alleged acts in the
indictment to take place in the "United States"
as defined in 18 U.S.C § 2340 (3), 18 U.S.C. § 5,
18 U.S.C. § 7 et seq

B.) Indictment, trial record and PSR are void of
facts, in regards to, if alleged victims were U.S.
Nationals, and or Alien Residents, during
indictments allegations

A0091980_11-000000

C.) Indictment, Trial record, PSR are void of facts on whether the alleged co-conspirators possessed " minimum contact" with the "United States" as de fined, 18 U.S.C § 2340(3), 18 U.S.C § 5, 18 U.S.C § 7 et seq., before, during, or after indictments allegations

D.) Indictment, Trial record, PSR are void of facts on whether conspiracy was formed in the U.S., and or intended to have a detriment al affect in the "U.S." as defined in 18 U.S.C § 2340(3), 18 U.S.C § 5, 18 U.S.C § 7 et seq.

E.) Trial record, PSR are void of facts, on whether any co-conspirator testified, under Federal Criminal Rules of Procedure 801(D)(2)(E)[of Federal Criminal Rules of Procedure]

F.) Indictment, Trial record, PSR are void of facts on whether co-conspirators B,C,D, or any other met FSIA exceptions, under 28 U.S.C § 1605-1607, as all were instrumentalities of the Liberian State during indictments allegations (see Affidavit attached to exhibits

A0091980_12-000000

It's also important to note, before the court that the jury instructions as it relates to count 1, failed to put before the fact finder, jury instructions that would have reflected Congressional Intent as it relates to a violation of 18 U.S.C. 2340 A(b) (1),(2) enacted by Congress, as it relates to co-conspirators B,C,D., or any other were "Persons" who meet 14th Amendment, 4th Amendment "Due Process" analysis.

This led to an "advisory opinion", "hypothetical judgment" in relation to count 1, 2, 3, 4, 5, 6, 8 respectively, as the conspiracy count is connected to all counts, especially those counts from "1999"; "advisory opinion" and "hypothetical judgments" have been remonstrated against from the very beginning by the Supreme Court.

As a result, the sentencing phase of the proceeding in which the PSR was used, (which) violated 18 U.S.C. § 4001 (a), as petitioner was detained, and confined to a Federal Prison, not based upon a "act of congress". The indictment violates 18 U.S.C. § 3231, as it relates to count 1 18 U.S.C. § 2340A (c).

13

A0091980_13-000000

Also due to facts in motion, as well as affidavit, count 1 violates the Foreign Sovereign Immunities Act of 1976, regarding co-conspirators B, C, D, or any other; not petitioner, as erroneously alleged by the Public Defenders Miguel Caridad, Jhon Wylie, in pre-trial motions. Essentially guilt of the accused/petitioner was not, has not, and cannot be properly established by the Government, and District Court based upon facts stated in this motion, and "affidavit".

Rule 52 of Federal Criminal Procedure that "any error, defect, irregularly or variance which does not affect substantial rights shall be disregarded. The Sentencing phase of the proceeding was highly prejudicial a violation of 28 U.S.C. 2072 which abridged, and modified petitioners rights, under Florida & U.S. Constitution, in effect the error, at the Grand Jury level, Trial, Sentencing was not harmless

In view of the "sentencing procedure," it is of the utmost importance not only that justice appear, to be done, but done according to Congressional Intent.

A0091980_14-000000

# FRAUD AND MISAPPROPRIATIONS BY PROSECUTORS AND FEDERAL BUREAU OF PRISON OFFICALS

From the inception of this case fraud via misrepresention, and or omission, as well mis-appropriations took place relating to internal justice department documents, case initiation report, prosecutorial memorandum, supporting affidavits, as it relates to Superseding, and second superseding indictments.

Prosecutor Karen Rochlin, possessed Superior knowledge, that co-conspirators were beyond the prosecution of the United States, and any violation 18 U.S.C. § 2340 A(c), with co-conspirators B,C,D, would violate the Foreign Sovereign Immunity Act of 1976. These internal documents are designed to trigger the release of Federal Dollars, for the investigation, and trial etc., which in this case was fraudulently release.

Prosecutors knowingly, willingly, committed fraud by ▮▮▮▮▮ stating that co-conspirators were indictable "persons" who met the 14th Amendment, 4th Amendment, "Due Process", and or omitted that these individuals

15

A0091980_15-000000

were instrumentalities of a foreign State, who did not meet Foreign Sovereign Immunities Act exceptions under 28 U.S.C. § 1605-1607 before a Grand Jury

Based upon the erroneous nature of the indictment "Fraud upon the court" took place, misrepresenting the courts jurisdiction under 18 U.S.C. § 3231, leading to detention in a Federal Prison of a non-statutory act in violation of 18 U.S.C. § 4001(a), which lead to further misappropriations of Federal Congressional Dollars, as the court requested for Federal tax-Dollars, via U.S. Administration Courts to prosecute petitioner, based upon the fraud committed by Karen Rochlin.

Karen Rochlin is known for this pattern of misconduct in International Cases (See 91-4B-Ferguson" Motion to Dismiss Based Upon Prosecutorial Misconduct")

The B.O.P. based upon the violation of 18 U.S.C. § 4001(a) committed fraud, and misappropriations, as Designation Sentencing Computation Center for the B.O.P. (and Coleman USP 1) processed Source documents PSR and Judgment in violation of (PS) 5800.15 (501), 502(c) et seq, and 18 U.S.C. § 4001(a), § 042 et seq.

16

A0091980_16-000000

Further fraud was committed to use (fraudulent documents) even after becoming aware of there inability to validate statutory enforcement authority under 18 U.S.C. § 4001(a) et seq, based upon incomplete responses, and obstruction by U.S.P.O in a Federal Investigation that was launched under 5800.11 (15)(c) [now 5800.17, 11(c)] 1330.17 now [1330.18], which connected to 28 C.F.R. 542.10 et seq (See Documents, letters by Unit Team attached, as exhibits to BP-9 dated 12/22/15 under remedy id no. 848589-F1) which is a command by Congress, and is deemed non-discretionary

Presently petitioners life is in danger! . The B.O.P. relies upon the PSR information to be accurate, which will determine custody scoring, classification, designation, placement of confinement, nothing can be corrected/altered until The Honorable Court, inconjunction with Probation needs to address the clearly erroneous PSR, which has violated 18 U.S.C. § 4001(a), 28 U.S.C § 2072, as petitioners constitutional rights were abridged, and or modified under the U.S. Constitution, 4th, 14th, 8th Amendment.

17

The removal of count 1 affects, 2,3,4,5,7,8 at minimum, drastically alters, my custody scoring classification, and or vacation of all counts with prejuidce

Petitioner offically requests the following:

A.) Writ by the courts to address issue in above stated motion, and or

B.) Amendment and vacation on some or all counts, issuing a new PSR, to allow the Bureau of Prisons to operate according to law.

C.) A request for investigation / criminal referral based upon the actions by Orlando Burges of the U.S.P.O to the F.B.I, as well as B.O.P and Prosecutors

ALL DONE UNDER THE PENALTY OF PERJURY
28 U.S.C § 1746

Respectfully Submitted

Roy Belfast Jr
ROY M BELFAST JR

18

A0091980_18-000000

U.S. DEPARTMENT OF JUSTICE
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: **Belfast, Roy**          **76556-084**      **Kilo /SHU**     **CLN-USP-1**
LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.            UNIT          INSTITUTION

Part A– INMATE REQUEST **'BP-8 Appeal'**   Inmate requests an investigation, and criminal referral, based upon (PS) 1210.24 et seq., (PS) 3420.11 et seq., due to discrimination, biase, direlection of duty, failure to report/address, fraud, waste, and abuse, as well as 18 U.S.C. § 241, 5.C.F.R. 2635. et. (c)(b)(8), DOJ orders 2810.3A, 2910.5A, (PS)1210.23, 18 U.S.C. § 400(a); and appeal BP-8 dated 1/23/16, concerning actions by Case Manager Murray, and Unit Manager Hewitt, by failure to adhere to programs statements 1330.18, 5800.11(15)(c), [now 5800.17(11)(c)], 1351.05(24)(a), and producing false response contrary to BOP policy, which has led to continued fraud, inaccurate usage of critical source documents leading to further misappropriations...
( BP-9 Continued on Attachment)

2/11/16                                    *Roy Belfast*
DATE                                   SIGNATURE OF REQUESTER

Part B– RESPONSE

   I Roy M. Belfast withdraw this BP-9 from processing, based upon resolution reached by unit team to process BP-8 dated 2/24/16, both rather miscommunicated and unfortunately got resolved after the process of this BP-9. Petitioner is in the process of working with unit team on the implementation of Program Statements 1330.17, 1351.05(24)(c), and 5800.17(11)(c), as well as the Privacy Act Statute respectively.

RCVD FEB 12 '16

All Done under the Penalty of Perjury 28 U.S.C. § 1746    *Roy Belfast*
                                                          SIGNED

DATE                                   WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE            CASE NUMBER: 851681-F1

                                      CASE NUMBER: _____

Part C– RECEIPT

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

DATE                          RECIPIENT'S SIGNATURE (STAFF MEMBER)

                                                        BP-229(13)
USP LVN          PRINTED ON RECYCLED PAPER                A0091980_19-000000

(BP-9 Continued)

of federal facilities, violating 1210.23, OMB Circular-123, 31 U.S.C. § 3512 (b) FMFIA. Petitioner requested a "correction of records", under (P5) 1351.05 (24)(c), (P5) 500.11 15(c) [now 5800.17(4)(c)], (P5) 1330.18 (28 C.F.R. 542.10 et seq) (See Exhibit "A") Petitioner contributes directly consenting to policy, case manager Murray, and or unit Manager Hewitt, produced/implemented a discriminatory practice/biase in above, that violated a host of statutory, regulatory, program statement guidelines, and mandates, mentioned in BP-9. Petitioner realleges and reincorporates, reasserts, all facts stated in BP-8, as fully set forth herein. Unit Team failed to conduct a clear function designated to Unit Team, by B.O.P. Petitioner "rightfully requested", that unit team address, the non-criminal side of the 18 U.S.C. § 4041(a) challenge/issue, concerning matters associated with 898589-F1, which was sent to "appropriate department" for review. Unit Team, clearly knowingly, willingly, intentionally, with superior knowledge, conspired to violate my statutory, regulatory, constitutional, civil rights, by not investigating under 28 C.F.R. 542.10 et seq covered under 1330.18, which is clearly non-discretionary duty. The prior action requested in BP-8 clearly falls upon Unit Team, not Warden. Remedy Requested   1) Petitioner seeks an investigation, and criminal referral, based upon above mentioned violations by k unit team, Ms Murray, Mr Hewitt to the O.I.A., F.B.I., Civil Rights Division, based upon rights under 1330.15 section 13(b); 2.) Wardens Office designate appropriate staff to implement BOP policy, as required by BOP program statement, Law, and Regulation concerning issues in BP-8 contained in Exhibit "A" in this BP-9 dated 2/11/16

Under the Penalty of Perjury 28 U.S.C. § 1746

Roy Belfast
signed 2/11/16

A0091980_20-000000

1/20/16

COC 1330.16.C
August 7, 2011
Attachment A

## INFORMAL RESOLUTION FORM

NOTICE TO INMATE:   Bureau of Prisons Program Statement 1330.16 requires that except as provided in 542.13(b) an inmate shall first present an issue of concern informally to staff and staff shall informally attempt to resolve the issue prior to submitting a BP-9.   A separate form must be used for each issue.
*******************************************************************************

INSTRUCTIONS:   Counselors will complete and attach this form to each Request for Administrative Remedy Form (BP-9) submitted, if not informally resolved.

| Roy M. Belfast Jr. | 76556-004 | Kilo Unit | Roy Belfast    1/8/16 |
|---|---|---|---|
| Inmate Name | Register No. | Qtrs./Unit | Inmate Signature |

1.   Specific complaint (one 8 ½" x 11" continuation page may be attached):
Petitioner request for "correction of records" in accordance with (PS) 1351.05 (24)(a), (c)(1)(d) (PS) 5800.11 (15)(c), (PS) 1330.18, 28 C.F.R 542.10 et seq., and criminal referral under 1210.24 et seq 28 U.S.C. 535(b), 5 C.F.R 2635.101
(See Attachment "A")

2.   What efforts have been made by the inmate to resolve the complaint informally?   To whom has the inmate _____ spoken?
Petitioner sought relief under Remedy Id no. 848589-F1, which was rejected, and recommending regular BP-8 procedures, reflected in this filing.

3.   What action does the inmate wish to be taken to correct the issue?
Pursue correction of "PSR", suspension of transfer pending out come of investigation. Referral based upon 1210.24 due to facts in Remedy Id 848589-F1, and this BP-8

Correctional Counselor's Comments (including actual steps taken to resolve):
If you are requesting any corrections directly to your PSR, you must go through the Probation officer in reference with your case.

_____ /   1/28/2016
Correctional Counselor                    Date

Staff Circle One:

Informally Resolved   Not Informally Resolved

Unit Manager's Review

_____   2/1/16
Unit Manager                    Date

Distribution by Correctional Counselor:

1. If complaint is informally resolved, maintain original on file in the Unit.

2. If complaint is not informally resolved, attach original to BP-9 Form and forward to Administrative Remedy Clerk for processing.

| | Inf. Resolution Form Issued to Inmate | Inf. Resolution Form Returned to Counselor | BP-9 Issued to Inmate | BP-9 Returned to Inmate | BP-9 Delivered to to Counselor | Admin Remedy Clerk |
|---|---|---|---|---|---|---|
| Date: | 1/23/16 | 1/26/16 | 02/07/2016 | | | |
| Time: | 750 | 755 | 0925 | | | |
| Counselor | [signature] | [signature] | [signature] | | | |

A0091980_21-000000

(offer... A), based upon the jurisdictionally lacking, erroneous, inaccurate, fraudulent PSR. Petitioners PSR fails, pages 1-11, to contain any judicial facts that petitioner violated 18 U.S.C § 2250 A(a), pursuing to congressional intent under statutes jurisdictional section 18 U.S.C § 2250 A(c)(1)(2). The jurisdictionally lacking PSR, violates Gall v. U.S. 552, US 38, 51, 128 S.Ct. 586, 169 L.Ed 2d 445, which states: "Selecting a sentence based upon clearly erroneous facts constitutes a significant procedural error." "We conclude that the PSR is of like kind or character. Like a judgment, the PSR determines the rights, and obligations of the defendant going forward." (See U.S. v. Mackay 2014, U.S. App Lexis 12049). As a result of the error in records, specifically the PSR, 2nd judgment, 18 U.S.C. § 4001(a) is being violated, and or is substantially affecting my current, custody classification, security, public safety factor, which will lead to an inappropriate designation, putting petitioners life at risk. Petitioner already sought an investigation, under 5800.11 (15)(c) which was fraudulently responded to, and illegally concealed, which petitioner pursued under remedy no. # 848589-F1, and was sent to "appropriate department for review" (Please see documents submitted under 848589-F1 for proof of facts for this current BP-8). If PSR is in need for correction, based upon above stated, the judgment can not be used as "evidence of this authority to hold the prisoner" in accordance with 18 U.S.C § 3621 (c), neither can the B.O.P. designate place of imprisonment, as "the nature and circumstances of the offense" under 18 U.S.C. § 3621 (b)(2), cannot be determined via — PSR, or judgment based upon above stated facts. Under the present circumstances, B.O.P. is operating with fraudulent, erroneous PSR, and judgment. The present 323 transfer is fraudulent, and a transfer to another level 7 facility, will create civil, and criminal liability, for those who allow the transfer take place, after being given "notice" of need for investigation under 18 U.S.C § 4001(a), which is connected to "need for correction", under (PS)1351.05. Petitioner request coordination with U.S.P.O, District Court Judge, Prosecutors, A.G's Office, Civil Rights Division, OPR, OIA, OIG, Central Office to address this clear lack of statutory authority by Warden Jarvis, Director Charles Samuels, and Attorney General of the United States.

ALL DONE UNDER THE PENALTY OF PERJURY, 28 U.S.C § 1746, DONE ON JANUARY 20th 2016, IN THE SPECIAL HOUSING A RANGE, ROOM 106

Roy Belfast

INFORMAL RESOLUTION FORM                    COC 1330.13 G
                                            April 20, 2004

Attachment B

NOTICE TO INMATE:  Bureau of Prisons Program Statement 1330.13 requires that except as provided in
542.13(b) an inmate shall first present an issue of concern informally to staff and staff shall
informally attempt to resolve the issue prior to submitting a BP-9.  A separate form must be used
for each issue.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

INSTRUCTIONS.  Counselors will complete and attach this form to each Request for Administrative Remedy
Form (BP-9) submitted, if not informally resolved.

Belfast, Roy _____ 76556-004 _____ Kilo _____ Roy Belfast _____
Inmate Name          Register No.      Qtrs./Unit        Inmate Signature

1.      Specific complaint (one 8 ½ x 11 continuation page may be attached):
Petitioner requests a "Correction of Record" (PSR) based upon 1351.05(24)(a),(c)(1)(a),
5800.17 (11)(C), and 1330.18, due to inaccurate, materially incorrect information of
a constitutional magnitude in the Presentence Report. (See Exhibit "A")

2.      What efforts have been made by the inmate to resolve the complaint informally?  To whom has
the inmate spoken?
        Beyond Informal Resolution; Unit Team

       * Send to District Court Judge Altonaga, and USPO for review; and issuance of a
3.      What action does the inmate wish to be taken to correct the issue?
New, and or Amended PSR issued by District Court/U.S.P.O absent of Count 1
and any counts associated with Count 1 18 U.S.C. § 2340A(c)

Correctional Counselor's Comments (including actual steps taken to resolve):

_____

_____

_____

_____   Staff Circle One:
Correctional Counselor        Date
                                           Informally Resolved    Not Informally Resolved

Unit Manager's Review

_____                  _____
Unit Manager                                Date

Distribution by Correctional Counselor:

1. If complaint is informally resolved, maintain original on file in the Unit.
2. If complaint is not informally resolved, attach original to BP-9 Form and forward to Administrative
Remedy Clerk for processing.

|        | Inf. Resolution Form Issued to Inmate | Inf. Resolution Form Returned to Counselor | BP-9 Issued to Inmate | BP-9 Returned to Counselor | BP-9 Delivered Admin Remedy Clerk |
|--------|--------------------------------------|-------------------------------------------|----------------------|---------------------------|----------------------------------|
| Date:  | 2/24/2016                            | 3/2/16                                     |                      |                           |                                  |
| Time:  | 0715                                 | 1055                                       |                      |                           |                                  |
| Counselor: | E-SENA                           | ESENA                                     |                      |                           |                                  |

A0091980_23-000000

Exhibit "A"

The PSR fails to contain any judicial facts that petitioner violated 18 U.S.C. § 2340 A (c) Count 1, 18 U.S.C. § 2340 A (c) states : Conspiracy. A person who conspires to commit an offense under this section shall be subject to the same penalties (other than the penalty of death) as the penalties prescribed for the offense, the commission of which was the object of the conspiracy,), according to the statutes jurisdictional section 18 U.S.C. § 2340 A (b)(1),(2) which states : (b) jurisdiction. There is jurisdiction over the activity prohibited in subsection (a) if -- (1) the alleged offender is a national of the United States ; or (2) the alleged is present in the United States, irrespective of the nationality of the victim or alleged offender. ( See Statute 18 U.S.C. § 2340 A Attachment 1 to • exhibit "A")

No part of the trial record contains any facts that co-conspirators, B,C,D were U.S. Nationals, and or found in the "United States" as defined in 18 U.S.C. § 2340 (3), 18 U.S.C. § 5, 18 U.S.C. § 7 et seq. (See 18 U.S.C. § 5, 18 U.S.C. § 7 et seq. Attachment 2 to exhibit "A") Co-conspirators B,C,D were instrumentalities of the Liberian State during the indictments allegations, ( See Affidavit Attachment 3 to exhibit "A") placing indictment in violation of the Foreign Sovereign Immunity Act of 1976

A0091980_24-000000

The Congressional History of 18 U.S.C. § 2340 expressly states on Page 20: "As discussed above, existing federal and state law appears been committed in any territory under U.S. Jurisdiction or on board a ship or aircraft registered in the United States. See 18 U.S.C. § 7; 49 U.S.C. App. §§ 1301 (38), 1472. Implementing legislation is therefore needed only to establish Article 5 (1)(b) jurisdiction over offenses committed by U.S. Nationals outside the United States, and to establish Article 5(2) jurisdiction over foreign offenders committing torture aboard who are later found in territory under U.S. jurisdiction." (See Congressional History of Statute 18 U.S.C. § 2340 A Attachment 4 to exhibit "A")

The C.A.T expressly states: Article 5

"(1) Each state party shall take such measures as may be necessary to establish its jurisdiction over the offences referred to in article 4 in the following cases:

2. When the alleged offender is a national of that State;

3. When the victim was a national of that state if that state considers it appropriate.

(2.) Each state party shall likewise take such measures as may be necessary to establish jurisdiction over such offences in cases where the alleged offender is present in any territory under it's jurisdiction and it does not extradite him pursuant to article 8 to any of the states mentioned in paragraph 1 of this article (See C.A.T Attachment 5 to exhibit "A")

Petitioner requested a "Sellers Investigation" via letters sent by Unit Team via Big Sandy U.S.P. (See "Sellers Investigation letters Attachment 6 to exhibit "A"). United States Probation issues incomplete response failing to answer count 1 18 U.S.C. § 2340 A(c) of the J³C, to "Sellers Investigation" dated Feb. 11th 2014, petitioner appeals, to the wardens office at U.S.P. Big Sandy, whom responds to BP-9, with remedy response BP-9 770428-F1, and mandates completion of Federal Investigation.

Unit Manager issues two letters Feb 25th, 2014, and July 29th, 2014 (See Feb 11th U.S.P.O response, BP-9 remedy 770428-F1, additional "Sellers Request Letters" sent by Unit Manager H. Chance dated Feb 25th; July 29th 2014 respectively Attachment 7 to exhibit "A"). U.S.P.O issues another incomplete response in August of 2014, under 1330.18 (See 1330.18 Program Statement Attachment 8 to exhibit "A"), in turn causing clear obstruction, as well as issue false statement, leading to a violation of 18 U.S.C. § 4001(a), 5. C.F.R. 2635.101(a)(b)(11)

The indictment also fails to state that co-conspirators B,C,D were U.S. Nationals, and or found in the U.S. as defined in 18 U.S.C. § 2340(3), 18 U.S.C. § 5, 18 U.S.C. § 7 et seq. in addition the jury instructions as it relates to count 1 18 U.S.C. § 2340A(c), fails to meet Congressional Intent based upon Statutes jurisdictional section 18 U.S.C. § 2340 A(b)(1),(2)

2

A0091980_26-000000

Which led to an issuance of a "advisory opinion" in relation to count 1, as co-conspirators B,C,D are not considered "Persons" for 14th, and 4th Amendment "Due Process" which provides personam, or subject-matter jurisdiction to the court under 18 U.S.C. § 3231 (See Jury Instructions Attachment 9 to exhibit "A")

The incomplete response by the USPO under a Federal Investigation led to violations of (PS) 1210.24, and 3420.11 et seq. by B.O.P. Officials at Big Sandy U.S.P., by failing to report the obstruction, and Fraud, Waste, Abuse that has, was, and is taking place due to the B.O.P. relying upon a erroneous and false PSR and J&C

(See Jose Santana Letter Attachment 10 to exhibit "A")
(See June 14th 2014 Letter Attachment 11 to exhibit "A")
(See Attorney General Letter Attachment 12 to exhibit "A")
(See OSCC Angela Scotts Letters, and Petitioners responses Attachment 13 to exhibit "A")
(See BP-9 dated 12/22/15 Requested for Investigation under remedy id no. 848589 "referred to appropriate department" for review for violations 3420.11 et seq., and 1210.24 Program Statements Attachment 14 to exhibit "A")

Relief Requested

1.) U.S.P.O bring this matter before Judge Altonaga, and provide letter provided in Attachment 14 to exhibit "A", and iniate review.

2.) Amand/Correct, and or District Court issue new PSR and Judgment

Roy Belfast

A0091980_28-000000

**U.S. DEPARTMENT OF JUSTICE**
Federal Bureau of Prisons

**REQUEST FOR ADMINISTRATIVE REMEDY**

"Sensitive BP-9"

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Belfast, Roy | 76556-004 | SHU/k block | CLM USP 1 |
|-------|--------------|-----------|-------------|-----------|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

"Sensitive BP-9"   Petitioner seek an investigation based upon (PS) 1330.18, 28 C.F.R. 542.10 et seq., and referral to the Attorney General, and O.I.A. based upon the continuous violation of 18 U.S.C. § 4001(a)², and violation of 18 U.S.C. § 241, 27 U.S.C. 552(a) 5 C.F.R. 2635.101 et seq. A letter was sent to petitioner from Chief Centena from BOP attempting to address the violation of 18 U.S.C. § 4001(a), sent to him via the Attorney General Holder's Office (See Exhibit "A"). But not response clearifying the mis-conception (See Exhibit "B"). July 18ᵗʰ 2014 petitioner received acknowledgment from Angela Scott, Operations Manager, Team Lima (see Exhibit "C") of petitioners response to Chief —
(see Attachment)

| 12/22/2015 | Roy M. Belfast |
|-----------|----------------|
| DATE | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

DATE                                                            WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                         CASE NUMBER: _____

                                                             CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
            LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____

DATE                                          RECIPIENT'S SIGNATURE (STAFF MEMBER)

A0091980_29-000000

USP LVN          PRINTED ON RECYCLED PAPER          BP-229(13)
                                                     APRIL 1982

Attachment continued) Santana sent via certified mail no. 7012 1640 0001 8200 1102. Angela

Scott's response obstructed further investigation, and concealed the fact a "sellers

Investigation" had been requested, and remained incomplete, which means no

legal custody has been validated by the B.O.P. making present custody illegal

(See Exhibit "D"). Unit Manager issues letter after Wardens directive in remedy

Id no. 770428-F1 (See Exhibit "E"). Failure by those (failing) to properly investigate

a violation of 18 U.S.C. § 4001(a) is concealment of a crime, conspiracy against rights,

misprison of a felony etc. Petitioner issues a letter to the Attorney Generals office

(see Exhibit "F"). A additional letter was sent to the civil rights division (see

Exhibit "G"). "PSR contains directions or instruction about the defendants sentence

because the PSR affects the rights and obligations of the defendant, we conclude

Its of like or character as "judgment" or "order" (see U.S. v. Mackay 2014 U.S.

App. Lexis 12049 fifth circuit court of appeals). "PSR not only affects length of

sentence (custody scoring), but also determine the defendants place of incarceration"

(see U.S. v. Brown, 715 F.2d 387, 389 n-2 (8th Cir. 1983). "PSR serves as a

source of information beyond its use in the treatment, and supervision of the

offender it is requested frequently by law enforcement . . . " (see Stephan A Fennell

Williams N. Hall, due Empirical and legal analysis of the disclosures of the

presentencing reports in Federal Courts, 93 Harvard L Rev. 1615 (1980). If the PSR

is wholly inaccurate/void, the judgment is affected as well. Petitioner formally

requests an investigation with the Attorney Generals office, E.O.U.S.A., Civil

rights Division regarding violation of 18 U.S.C. § 4001(a), and referral to O.I.A.

based upon violations by B.O.P employees. Failure by your office or Attorneys

under you to thoroughly investigate will be a class 1 violation under (PS)

.10.24. Petitioner has attached a sworn affidavit (see Exhibit "H") to

validate the facts, and need for investigation under 28 C.F.R. 542.10

which is non discretionary. You are bound by law to investigate, and refer

this matter!

*Roy Belfast*

Signed

A0091980_30-000000



**U.S. Department of Justice**
Federal Bureau of Prisons

Designation and Sentence Computation Center

---

*U.S. Armed Forces Reserve Complex*
*346 Marine Forces Drive*
*Grand Prairie, Texas 75051*

May 28, 2014


Roy M. Belfast, Jr.
Reg. No. 76556-004
United States Penitentiary - Big Sandy
P.O. Box 2068
Inez, Kentucky 41224

Dear Mr. Belfast:

   Your letter to Eric Holder, U.S. Attorney General, has been forwarded to me for response.  You state the Presentence Investigation Report (PSR) respective to your criminal case does not reflect the information detailed in the Criminal Indictment which led to your conviction and sentencing.  Furthermore, you allege the PSR renders the Judgment respective to your criminal case unlawful, and the Bureau of Prisons (Bureau) does not have the legal authority to confine you.  You also allege the Bureau's inmate classification process results in an improper increased security level assignment.

   A review of your record revealed you were sentenced in the Southern District of Florida on January 9, 2009, to a 1,164-month term of imprisonment for Conspiracy to Commit Torture; Conspiracy to Use, Carry, and Possess Firearms During and in Relation to a Crime of Violence; Torture; and Using, Carrying, and Possessing a Firearm During and in Relation to a Crime of Violence.  While in the process of determining the sentence to be imposed, the court adopted the PSR to establish your Sentencing Guidelines range.  You were subsequently committed to Bureau custody on March 18, 2009, and currently scheduled to satisfy your federal sentence on December 8, 2091.  Absent a court order, the Bureau does not have the legal authority to release you from confinement prior to the expiration of your federal sentence.

A0091980_31-000000

The Bureau classifies and designates inmates in accordance with Program Statement 5100.08, Inmate Security Designation and Custody Classification.  You are properly classified as a high security level offender, and currently confined at a facility commensurate with your security and programming needs, as well as the population management needs of the Bureau.

I trust this response has addressed your concerns.

Sincerely,

Jose A. Santana
Chief

2

A0091980_32-000000

Exhibit C

Sent Via Certified Mail Number. 7012 1640 0001 8200 1102


LETTER WRITTEN: JUNE 14TH 2014



From : Roy M Belfast Jr Reg No. 76556-004

        U.S.P Big Sandy P.O. Box 2068

        Inez Ky 41224


To: Mr Santana Chief Of DSCC U.S. Armed                Forces
Reserve Complex 346 Marine Forces        Drive Grand Prairie,
Texas 75051



RE: Response to Letter Dated May 28th, 2014. . Request For
investigation based upon re-clarification of the claims raised
in previous letters and filings to the Bureau Of Prisons.


Dear  Mr Santana :


     This letter is in response to your letter dated May 28th,
2014. I hope this letter meets you well and in the best of
health and strength. Sir let me first say thank you for taking
the time out to respond to this very important matter. I would
like to clarify a few things regarding the issue presently
before the B.O.P . The crux of the claim petitioners has
asserted relates to the transfer of custody process from the
courts to the B.O.P.. There are two very important documents,

1

A0091980_33-000000

that come from the sentencing Court that are at issues :

1.) P.S.I.- Which is governed by the Federal Criminal Rules of Procedure , Rule 32

2.) Judgment and Commitment- Which is governed by the Federal Criminal Rules Of Procedure, Rule 32

Rule (c) states: (1) required investigation.
(A) In general. The probation officer must conduct a presentence investigation and submit a report to the court before it imposes sentence unless : (i) 18 U.S.C. sub section 3593 (c) or another statute requires otherwise : or
(ii) the court finds that the information in the record enables it to meaningfully exercise it's sentencing authority under 18 u.s.c. sub section 3553, and the court explains it's findings on the record.[END OF RULE 32]

The most relevant aspect of rule 32 is (c)(a). As you rightly pointed out in your letter the "court adopted the P.S.I.", making it the sole basis upon which it's sentencing lies.

The P.S.I. clearly brings life and authority to the judgment and commitment, Rule 32 (k) states : In the judgment of conviction , the court must set forth the plea, the jury verdict or the Courts findings, the adjudication, sentence. If the defendant is found not guilty or otherwise entitled to be discharged, the court must so order. The judge must sign the

A0091980_34-000000

judgment and the clerk must enter it. [END OF STATUTE]


The P.S.I. must contain accurate facts, to provide the
statutory and constitutional authority to the courts during
the sentencing /penalty phase of the proceedings. In United
States v Roberts P. Griffiths, 504 Fed
Appx. 122; 2012 U.S. App Lexis 23852 the U.S. Court of Appeals
for the Third Circuit found that : " The United States Supreme
Court held that selecting a sentence based upon clearly
erroneous facts, constitutes a significant procedural error. A
sentence can not be predicated of false information. Moreover,
Due Process may require presentencing when the information on
which the sentencing court may have relied in the Presentence
Investigation Report id mistaken or unreliable"( In
petitioners instance the information is jurisdictionally void
which has even greater implications).


The Supreme Court has held : " Selecting a sentence based
upon clearly erroneous facts constitutes a significant
procedural error " Gall v United States 552 U.S 38, 51 128
S.CT 586, 169 L. Ed. 2d 445.


The First Circuit Court of Appeals in , United States v
Curran, 926 f.2d 59 : 1991 U.S. App Lexis 2253, stated : " It
is well settled, however that a defendant has due process
right to be sentenced upon information which is not false or
materially incorrect". ;


Townsend v Burke, 334 U.S. 736, 92 L. ED. 1690, 68 S.Ct A0091980_35-000000

1252 (1984);

United States v Tucker, 404 U.S. App 446;

United States v Espinoza, 481, F.2d553, 555 (5th cir
1978);

United States v Harris, 558 F.2d 336 ( 7th cir. 1977);

United States v Malcolm, 432 F.2d 809 ( 7th cir 1970).


Supreme Court further states :" A sentence base upon
misinformation of a constitutional magnitude, un true
assumptions of fact may violate due process"( United States v
Tucker, 404 U.S. 443. 437 30 L.ed 2d 592, 92
S.Ct 589 (1972).


Now based upon the P.S.I. jurisdictionally lacking
judicial facts this automatically voids the judgment. "
Moreover [a] judgment is void... only if the court that
rendered it lacked jurisdiction of the subject, or of the
parties, or if it acted in a manner inconsistent with due
process of law ". Union switch & Signal Div America Standard
Inc. v United Elec./ Radio and Mach. Workers of America, local
610, 900 F.2d 608, 612 n.1 ( 3rd cir. 1990)(citations
omitted). " Thus we have indicated that a judgment will be
rendered void for lack of subject matter jurisdiction only
where there is a total want of jurisdiction or in rare
instance of a clear usurpation of power". id.;see also--
        United student Aid Funds, inc., 130 S.Ct at 1377 (
noting that courts generally find a " judgment is void
because of jurisdictional defect... only for the exceptional

A0091980_36-000000

case in which the Court that rendered the judgment lacked even
an arguable basis for jurisdiction" ( citing Nemaizer v Baker,
793 F.2d 58, 65 ( 2d cir. 1986); see also--

    United States v Tittjung, 235 F.3d 330, 335 (7th
cir.200)(" Only when the  jurisdictional error is egregious
will courts treat the judgments void".)


    Petitioner asserts the controversy rests with Count 1
within the judgment and commitment and P.S.I . At present the
P.S.I. fails to contain the jurisdictional requirement under
18 u.s.c. 2340A(b), that petitioner violated 2340A(c), which
requires that petitioner conspire with U.S. Nationals or those
that satisfy Due Process requirements. Personal Jurisdiction
raises different concerns from subject matter jurisdiction. It
is rooted in the Due Process clause of the United states
constitution. A defendants due Process rights would be
violated if a court were to hear a case  in which the court
did not possess personal jurisdiction over the defendant or
his unindicted co-conspirators.


    No passage of time can transmute a nullity into a
binding judgment, all have a d duty to act within there legal
capacity to act when a violation of a citizens rights has and
is presently taking place. The breach of public trust is a
"miscarriage of justice'.


    "Under the law of false arrest and imprisonment,

A0091980_37-000000

indictments are categorized as void and voidable. The void
class includes those setting forth facts which in no
conceivable form can constitute a criminal offense, or if they
might constitute an offense, the court issuing the process had
no jurisdiction over such events or the person charged with
the offense"( Allen Friedman v United States of America,
United states Court Of Appeals for the Sixth circuit 927 F.2d
259; 1991 U.S. App Lexis 3464; 19 fed R. Serv. 3d (Callaghan)
64 No. 90-3337

    There are no judicial facts contained in the trial record
to support any aspect of the Rule 32 F.C.R.P. in regards to
Count 1 Conspiracy to Commit Torture, which means there is
non-compliance with Congresses intent regarding 18 U.S.C.
2340A(b), and the sentencing courts authority under Rule 32
F.C.R.P as it relates to Count 1 of the indictment, P.S.I.,
and judgment and commitment. This also means the Court Lacked
Article III, Section 2, Clause 1.

    No fraudulent judgment can be used as evidence to meet
statutory requirements under 18 u.s.c. 3621(c), putting the
sentence, and present confinement in violation of 18 u.s.c.
4001(a); 18 u.s.c. 4042, as well as petitioners civil and
constitutional rights. The D.O.J. (i.e. B.O.P.) and courts
must take cognizance of void judgment when it occurs,
especially when it uses the judgment to conduct administrative
functions, essential transactions, and enter it into the

6

federal records system, as being a true and correct/accurate according to Federal guidelines, Regulation, and statute. Fore it is fraud to procure monies from congress which defrauds the American Taxpayers & Government. If a Court rendered a judgment, and lacked jurisdiction of the subject matter or person/persons and entered into decree a Court order that was not within it's power to grant , this substantially effects, out rightly waives and possibility that the B.O.P is enforcing a valid judgment. The fraud/ jurisdictional defect is born from the Court, and forced the B.O.P. to rely upon documents/records that have been used to procure funds, carry out essential transactions from Congress illegally, for the last 7 yrs and 9 mths plus, of petitioners incarceration.

Sir, I seek to drive this very critical point home; The judgment and commitment is provided authority from rule 32 F.C.R.P. . If the sentencing Court lacked the authority to sentence petitioner under Rule 32 F.C.R.P. , then the court order covered under the same rule is void, erroneous, invalid, false, mistaken,fraudulent via mis- representation. This raises the error to a constitutional magnitude and denies the Court of, statutory, or constitutional authority to issue a valid judgment, this also denies the B.O.P. the ability to enforce a valid judgment, because there is no valid judgment to enforce, it simply can not be used as evidence when it is contrary to 18 u.s.c. 4001(a).

The Supreme court comments on this : " we cannot exercise

A0091980_39-000000

hypothetical jurisdiction, any more then we can issue a hypothetical judgment. Federal Courts are of limited jurisdiction they possess only the power authorized by the constitution and statute, Which is not to be expanded by judicial decree". Kokken v Guardian Life Ins. co of Am. 511 U.S. 375, 377, 114 S.Ct 1673, 1675, 128 L.Ed 2d 391 (1994).

At present based upon the lack of judicial facts to support 18 u.s.c. 2340A(b), regarding 18 u.s.c. 2340A(c), the DSCC/Big Sandy/B.O.P. is operating off of and is maintaining a fraudulent, unreliable, hypothetical judgment.

The P.S.R. and Judgment should be mutually support one another to show that the transfer of custody process from the Courts to the Bureau Of Prisons is in accordance with 18 u.s.c. 4001(a); 18 u.s.c. 4042; 18 us.c. 3621(c).

Now based upon program statement 5800.15 " Corrections Systems Manuel ", chapter 5 ( Review of the initial Designation Packet).

501 states: Dscc staff must thoroughly review includes, but is not limited to , jail credit, over served time, separetee, medical, P.S.I. and J&C information.

NOTE** [ 501 clearly states the P.S.I. is part of the review with the J&C ]

502(c) states : J&C order. prior to calculating an

inmates sentence, DSCC staff will carefully analyze the J&C to insure it is in accordance with applicable, caselaw, and the sentencing guidelines.

502(h) states : source Documents and legal reference material. designation and sentence computation involves using complied data to produce a reasonable and logical interpretation of the sentencing courts mandate. Designation Source Documents are identified in the Security and Custody classification Manuel. The complied data for calculating a sentence comes from source documents which will be reviewed in the following order and include, but are not limited to :

* Court Orders
* J&C's
* Statement of reasons
* Individual custody and Detention Reports (usm-129) for each geographical area the inmate was in custody.
* Correspondence relating to sentence.
* Jail credit
* Fines
* Presentence Investigation Report
* USPC Notice Of Action ( N.O.A's)
* Notice Of Escaped Federal Prisoners
* Unescorted Transfer and commitment Cards, and Sentry Data.

In addition to source documents, the DSCC must have access to current editions of the following legal reference material :

* Federal Rules of criminal Procedure, Title 18,

A0091980_41-000000

Title 21 Chapter 13, Title 28 Chapter 175 and Title 46 Chapter 38 ( paper back, non annotated west Publishing)

      * Title 28, Code Of federal regulations ( Government Printing Office )

      * Title 8 u.s.c. for I.C.E and Pretrial Detainees (annotated - West Publishing)

      * Title 22 and Title 24 D.C. Code

      * All program statements in the 1000 and 5000-7000 series that pertain to the DSCC procedures and functions will accessible to all department staff.


    Petitioner asserts the following :


    1.) The jurisdictional void/ void P.S.I. meets the standing of constitutional magnitude, lack of statutory adherence/conformity to congressional intent and of a civil rights magnitude as well and warrants the attention of the courts, Attorney general, Director of the B.O.P. . My P.S.I. pages 1-19 fail to contain the jurisdictional requirements under 18 u.s.c. 2340A(b) denying DSCC from having produced and logical interpretation of the sentencing Courts mandated, when it lacked a mandate under Rule 32 F.C.R.P. . The main source documents relevant to petitioners claim, must contain facts that provide the Courts statutory standing under Rule 32 F.C.R.P., which at present is lacking. Had there been a thorough review of the petitioners designation packet by trained DSCC staff the fatal flaw would have been discovered, and certification would have been denied or delayed until the

A0091980_42-000000

jurisdictional defect was cured/ addressed or at minimum noted within DSCC records.

2) Based upon the reading in program statement 5800.15 Chapter 501 and 502 et seq.; DSCC possess all the requisite materials needed, as to avoid such a "material error"

3.) The initial certification of the " Initial Designation Packet", is fraud via misrepresentation based upon the absence of judicial facts in the P.S.I. to show that 18 u.s.c. 2340A(b) was satisfied to confirm that petitioner was and is being confined pursuant to an "Act Of Congress". As a result not only is the judgment and P.S.I. from Judge Cecilia Altonaga of the southern District of Florida under Criminal case no. 06:20758-Cr-alt fraudulent and in violation of 18 u.s.c. 4001(a); 18 u.s.c. 4042; 18 u.s.c. 3621(c), but the B.O.P. as well for accepting and presently enforcing a illegal judgment. At present the inception of this lack statutory enforcement authority was derived from the Courts. The B.O.P bears liability based upon it's failure to conduct a thorough review/analysis of source documents and other complied data against the back drop of the legal reference material readily available to DSCC, prior to Designation and Computation of Petitioner to a U.S.P. in the Federal Bureau of Prisons.

4.) Any request for appropriated funds based upon the incarceration of prisoners , on behalf of petitioner confinement, treatment, discipline, is illegal and fraudulent

A0091980_43-000000

via misrepresentation. The B.O.P. has a duty to insure the records used to conduct financial transactions and confinement of an American citizen are accurate, factual and without error, especially when it affects the civil and constitutional rights of a an individual and the financial legal rights of the government.

5.) Petitioner believes at minimum a review of designation packet. should have taken place and discovered, this serious constitutional and procedural due process violation, and title 18 violations, and at minimum delayed acceptance of custody from the Courts until the Courts addressed the Due process issue. This is connected to a larger substantive Due Process, as there are no judicial facts to support a amended P.S.I.. This is also linked to the failure to the proper administration of justice in violation of 28 u.s.c. 351 which states: (a) Any person alleging that a judge has engaged in conduct prejudicial to effective and expeditious administration of the business of the Courts, or alleging that such judge is unable to discharge all duties of office by reason of mental or physical disability, may file with the clerk of the courts of appeals for the circuit a written complaint containing a brief statement of the facts constituting such conduct.

6.) Issue was raised prior to the notification to the Attorney General. petitioner fled a BP-8 on 1/2/14 based upon program statement, 1330.18 requesting a DSCC and Big Sandy Investigation due to the lack of statutory enforcement

A0091980_44-000000

authority, in violation cf 18 u.s.c. 4001(a). Big sandy staff
claimed that your staff during the initial BP-8 request
refused to respond to the issues raised in the claim, even
after the BP-8 was faxed to them, (Grand Prairie)(See BP-8,
1/2/14). Petitioner then filed a BP-8 on 1/24/14 requesting
for criminal refferal based upon illegal certification by DSCC
of  Initial Designation packet (See BP-8 1/24/14) both BP-8's
went unanswered, which has resulted in a criminal complaint on
the actions of Big Sandy staff involved (See BP-11's filed to
Central Office)

On 2/3/14 petitioner filed a BP-9, which again
requested for an investigation by DSCC into the above
mentioned issues (See BP-9  Id No. 768383), and upon receiving
a response, I was told DSCC responded by email and I could not
receive a copy , which was then memorialized on paper with his
signature. (SEE BP-9 response W/ A.W. memorialization)

NOTE***[ The response claimed to have come from DSCC amounts
to an obstruction to petitioner obtaining relief ]

Even after being given all of the supporting evidence
DSCC chose to produce a fraudulent, misleading response. As
result of the BP-9 response petitioner filed a BP-10
underscoring the failure and erroneous response by DSCC (See
BP-10 Remedy Id No. 768383-R1 and response).

It is impossible for computation to come before the
review of the designation packet, this is to insure that it is

A0091980_45-000000

in line with 18 u.s.c. 4001(a), insuring that all Americans
are confined pursuant to an "Act of Congress" ( Keep in mind
Statute trumps/overrides agency Policy, the B.O.P. must insure
it's operations , are in line with Congress at all times, i.e.
Title 18 u.s.c. , sub sections 4001(a), 4042, Title 31 u.s.c.
sub sections 3512(b), 3802 etc). This makes the BP-10 moot, if
not outright fraudulent for the misrepresentation of the claim
raised. 1330.18 is an established right given force under 28
C.F.R. 542.10 et seq., which becomes a "Administrative
Proceeding", that is legislatively required not a
discretionary function.


*RELIEF SOUGHT BY YOUR OFFICE CHIEF SANTANA*


    Petitioner requests a investigation, and records
management study of petitioners file, based upon the
inaccuracy of files maintained by the B.O.P. for functions ,
policies, decisions, procedures, and essential transactions of
the Bureau Of Prisons. Based upon violations of Title 44
u.s.c., sub-sections, 2901; 3101. The inaccuracies within the
federal records system of the executive branch of government
and the reliance of said fraudulent documents triggers
violations of Title 31 u.s.c., sub-sections 3528; 3802; Title
18 u.s.c., sub-sections, 1001; 1002; 4001(a); 4042; 371; 241;
3621(c); Title 5 u.s.c., subsections, 702; 704. Upon
confirmation that the Federal Records possessed on petitioner
are fraudulent and are misrepresented, and at present are

14

A0091980_46-000000

being used for essential transaction as it relates to
petitioners confinement, on behalf of the Bureau Of Prisons,
Petitioner requests the following steps be taken :

(A) Interagency cross notification, of report and
findings to all federal Executive agencies who are in
possession of fraudulent records and who used such records at
any time to conduct financial transactions make policy
decisions, initiate department functions and procedures, as
well as cause initial arrest/ confinement and or were
associated with permanent detention of petitioner.

(B) Removal o such records from the B.O.P records
system and request for a correction and or deletion of any
such records held by any other federal executive agency.

(C) A investigation of persons associated with the
certification, and creation of fraudulent records and a
criminal referral made to Office of Internal Affairs, office
of the Inspector General, Attorney General, Office of
Management and Budget, General Accountability Office, as
petitioners case is but one example of Significant Material
Weakness, within Bureau Of Prisons Operations, that has
National Implications (See Research Paper attached to this
letter)

(D) Notification to the judicial branch of
government, via complaint (i.e. Chief Judge to the 11th
circuit regarding the violation of 28 us.c. 351), regarding
the actions of Judge Cecilia Altonaga of the Southern District
of Florida, in criminal case no. 06:20758-Cr-Alt, for the
production of a fraudulent judgement and commitment, which the
Bureau Of Prisons has relied upon for the last seven years and

A0091980_47-000000

nine months. Notification to Judge Altonaga on the void nature
of the P.S.I., Judgment and Commitment/Source Documents, and
request for investigation by the United states Probation
Office, based upon fraud via misrepresentation.

(E) Notify the Attorney Generals Office; the
Director of F.B.O.P Charles Samuel, as well as the deputy
Attorney General James Cole, of the actions needed to address
this very sensitive matter.

(F) Provide petitioner with a copy of the findings
of Investigation, and Records Management Study, as well as
letters associated with corrective actions recommended and or
actions taken, by any and all Federal Executive Agencies.

(G) A press release based upon the corrective
actions taken on findings from investigation and Federal
Record Management Study.

(H) Submit report to the Senate Judiciary Committee,
OMB, Based upon investigation and findings, as well as any
corrective actions taken on behalf of petitioners records held
by all agencies with the federal executive. Due to this case
being a reflection of a larger material weakness in the
Bureau's operations.


In the air of transparency petitioner will forward a
copy to the Attorney general's Office, and Office of Inspector
General, as well as the Judiciary Committee in the Senate, and
specific members of Congress that petitioner deems
appropriate. petitioner prays that this clarification assists
in providing some deep insight into the potential damage

A0091980_48-000000

15

already caused, and the ramifications of the continuation of the above mentioned, which continues to adversely affect petitioner civilly and constitutionally. Mr Santana I hope your moved to action on behalf of **petitioners**  presentation, but more importantly based upon the integrity, oath taken, fiduciary duties, public trust, and constitution of the United States  that you swore to up hold.

Thank you    for your time and attention Sir

RESPECTFULLY SUBMITTED

/S/ _Roy Belfast_ _____ /DATE 6/14/14

ROY M BELFAST JR 76556-004

U.S.P. BIG SANDY P.O. BOX 2068

INEZ KY 41224

A0091980_49-000000

Exhibit C

**U.S. Department of Justice**
**Federal Bureau of Prisons**                        Inmate Request to Staff Member Response

BELFAST, Roy M. Jr.
Reg. No. 76556-004
USP Big Sandy
Unit B

This is in response to your correspondence received on June 30, 2014.   I have received all 80 pages of your
document and the basis of your request indicates the transfer of custody process from the Courts to the Bureau of
Prisons (BOP) and inaccurate information contained in your Pre-sentence Investigation (PSI).

Program Statement 5800.12, *Receiving and Discharge Manual,* indicates the commitment paperwork that is
needed to commitment prisoners to BOP facilities.   The Judgment and Commitment Order issued by a federal
court on a sentenced inmate and prescribes the specific sentencing provisions of the Court. Further, Title 18,
U.S.C. 3621, states that the BOP is required to provide the custody and to determine the place of imprisonment
for all sentenced federal prisoners.

A review of your case indicates you were sentenced in the Southern District of Florida on December 7, 2006, to
11 months.   Further, on January 9, 2009, you were sentenced in the Southern District of Florida to 1164 months.

Further review of Program Statement 5800.11, states in part, "An inmate may challenge the accuracy of the
information in his or her Inmate Central File and the unit team staff shall take reasonable steps to ensure the
accuracy of challenged information, particularly when that information is capable of being verified. The inmate is
required to provide staff with sufficient information in support of a challenge (names of persons to contact,
government agency, etc...)."   Once this information is given to the Unit Team, staff will forward the information
to the appropriate agency responsible for amending the challenged information.

I trust I have addressed your concerns.

*Angela N. Scott*
Digitally signed by ANGELA SCOTT
DN: c=US, o=U.S. Government, ou=Dept
of Justice, ou=BOP, cn=ANGELA SCOTT,
0.9.2342.19200300.100.1.1=1500100290
3087
Date: 2014.07.08 14:56:33 -05'00'                                           July 8, 2014

Angela N. Scott, Operations Manager, Team Lima
DSCC, Designation & Sentence Computation Center
U.S. Armed Forces Reserve Complex
346 Marine Forces Drive
Grand Prairie, TX, 75051



**U.S. Department of Justice**

Federal Bureau of Prisons

*United States Penitentiary, Big Sandy*

P. O. Box 2067
Inez, Kentucky 41224

February 25, 2014

Orlando Burgos, Supervisory
United States Probation Officer

United States Probation Office
Wilkie D. Ferguson, Jr.
United States Courthouse
400 North Miami Avenue, 9th Floor South
Miami, FL 33128

RE:      BELFAST JR., Roy M.
         Reg. No. 76556-004
         Case No. 06-20758-CR-ALTONGA

Dear Mr. Burgos:

First, I would just like to thank you for the timely response in regard to our previous request regarding Roy M. Belfast Jr.

However, Inmate Belfast has indicated that the response is incomplete and does not address all of the statutes set forth in a Sellers Request. Therefore, I have attached documentation provided by inmate Belfast stating his claims for your review.

Could you please research this matter and respond back to me so I can forward it on to inmate Belfast.

If you have any questions or concerns, please feel free to contact me at (606)433-2400, Ext. ▓▓▓▓

Sincerely,

H. Chance
Unit Manager

Exhibit D

**REQUEST FOR ADMINISTRATIVE REMEDY**
**PART B - RESPONSE**

Remedy No. 770428-F1

This is in response to your Request for Administrative Remedy
receipted March 6, 2014, wherein you indicated staff failed to
address inaccuracies in your Presentence Investigation Report.

In accordance with Program Statement 5800.11, Inmate Central
File, Privacy Folder and Parole Mini-Files, if an inmate
challenges information in the Presentence Investigation Report,
staff should inform the appropriate U. S. Probation Office (USPO)
in writing of the disputed information, and request that a
written response also be provided.  On November 12, 2013, staff
submitted a letter to the United States Probation Office in
Miami, FL, requesting a review of your Presentence Investigation
Report.  On February 11, 2014, the USPO responded that your
Presentence Investigation Report is accurate.

After you indicated that the letter sent to the USPO did not
address all the inaccuracies in your Presentence Investigation
Report, staff has drafted another letter to the USPO with
attachments that you provided.  This letter was mailed to the
USPO on February 26, 2014.

Based on these findings, your Request for Administrative Remedy
is neither granted nor denied, but for informational purposes
only.

If you are dissatisfied with this response, you may appeal to the
Regional Director, Bureau of Prisons, Mid-Atlantic Region, 302
Sentinel Drive, Suite 200, Annapolis, Maryland 20701, within 20
calendar days from the date of this response.

_____                    3/6/2014
Robert E. Farley, Warden                     Date

Exhibit "F"

SENT VIA CERTIFIED MAIL NO. 7012 1640 0001 8200 1126

LETTER WRITTEN: JUNE 14th, 2014

From: Roy M Belfast Jr Reg No. 76556-004

    U.S.P. Big Sandy P.O. Box 2068

    Inez, Ky 41224

To: Attorney General Eric Holder Of the United    States
Justice Department,

  950 Pennsylvania Avenue, N.W. Washington, DC    20530-
0001

Re: Up Date Regarding Letter Sent by    Designation
Sentence and Computation    Center Chief Santana.

  Attorney General Holder,

      Let me first thank you and your staff for directing
the courtesy copy of letter I have sent to the PRD-SDAD Ms.
Sarah Revell, to the DSCC Chief, for him to address. I
received a letter from the Chief on may 28th, which I promptly
responded to in letter dated, June 14TH, 2014, in it I
correct   his misapprehension about the issues raised, as
well as send him copies of the administrative remedies
regarding the request for investigation and criminal referral

A0091980_53-000000

on DSCC staff for there fraudulent certification, regarding
the initial designation packet in violation of 18 u.s.c.
4001(a), which has caused   the Bureau to rely on fraudulent
documents to conduct it's essential financial transactions to
request for monies from Congress via the OMB, essentially
defrauding the American Government, Congress, and American
Tax-Payer, based upon there usage of such documents.

Sir from the entire remedy process, petitioner has faced
obstruction, misdirection, false statements, regarding B.O.P
staff regarding claims made, there seems to be a blatant
disrespect for law's and procedures by B.O.P. staff here at
the Institution, Region, Central Office and from what I
suspect DSCC (See all Administrative filings and responses
under Attachment B.O.P. filings, but this is not the main
reason why petitioner writes you. The present issue with the
B.O.P. and the illegal certification, and fraud on the U.S.
Government, stems from the illegal actions of prosecutors
lacking "Probable Cause". "Due Process" and "Fraud" runs
through the entire process based upon the following reasons:

A.) False statements in violation of 18 u.s.c. 1001,
Fraud via misrepresentation, and or omission were used to
obtain the approval of the Superseding and Second Superseding
Indictment, by Justice Department Prosecutors. Which means
they knowingly, willingly, intentionally, crafted the
indictment to misrepresent, influence, corrupt, and obstruct
the proper Administration of Justice in a Court of law, and
before a American jury in criminal case number 06:20758-Cr-Al

A0091980_54-000000

[ Due Process/Lack of Probable Cause Violation]

B.) Prosecutors went before a Grand Jury securing two indictments (superseding and second superseding), knowing they lacked probable cause, which means they knowingly, willingly, intentionally, committed false statements, as well as fraud via misrepresentation, and or omission before a Grand Jury. [ Continued "Due Process" Violation ]

C.) Prosecutors fraudulently used funds from a Federal program, to investigate and prosecute, a case that lacked "Probable Cause". Initiating a trial proceeding, with the intent to manipulate, evidence, seeking erroneous rulings in motions during pretrial, and trial to cover the lack of evidence that was lacking from the inception of the trial proceedings.

Essentially for a certain time committing fraud during the proper administration of justice in a court of law, as it relates to the expenditure of time resources of federally appropriated tax dollars allocated for trial.

Then finally conspiring to violate my Civil Rights with Judge Cecilia Altonaga, regarding jury instructions that was put before the fact finder, which was clearly crafted outside the Drafters/Congresses intent as it related to the jurisdictional section of 18 u.s.c. 2340A(b), concerning count one 18 u.s.c. 2340A(c) Conspiracy to commit torture ( while superior knowledge that unindicted co-conspirators did not,

A0091980_55-000000

and do not meet the criteria under 18 u.s.c. 2340A(b), while at the same time violating clearly established judicial doctrine [Act of State Doctrine, Direct Effect, Protective principals of jurisdiction, Charming Betsy Principle, Minimum Contact, Restrictive Theory of Immunity], and Congressional statute the Foreign Sovereign Immunity Act of 1976), or any other "Due Process" requirements under the Constitution of the United States. Fraudulently procuring a verdict from the Jury (Advisory/Hypothetical Judgment). [Continued "Due Process" violation]

D.) The prosecutors and judge cognizably knew that the P.S.I lacked the judicial facts. No such facts could exist since they lacked probable cause from the inception, prior to a Grand Jury proceeding that petitioner violated 18 u.s.c. 2340A(c), under the jurisdictional standard 18 u.s.c 2340A(B), yet chose to proceed with the sentencing phase /penalty phase of the proceeding, when it violated Rule 32 under Federal Rules of Criminal Proceeding, making the sentencing phase illegal and the judgment issued by th courts "Void" on it's face/"Fraudulent" by construction. [Substantive "Due Process", and procedural "Due Process" violation].

Sir it is based upon this blatant, disrespect for Justice Department policy, ethical standards, Title 18 &, 31 United States Code Service (Legislated by Congress), Oaths, Fiduciary Duties, Bonds which cover there practice of law, American

A0091980_56-000000

jurisprudence that i wrote and continue to write. A.G it has
been widely publicized that you will be leaving office this
fall, which is even more of a reason for the petitioner to
continue to press and lobby for a major investigation to be
launched as I believe that your successor will have to go
through a long period of settling in to address petitioner
issue.

Sir it is based upon the substantive & procedural "due
process" violation that this fraudulent judgment, can not be
used a evidence by the B.O.P., or any other Federal Agency, or
placed in the Federal Records System for any official use be
it for, procedures, functions, policies, or essential
transactions in violation 18 u.s.c. 3621(c). Petitioner raised
all of the Administrative Remedy Procedures, legislated by 28
C.F.R 542.10 et seq., based upon this clear reality.

As a result of the lack of proper response from the
B.O.P, petitioner along with fellow researcher Frankie
Gonzalez Reg No. 19765-050 (who has a congressional inquiry
into his case presently. We both have essential the same issue
except information in the judgment clearly shows that the
judgment is "Void". When in my instance you need to go back to
the Presentence Report to prove that the judgment is
"Fraudulent"/"Void"), produced a research paper for the
B.O.P., to fully grasp the issues having been and being
leveled against them.

A copy was sent to your office, via certified mail no.

5.

A0091980_57-000000

As result of the letter sent to the Congresswoman that essentially was intended to mislead the Congresswomans Office. Petitioner deemed it appropriate to draft a letter addressed to the Director of the E.O.U.S.A asking specific questions, on behalf of the truth for my family, my self, and the Honorable Congresswoman who has served the U.S. House of Representatives with distinction since 1993. Questions I asked the Honorable Congresswoman adopt, so that Mr Monty Wilkinson can be officially be placed on the record. Removing all doubt as to what he is informing the Honorable Congresswoman on, based upon his professional opinion, in his Official Capacity as a Justice Department Official ( SEE LETTER DRAFTED TO MR MONTY WILKINSON, DATED JUNE 13th, 2014).

Sir it's the type of response by Mr Monty Wilkinson and the past actions of Justice Department Officials, that I wrote your office and seek a Congressional inquiry into my case, adding a additional layer of oversight into the process. The fact remains my indictment passed through the National Security Division, a very sensitive area of the Justice Department, which clearly had superior knowledge of the lack of probable cause that existed. In fact one of the Prosecuting Attorneys Christopher Graveline came from the National Security Division. Based upon the nature of the charges, the level of attention it generated in the press at that time ( my arrival into the United States), the number of groups that lobbied the Justice Department to pursue me by all means, the case being one of first instance, also having Foreign Policy implications, at that time the case had to have been approved

A0091980_58-000000

by the Deputy Attorney General.

What is even more disturbing, all the reports gathered
by Human Rights groups on petitioners alleged activities. The
Justice Department had ample time to chose what they believed
would be the best possible chance for them to pursue criminal
charges against me. Having up to nine months before proceeding
with the initial indictment and more than a year plus before
trial, possessing a unlimited budget to execute the
investigation and gathered evidence on . Yet could not
produce tangible evidence to bring before a Grand Jury, and
American Jury but rather still choosing to proceed with False
Statements, and Fraud via misrepresentation, and or omission,
before a Grand jury, fact finder.

From my perspective this has far reaching implications as
to how this system can fail to work, not just for the First
torture prosecution in the Justice Departments history and why
there would be so much collusion and conspiring to violate my
civil and constitutional rights (in violation of 18 u.s.c.
241), but as to why so much money, manpower, and other
resources, from the E.O.U.S.A./Justice Department, F.B.I.,
Home Land Security, I.C.E., would be expended. When it could
have been directed towards prevention of crime or dedicated to
the actual solid leads that Federal Officials possessed
regarding the violations of the Laws of the United States. In
essence things questions linger that only a investigation can
answer, why was this case politicized ?; Who all in Justice
gave the orders to disregard  my civil and constitutional
rights ?; Who all in Justice gave the orders to violate

A0091980_59-000000

clearly established Justice Department policy ?; Who all in
Justice gave the instructions to multiple federal officials,
who held superior knowledge to commit fraud before a American
Grand Jury, while providing them the political and
administrative cover they needed to commit such acts ?.

Where there Foreign policy concerns, or economic issues
that related to this prosecution ?; Did the Head of State for
the Republic of Liberia ask for this prosecution to take place
at all costs ?;  Did he British request the same, based upon
there interests in Sierra Leone. (This would essentially mean
that the case was influenced by a Foreign Power, and or
Foreign Powers, that could possibly implicate the State
Department, and or White House at that time); Did the orders
come directly from the White House ?; How many tax dollars
were misappropriated by multiple federal officials, regarding
this scheme to defraud the U.S. Government. How many Officials
violated 18 u.s.c sub section 4, and or 28 u.s.c. 535(b),
which states: (b) Any information , allegation, matter, or
complaint witnessed, discovered, or received in a department
of agency of the executive branch of the government relating
to violations of Federal criminal law involving Government
officers and employees shall expeditiously reported to the
Attorney General by the head of the department or agency, or
witness, discoverer,or recipient, as appropriate, unless--
(1)the responsibility to perform an investigation with respect
thereto is specifically assigned otherwise by another
provision of law; or 92) as to any department or agency of the
government, the Attorney general directs otherwise with
respect to a specified class of information, allegation, or

9

A0091980_60-000000

complaint.

How many violated 18 u.s.c. 4 [Misprision of Felony] ?, which states: Whoever, having knowledge of the actual commission of felony cognizable by a court of the United States, conceals and does not as soon as possible make known the same to some judge or other person in civil or military authority under the United states, shall fined under this title or imprisoned not more than three years or both.

It's these questions and more that petitioner at some stage in the future would like answers to, and the only way to get those types of answers would be under a Congressional investigation or appointment by your office of a special prosecutor. The one of the only ways for me to be made whole again, and reclaim what is left of my shattered life as a result of this persecution again is, to get this illegal · conviction, and unlawful incarceration overturned. Hold all participants involved civilly and criminally liable for there actions, to the fullest extent of the law possible.

In addition to all that has been stated petitioner further requests. Amendment/ correction of agency records containing, inaccurate facts. Under Privacy Act 5 u..c. sub section 552a(d)(2)(b)(i), and pursuant to Records Management by agency 44 u.s.c. sub section 3101. Based upon protection of legal and financial rights of government and of persons directly affected by agency activities.

A0091980_61-000000

Pursuant to 5 u..c. 552a.(d)(2)(b)(i) which states: each
agency the maintains a system of records shall--(d)(2) permit
the individual to request amendment of a record pertaining to
him and, (b)(i) make any correction of any portion thereof
which the individual believes is not accurate, relevant,
timely, or complete. Pursuant to 44 u.s.c 3101 which states:
the Head of each federal agency shall make and preserve
records containing adequate and proper documentation of the
organization, functions, decisions, procedures, and essential
transactions of the agency and designed to furnish the
information necessary to protect the legal and financial
rights of government and persons directly affected by the
agencies activities.


Petitioner seeks the Amendment, and or removal of Justice
Department documents, which were used to assess, review,
analyze, determine Justice Department functions and
procedures, decisions, and essential financial transactions.
Which contain factual errors pertaining to Petitioner Roy M
Belfast united states marshal number 76556-004, who was and is
still being adversely affected, by these factual errors. After
the completion, usage and application towards petitioner prior
to Grand Jury proceedings regarding Second superseding
Indictment 06:20758-cr-Alt. Specifically but not confined to
the case initiation report, prosecution memorandum, supporting
affidavits, and any other relevant documents used to determine

11

A0091980_62-000000

Justice Department action against petitioner prior to any
grand jury proceedings. Justice Department documents contain
fraudulent information that petitioner met or meets the
criteria for preliminary detention, grand jury proceedings,
and or any other judicial proceedings under 18 u.s.c.
2340A(c), . Which permitted the allocation of federal funds to
be expended for the eventual investigation, and prosecution of
petitioner in violation of 18 u.s.c. 666, when no such proof
existed prior to the judicial proceedings or after the
judicial proceedings. All federal records that contain any
information or suggest that petitioner violated 18 u.s.c.
2340A(c) are factually, inaccurate, and misrepresent the
truth. Had prosecutors involved in the prosecution of criminal
case 06:20758-cr-Alt, presented the proper facts within the
federal records system, petitioner would not be adversely
affected today. as a result of the, case initiation report,
prosecution memorandum. A grand jury proceeding was advanced
against petitioner, as well as trial, and sentencing. All in
violation of petitioners due process and civil rights. this
factual inaccuracy did violated 18 u.s.c 4001(a) as petitioner
was not and is not being held pursuant to an act of congress,
due to petitioner being placed in pretrial detainment.


    Said documents constitute final agency action and create
a legal wrong under the APA 5 u.s.c. 701 et seq. failure to
correct factual and historical errors would constitute a
violation of the governments legal and financial rights as

A0091980_63-000000

they would be maintaining fraudulent records and would be
concealing clear crimes by federal executive employees. this
also produces a lack of accountability of justice Department
documentation of it's organization, functions ,policies,
decisions, procedures, and essential transactions and permits
fraud , abuse, prosecutorial misconduct, malicious
prosecution, mismanagement, causing civil liability to the
Justice Department. In addition it would continue to adversely
affect the rights of petitioner civilly and constitutionally.
petitioner has a right to seek the correction of preserved
records within the federal records system of decisions,
procedures, and essential transactions, etc, due to the
violation of legal and financial rights of the government and
petitioner. Petitioner requests a investigation, Records
management study, of all Justice Department Records and
interagency file sharing system, to correct or remove the
factual   inaccuracies presently being maintained against
petitioner, regarding false information that petitioner
allegedly violated 18 u.s.c. 2340A(c). The actions of those
involved in the fraudulent placement of records into the
federal records system, was and is a clear breach of the
public trust, fiduciary duties, oaths, and clear operation of
":bad faith", as well as violation of title 18 statutes.


    Petitioner further requests based upon 5 u.s.c. sub
section 552a et seq., that any denial be fully stated as to
why the factual inaccuracies/ fraudulent information would not
be corrected, which is mandated by law, so that petitioner can

13

A0091980_64-000000

seek relief from the courts in the event of a dispute.
petitioner further requests criminal probe, upon confirmation
of the above stated is true, and correct.



    Petitioner prays that you a moved by my diligence and
persistence, to investigate this matter, launching a criminal
probe into the actions by federal officials in criminal case
no. 06:20758-Cr-Alt.


  May god continue to move your heart, and to provide you with
the wisdom you deserve. Also sir I commend you for attempting
to address the imbalance in the justice system, one can only
wonder if that is something your predecessor will continue to
do as vigoursly and seriously as you. Although known of the
measures apply to me, any correction is a start in the right
direction. I hope that the research paper provided in this
package, helps to expose additional flaws that need to be
addressed. No matter what the position taken by analysts,
whether, it's the courts responsibility to correct such an
issue, or many agree with the premise of the research paper,
that it is within the federal executives responsibility to
detect and address such an issue when it relates to civil and
constitutional rights being violated 18 u.s.c. 4001(a) , or
the fact that the reliance of fraudulent documents for
financial transactions, is fraudulent and criminal. Regardless
of questions should the B.O.P  have or start to begin Denying
"certification" of the initial designation packet, and or

A0091980_65-000000

begin, or have been giving notification to the courts prior to
acceptance of custody, into the Federal Bureau of Prisons and
entering Fraudulent documents into the Federal Records System.
The key to me is that there is recognition of a problem, that
the system is not functioning properly and that through
successive administrations fraud and collusion has taken
place. This is yet another way to correct a some what broken
system. I believe that hundreds, if not two or three thousand
could be affected by a potential J&C/P.S.I/B.O.P. J&C file
National review, due to this practice over the last twenty of
thirty years. Billions have been improperly expended and
Billions will be save upon it's correction

        I look forward to any response from your office regarding
my complaint, concerning the wrong doing in my case. I to Mr
Holder seek to make History in my life, but not branded as a
torturer and murderer, I truly hope my second chance at life
begins with my recent efforts to highlight the wrong.



                        Respectfully Submitted


/s/---- Roy Belfast ----------/ 2014 ------

      ROY M BELFAST JR 76556-004    DATE
U.S.P. BIG SANDY P.O. BOX 2068
INEZ KY 41224

A0091980_66-000000

Exhibit "q"

From:  Roy M Belfast Jr 75556-004
       U.S.P. Big Sandy P.O. Box 2068
       Inez, Ky 41224

To: Civil Rights Divison of The Justice Department
    RFK: Robert F. Kennedy Building, 950 Pennsylvania Avenue,N.W.
    Washington, D.C. 20530-0001


RE: Violation Of Pettioners Civil and Constitutional Rights In Criminal
    Case No. 06:20758-CR-CMA


      Petitioner seeks a civil rights investigation based upon the unlawful cus-
tody and false imprisonment presently being enforced by the Bureau. Of Prisons in violation
18 U.S.C 4001(a), and 18 U.S.C. 241. The documents used to justify
statutory enforcement authority by the Bureau Of Prisons,(i.e. Source
Documents) the P.S.I. and J&C are both "void", as result of this fact.
Not only is petitioner fraudulently held/falsley imprisoned, any and
all essential financial transactions and reporting related to pet--
itioners confinement is fraudulent via representation, thereby defraud=
ing the American Government and Tax-payers in ivolation of 31 U.S.C
3512(b) and 31 U.S.C. 3802. Petitioners P.S.I., pages one thru nine-
teen fails to contain any judicial facts, that petitioner violated 18 U.S.C.
2340A(c) Conspiracy to Commit Torture, according to the jurisdicitonal section
18 U.S.C. 2340A(b), or any " Due Process" standard required under the Constitution
of The United States.

      The Bureau has been notified of this civil and constitutional rights vio-
lations, yet has obstructed and denied petitoner any relief in violation of
violation 18 U.S.C. 4001(a) (SEE ADMINISTRATIVE REMEDY 753919-F1-R1-A2 Respect-
ively), as a result violating 18 U.S.C. §1505. The P.S.I. and Judgment must mu-
tually support each other, as the P.S.R./P.S.I. determines the rights and oblig-
ations of the pettioner going forward, the report has a dfirect impact on con-
finement, length of sentence, it also affects the classification and place of
incarceration. The lack of jurisdicitonal facts/inaccuracy, is of a Constitutional
magnitude, violating " Due Process", manifesting false imprisonment, arbitrary
arrest, and cruel and unusual punishment.

      The Supreme Court has held: "Selecting a sentence based on clearly erroneous
facts constitutes a significant procedural error"

      Petitioners established rights under the Constitution and Congressional
mandated statutes have been clearly violated, by Department Of justice Officials
who, knowingly, willingly, and intentional acted, with malice, as these rights
have long since been upheld in American Law for Citizens of the United states
and those within it's territories.

      Petitioner requests based upon the false imprisonment,  violation of the 8th
Amendment, arbitrary arrest, that a civil rights investigation be launched again-
st Big Sandy, Designation Sentence Computation Center, Mid Atalntic Regional
Office, Central Office of General Counsel, for the refusal to take corrective

1

action via launching a investigation based upon crimes mentioned and the cont-
inued enforcement of a "illegal" and "fraudulent judgment.

   Petitioner further requests any notification or action taken by the civil
Rights Divison, that petitioner be notified, and full authorization is given to
the Civil rights divison to disclose any information related to this civil rights
complaint to Congressional Aide to 5th District of the United States Representative
Ms. Corrine Brown, Mr Chest Glover.

   I look forward to any action taken by the Civil rights Divison, as it relates
to the present crimes being committed by the Department Of Justice Employees

                              Respectfully Submitted

                              _Roy Belfast Jr_ _____
                              Roy M/Belfast Jr 76556-004
                              U.S.P. Big Sandy P.O. Box 2068
                              Inez, Ky 41224

2

A0091980_68-000000

DECLARATION OF FACTUAL AVERMENTS

STATE OF KENTUCKY )
                  )
                  ) SS: AFFIDAVIT OF ROY M. BELFAST, JR.
                  )
COUNTY OF INEZ    )

KNOW ALL PERSONS BY THESE FACTS

    I Roy M. Belfast Jr., Reg. No. 76556-004, D.O.B. 2/12/77, incarcerated in U.S.P. Big Sandy, presently appearing before Notary Public, hereby swear, declare under penalty of perjury, 28 U.S.C. §1746, the following:

1. I am over the legal age of 21, and the facts herein are true and correct to the best of my knowledge, done by me knowingly, intelligently, under my own free will, with no threats or promises..

2. My current confinement is based upon a judgment that was imposed in violation of Constitutional Laws, Statutes, of the United States and Int'l Treaty Convention Against Torture; Constitutional violations are: Fourteenth Amendment's due Process, Fifth Amendment's deprivation of Liberty, Eighh Amendments cruel and unusual punishment, due to wrongful incarceration. Statutory violations of 18 U.S.C.S. 4001(a) which states: "No citizen shall be imprisoned, or otherwise detained by the United States except pursuant to an act of Congress. Congress has forbidden –Non-Statutory confinement in Federal Prison. (See, **Lono v. Fenton**, 581 F.2d 645 (7th Cir. June 7, 1978) Petitioner Roy M. Belfast, Jr. Born 2/12/77 Reg. No. 76556-004, is a citizen of the United States and meets the standing requirement under 18 U.S.C.S. 4001(a). Statue 5 U.S.C. §702 Administrative Procedures Act, by the legal wrong having been committed and/or continuation of legal wrong against petitioner. Legal wrong, for p purposes of 5 U.S.C.S. §702, means invasion of legally protected right. **Pennsylvania R. Co. v. Dillion** £1964 App. D.C. 257• as well as Stattue 42 U.S.C. §1983.

    Further confinement would be in violation of 18 U.S.C. §241 conspiracy to violate my civil rights, regarding all relevant parties have been given notice of said Constitutional, Statutory and Civil Rights violations, and failure in their official capacity to act as deemed by Congress.

3. Justice Department, Bureau of Prisons are in violation of 18 U.S.C. § §4001(a), 5U.S.C. §702 Administrative Procedures Act, 14th Amendment, 5th Amendment, 8th Amendment. Petitioner's P.S.R. relating to the facts of conviction (pages 1-19) is void of and fails to state that petitioner conspired with U.S. Nationals or those found in the United States as required by Statute Jurisdictional Section as enacted by Congress (See Attachment) §2340A(b). The B.O.P., Justice Department, lack the statutory authority, enforcement authority, to continue execution of sentence and present custody over the petitioner based upon: Statutory Standing, Statutory violations, Constitutional violations, factual innocence, and legal innocence.

A0091980_69-000000

4.    Indictment fails to state that petitioner conspired with U.S. Nationals or "Persons" based upon the Fourteenth Amendment's due process analysis.  The indictment names Co-conspirators B, C, D, who are Non U.S. Citizens, Nationals with no "minimum contact" with the United States, or who's alleged action had a "direct effect" upon the United States of America, who at the time were all Liberian officials (who were) instruments of the State.

Co-conspirator B -Benjamin Yeatin at the time of the indictment was head of the Special Security Services responsible for protecting Liberia's dully elected President.

Co-conspirator C -Frmr President Charles Taylor (Petitioner's Father) at the time of indictment, was Constitutionally Mandated, Democratically elected President of Liberia.

Co-conspirator D -David Compare, at the time of the indictment was Officer of the A.T.U., which was tasked with protecting the dully elected President.

Said allegations in indictment (See: D.E. 257, 11/7/07)  are in clear violation of the Foreign Sovereign Immunity Act of 1976.  "Sole basis for obtaining jurisdiction over foreign state in courts of United States is provided by F.S.I.A. of 1976 (28 U.S.C.S. § 1330, § 1602 et seq.) pursuant to Foreign Sovereign Immunity Act. Foreign State is presumtively immune from jurisdiction of U.S. courts; unless specific exception applies, Federal Court tasks subject matter jurisdiction over claim against Foreign State. Saudi Arabia v. Nelson, (1993 U.S.)  123 L.Ed.2d 47, 113 S.Ct. 1471.  Under Section 28 U.S.C.S. § 1330(a), the jurisdictional statute corresponding to the F.S.I.A., Federal District Court's are vested with subject matter jurisdiction if a Foreign State is "not entitled to immunity, either under Sections 1605-1607 of F.S.I.A. or under any applicable international agreement." 28 U.S.C.S. §1330(a).  Conversely, if none of the exceptions to Sovereign Immunity set forth in the F.S.I.A. applies, the district court lacks statutory subject matter jurisdiction, 4 Verlinden, 103 S.Ct. at 1969; see also: Amerada Hess, 109 S.Ct. at 692.  A "Foreign State"...includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).  A foreign state or it's instrumentality, is not a "person" for the purposes of a constitutional due process analysis, (See: Weltover, 504 U.S. at 619,  112 S.Ct. 2160)("assuming, without deciding, that a foreign state is a "person" for purposes of the due process clause" but citing South Carolina v. Katzenback, 383 U.S. 301, 323-324, 86 S.Ct. 803, 15 L.Ed.2d 769 (finding states of the Union are not "persons" for the purpose of the due process clause.).

2

A0091980_70-000000

To determine whether the exercise of in personam jurisdiciton is consistant with due process, the defendant normally must have "certain minimum contact" with [the forum] such that the maintainance of the suit does not offend traditional notions of fair play and justice ("substantial"). Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 190 L.Ed. 95 (1945). When the court's jurisdiction rests on the presence of the foreign sovereign, however, the court may address the issue independently. See: Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 n.20, 103 S.Ct. 1962, 1971 no. 20, 76 L.Ed.2d 81 (1983). See also: Coleman v. Alcolac, Inc., 888 F. Supp 1388, 1400 (S.D.TX. 1995). "The district court must address the issue of sovereign immunity, even if...the foreign state has not even entered an appearance to assert the immunity defense". As the Supreme Court has explained "the subject-matter-jurisdiction of the lower federal court is determined by Congress in the exact degrees and character which to congress may seem proper for the public good, see: Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428-433, 102 S.Ct.2d 818, 109 S.Ct. 683. F.S.I.A. grants immunity to foreign sovereigns from criminal prosecution, absent an Int'l agreement stating otherwise (See: Keller v. Central Bank of Nigeria, 277 F.3d 811 (6th Cir. Jan 16, 2002).

5.  §2340A(c) was misapplied against petitioner, and in violation of the Int'l agreement Convention Against Torture.  The Statute was intended to meet America's treaty obligation, each state has to enforce agreement within it's sovereign borders and it's citizens of that State, not against Foreign Officials against acts, that were alleged in it's own territorial jurisdiction.  The indictment states all allegations take place in Liberia a sovereign state.

The Gov't at trial provided no evidence that petitioner conspired with U.S. Nationals or "Persons," that meet the due process clause analysis.  Government provided at trial, that Liberian Government was fighting for its existence; As such the victims detention alleged in the indictment was predicated on the arrest of persons, whom the Gov't believed posed a threat to the security of the Nation, making all action under the indictment governmental, in violation of "Act Of State Doctrine."

The "Act Of State Doctrine," which was developed by the Supreme Court on its own authority, as a principle of judicial restraint, essentially to avoid disrespect for foreign states, "to permit the validity of the acts of one sovereign state to be re-examined, and perhaps condemned by the courts of another would very certainly "imperil the amicable relations between governments and vex the peace of nations." (See: Oetjen v. Central Leather Co., 246 U.S. 297, 304, 38 S.Ct. 309, 311, 62 L.Ed. 726 (1918). (Thus the doctrine is related in spirit to the rules of Int'l law that accord to foreign sovereigns large immunity from adjudication in domestic courts, absebt statutory exceptions, by the legislative branch.  In Sabbatino, the court said: "That the 'Act Of State Doctrine' is compelled neither by int'l law nor by Constitution but that it has 'constitutional underpinnings,' 376 U.S. at 423, 84 S.Ct. at 937.  The court said: that "The act of state doctrine, addressing an 'issue concerned with a basic choice regarding the competence and function of the judiciary, and the National Executive in ordering our relationships with other members of the Int'l Community must be treated exclusively as an aspect of federal Law," 376 U.S. at 425, 84 S.Ct. at 938. II L.Ed.2d at 822. The immunity of a state from the jurisdiction of the courts of another state is an undisputed principle of customary Int'l Law.  in the Schooner Exchange, Chief Justice Marshall said that immunity was rooted in the "perfect equality and absolute independence of sovereign" (See: The Schooner Exchange II U.S. (7 Cranch) 116, 137, 3 L.Ed. 287 (1812).

3

CERTIFICATE OF NOTARY

I, Roy M. Belfast, Jr., Reg. No. 76556-004, presently appearing before a "NOTARY PUBLIC" hereby state, declare and swear that the factual averments in the foregoing affidavit are true and correct to the best of my knowledge, and that I, Roy M. Belfast, Jr., am indeed the signee of this document. All done, stated, declared and sworn under penalty of perjury, 28 U.S.C. §1746.

Respectfully Submitted,

/s/ *Roy Belfast Jr.*

BY: ROY M. BELFAST, JR.
REG. NO. 76556-004
U.S.P. BIG SANDY
P.O.BOX 2068
INEZ, KY 41224
AFFIANT, PRO-SE

NOTARY SEAL

NOTARY SIGNATURE                /Date
11/4/10/14
My comm. exp 4/29/17

1  p. of 1

A0091980_72-000000

The indictment and testimony during trial, establishes clear uncontrovertible facts: 1) Liberia is a Republic and not a territory or annexation of the United States, which was established in 1847, making it a Sovereign State as defined by the courts and Int'l Community. Which means, the actions of its "official/Intrumentalities" of the State, and citizenry only fall under the purview and jurisdiction of the sovereign states court: Absent any exceptions met under the "Act Of State Doctrine and F.S.I.A.," the district court lacks statutory standing and B.O.P., as well as Justice Department lacks statutory authority to enforce, (in violation of 18 U.S.C. §4001(a)).   2) Through testimony at trial it was established that the constitutionally mandated Government at the time of indictment President Charles Taylor had clearly established diplomatic relations with the U.S. Government. 3) As proven by the Government, the liberian Government, dispatched government forces to Lofa County in Liberia, as stated in the trial, to respond to an "act of war" by a group of rebels, against its government and people. Through the charging instrument handed down by the grand jury, and testimony at trial establishes, 'the proof of "act of state doctrine" is clearly proven, which dictates, a showing be made that "A constitutional Amendment, Statute, Decree, and Proclamations, and in certain circumstances to physical acts, such as occupation of an estate by the State's Armed Forces in application of state policy. Also, an official pronouncement by a foreign government describing a certain act as governmental is ordinarily conclusive evidence of its official character. It is established fact by the indictment and testimony at trial that co-conspirators B, C, D, were all government officials and instrumentalities of the State, operating in official capacity.

6. The jury instructions in petitioner's trial, failed to put forth for jury determination on whether co-conspirators B, C, D, were U.S. Nationals or were found in the U.S.A., based upon §2340A(b) jurisdictional section. The jury instructions contained the term "Persons" (See: page 4, 5 of jury instruction, 10/30/2008, D.E. 580), which requires persons be citizens and resident aliens, for certain due process analysis having certain minimum contacts.   NOTICE IS HEREBY GIVEN to all relevant Justice Department Officials (i.e., Attorney general Eric Holder) failure to controvert all factual averments stated in paragraphs one through six, with sworn affidavit or documentary evidence from the record, will be accepted by said parties above to admittance to said averments.

ALL DONE, DECLARED, AND EXECUTED THIS ___9___ DAY OF ___March_____, 2014 UNDER PENALTY OF PERJURY 28 U.S.C. §1746.

Respectfully Submitted,

/s/ _Roy Belfast Jr_____
Roy M. Belfast, Jr.
Reg. No. 76556-004
U.S.P. Big Sandy
P.O.BOX 2068
Inez, KY 41224
AFFIANT, Pro-Se

4

A0091980_73-000000

DECLARATION OF FACTUAL AVERMENTS

STATE OF KENTUCKY )
                  )
                  )   SS: AFFIDAVIT OF ROY M. BELFAST, JR.
COUNTY OF INEZ    )

KNOW ALL PERSONS BY THESE FACTS

I Roy M. Belfast Jr., Reg. No. 76556-004, D.O.B. 2/12/77, incarcerated in U.S.P. Big Sandy, presently appearing before Notary Public, hereby swear, declare under penalty of perjury, 28 U.S.C. §1746, the following:

1.  I am over the legal age of 21, and the facts herein are true and correct to the best of my knowledge, done by me knowingly, intelligently, under my own free will, with no threats or promises.

2.  My current confinement is based upon a judgment that was imposed in violation of Constitutional Laws, Statutes, of the United States and Int'l Treaty Convention Against Torture; Constitutional violations are: Fourteenth Amendment's due Process, Fifth Amendment's deprivation of Liberty, Eighth Amendments cruel and unusual punishment, due to wrongful incarceration. Statutory violations of 18 U.S.C.S. 4001(a) which states: "No citizen shall be imprisoned, or otherwise detained by the United States except pursuant to an act of Congress. Congress has forbidden -Non-Statutory confinement in Federal Prison. (See, Lono v. Fenton, 581 F.2d 645 (7th Cir. June 7, 1978) Petitioner Roy M. Belfast, Jr. Born 2/12/77 Reg. No. 76556-004, is a citizen of the United States and meets the standing requirement under 18 U.S.C.S. 4001(a). Statue 5 U.S.C. §702 Administrative Procedures Act, by the legal wrong having been committed and/or continuation of legal wrong against petitioner. Legal wrong, for p purposes of 5 U.S.C.S. §702, means invasion of legally protected right. Pennsylvania R. Co. v. Dillion £1964 App. D.C. 257· as well as Stattue 42 U.S.C. §1983.

Further confinement would be in violation of 18 U.S.C. §241 conspiracy to violate my civil rights, regarding all relevant parties have been given notice of said Constitutional, Statutory and Civil Rights violations, and failure in their official capacity to act as deemed by Congress.

3.  Justice Department, Bureau of Prisons are in violation of 18 U.S.C. § §4001(a), 5U.S.C. §702 Administrative Procedures Act, 14th Amendment, 5th Amendment, 8th Amendment. Petitioner's P.S.R. relating to the facts of conviction (pages 1-19) is void of and fails to state that petitioner conspired with U.S. Nationals or those found in the United States as required by Statute Jurisdictional Section as enacted by Congress (See Attachment) §2340A(b). The B.O.P., Justice Department, lack the statutory authority, enforcement authority, to continue execution of sentence and present custody over the petitioner based upon: Statutory Standing, Statutory violations, Constitutional violations, factual innocence, and legal innocence.

4.   Indictment fails to state that petitioner conspired with U.S. Nationals or "Persons" based upon the Fourteenth Amendment's due process analysis.  The indictment names Co-conspirators B, C, D, who are Non U.S. Citizens, Non-Aliens with no "minimum contact" with the United States, or who's alleged action had a "direct effect" upon the United States of America, who at the time were all Liberian officials (who were) instruments of the State.

Co-conspirator B –Benjamin Yeatin at the time of the indictment was head of the Special Security Services responsible for protecting Liberia's dully elected President.

Co-conspirator C –Frmr President Charles Taylor (Petitioner's Father) at the time of indictment, was Constitutionally Mandated, Democratically elected President of Liberia.

Co-conspirator D –David Compare, at the time of the indictment was Officer of the A.T.U., which was tasked with protecting the dully elected President.

Said allegations in indictment (See: D.E. 257, 11/7/07) are in clear violation of the Foreign Sovereign Immunity Act of 1976.  "Sole basis for obtaining jurisdiction over foreign state in courts of United States is provided by F.S.I.A. of 1976 (28 U.S.C.S. § 1330, § 1602 et seq.) pursuant to Foreign Sovereign Immunity Act. Foreign State is presumtively immune from jurisdiction of U.S. courts; unless specific exception applies, Federal Court tasks subject matter jurisdiction over claim against Foreign State. Saudi Arabia v. Nelson, (1993 U.S.) 123 L.Ed.2d 47, 113 S.Ct. 1471.  Under Section 28 U.S.C.S. § 1330(a), the jurisdictional statute corresponding to the F.S.I.A., Federal District Court's are vested with subject matter jurisdiction if a Foreign State is "not entitled to immunity, either under Sections 1605-1607 of F.S.I.A. or under any applicable international agreement." 28 U.S.C.S. §1330(a).  Conversely, if none of the exceptions to Sovereign Immunity set forth in the F.S.I.A. applies, the district court lacks statutory subject matter jurisdiction, 4 Verlinden, 103 S.Ct. at 1969; see also: Amerada Hess, 109 S.Ct. at 692.  A "Foreign State"...includes a political subdivision of a foreign state or an agency or instrumentality of a foreign state as defined in subsection (b).  A foreign state or it's instrumentality; is not a "person" for the purposes of a constitutional due process analysis, (See: Weltover, 504 U.S. at 619, 112 S.Ct. 2160)("assuming, without deciding, that a foreign state is a "person" for purposes of the due process clause" but citing South Carolina v. Katzenback, 383 U.S. 301, 323-324, 86 S.Ct. 803, 15 L.Ed.2d 769 (finding states of the Union are not "persons" for the purpose of the due process clause.).

A0091980_75-000000

To determine whether the exercise of in personam jurisdiciton is consistant with due process, the defendant normally must have "certain minimum contact" with [the forum] such that the maintainance of the suit does not offend traditional notions of fair play and Justice ("substantial"). Intl. Shoe Co. v. Washington, 326 U.S. 310, 316,  66 S.Ct. 154,  190 L.Ed. 95 (1945). When the court's jurisdiction rests on the presence of the foreign sovereign, however, the court may address the issue independently. See: Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 493 n.20,  103 S.Ct. 1962, 1971 no. 20,  76 L.Ed.2d 81 (1983). See also: Coleman v. Alcolac, Inc., 888 F. Supp 1388, 1400 (S.D.TX. 1995). "The district court must address the issue of sovereign immunity, even if...the foreign state has not even entered an apoearance to assert the immunity defense". As the Supreme Court has explained "the subject-matter-jurisdiction of the lower federal court is determined by Congress in the exact degrees and character which to congress may seem proper for the public good, see: Argentine Republic v. Amerada Hess Shipping Corp., 488 U.S. 428-433, 102 L.Ed.2d 818, 109 S.Ct. 683. F.S.I.A. grants immunity to foreign sovereigns from criminal prosecution, absent an Int'l agreement stating otherwise (See: Keller v. Central Bank of Nigeria, 277 F.3d 811 (6th Cir. Jan 16, 2002).

5.  §2340A(c) was misapplied against petitioner, and in violation of the Int'l agreement Convention Against Torture. The Statute was intended to meet America's treaty obligation, each state has to enforce agreement within it's sovereign borders and it's citizens of that State, not against Foreign Officials against acts, that were alleged in it's own territorial jurisdiction. The indictment states all allegations take place in Liberia a sovereign state.

The Gov't at trial provided no evidence that petitioner conspired with U.S. Nationals or "Persons," that meet the due process clause analysis. Government provided at trial, that Liberian Government was fighting for its existence; As such the victims detention alleged in the indictment was predicated on the arrest of persons, whom the Gov't believed posed a threat to the security of the Nation, making all action under the indictment governmental, in violation of "Act Of State Doctrine."

The "Act Of State Doctrine," which was developed by the Supreme Court on its own authority, as a principle of judicial restraint, essentially to avoid disrespect for foreign states, "to permit the validity of the acts of one sovereign state to be re-examined, and perhaps condemned by the courts of another would very certainly "imperil the amicable relations between governments and vex the peace of nations." (See: Oetjen v. Central Leather Co., 246 U.S. 297, 304,  38 S.Ct. 309, 311,  62 L.Ed. 726 (1918). (Thus the doctrine is related in spirit to the rules of Int'l law that accord to foreign sovereigns large immunity from adjudication in domestic courts, absebt statutory exceptions, by the legislative branch. In Sabbatino, the court said: "That the 'Act Of State Doctrine' is compelled neither by int'l law nor by Constitution but that it has 'constitutional underpinnings,' 376 U.S. at 423, 84 S.Ct. at 937. The court said: that "The act of state doctrine, addressing an 'issue concerned with a basic choice regarding the competence and function of the judiciary, and the National Executive in ordering our relationships with other members of the Int'l Community must be treated exclusively as an aspect of federal Law," 376 U.S. at 425,  84 S.Ct. at 938. II L.Ed.2d at 822. The immunity of a state from the jurisdiction of the courts of another state is an undisputed principle of customary Int'l Law.  in the Schooner Exchange, Chief Justice Marshall said that immunity was rooted in the "perfect equality and absolute independence of sovereign" (See: The Schooner Exchange II U.S. (7 Cranch) 116,  137, 3 L.Ed. 287 (1812).

3

A0091980_76-000000

The : indictment and testimony during trial, establishes clear uncontrovertible facts: 1) Liberia is a Republic and not a territory or annexation of the United States, which was established in 1847, making it a Sovereign State as defined by the courts and Int'l Community. Which means, the actions of its "official/Intrumentalities" of the State, and citizenry only fall under the purview and jurisdiction of the sovereign states court. Absent any exceptions met under the "Act Of State Doctrine and F.S.I.A.," the district court lacks statutory standing and B.O.P., as well as Justice Department lacks statutory authority to enforce, (in violation of 18 U.S.C. §4001(a)).   2) Through testimony at trial it was established that the constitutionally mandated Government at the time of indictment President Charles Taylor had clearly established diplomatic relations with the U.S. Government. 3) As proven by the Government, the liberian Government, dispatched government forces to Lofa County in Liberia, as stated in the trial, to respond to an "act of war" by a group of rebels, against its government and people.  Through the charging instrument handed down by the grand jury, and testimony at trial establishes, 'the proof of "act of state doctrine" is clearly proven, which dictates, a showing be made that "A constitutional Amendment, Statute, Decree, and Proclamations, and in certain circumstances to physical acts, such as occupation of an estate by the State's Armed Forces in application of state policy. Also, an official pronouncement by a foreign government describing a certain act as governmental is ordinarily conclusive evidence of its official character.  It is established fact by the indictment and testimony at trial that co-conspirators B, C, D, were all government officials and instrumentalities of the State, operating in official capacity.

6.  The jury instructions in petitioner's trial, failed to put forth for jury determination on whether co-conspirators B, C, D, were U.S. Nationals or were found in the U.S.A., based upon §2340A(b) jurisdictional section.  The jury instructions contained the term "Persons" (See: page 4, 5 of jury instruction, 10/30/2008, D.E. 580), which requires persons be citizens and resident aliens, for certain due process analysis having certain minimum contacts.  NOTICE IS HEREBY GIVEN to all relevant Justice Department Officials (i.e., Attorney general Eric Holder) failure to controvert all factual averments stated in paragraphs one through six, with sworn affidavit or documentary evidence from the record, will be accepted by said parties above to admittance to said averments.

ALL DONE, DECLARED, AND EXECUTED THIS 9 DAY OF March , 2014 UNDER PENALTY OF PERJURY 28 U.S.C. §1746.

Respectfully Submitted,

/s/ Roy Belfast Jr
Roy M. Belfast, Jr.
Reg. No. 76556-004
U.S.P. Big Sandy
P.O.BOX 2068
Inez, KY 41224
AFFIANT, Pro-Se

4

CERTIFICATE OF NOTARY

I, Roy M. Belfast, Jr., Reg. No. 76556-004, presently appearing before a "NOTARY PUBLIC" hereby state, declare and swear that the factual averments in the foregoing affidavit are true and correct to the best of my knowledge, and that I, Roy M. Belfast, Jr., am indeed the signee of this document. All done, stated, declared and sworn under penalty of perjury, 28 U.S.C. §1746.

Respectfully Submitted,

/s/ _Roy Belfast Jr_

BY: ROY M. BELFAST, JR.
REG. NO. 76556-004
U.S.P. BIG SANDY
P.O. BOX 2068
INEZ, KY 41224
AFFIANT, PRO-SE

NOTARY SEAL

NOTARY SIGNATURE      /Date  4/10/14

My comm exp 4/29/17

1 p. of 1

A0091980_78-000000

Roy M. Belfast, Jr.
Reg. No. 76556-004
U.S.P. Big Sandy
P.O.BOX 2068
Inez, KY 41224


ATTN:  Wilfredo Ferrer, U.S. Attorney
Southern District of Florida



RE:   USA V. ROY BELFAST, JR
      CRIM. CASE NO. 1:06-cr-20758-CMA-1


Dear Mr. Ferrer:

      My name is Roy M. Belfast, Jr., the Defendant in the above referenced
cause.  I was prosecuted in the Southern District of Florida back in 2008,
my case is one of first instance, under Title 18 U.S.C. §§2340(A)(C), 2340(A),
carried out under your predessesor Frmr. U.S.A. Alex Acosta executed under
the following attorneys:  Christopher Graveline Formerly of the National
Security Division, A.U.S.A.'s of the Southern District of Florida Karen Rochlin,
and Caroline Heckmiller.

      I write you based upon two facts  1) You are the Lead Authority of all
cases with the Southern District of Florida, with two of the Lawyers falling
under your supervisory authority,  2) Your inherent authority to review,
investigate, (as well as other powers afforded by the Justice Department
and Congress) regarding case's within your District, inconjunction with your
Statutory Fudiciary duties, not to mention moral obligation to report crimes
once discovered to be true and correct.

      At present my conviction is in violation of Title 5 U.S.C. §702, and Title
18 §§ 4001(A), 4042, at minimum; Petitioner asserts far worse has taken place,
violations of Title 18 U.S.C. §§§ 241, 1001, 1623, fraud by ommission and/or
misrepresentation in Agency documents (i.e. Prosecution Memorandum, Case
Initiation Report, Supporting Affidavits) and/or Grand Jury.

      Sir, your prosecutors along with other co-conspirators charged me under
a criminal statute, that they knew prior to a grand jury indictment,
lacked "Statutory Standing."  Their superior knowledge of the facts or the
case, before the case initiation underscores, intent, their prior knowledge
of the Constitution, Laws, and Treatises of the U.S.A., provide them the unique
ability to mask their crimes, thru-out critical stages of the criminal proceedings.
The collusion and criminal action is far reaching, but clearly evident, the
District Court of Cecilia Altonaga, intelligibly knew the indictment upon it's
face deprived her Courtrrom of ARTICLE III, SECTION 2, CLAUSE 1 (Subject-Matter-
Jurisdiction).

A0091980_79-000000

The facts proving prosecutors lacked statutroy standing is contained in Affidavit/Factual Averments.  Mr. Ferrer, I officially request that upon confirmation of this NOTICE/LETTER, and review of case, all crimes be reported based upon your moral and ethical duties, but more importantly, according to Statute 28 U.S.C. § 535(b), failure to do so would be a violation of 18 U.S.C. §§ 2 and 4.

This letter will be presented in any future investigation to any oversight body in the Executive Branch, and/or Congressional Judiciary Committee in House and Senate or Sub-Committee's, as well as any investigative News Agencies. Petitioner further requests acknowledgement of said letter and course of action your office will take based upon the information, and allegations contained in letter, within thirty (30) days of receipt.  Petitioner further requests that nay mail be sent via official legal mail process [Labeled Legal-Confidential Mial Open In The Presence Of Inmate], and which requires inmate's signature upon receipt of letter from the Government.

Thank you for your attention into this very important matter.

Sincerely Yours,

/s/ Roy Belfast

Roy M. Belfast, Jr.

A0091980_80-000000

---

## 169 LED2D 445,   GALL v UNITED STATES

### BRIAN MICHAEL GALL, Petitioner
*vs.*
### UNITED STATES

## 552 US 38, 128 S Ct 586, 169 L Ed 2d 445, 2007 US LEXIS 13083

[No. 06-7949]

**Argued October 2, 2007.**

**Decided December 10, 2007.**

### DECISION

Federal Courts of Appeals held required to review all federal criminal sentences-whether inside, just outside, or significantly outside Federal Sentencing Guidelines (18 U.S.C.S. Appx.) range-under deferential abuse-of-discretion standard.

*Prior history:* 446 F.3d 884, 2006 U.S. App. LEXIS 11758

### SUMMARY

*Procedural posture:* Petitioner, an individual who pled guilty to conspiracy to distribute a mixture and substance containing methylenedioxymethamphetamine (ecstasy), sought certiorari review of a judgment from the United States Court of Appeals for the Eighth Circuit, which reversed and remanded the district court's decision to sentence petitioner to probation for a term of 36 months rather than imprisonment.

*Overview:* Petitioner joined an ongoing enterprise distributing ecstasy while in college, but he withdrew from the conspiracy after seven months and ceased all drug activity. Three and one-half years after withdrawing from the conspiracy, petitioner pled guilty to his participation. The court of appeals characterized the difference between the sentence of probation and the bottom of petitioner's advisory Guidelines range of 30 months as "extraordinary," and it held that the

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_81-000000

variance was not supported by extraordinary circumstances.  Although the Court agreed that the court of appeals could take the degree of variance into account and consider the extent of a deviation from the Guidelines, the Court held that the court of appeals erred in requiring "extraordinary" circumstances.  The court of appeals' rule requiring "proportional" justifications for departures was not consistent with Booker.  Under the deferential abuse-of-discretion standard that applied to review of sentencing decisions, the Court found that the court of appeals failed to give due deference to the district court's reasoned and reasonable decision that the 18 U.S.C.S. § 3553(a) factors justified the sentence of probation.<*pg. 446>

*Outcome:*  The Court reversed the judgment of the court of appeals.  7-2 decision; 2 concurrences; 2 dissents.

## RESEARCH REFERENCES

18 U.S.C.S. Appx., Sentencing Guidelines for the United States Courts

26 Moore's Federal Practice §§ 632.20, 632.40 (Matthew Bender 3d ed.)

L Ed Digest, Appeal § 1379

L Ed Index, Sentencing Guidelines

## ANNOTATION REFERENCES

Rule of Apprendi v. New Jersey (2000) 530 U.S. 466, 147 L. Ed. 2d 435, 120 S. Ct. 2348, and its progeny, as to proof of facts necessary to support criminal sentence-Supreme Court cases. 160 L. Ed. 2d 1163.

## HEADNOTES

Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Sentence - review - abuse of discretion**

### *L Ed Digest:  Appeal § 1379*

1. While the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, appellate courts must review all sentences-whether inside, just outside, or significantly outside the Guidelines range-under a deferential abuse-of-discretion standard.  (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

2LED2D                                                 2

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_82-000000

**Federal Sentencing Guidelines – advisory nature – review – abuse of discretion**

*L Ed Digest:  Appeal § 1379; Criminal Law § 69*

2. In Booker, the United States Supreme Court invalidates both the statutory provision, 18 U.S.C.S. § 3553(b)(1), which made the Sentencing Guidelines mandatory, and 18 U.S.C.S. § 3742(e), which directed appellate courts to apply a de novo standard of review to departures from the Guidelines.  As a result of the Supreme Court's decision, the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." The Supreme Court's explanation of "reasonableness" review in the Booker opinion makes it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions.  It is also clear that a district judge must give serious consideration to the extent of any departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications.  For even though the Guidelines are advisory rather than mandatory, they are, as the Supreme Court pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Reasonableness of sentence – appellate review**

*L Ed Digest:  Appeal § 1379*

3. In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may take the degree of variance into account and consider the extent of a deviation from the Guidelines.  The United States Supreme Court rejects, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range.  The Supreme Court also rejects the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence. The rejected approaches come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range.  The mathematical approach also suffers from infirmities of application.  (Stevens, J., joined by Roberts, <*pg. 447> Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Probation – conditions**

*L Ed Digest:  Criminal Law § 97*

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_83-000000

4. While custodial sentences are qualitatively more severe than probationary sentences of equivalent terms, offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty. Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. U.S. Sentencing Guidelines Manual § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Sentence - review - abuse of discretion**

### L Ed Digest:  Appeal § 1379

5. Both the exceptional circumstances requirement for justifying a sentence outside the Guidelines range and the rigid mathematical formulation that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence reflect a practice-common among courts that have adopted "proportional review"-of applying a heightened standard of review to sentences outside the Guidelines range. This is inconsistent with the rule that the abuse-of-discretion standard of review applies to appellate review of all sentencing decisions-whether inside or outside the Guidelines range. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Federal sentencing - proceedings - factors**

### L Ed Digest:  Criminal Law § 69

6. As the United States Supreme Court explained in Rita, a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district judge should then consider all of the 18 U.S.C.S. § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, the district judge may not presume that the Guidelines range is reasonable. He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. The Supreme Court finds it uncontroversial that a major departure should

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_84-000000

be supported by a more significant justification than a minor one. After settling on the appropriate sentence, the district judge must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)<*pg. 448>

**Federal sentencing - factors**

### *L Ed Digest: Criminal Law § 69*

7. 18 U.S.C.S. § 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider the nature and circumstances of the offense and the history and characteristics of the defendant. 18 U.S.C.S. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including the need for the sentence imposed: (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner. 18 U.S.C.S. § 3553(a)(2). (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Federal sentencing - factors**

### *L Ed Digest: Criminal Law § 69*

8. 18 U.S.C.S. § 3553(a) lists seven factors that a sentencing court must consider. The third factor pertains to the kinds of sentences available, 18 U.S.C.S. § 3553(a)(3), the fourth to the Sentencing Guidelines, the fifth to any relevant policy statement issued by the Sentencing Commission, the sixth to the need to avoid unwarranted sentence disparities, 18 U.S.C.S. § 3553(a)(6), and the seventh to the need to provide restitution to any victim, 18 U.S.C.S § 3553(a)(7). Preceding this list is a general directive to impose a sentence sufficient, but not greater than necessary, to comply with the purposes of sentencing described in the second factor. 18 U.S.C.S. § 3553(a). The fact that 18 U.S.C.S. § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Federal sentence - review - abuse of discretion**

### *L Ed Digest: Appeal § 1379*

2LED2D                                          5

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

9. Regardless of whether a sentence imposed is inside or outside the Guidelines range, an appellate court must review the sentence under an abuse-of-discretion standard. It must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the 18 U.S.C.S. § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Federal sentence - review - abuse of discretion - presumptions**

*L Ed Digest: Appeal § 1289, 1379*

10. Assuming that a district court's sentencing decision is procedurally sound, an appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the appellate court will take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence <\*pg. 449> is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. But if the sentence is outside the Guidelines range, the appellate court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the 18 U.S.C.S. § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**Federal sentence - review - abuse of discretion**

*L Ed Digest: Appeal § 1379*

11. It has been uniform and constant in the federal judicial tradition for a sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue. The uniqueness of the individual case, however, does not change the deferential abuse-of-discretion standard of review that applies to all sentencing decisions. (Stevens, J., joined by Roberts, Ch. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ.)

**SYLLABUS**

2LED2D                                        6

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_86-000000

Petitioner Gall joined an ongoing enterprise distributing the controlled substance "ecstasy" while in college, but withdrew from the conspiracy after seven months, has sold no illegal drugs since, and has used no illegal <*pg. 450> drugs and worked steadily since graduation. Three and half years after withdrawing from the conspiracy, Gall pleaded guilty to his participation. A presentence report recommended a sentence of 30 to 37 months in prison, but the District Court sentenced Gall to 36 months' probation, finding that probation reflected the seriousness of his offense and that imprisonment was unnecessary because his voluntary withdrawal from the conspiracy and postoffense conduct showed that he would not return to criminal behavior and was not a danger to society. The Eighth Circuit reversed on the ground that a sentence outside the Federal Sentencing Guidelines range must be-and was not in this case-supported by extraordinary circumstances.

*Held:*

1. While the extent of the difference between a particular sentence and the recommended Guidelines range is relevant, courts of appeals must review all sentences-whether inside, just outside, or significantly outside the Guidelines range-under a deferential abuse-of-discretion standard.

(a) Because the Guidelines are now advisory, appellate review of sentencing decisions is limited to determining whether they are "reasonable," United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621, and an abuse-of-discretion standard applies to appellate review of sentencing decisions. A district judge must consider the extent of any departure from the Guidelines and must explain the appropriateness of an unusually lenient or harsh sentence with sufficient justifications. An appellate court may take the degree of variance into account and consider the extent of a deviation from the Guidelines, but it may not require "extraordinary" circumstances or employ a rigid mathematical formula using a departure's percentage as the standard for determining the strength of the justification required for a specific sentence. Such approaches come too close to creating an impermissible unreasonableness presumption for sentences outside the Guidelines range. The mathematical approach also suffers from infirmities of application. And both approaches reflect a practice of applying a heightened standard of review to sentences outside the Guidelines range, which is inconsistent with the rule that the abuse-of-discretion standard applies to appellate review of all sentencing decisions-whether inside or outside that range.

(b) A district court should begin by correctly calculating the applicable Guidelines range. The Guidelines are the starting point and initial benchmark but are not the only consideration. After permitting both parties to argue for a particular sentence, the judge should consider all of 18

2LED2D                                    7

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_87-000000

U.S.C. § 3353(a)'s factors to determine whether they support either party's proposal. He may not presume that the Guidelines range is reasonable but must make an individualized assessment based on the facts presented. If he decides on an outside-the-Guidelines sentence, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of variation. He must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing. In reviewing the sentence, the appellate court must first ensure that the district court made no significant procedural errors and then consider the sentence's substantive <*pg. 451> reasonableness under an abuse-of-discretion standard, taking into account the totality of the circumstances, including the extent of a variance from the Guidelines range, but must give due deference to the district court's decision that the § 3553(a) factors justify the variance. That the appellate court might have reasonably reached a different conclusion does not justify reversal.

2. On abuse-of-discretion review, the Eighth Circuit failed to give due deference to the District Court's reasoned and reasonable sentencing decision. Since the District Court committed no procedural error, the only question for the Circuit was whether the sentence was reasonable, i.e., whether the District Judge abused his discretion in determining that the § 3553(a) factors supported the sentence and justified a substantial deviation from the Guidelines range. The Circuit gave virtually no deference to the District Court's decision that the variance was justified. The Circuit clearly disagreed with the District Court's decision, but it was not for the Circuit to decide de novo whether the justification for a variance is sufficient or the sentence reasonable.

446 F.3d 884, reversed.

Stevens, J., delivered the opinion of the Court, in which Roberts, C. J., and Scalia, Kennedy, Souter, Ginsburg, and Breyer, JJ., joined. Scalia, J., and Souter, J., filed concurring opinions. Thomas, J., and Alito, J., filed dissenting opinions.

## APPEARANCES OF COUNSEL ARGUING CASE

*Jeffrey T. Green* argued the cause for petitioner.

*Michael R. Dreeben* argued the cause for respondent.

## OPINION

Justice *Stevens* delivered the opinion of the Court.

2LED2D                                                   8

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_88-000000

In two cases argued on the same day last Term we considered the standard that courts of appeals should apply when reviewing the reasonableness of sentences imposed by district judges. The first, Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007), involved a sentence within the range recommended by the Federal Sentencing Guidelines; we held that when a district judge's discretionary decision in a particular case accords with the sentence the United States Sentencing Commission deems appropriate "in the mine run of cases," the court of appeals may presume that the sentence is reasonable. Id., at _, 127 S. Ct. 2456, 168 L. Ed. 2d 203.

The second case, Claiborne v. United States, involved a sentence below the range recommended by the Guidelines, and raised the converse question whether a court of appeals may apply a "proportionality test," and require that a sentence that constitutes a substantial variance from the Guidelines be justified by extraordinary circumstances. See Claiborne v. United States, 549 U.S. 1016, 127 S. Ct. 551, 166 L. Ed. 2d 406 (2006). We did not have the opportunity to answer this question because the case was mooted by Claiborne's untimely death. Claiborne v. United States, 551 U.S. 87, 127 S. Ct. 2245, 167 L. Ed. 2d 1080 (2007) (per curiam). We granted certiorari in the case before us today in order to reach that question, left unanswered last Term. 551 U.S. 1113, 127 S. Ct. 2933, 168 L. Ed. 2d 261 (2007). We now hold that, *[1]* while the extent of the difference between a particular sentence and the recommended Guidelines range is surely relevant, courts of appeals must review all sentences-whether inside, just outside, or significantly <*pg. 452> outside the Guidelines range-under a deferential abuse-of-discretion standard. We also hold that the sentence imposed by the experienced District Judge in this case was reasonable.

I

In February or March 2000, petitioner Brian Gall, a second-year college student at the University of Iowa, was invited by Luke Rinderknecht to join an ongoing enterprise distributing a controlled substance popularly known as "ecstasy."[1]   Gall-who was then a user of ecstasy, cocaine, and marijuana-accepted the invitation. During the ensuing seven months, Gall delivered ecstasy pills, which he received from Rinderknecht, to other conspirators, who then sold them to consumers. He netted over $30,000.

A month or two after joining the conspiracy, Gall stopped using ecstasy. A few months after that, in September 2000, he advised Rinderknecht and other co-conspirators that he was withdrawing from the conspiracy. He has not sold illegal drugs of any kind since. He has, in the words of the District Court, "self-rehabilitated." App. 75. He graduated from the University of Iowa in 2002, and moved first to Arizona, where he obtained a job in the construction industry,

2LED2D                                    9

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

and later to Colorado, where he earned $18 per hour as a master carpenter. He has not used any illegal drugs since graduating from college.

After Gall moved to Arizona, he was approached by federal law enforcement agents who questioned him about his involvement in the ecstasy distribution conspiracy. Gall admitted his limited participation in the distribution of ecstasy, and the agents took no further action at that time. On April 28, 2004-approximately a year and a half after this initial interview, and three and a half years after Gall withdrew from the conspiracy-an indictment was returned in the Southern District of Iowa charging him and seven other defendants with participating in a conspiracy to distribute ecstasy, cocaine, and marijuana, that began in or about May 1996 and continued through October 30, 2002. The Government has never questioned the truthfulness of any of Gall's earlier statements or contended that he played any role in, or had any knowledge of, other aspects of the conspiracy described in the indictment. When he received notice of the indictment, Gall moved back to Iowa and surrendered to the authorities. While free on his own recognizance, Gall started his own business in the construction industry, primarily engaged in subcontracting for the installation of windows and doors. In his first year, his profits were over $2,000 per month.

Gall entered into a plea agreement with the Government, stipulating that he was "responsible for, but did not necessarily distribute himself, at least 2,500 grams of [ecstasy], or the equivalent of at least 87.5 kilograms of marijuana." Id., at 25. In the agreement, the Government acknowledged that by "on or about September of 2000," Gall had communicated his intent to stop distributing ecstasy to Rinderknecht and other members of the conspiracy. Ibid. The agreement further provided that recent changes in the Guidelines that enhanced the <*pg. 453> recommended punishment for distributing ecstasy were not applicable to Gall because he had withdrawn from the conspiracy prior to the effective date of those changes.

In her presentence report, the probation officer concluded that Gall had no significant criminal history; that he was not an organizer, leader, or manager; and that his offense did not involve the use of any weapons. The report stated that Gall had truthfully provided the Government with all of the evidence he had concerning the alleged offenses, but that his evidence was not useful because he provided no new information to the agents. The report also described Gall's substantial use of drugs prior to his offense and the absence of any such use in recent years. The report recommended a sentencing range of 30 to 37 months of imprisonment.

The record of the sentencing hearing held on May 27, 2005, includes a "small flood" of letters from Gall's parents and other relatives, his fiance, neighbors, and representatives of firms doing business with him, uniformly praising his character and work ethic. The transcript includes the testimony of several witnesses and the District Judge's colloquy with the Assistant United States Attorney (AUSA) and with Gall. The AUSA did not contest any of the evidence concerning

2LED2D                                    10

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Gall's law-abiding life during the preceding five years, but urged that "the Guidelines are appropriate and should be followed," and requested that the court impose a prison sentence within the Guidelines range. Id., at 93. He mentioned that two of Gall's co-conspirators had been sentenced to 30 and 35 months, respectively, but upon further questioning by the District Court, he acknowledged that neither of them had voluntarily withdrawn from the conspiracy.

The District Judge sentenced Gall to probation for a term of 36 months. In addition to making a lengthy statement on the record, the judge filed a detailed sentencing memorandum explaining his decision, and provided the following statement of reasons in his written judgment:

"The Court determined that, considering all the factors under 18 U.S.C. 3553(a), the Defendant's explicit withdrawal from the conspiracy almost four years before the filing of the Indictment, the Defendant's post-offense conduct, especially obtaining a college degree and the start of his own successful business, the support of family and friends, lack of criminal history, and his age at the time of the offense conduct, all warrant the sentence imposed, which was sufficient, but not greater than necessary to serve the purposes of sentencing." Id., at 117.

At the end of both the sentencing hearing and the sentencing memorandum, the District Judge reminded Gall that probation, rather than "an act of leniency," is a "substantial restriction of freedom." Id., at 99, 125. In the memorandum, he emphasized:

"[Gall] will have to comply with strict reporting conditions along with a three-year regime of alcohol and drug testing. He will not be able to change or make decisions about significant circumstances in his life, such as where to live or work, which are prized liberty interests, without first seeking authorization from his Probation Officer or, perhaps, even the Court. Of course, the Defendant always faces the harsh consequences that await<*pg. 454> if he violates the conditions of his probationary term." Id., at 125.

Finally, the District Judge explained why he had concluded that the sentence of probation reflected the seriousness of Gall's offense and that no term of imprisonment was necessary:

"Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who, the Court has found, understands the consequences of his criminal conduct and is doing everything in his power to forge a new life. The Defendant's post-offense conduct indicates neither that he will return to criminal behavior nor that the Defendant is a danger to society. In fact, the Defendant's post-offense conduct was not motivated by a desire to please the Court or any other governmental agency, but was the pre-Indictment product of the Defendant's own desire to lead a better life." Id., at 125-126.

## II

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_91-000000

The Court of Appeals reversed and remanded for resentencing.  Relying on its earlier opinion in United States v. Claiborne, 439 F.3d 479 (CA8 2006), it held that a sentence outside of the Guidelines range must be supported by a justification that """is proportional to the extent of the difference between the advisory range and the sentence imposed.'"''  446 F.3d 884, 889 (CA8 2006) (quoting Claiborne, 439 F.3d, at 481, in turn quoting United States v. Johnson, 427 F.3d 423, 426-427 (CA7 2005)).  Characterizing the difference between a sentence of probation and the bottom of Gall's advisory Guidelines range of 30 months as "extraordinary" because it amounted to "a 100% downward variance," 446 F.3d, at 889, the Court of Appeals held that such a variance must be-and here was not-supported by extraordinary circumstances.

Rather than making an attempt to quantify the value of the justifications provided by the District Judge, the Court of Appeals identified what it regarded as five separate errors in the District Judge's reasoning:   (1) He gave "too much weight to Gall's withdrawal from the conspiracy"; (2) given that Gall was 21 at the time of his offense, the District Judge erroneously gave "significant weight" to studies showing impetuous behavior by persons under the age of 18; (3) he did not "properly weigh" the seriousness of Gall's offense; (4) he failed to consider whether a sentence of probation would result in "unwarranted" disparities; and (5) he placed "too much emphasis on Gall's post-offense rehabilitation." Id., at 889-890.  As we shall explain, we are not persuaded that these factors, whether viewed separately or in the aggregate, are sufficient to support the conclusion that the District Judge abused his discretion.  As a preface to our discussion of these particulars, however, we shall explain why the Court of Appeals' rule requiring "proportional" justifications for departures from the Guidelines range is not consistent with our remedial opinion in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005).

## III

[2]  In Booker we invalidated both the statutory provision, 18 U.S.C. § 3553(b)(1) (2000 ed., Supp. IV), which made the Sentencing Guidelines <*pg. 455> mandatory, and § 3742(e) (2000 ed. and Supp. IV), which directed appellate courts to apply a de novo standard of review to departures from the Guidelines.  As a result of our decision, the Guidelines are now advisory, and appellate review of sentencing decisions is limited to determining whether they are "reasonable." Our explanation of "reasonableness" review in the Booker opinion made it pellucidly clear that the familiar abuse-of-discretion standard of review now applies to appellate review of sentencing decisions.  See 543 U.S., at 260-262, 125 S. Ct. 738, 160 L. Ed. 2d 621; see also Rita, 551 U.S., at __, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (Stevens, J., concurring).

It is also clear that a district judge must give serious consideration to the extent of any

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_92-000000

departure from the Guidelines and must explain his conclusion that an unusually lenient or an unusually harsh sentence is appropriate in a particular case with sufficient justifications. For even though the Guidelines are advisory rather than mandatory, they are, as we pointed out in Rita, the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions.[2]  Id., at _, 127 S. Ct. 2456, 168 L. Ed. 2d 203.

[3]  In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines.  We reject, however, an appellate rule that requires "extraordinary" circumstances to justify a sentence outside the Guidelines range.  We also reject the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence.

As an initial matter, the approaches we reject come too close to creating an impermissible presumption of unreasonableness for sentences outside the Guidelines range.  See id., at 127 S. Ct. 2456, 168 L. Ed. 2d 203 ("The fact that we permit courts of appeals to adopt a presumption of reasonableness does not mean that courts may adopt a presumption of unreasonableness").[3]  Even the Government has acknowledged that such a presumption would not be consistent with Booker.  See Brief for United <*pg. 456> States in Rita v. United States, O. T. 2006, No. 06-5754, pp 34-35.

The mathematical approach also suffers from infirmities of application.  On one side of the equation, deviations from the Guidelines range will always appear more extreme-in percentage terms-when the range itself is low, and a sentence of probation will always be a 100% departure regardless of whether the Guidelines range is 1 month or 100 years.  Moreover, quantifying the variance as a certain percentage of the maximum, minimum, or median prison sentence recommended by the Guidelines gives no weight to the "substantial restriction of freedom" involved in a term of supervised release or probation.  App. 95.

We recognize that [4] custodial sentences are qualitatively more severe than probationary sentences of equivalent terms.  Offenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty.  See United States v. Knights, 534 U.S. 112, 119, 122 S. Ct. 587, 151 L. Ed. 2d 497 (2001) ("Inherent in the very nature of probation is that probationers 'do not enjoy the absolute liberty to which every citizen is entitled'" (quoting Griffin v. Wisconsin, 483 U.S. 868, 874, 107 S. Ct. 3164, 97 L. Ed. 2d 709 (1987))).[4]  Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court.  They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking.  USSG § 5B1.3.  Most

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_93-000000

probationers are also subject to individual "special conditions" imposed by the court.  Gall, for instance, may not patronize any establishment that derives more than 50% of its revenue from the sale of alcohol, and must submit to random drug tests as directed by his probation officer.  App. 109.

On the other side of the equation, the mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications.  Does withdrawal from a conspiracy justify more or less than, say, a 30% reduction?  Does it matter that the withdrawal occurred several years ago?  Is it relevant that the withdrawal was motivated by a decision to discontinue the use of drugs and to lead a better life?  What percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him?  The formula is a classic example of attempting to measure an inventory of apples by counting oranges.[5]

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group  All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_94-000000

ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the <*pg. 458> § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence-including an explanation for any deviation from the Guidelines range. *[10]* Assuming that the district court's sentencing decision is procedurally sound, the appellate court should then consider the substantive reasonableness of the sentence imposed under an abuse-of-discretion standard. When conducting this review, the court will, of course, take into account the totality of the circumstances, including the extent of any variance from the Guidelines range. If the sentence is within the Guidelines range, the appellate court may, but is not required to, apply a presumption of reasonableness. Id., at _, 127 S. Ct. 2456, 168 L. Ed. 2d 203. But if the sentence is outside the Guidelines range, the court may not apply a presumption of unreasonableness. It may consider the extent of the deviation, but must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. The fact that the appellate court might reasonably have concluded that a different sentence was appropriate is insufficient to justify reversal of the district court.

Practical considerations also underlie this legal principle. "The sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record." Brief for Federal Public and Community Defenders et al. as Amici Curiae 16. "The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court." Rita, 551 U.S., at _, 127 S. Ct. 2456, 168 L. Ed. 2d 203. Moreover, "[d]istrict courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do." Koon v. United States, 518 U.S. 81, 98, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (1996).[7]

[11] "It has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Id., at 113, 116 S. Ct. 2035, 135 L. Ed. 2d 392.[8]   The uniqueness of the individual case, however, does not change the deferential abuse-of-discretion <*pg. 459> standard of review that applies to all sentencing decisions. As we shall now explain, the opinion of the Court of Appeals in this case does not reflect the requisite deference and does not support the conclusion that the District Court abused its discretion.

## IV

As an initial matter, we note that the District Judge committed no significant procedural error.

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

He correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the § 3553(a) factors, and thoroughly documented his reasoning. The Court of Appeals found that the District Judge erred in failing to give proper weight to the seriousness of the offense, as required by § 3553(a)(2)(A), and failing to consider whether a sentence of probation would create unwarranted disparities, as required by § 3553(a)(6). We disagree.

Section 3553(a)(2)(A) requires judges to consider "the need for the sentence imposed . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense." The Court of Appeals concluded that "the district court did not properly weigh the seriousness of Gall's offense" because it "ignored the serious health risks ecstasy poses." 446 F.3d, at 890. Contrary to the Court of Appeals' conclusion, the District Judge plainly did consider the seriousness of the offense. See, e.g., App. 99 ("The Court, however, is bound to impose a sentence that reflects the seriousness of joining a conspiracy to distribute MDMA or ecstasy"); id., at 122.[9] It is true that the District Judge did not make specific reference to the (unquestionably significant) health risks posed by ecstasy, but the prosecutor did not raise ecstasy's effects at the sentencing hearing. Had the prosecutor raised the issue, specific discussion of the point might have been in order, but it was not incumbent on the District Judge to raise every conceivably relevant issue on his own initiative.

The Government's legitimate concern that a lenient sentence for a serious offense threatens to promote disrespect for the law is at least to some extent offset by the fact that seven of the eight defendants in this case have been sentenced to significant prison terms. Moreover, the unique facts of Gall's situation provide support for the District Judge's conclusion that, in Gall's case, "a sentence of imprisonment may work to promote not respect, but derision, of <*pg. 460> the law if the law is viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." Id., at 126.

Section 3553(a)(6) requires judges to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." The Court of Appeals stated that "the record does not show that the district court considered whether a sentence of probation would result in unwarranted disparities." 446 F.3d, at 890. As with the seriousness of the offense conduct, avoidance of unwarranted disparities was clearly considered by the Sentencing Commission when setting the Guidelines ranges. Since the District Judge correctly calculated and carefully reviewed the Guidelines range, he necessarily gave significant weight and consideration to the need to avoid unwarranted disparities.

Moreover, as we understand the colloquy between the District Judge and the AUSA, it seems that the judge gave specific attention to the issue of disparity when he inquired about the

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_96-000000

sentences already imposed by a different judge on two of Gall's codefendants. The AUSA advised the District Judge that defendant Harbison had received a 30-month sentence and that Gooding had received 35 months. The following colloquy then occurred:

"THE COURT: . . . You probably know more about this than anybody. How long did those two stay in the conspiracy, and did they voluntarily withdraw?

"MR GRIESS: They did not.

"THE COURT: They did not?

"MR. GRIESS: They did not voluntarily withdraw. And they were in the conspiracy, I think, for a shorter period of time, but at the very end.

"THE COURT: Okay. Thank you.

"MR. GRIESS: A significant difference there, Your Honor, is that they were in the conspiracy after the guidelines changed and, therefore, were sentenced at a much higher level because of that." App. 88.

A little later Mr. Griess stated:  "The last thing I want to talk about goes to sentencing disparity. . . .  Obviously, the Court is cognizant of that and wants to avoid any unwarranted sentencing disparities." Id., at 89. He then discussed at some length the sentence of 36 months imposed on another codefendant, Jarod Yoder, whose participation in the conspiracy was roughly comparable to Gall's. Griess voluntarily acknowledged three differences between Yoder and Gall: Yoder was in the conspiracy at its end and therefore was sentenced under the more severe Guidelines, he had a more serious criminal history, and he did not withdraw from the conspiracy.

From these facts, it is perfectly clear that the District Judge considered the need to avoid unwarranted disparities, but also considered the need to avoid unwarranted similarities among other co-conspirators who were not similarly situated. The District Judge regarded Gall's voluntary withdrawal as a reasonable basis for giving him a less severe sentence than the three codefendants discussed with the AUSA, who neither withdrew from the conspiracy nor rehabilitated themselves as Gall had done. We also note that neither the <*pg. 461> Court of Appeals nor the Government has called our attention to a comparable defendant who received a more severe sentence.

Since the District Court committed no procedural error, the only question for the Court of Appeals was whether the sentence was reasonable-i.e., whether the District Judge abused his discretion in determining that the § 3553(a) factors supported a sentence of probation and justified a substantial deviation from the Guidelines range. As we shall now explain, the sentence

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_97-000000

was reasonable.   The Court of Appeals' decision to the contrary was incorrect and failed to demonstrate the requisite deference to the District Judge's decision.

V

The Court of Appeals gave virtually no deference to the District Court's decision that the § 3553(a) factors justified a significant variance in this case.   Although the Court of Appeals correctly stated that the appropriate standard of review was abuse of discretion, it engaged in an analysis that more closely resembled de novo review of the facts presented and determined that, in its view, the degree of variance was not warranted.

The Court of Appeals thought that the District Court "gave too much weight to Gall's withdrawal from the conspiracy because the court failed to acknowledge the significant benefit Gall received from being subject to the 1999 Guidelines."[10]   446 F.3d, at 889.   This criticism is flawed in that it ignores the critical relevance of Gall's voluntary withdrawal, a circumstance that distinguished his conduct not only from that of all his codefendants, but from the vast majority of defendants convicted of conspiracy in federal court.   The District Court quite reasonably attached great weight to the fact that Gall voluntarily withdrew from the conspiracy after deciding, on his own initiative, to change his life.   This lends strong support to the District Court's conclusion that Gall is not going to return to criminal behavior and is not a danger to society.   See 18 U.S.C. §§ 3553(a)(2)(B), (C).   Compared to a case where the offender's rehabilitation occurred after he was charged with a crime, the District Court here had greater justification for believing Gall's turnaround was genuine, as distinct from a transparent attempt to build a mitigation case.

The Court of Appeals thought the District Judge "gave significant weight to an improper factor" when he compared Gall's sale of ecstasy when he was a 21-year-old adult to the "impetuous and ill-considered" actions of persons under the age of 18.   446 F.3d, at 890.   The appellate court correctly observed that the studies cited by the District Judge do not explain how Gall's "specific behavior in the instant case was impetuous or ill-considered."   Ibid.

In that portion of his sentencing memorandum, however, the judge was discussing the "character of the defendant," not the nature of his offense.   App. 122.   He noted that Gall's criminal history included a ticket for underage drinking when he was 18 years old and possession of marijuana that was contemporaneous with his offense in this case.   In summary, the District Judge observed that all of <*pg. 462> Gall's criminal history "including the present offense, occurred when he was twenty-one-years old or younger" and appeared "to stem from his addictions to drugs and alcohol."   Id., at 123.   The District Judge appended a long footnote to his discussion of Gall's immaturity.   The footnote includes an excerpt from our opinion in Roper v. Simmons, 543 U.S. 551, 569, 125 S. Ct. 1183, 161 L. Ed. 2d 1 (2005), which quotes a study

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_98-000000

stating that a lack of maturity and an undeveloped sense of responsibility are qualities that "'often result in impetuous and ill-considered actions.'" The District Judge clearly stated the relevance of these studies in the opening and closing sentences of the footnote:

"Immaturity at the time of the offense conduct is not an inconsequential consideration. Recent studies on the development of the human brain conclude that human brain development may not become complete until the age of twenty-five. . . . [T]he recent [National Institute of Health] report confirms that there is no bold line demarcating at what age a person reaches full maturity. While age does not excuse behavior, a sentencing court should account for age when inquiring into the conduct of a defendant." App. 123, n 2.

Given the dramatic contrast between Gall's behavior before he joined the conspiracy and his conduct after withdrawing, it was not unreasonable for the District Judge to view Gall's immaturity at the time of the offense as a mitigating factor, and his later behavior as a sign that he had matured and would not engage in such impetuous and ill-considered conduct in the future. Indeed, his consideration of that factor finds support in our cases. See, e.g., Johnson v. Texas, 509 U.S. 350, 367, 113 S. Ct. 2658, 125 L. Ed. 2d 290 (1993) (holding that a jury was free to consider a 19-year-old defendant's youth when determining whether there was a probability that he would continue to commit violent acts in the future and stating that "'youth is more than a chronological fact. It is a time and condition of life when a person may be most susceptible to influence and to psychological damage'" (quoting Eddings v. Oklahoma, 455 U.S. 104, 115, 102 S. Ct. 869, 71 L. Ed. 2d 1 (1982))).

Finally, the Court of Appeals thought that, even if Gall's rehabilitation was dramatic and permanent, a sentence of probation for participation as a middleman in a conspiracy distributing 10,000 pills of ecstasy "lies outside the range of choice dictated by the facts of the case." 446 F.3d, at 890. If the Guidelines were still mandatory, and assuming the facts did not justify a Guidelines-based downward departure, this would provide a sufficient basis for setting aside Gall's sentence because the Guidelines state that probation alone is not an appropriate sentence for comparable offenses.[11]  But the Guidelines are not mandatory, and thus the "range of choice dictated by the facts of the case" is significantly broadened. Moreover, the Guidelines are only one of the factors to consider when imposing sentence, and § 3553(a)(3) directs the judge to consider sentences other than imprisonment.

We also note that the Government <*pg. 463> did not argue below, and has not argued here, that a sentence of probation could never be imposed for a crime identical to Gall's. Indeed, it acknowledged that probation could be permissible if the record contained different-but in our view, no more compelling-mitigating evidence. Tr. of Oral Arg. 37-38 (stating that probation could be an appropriate sentence, given the exact same offense, if "there are compelling family

2LED2D                                    19

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 1:20-cv-20385-CMA   Document 7   Entered on FLSD Docket 03/02/2020   Page 115 of 196
Case 1:06-cr-20758-CMA   Document 665   Entered on FLSD Docket 04/04/2016   Page 100 of
136

circumstances where individuals will be very badly hurt in the defendant's family if no one is available to take care of them").

The District Court quite reasonably attached great weight to Gall's self-motivated rehabilitation, which was undertaken not at the direction of, or under supervision by, any court, but on his own initiative. This also lends strong support to the conclusion that imprisonment was not necessary to deter Gall from engaging in future criminal conduct or to protect the public from his future criminal acts. See 18 U.S.C. §§ 3553(a)(2)(B), (C).

The Court of Appeals clearly disagreed with the District Judge's conclusion that consideration of the § 3553(a) factors justified a sentence of probation; it believed that the circumstances presented here were insufficient to sustain such a marked deviation from the Guidelines range. But it is not for the Court of Appeals to decide de novo whether the justification for a variance is sufficient or the sentence reasonable. On abuse-of-discretion review, the Court of Appeals should have given due deference to the District Court's reasoned and reasonable decision that the § 3553(a) factors, on the whole, justified the sentence. Accordingly, the judgment of the Court of Appeals is reversed.

It is so ordered.

## SEPARATE OPINION

Justice *Scalia,* concurring.

I join the opinion of the Court.

In Rita v. United States, 551 U.S. 338, _, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007), I wrote separately to state my view that any appellate review of sentences for substantive reasonableness will necessarily result in a sentencing scheme constitutionally indistinguishable from the mandatory Guidelines struck down in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005). Whether a sentencing scheme uses mandatory Guidelines, a "proportionality test" for Guidelines variances, or a deferential abuse-of-discretion standard, there will be some sentences upheld only on the basis of additional judge-found facts.

Although I continue to believe that substantive-reasonableness review is inherently flawed, I give stare decisis effect to the statutory holding of Rita. The highly deferential standard adopted by the Court today will result in far fewer unconstitutional sentences than the proportionality standard employed by the Eighth Circuit. Moreover, as I noted in Rita, the Court has not foreclosed as-applied constitutional challenges to sentences. The door therefore remains open for

2LED2D                                    20

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_100-000000

a defendant to demonstrate that his sentence, whether inside or outside the advisory Guidelines range, would not have been upheld but for the existence of a fact found by the sentencing judge and not by the jury.<*pg. 464>

Justice *Souter,* concurring.

I join the Court's opinion here, as I do in today's companion case of Kimbrough v. United States, post, p _, 128 S. Ct. 558, 169 L. Ed. 2d 481, which follow United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), and Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007). My disagreements with holdings in those earlier cases are not the stuff of formally perpetual dissent, but I see their objectionable points hexing our judgments today, see id., at _, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (Souter, J., dissenting), and Booker, supra, at 272, 125 S. Ct. 738, 160 L. Ed. 2d 621 (Stevens, J., dissenting in part). After Booker's remedial holding, I continue to think that the best resolution of the tension between substantial consistency throughout the system and the right of jury trial would be a new Act of Congress: reestablishing a statutory system of mandatory sentencing guidelines (though not identical to the original in all points of detail), but providing for jury findings of all facts necessary to set the upper range of sentencing discretion. See Rita, supra, at _, 127 S. Ct. 2456, 168 L. Ed. 2d 203.

Justice *Thomas,* dissenting.

Consistent with my dissenting opinion in Kimbrough v. United States, post, p _, 128 S. Ct. 558, 169 L. Ed. 2d 481, I would affirm the judgment of the Court of Appeals because the District Court committed statutory error when it departed below the applicable Guidelines range.

Justice *Alito*, dissenting.

The fundamental question in this case is whether, under the remedial decision in United States v. Booker, 543 U.S. 220, 125 S. Ct. 738, 160 L. Ed. 2d 621 (2005), a district court must give the policy decisions that are embodied in the Sentencing Guidelines at least some significant weight in making a sentencing decision. I would answer that question in the affirmative and would therefore affirm the decision of the Court of Appeals.

I

2LED2D                              21

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

In Booker, a bare majority held that the Sentencing Reform Act of 1984 (Sentencing Reform Act), as amended, 18 U.S.C. § 3551 et seq., 28 U.S.C. § 991 et seq., violated the Sixth Amendment insofar as it required district judges to follow the United States Sentencing Guidelines, but another bare majority held that this defect could be remedied by excising the two statutory provisions, 18 U.S.C. §§ 3553(b)(1) and 3742(e) (2000 ed. and Supp. IV), that made compliance with the Guidelines mandatory. As a result of these two holdings, the lower federal courts were instructed that the Guidelines must be regarded as "effectively advisory," Booker, 543 U.S., at 245, 125 S. Ct. 738, 160 L. Ed. 2d 621, and that individual sentencing decisions are subject to appellate review for "reasonableness.'" Id., at 262, 125 S. Ct. 738, 160 L. Ed. 2d 621. The Booker remedial opinion did not explain exactly what it meant by a system of "advisory" guidelines or by "reasonableness" review, and the opinion is open to different interpretations.

It is possible to read the opinion to mean that district judges, after giving the Guidelines a polite nod, may then proceed essentially as if the Sentencing Reform Act had never been enacted. <*pg. 465> This is how two of the dissents interpreted the Court's opinion. Justice Stevens wrote that sentencing judges had "regain[ed] the unconstrained discretion Congress eliminated in 1984" when it enacted the Sentencing Reform Act. Id., at 297, 125 S. Ct. 738, 160 L. Ed. 2d 621. Justice Scalia stated that "logic compels the conclusion that the sentencing judge . . . has full discretion, as full as what he possessed before the Act was passed, to sentence anywhere within the statutory range." Id., at 305, 125 S. Ct. 738, 160 L. Ed. 2d 621.

While this is a possible understanding of the remedial opinion, a better reading is that sentencing judges must still give the Guidelines' policy decisions some significant weight and that the courts of appeals must still police compliance. In a key passage, the remedial opinion stated:

"The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing. See 18 U.S.C.A. §§ 3553(a)(4), (5) (Supp. 2004). But compare post, at 305 [125 S. Ct. 738, 160 L. Ed. 2d 621] (Scalia, J., dissenting in part) (claiming that the sentencing judge has the same discretion 'he possessed before the Act was passed'). The courts of appeals review sentencing decisions for unreasonableness. These features of the remaining system, while not the system Congress enacted, nonetheless continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." Id., at 264-265, 125 S. Ct. 738, 160 L. Ed. 2d 621 (emphasis added).

The implication of this passage is that district courts are still required to give some deference to the policy decisions embodied in the Guidelines and that appellate review must monitor compliance. District courts must not only "consult" the Guidelines, they must "take them into account." Id., at 264, 125 S. Ct. 738, 160 L. Ed. 2d 621. In addition, the passage distances the

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_102-000000

remedial majority from Justice Scalia's position that, under an advisory Guidelines scheme, a district judge would have "discretion to sentence anywhere within the ranges authorized by statute" so long as the judge "state[d] that 'this court does not believe that the punishment set forth in the Guidelines is appropriate for this sort of offense.'" Id., at 305, 125 S. Ct. 738, 160 L. Ed. 2d 621 (opinion dissenting in part).

Moreover, in the passage quoted above and at other points in the remedial opinion, the Court expressed confidence that appellate review for reasonableness would help to avoid "'excessive sentencing disparities'" and "would tend to iron out sentencing differences." Id., at 263, 125 S. Ct. 738, 160 L. Ed. 2d 621. Indeed, a major theme of the remedial opinion, as well as our decision last Term in Rita v. United States, 551 U.S. 338, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007), was that the post-Booker sentencing regime would still promote the Sentencing Reform Act's goal of reducing sentencing disparities. See, e.g., 551 U.S., at _, _, _, 127 S. Ct. 2456, 168 L. Ed. 2d 203; Booker, supra, at 259-260, 263-264, 125 S. Ct. 738, 160 L. Ed. 2d 621.

It is unrealistic to think this goal can be achieved over the long term if sentencing judges need only give lip service to the Guidelines. The other sentencing factors set out in § 3553(a)<*pg. 466> are so broad that they impose few real restraints on sentencing judges. See id., at 305, 125 S. Ct. 738, 160 L. Ed. 2d 621 (Scalia, J., dissenting in part). Thus, if judges are obligated to do no more than consult the Guidelines before deciding upon the sentence that is, in their independent judgment, sufficient to serve the other § 3553(a) factors, federal sentencing will not "move . . . in Congress' preferred direction." Id., at 264, 125 S. Ct. 738, 160 L. Ed. 2d 621 (opinion of the Court). On the contrary, sentencing disparities will gradually increase. Appellate decisions affirming sentences that diverge from the Guidelines (such as the Court's decision today) will be influential, and the sentencing habits developed during the pre-Booker era will fade.

Finally, in reading the Booker remedial opinion, we should not forget the decision's constitutional underpinnings. Booker and its antecedents are based on the Sixth Amendment right to trial by jury. The Court has held that (at least under a mandatory guidelines system) a defendant has the right to have a jury, not a judge, find facts that increase the defendant's authorized sentence. See id., at 230-232, 125 S. Ct. 738, 160 L. Ed. 2d 621; Blakely v. Washington, 542 U.S. 296, 303-304, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004). It is telling that the rules set out in the Court's opinion in the present case have nothing to do with juries or factfinding and, indeed, that not one of the facts that bears on petitioner's sentence is disputed. What is at issue, instead, is the allocation of the authority to decide issues of substantive sentencing policy, an issue on which the Sixth Amendment says absolutely nothing. The yawning gap between the Sixth Amendment and the Court's opinion should be enough to show that the Blakely-Booker line of cases has gone astray.

2LED2D                                    **23**

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement

A0091980_103-000000

In Blakely, the Court drew a distinction-between judicial factfinding under a guidelines system and judicial factfinding under a discretionary sentencing system, see 542 U.S., at 309-310, 124 S. Ct. 2531, 159 L. Ed. 2d 403-that, in my judgment, cannot be defended as a matter of principle. It would be a coherent principle to hold that any fact that increases a defendant's sentence beyond the minimum required by the jury's verdict of guilt must be found by a jury. Such a holding, however, would clash with accepted sentencing practice at the time of the adoption of the Sixth Amendment. By that time, many States had enacted criminal statutes that gave trial judges the discretion to select a sentence from within a prescribed range,[1] and the First Congress enacted federal criminal statutes that were cast in this <*pg. 467> mold. See An Act for the Punishment of certain Crimes against the United States, 1 Stat. 112.[2]

Under a sentencing system of this type, trial judges inevitably make findings of fact (albeit informally) that increase sentences beyond the minimum required by the jury's verdict. For example, under a statute providing that the punishment for burglary is, say, imprisonment for up to x years, the sentencing court might increase the sentence that it would have otherwise imposed by some amount based on evidence introduced at trial that the defendant was armed or that, before committing the crime, the defendant had told a confederate that he would kill the occupants if they awakened during the burglary. The only difference between this sort of factfinding and the type that occurs under a guidelines system is that factfinding under a guidelines system is explicit and the effect of each critical finding is quantified. But in both instances, facts that cause a defendant to spend more time in prison are found by judges, not juries, and therefore no distinction can be drawn as a matter of Sixth Amendment principle.

The Court's acceptance of this distinction also produced strange collateral consequences. A sentencing system that gives trial judges the discretion to sentence within a specified range not only permits judicial factfinding that may increase a sentence, such a system also gives individual judges discretion to implement their own sentencing policies. This latter feature, whether wise or unwise, has nothing to do with the concerns of the Sixth Amendment, and a principal objective of the Sentencing Reform Act was to take this power out of the hands of individual district judges.

The Booker remedy, however, undid this congressional choice. In curing the Sentencing Reform Act's perceived defect regarding judicial factfinding, Booker restored to the district courts at least a measure of the policymaking authority that the Sentencing Reform Act had taken away. (How much of this authority was given back is, of course, the issue here.)

I recognize that the Court is committed to the Blakely-Booker line of cases, but we are not required to continue along a path that will take us further and further off course. Because <*pg. 468> the Booker remedial opinion may be read to require sentencing judges to give weight to the Guidelines, I would adopt that interpretation and thus minimize the gap between what the Sixth

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_104-000000

Amendment requires and what our cases have held.

## II

### A

Read fairly, the opinion of the Court of Appeals holds that the District Court did not properly exercise its sentencing discretion because it did not give sufficient weight to the policy decisions reflected in the Guidelines. Petitioner was convicted of a serious crime, conspiracy to distribute "ecstasy." He distributed thousands of pills and made between $30,000 and $40,000 in profit. Although he eventually left the conspiracy, he did so because he was worried about apprehension. The Sentencing Guidelines called for a term of imprisonment of 30 to 37 months, but the District Court imposed a term of probation.

Compelled to interpret the Booker remedial opinion, the District Court, it appears, essentially chose the interpretation outlined in Justice Stevens' and Justice Scalia's dissents. The District Court considered the sentence called for by the Guidelines, but I see no evidence that the District Court deferred to the Guidelines to any significant degree. Rather, the court determined what it thought was appropriate under the circumstances and sentenced petitioner accordingly.

If the question before us was whether a reasonable jurist could conclude that a sentence of probation was sufficient in this case to serve the purposes of punishment set out in 18 U.S.C. § 3553(a)(2), the District Court's decision could not be disturbed. But because I believe that sentencing judges must still give some significant weight to the Guidelines sentencing range, the Commission's policy statements, and the need to avoid unwarranted sentencing disparities, § 3553(a)(3), (4), and (5) (2000 ed. and Supp. V), I agree with the Eighth Circuit that the District Court did not properly exercise its discretion.

Appellate review for abuse of discretion is not an empty formality. A decision calling for the exercise of judicial discretion "hardly means that it is unfettered by meaningful standards or shielded from thorough appellate review." Albemarle Paper Co. v. Moody, 422 U.S. 405, 416, 95 S. Ct. 2362, 45 L. Ed. 2d 280 (1975). Accord, United States v. Taylor, 487 U.S. 326, 336, 108 S. Ct. 2413, 101 L. Ed. 2d 297 (1988); Franks v. Bowman Transp. Co., 424 U.S. 747, 783, 96 S. Ct. 1251, 47 L. Ed. 2d 444 (1976) (Powell, J., concurring in part and dissenting in part). And when a trial court is required by statute to take specified factors into account in making a discretionary decision, the trial court must be reversed if it "ignored or slighted a factor that Congress has deemed pertinent." Taylor, supra, at 337, 108 S. Ct. 2413, 101 L. Ed. 2d 297. See Hensley v. Eckerhart, 461 U.S. 424, 438-440, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983) (finding an abuse of discretion where the District Court "did not properly consider" 1 of 12 factors

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_105-000000

Congress found relevant to the amount of attorney's fees when passing the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988). See also United States v. Oakland Cannabis Buyers' Cooperative, 532 U.S. 483, 497-498, 121 S. Ct. 1711, 149 L. Ed. 2d 722 (2001) (A<*pg. 469> court exercising its discretion "cannot 'ignore the judgment of Congress, deliberately expressed in legislation.' Virginian R. Co. v. Railway Employees, 300 U.S. 515, 551 [57 S. Ct. 592, 81 L. Ed. 789] (1937)"); American Paper Institute, Inc. v. American Elec. Power Service Corp., 461 U.S. 402, 413, 103 S. Ct. 1921, 76 L. Ed. 2d 22 (1983) ("To decide whether [Federal Energy Regulatory Commission's] action was . . . an abuse of discretion, we must determine whether the agency adequately considered the factors relevant" under the statute (internal quotation marks omitted)); Southern S. S. Co. v. NLRB, 316 U.S. 31, 46, 47, 62 S. Ct. 886, 86 L. Ed. 1246 (1942) (finding an abuse of discretion where the National Labor Relations Board sought to fulfill one congressional objective but "wholly ignore[d] other and equally important Congressional objectives").

Here, the District Court "slighted" the factors set out in 18 U.S.C. §§ 3553(a)(3), (4), and (5) (2000 ed. and Supp. V)-namely, the Guidelines sentencing range, the Commission's policy statements, and the need to avoid unwarranted sentencing disparities. Although the Guidelines called for a prison term of at least 30 months, the District Court did not require any imprisonment-not one day. The opinion of the Court makes much of the restrictions and burdens of probation, see ante, at __ - __, 169 L. Ed. 2d, at 456-457, but in the real world there is a huge difference between imprisonment and probation. If the District Court had given any appreciable weight to the Guidelines, the District Court could not have sentenced petitioner to probation without very strong countervailing considerations.

The court listed five considerations as justification for a sentence of probation: (1) petitioner's "voluntary and explicit withdrawal from the conspiracy," (2) his "exemplary behavior while on bond," (3) "the support manifested by family and friends," (4) "the lack of criminal history, especially a complete lack of any violent criminal history," (5) and his age at the time of the offense, 21. App. 97.

Two of the considerations that the District Court cited-"the support manifested by family and friends" and his age, ibid.-amounted to a direct rejection of the Sentencing Commission's authority to decide the most basic issues of sentencing policy. In the Sentencing Reform Act, Congress required the Sentencing Commission to consider and decide whether certain specified factors-including "age," "education," "previous employment record," "physical condition," "family ties and responsibilities," and "community ties"-"have any relevance to the nature [and] extent . . . of an appropriate sentence." 28 U.S.C. § 994(d). These factors come up with great frequency, and judges in the pre-Sentencing Reform Act era disagreed regarding their relevance. Indeed, some of these factors were viewed by some judges as reasons for increasing a sentence and by

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_106-000000

others as reasons for decreasing a sentence. For example, if a defendant had a job, a supportive family, and friends, those factors were sometimes viewed as justifying a harsher sentence on the ground that the defendant had squandered the opportunity to lead a law-abiding life. Alternatively, those same factors were sometimes viewed as justifications for a more lenient sentence on the ground that a defendant with a job and a network of support would be less likely to return to crime. If each judge is free to implement <*pg. 470> his or her personal views on such matters, sentencing disparities are inevitable.

In response to Congress' direction to establish uniform national sentencing policies regarding these common sentencing factors, the Sentencing Commission issued policy statements concluding that "age," "family ties," and "community ties" are relevant to sentencing only in unusual cases. See United States Sentencing Commission, Guidelines Manual §§ 5H1.1 (age), 5H1.6 (family and community ties) (Nov. 2006). The District Court in this case did not claim that there was anything particularly unusual about petitioner's family or community ties or his age, but the court cited these factors as justifications for a sentence of probation. Although the District Court was obligated to take into account the Commission's policy statements and the need to avoid sentencing disparities, the District Court rejected Commission policy statements that are critical to the effort to reduce such disparities.

The District Court relied on petitioner's lack of criminal history, but criminal history (or the lack thereof) is a central factor in the calculation of the Guidelines range. Petitioner was given credit for his lack of criminal history in the calculation of his Guidelines sentence. Consequently, giving petitioner additional credit for this factor was nothing more than an expression of disagreement with the policy determination reflected in the Guidelines range.

The District Court mentioned petitioner's "exemplary behavior while on bond," App. 97, but this surely cannot be regarded as a weighty factor.

Finally, the District Court was plainly impressed by petitioner's "voluntary and explicit withdrawal from the conspiracy." Ibid. As the Government argues, the legitimate strength of this factor is diminished by petitioner's motivation in withdrawing. He did not leave the conspiracy for reasons of conscience, and he made no effort to stop the others in the ring. He withdrew because he had become afraid of apprehension. 446 F.3d 884, 886 (CA8 2006). While the District Court was within its rights in regarding this factor and petitioner's "self-rehabilitat[ion]," App. 75, as positive considerations, they are not enough, in light of the Guidelines' call for a 30- to 37-month prison term, to warrant a sentence of probation.

**B**

In reaching the opposite conclusion, the Court attacks straw men. The Court unjustifiably

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_107-000000

faults the Eighth Circuit for using what it characterizes as a "rigid mathematical formula." Ante, at _, 169 L. Ed. 2d, at 455. The Eighth Circuit (following a Seventh Circuit opinion) stated that a trial judge's justifications for a sentence outside the Guidelines range must be "proportional to the extent of the difference between the advisory range and the sentence imposed." 446 F.3d, at 889 (quoting United States v. Claiborne, 439 F.3d 479, 481 (CA8 2006), in turn quoting United States v. Johnson, 427 F.3d 423, 426-427 (CA7 2005); internal quotation marks omitted). Taking this language literally as requiring a mathematical computation, the Court has an easy time showing that mathematical precision is not possible:

"[T]he mathematical approach assumes the existence of some ascertainable method of assigning percentages to various justifications. Does withdrawal from a conspiracy <*pg. 471> justify more or less than, say, a 30% reduction? . . . What percentage, if any, should be assigned to evidence that a defendant poses no future threat to society, or to evidence that innocent third parties are dependent on him?" Ante, at _, 169 L. Ed. 2d, at 456.

This criticism is quite unfair. It is apparent that the Seventh and Eighth Circuits did not mean to suggest that proportionality review could be reduced to a mathematical equation, and certainly the Eighth Circuit in this case did not assign numbers to the various justifications offered by the District Court. All that the Seventh and Eighth Circuits meant, I am convinced, is what this Court's opinion states, i.e., that "the extent of the difference between a particular sentence and the recommended Guidelines range" is a relevant consideration in determining whether the District Court properly exercised its sentencing discretion. Ante, at _, 169 L. Ed. 2d, at 451.

This Court's opinion is also wrong in suggesting that the Eighth Circuit's approach was inconsistent with the abuse-of-discretion standard of appellate review. Ante, at _, 169 L. Ed. 2d, at 456. The Eighth Circuit stated unequivocally that it was conducting abuse-of-discretion review, 446 F.3d, at 888-889; abuse-of-discretion review is not toothless; and it is entirely proper for a reviewing court to find an abuse of discretion when important factors-in this case, the Guidelines, policy statements, and the need to avoid sentencing disparities-are "slighted." Taylor, 487 U.S., at 337, 108 S. Ct. 2413, 101 L. Ed. 2d 297. The mere fact that the Eighth Circuit reversed is hardly proof that the Eighth Circuit did not apply the correct standard of review.

Because I believe that the Eighth Circuit correctly interpreted and applied the standards set out in the Booker remedial opinion, I must respectfully dissent.[3]

## FOOTNOTES

1   Ecstasy   is   sometimes   called   "MDMA"   because   its   scientific   name   is "methylenedioxymethamphetamine." App. 24, 118.

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_108-000000

**2** Notably, not all of the Guidelines are tied to this empirical evidence. For example, the Sentencing Commission departed from the empirical approach when setting the Guidelines range for drug offenses, and chose instead to key the Guidelines to the statutory mandatory minimum sentences that Congress established for such crimes. See United States Sentencing Commission, Guidelines Manual § 1A1.1 (Nov. 2006) (USSG). This decision, and its effect on a district judge's authority to deviate from the Guidelines range in a particular drug case, is addressed in Kimbrough v. United States, post, p _, 128 S. Ct. 558, 169 L. Ed. 2d 481.

**3** Several Courts of Appeals had rejected such a presumption of unreasonableness even prior to our decision in Rita. See, e.g., United States v. Howard, 454 F.3d 700, 703 (CA7 2006) ("Although a sentence outside the range does not enjoy the presumption of reasonableness that one within the range does, it does not warrant a presumption of unreasonableness"); United States v. Matheny, 450 F.3d 633, 642 (CA6 2006) ("[T]his court's holding that sentences within the advisory guideline range are presumptively reasonable does not mean that sentences outside of that range are presumptively unreasonable"); United States v. Myers, 439 F.3d 415, 417 (CA8 2006) ("We have determined that a sentence imposed within the guidelines range is presumptively reasonable. While it does not follow that a sentence outside the guidelines range is unreasonable, we review a district court's decision to depart from the appropriate guidelines range for abuse of discretion" (citation omitted)).

**4** See also Advisory Council of Judges of National Council on Crime and Delinquency, Guides for Sentencing 13-14 (1957) ("Probation is not granted out of a spirit of leniency. . . . As the Wickersham Commission said, probation is not merely 'letting an offender off easily'"); 1 N. Cohen, The Law of Probation and Parole § 7:9 (2d ed. 1999) ("[T]he probation or parole conditions imposed on an individual can have a significant impact on both that person and society. . . . Often these conditions comprehensively regulate significant facets of their day-to-day lives . . . . They may become subject to frequent searches by government officials, as well as to mandatory counseling sessions with a caseworker or psychotherapist").

**5** Notably, when the Court of Appeals explained its disagreement with the District Judge's decision in this case, it made no attempt to quantify the strength of any of the mitigating circumstances.

**6**

**[7]** Section 3553(a) lists seven factors that a sentencing court must consider. The first factor is a broad command to consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. § 3553(a)(1). The second factor requires the consideration of the general purposes of sentencing, including:

"the need for the sentence imposed-

"(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

"(B) to afford adequate deterrence to criminal conduct;

"(C) to protect the public from further crimes of the defendant; and

"(D) to provide the defendant with needed educational or vocational training, medical care, or other

2LED2D                                            29

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_109-000000

correctional treatment in the most effective manner." § 3553(a)(2).

[8]  The third factor pertains to "the kinds of sentences available," § 3553(a)(3); the fourth to the Sentencing Guidelines; the fifth to any relevant policy statement issued by the Sentencing Commission; the sixth to "the need to avoid unwarranted sentence disparities," § 3553(a)(6); and the seventh to "the need to provide restitution to any victim," § 3553(a)(7).  Preceding this list is a general directive to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing described in the second factor.  § 3553(a) (2000 ed., Supp. V).  The fact that § 3553(a) explicitly directs sentencing courts to consider the Guidelines supports the premise that district courts must begin their analysis with the Guidelines and remain cognizant of them throughout the sentencing process.

[7]  District judges sentence, on average, 117 defendants every year.  Administrative Office of United States Courts, 2006 Federal Court Management Statistics 167.  The District Judge in this case, Judge Pratt, has sentenced over 990 offenders over the course of his career.  United States v. Likens, 464 F.3d 823, 827, n 1 (CA8 2006) (Bright, J., dissenting).  Only a relatively small fraction of these defendants appeal their sentence on reasonableness grounds.  See Koon, 518 U.S., at 98, 116 S. Ct. 2035, 135 L. Ed. 2d 392 ("In 1994, for example, 93.9% of Guidelines cases were not appealed"); Likens, 464 F.3d, at 827, n 1 (Bright, J., dissenting) (noting that the District Judge had sentenced hundreds of defendants and that "[w]e have reviewed only a miniscule number of those cases"); cf. United States Sentencing Commission, 2006 Sourcebook of Federal Sentencing Statistics 135-152.

[8]  It is particularly revealing that when we adopted an abuse-of-discretion standard in Koon, we explicitly rejected the Government's argument that "de novo review of departure decisions is necessary 'to protect against unwarranted disparities arising from the differing sentencing approaches of individual district judges.'" 518 U.S., at 97, 116 S. Ct. 2035, 135 L. Ed. 2d 392 (quoting Brief for United States in O. T. 1995, No. 94-1664, p 12).  Even then we were satisfied that a more deferential abuse-of-discretion standard could successfully balance the need to "reduce unjustified disparities" across the Nation and "consider every convicted person as an individual." 518 U.S., at 113, 116 S. Ct. 2035, 135 L. Ed. 2d 392.

[9]  The District Judge also gave specific consideration to the fact-not directly taken into account by the Guidelines-that Gall netted $30,000 from his participation in the conspiracy.  He noted, however:

"[T]his fact can be viewed from different perspectives.  On the one hand, [Gall] should be punished for profiting from a criminal scheme. . . .  On the other hand, [Gall], who is from a working-class family and has few financial resources, decided to turn his back on what, for him, was a highly profitable venture. . . .  The Court can not consider, for the purposes of sentencing, one side of the financial aspect of the offense conduct without considering the other." App. 123-124, n 3.

[10]  The Court of Appeals explained that under the current Guidelines, which treat ecstasy more harshly, Gall's base offense level would have been 32, eight levels higher than the base offense level imposed under the 1999 Guidelines.

[11]  Specifically, probation is not recommended under the Guidelines when the applicable Guidelines range is outside Zone A of the sentencing table as it is here.  USSG § 5B1.1.

[1]  To take some examples, Connecticut, as of 1784, punished burglary and robbery without violence

2LED2D                                         30

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

with imprisonment of up to 10 years "at the Discretion of the Superior Court before whom the Conviction is had." See Acts and Laws of the State of Connecticut 18 (1784). A 1749 Delaware law punished assault of a parent with imprisonment of up to 18 months. Laws of the State of Delaware 306 (1797). A 1793 Maryland law gave courts the ability to "in their discretion, adjudge" criminal defendants "to serve and labour for any time, in their discretion, not exceeding" specified terms of years. Digest of the Laws of Maryland 196 (T. Herty 1799). By 1785, Massachusetts allowed judges to sentence criminals convicted of a variety of offenses, including assault and manslaughter, "according to the aggravation of the offense," or "at the discretion of the Court." The Perpetual Laws, of the Commonwealth of Massachusetts, from the Establishment of its Constitution to the First Session of the General Court A. D. 1788 (1788), reprinted in The First Laws of The Commonwealth of Massachusetts, pp 244-252 (J. Cushing comp. 1981). In 1791, New Hampshire passed a law punishing certain assaults with imprisonment of up to two years, and forgery with imprisonment of up to three years, at the court's discretion. See Laws of the State of New Hampshire (1792). New Jersey, New York, North Carolina, Pennsylvania, Rhode Island, and South Carolina likewise enacted criminal statutes providing for indeterminate sentences of imprisonment at the discretion of the court either before, or in the immediate wake of, the ratification of the Sixth Amendment. See, e.g., Laws of the State of New Jersey 210-218 (1800) (detailing laws passed in 1796); 2 Laws of the State of New York 45-48, 211, 242-248, 390 (1789); Laws of the State of North Carolina 288, 389 (J. Iredell 1791); An Abridgment of the Laws of Pennsylvania, Penal Laws 1-47 (1801) (detailing laws passed 1790-1794); Public Laws of the State of Rhode Island and Providence Plantations 584-600 (1798); Public Laws of the State of South Carolina 55, 61, 257, 497 (J. Grimke 1790).

**2** We have often looked to laws passed by the First Congress to aide interpretation of the Bill of Rights, which that Congress proposed. See, e.g., Harmelin v. Michigan, 501 U.S. 957, 980, 111 S. Ct. 2680, 115 L. Ed. 2d 836 (1991) (opinion of Scalia, J.) (noting, while interpreting the Eighth Amendment, that "[t]he actions of the First Congress . . . are of course persuasive evidence of what the Constitution means"); Marsh v. Chambers, 463 U.S. 783, 788-790, 103 S. Ct. 3330, 77 L. Ed. 2d 1019 (1983) (looking to the actions of the First Congress in interpreting the First Amendment); Carroll v. United States, 267 U.S. 132, 150-152, 45 S. Ct. 280, 69 L. Ed. 543 (1925) (looking to the actions of the First Congress in interpreting the Fourth Amendment).

**3** While I believe that the Court's analysis of the sentence imposed in this case does not give sufficient weight to the Guidelines, it is noteworthy that the Court's opinion does not reject the proposition that the policy decisions embodied in the Guidelines are entitled to at least some weight. The Court's opinion in this case conspicuously refrains from directly addressing that question, and the opinion in Kimbrough v. United States, post, p _, 128 S. Ct. 558, 169 L. Ed. 2d 481, is explicitly equivocal, stating that "while the Guidelines are no longer binding, closer review may be in order when the sentencing judge varies from the Guidelines based solely on the judge's view that the Guidelines range 'fails properly to reflect § 3553(a) considerations' even in a mine-run case." Post, at _, 128 S. Ct. 558, 169 L. Ed. 2d 481 (quoting Rita v. United States, 551 U.S. 338, _, 127 S. Ct. 2456, 168 L. Ed. 2d 203 (2007)).

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_111-000000

| 30 LED2D 592, 404 US 443   UNITED STATES v TUCKER |
|---|

**UNITED STATES, Petitioner,**

*vs.*

**FORREST S. TUCKER**

## 404 US 443, 30 L Ed 2d 592, 92 S Ct 589

[No. 70-86]

**Argued November 11, 1971.**

**Decided January 11, 1972.**

### SUMMARY

At a sentencing proceeding after the accused was convicted of armed bank robbery, the United States District Court for the Northern District of California gave explicit attention to the accused's three previous felony convictions, and imposed the maximum term authorized by the applicable federal statute. Several years later it was conclusively determined that two of the previous convictions were constitutionally invalid because the accused was denied his right to counsel. He moved to set aside the sentence. The same District Court denied the motion (299 F Supp 1376), but the United States Court of Appeals for the Ninth Circuit remanded the cause for resentencing without consideration of the invalid prior convictions (431 F.2d 1292).

On certiorari, the United States Supreme Court affirmed. In an opinion by Stewart, J., expressing the views of five members of the court, it was held that to permit a conviction obtained in violation of the accused's constitutional right to counsel to be used against him to enhance his punishment is to erode the constitutional right to counsel.

Blackmun, J., joined by Burger, Ch. J., dissented on the ground that the trial judge would have imposed the maximum sentence anyway.

Powell and Rehnquist, JJ., did not participate.

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_112-000000

## RESEARCH REFERENCES

21 Am Jur 2d, Criminal Law § 585

13 Am Jur Trials 465, Defending Minor Felony Cases

US L Ed Digest, Criminal Law § 70

ALR Digests, Criminal Law § 160.4

L Ed Index to Anno, Criminal Law

ALR Quick Index, Sentence and Punishment

Federal Quick Index, Sentence and Punishment

## ANNOTATION REFERENCES

Accused's right to counsel under the Federal Constitution.  84 L Ed 383, 93 L Ed 137, 2 L Ed 2d 1644, 9 L Ed 2d 1260, 18 L Ed 2d 1420.

United States Supreme Court's views as to retroactive effect of its own decisions announcing new rules.  22 L Ed 2d 821.

Retroactive or merely prospective operation of new rule adopted by court in overruling precedent.  14 L Ed 2d 992.

Due process requirements of presentence procedure following conviction.  3 L Ed 2d 1808.

Prospective or retroactive operation of overruling decision.  10 ALR3d 1371.

Court's right, in imposing sentence, to hear evidence of, or to consider, other offenses committed by defendant.  96 ALR2d 768.

Constitutionally protected right of indigent accused to appointment of counsel in state court prosecution.  93 ALR2d 747.<*pg. 593>

## HEADNOTES

Classified to U.S. Supreme Court Digest, Lawyers' Edition

### Criminal Law § 69 - sentence - discretion

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_113-000000

1. A trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose.

**Criminal Law § 69 - sentence - inquiry**

2. Before determining what sentence to impose, a trial judge in the federal judicial system may appropriately conduct an inquiry broad in scope and largely unlimited either as to the kind of information he may consider or the source from which it may come.

**Appeal and Error § 1379 - sentence - review**

3. A sentence imposed by a Federal District Judge, if within statutory limits, is generally not subject to review.

**Criminal Law § 46.5 - right to counsel - retroactivity**

4. The rule of Gideon v Wainwright (1963) 372 US 335, 9 L Ed 2d 799, 63 S Ct 792, 93 ALR2d 733, that the Sixth Amendment right to counsel in criminal prosecutions is obligatory on the states by the Fourteenth Amendment, is fully retroactive.

**Criminal Law § 70 - sentence - consideration of invalid convictions**

5. A convicted criminal defendant is entitled to be resentenced where the trial judge, in determining what sentence to impose on him, gave explicit <*pg. 594> attention to two previous felony convictions which were constitutionally invalid because he then was unrepresented by counsel, was not advised of his right to counsel, and did not intelligently waive his right to counsel.

**Criminal Law § 46.3 - right to counsel**

6. It is unconstitutional to try a person for a felony in a state court unless he has a lawyer or has validly waived one.

## SYLLABUS

In imposing sentence upon a defendant convicted of bank robbery, a federal district judge gave explicit consideration to the defendants' record of previous convictions.   It was later conclusively determined that two of the previous convictions were constitutionally invalid, having been obtained in violation of Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792, 93 ALR2d 733.

*Held:*

led2                                    3

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_114-000000

Under these circumstances the Court of Appeals was correct in remanding the case to the District Court for reconsideration of the sentence imposed upon the defendant.

431 F.2d 1292, affirmed.

Stewart, J., delivered the opinion of the Court, in which Douglas, Brennan, White, and Marshall, JJ., joined. Blackmun, J., filed a dissenting opinion in which Burger, C. J., joined, post, 449, 30 L Ed 2d 597. Powell and Rehnquist, JJ., took no part in the consideration or decision of the case.

## APPEARANCES OF COUNSEL ARGUING CASE

*Allan A. Tuttle* argued the cause for petitioner.

*William A. Reppy, Jr.,* argued the cause for respondent.

Briefs of Counsel, p.905, infra.

## OPINION

Mr. Justice *Stewart* delivered the opinion of the Court.

In 1953 the respondent, Forrest S. Tucker, was brought to trial in a federal district court in California upon a charge of armed bank robbery. He pleaded not guilty. Four female employees of the bank were called as witnesses

**[404 US 444]**

for the prosecution, and they identified the respondent as the robber. He testified in his own behalf, denying participation in the robbery and offering an alibi defense. To impeach the credibility of his testimony, the prosecution was permitted on cross- examination to ask him whether he had previously been convicted of any felonies. He acknowledged three previous felony convictions, one in Florida in 1938, another in Louisiana in 1946, and a third in Florida in 1950. At the conclusion of the trial the jury returned a verdict of guilty. In the ensuing sentencing proceeding the District Judge conducted an inquiry into the respondent's background, and, the record shows, gave explicit attention to the three previous felony convictions the respondent had acknowledged.[1] The judge then sentenced him to serve 25 years in prison-the maximum <*pg. 595> term authorized by the applicable federal statute, 18 USC § 2113(d).

led2                                         4

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_115-000000

Several years later it was conclusively determined that the respondent's 1938 conviction in Florida and his 1946

### [404 US 445]

conviction in Louisiana were constitutionally invalid. This determination was made by the Superior Court of Alameda County, California, upon that court's finding in a collateral proceeding that those convictions had resulted from proceedings in which the respondent had been unrepresented by counsel, and that he had been "neither advised of his right to legal assistance nor did he intelligently and understandingly waive this right to the assistance of counsel."[2]

Thereafter the respondent initiated the present litigation. Proceeding under 28 USC § 2255, he filed a motion in the Federal District Court in which he had been convicted in 1953, claiming that introduction at the 1953 trial of evidence of his prior invalid convictions had fatally tainted the jury's verdict of guilt. Upon consideration of the motion, the District Judge agreed that "the use of the constitutionally invalid prior convictions on cross-examination for impeachment purposes was error," but found that the error was harmless beyond a reasonable doubt, in view of the overwhelming trial evidence that the respondent had been guilty of the bank robbery. Tucker v United States, 299 F Supp 1376. See Chapman v California, 386 US 18, 17 L Ed 2d 705, 87 S Ct 824, 24 ALR3d 1065; Harrington v California, 395 US 250, 23 L Ed 2d 284, 89 S Ct 1726.

On appeal, the Court of Appeals for the Ninth Circuit agreed that it had been "firmly proved that the evidence of prior convictions did not contribute to the verdict obtained and that, with respect to the verdict of guilty, the error in receiving such evidence was therefore harmless beyond a reasonable doubt." It went on, however, to find that there was "a reasonable probability that the defective prior convictions may have

### [404 US 446]

led the trial court to impose a heavier prison sentence than it otherwise would have imposed." Accordingly, the appellate court affirmed the refusal to vacate the conviction, but remanded the case to the District Court for resentencing "without consideration of any prior convictions which are invalid under Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792, 93 ALR2d 733." 431 F.2d 1292, 1293, 1294. The Government came here with a petition for a writ of certiorari, which we granted. 402 US 942, 29 L Ed 2d 110, 91 S Ct 1616.

The government asks us to reverse the judgment of the Court of Appeals insofar as it remanded this case to the District Court for resentencing. It argues that a federal district judge has wide and largely unreviewable discretion in imposing sentence, and that in exercising that discretion his relevant inquiry is not whether the defendant has been formally convicted of past crimes, but whether and to what extent the defendant has in <*pg. 596> fact engaged in criminal

led2                                   5

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_116-000000

or antisocial conduct. Further, the Government argues, in view of other detrimental information about the respondent possessed at the time of sentencing by the trial judge, it is highly unlikely that a different sentence would have been imposed even if the judge had known that two of the respondent's previous convictions were constitutionally invalid. Accordingly, the Government concludes that to now remand this case for resentencing would impose an "artificial" and "unrealistic" burden upon the District Court.

[1][2][3]  It is surely true, as the Government asserts, that a trial judge in the federal judicial system generally has wide discretion in determining what sentence to impose. It is also true that before making that determination, a judge may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information he may consider, or the source from which it may come. United States v Trigg, 392 F.2d 860, 864; Davis v United States, 376 F.2d 535, 538; Cross v United

[404 US 447]

States, 354 F.2d 512, 514; United States v Doyle, 348 F.2d 715, 721; United States v Magliano, 336 F.2d 817, 822; Fed Rule Crim Proc 32(a) (2). See Williams v New York, 337 US 241, 93 L Ed 1337, 69 S Ct 1079; North Carolina v Pearce, 395 US 711, 723, 23 L Ed 2d 656, 668, 89 S Ct 2072. The Government is also on solid ground in asserting that a sentence imposed by a federal district judge, if within statutory limits, is generally not subject to review. Gore v United States, 357 US 386, 393, 2 L Ed 2d 1405, 1410, 78 S Ct 1280. Cf. Yates v United States, 356 US 363, 2 L Ed 2d 837, 78 S Ct 766.

[4]  But these general propositions do not decide the case before us. For we deal here, not with a sentence imposed in the informed discretion of a trial judge, but with a sentence founded at least in part upon misinformation of constitutional magnitude. As in Townsend v Burke, 334 US 736, 92 L Ed 1690, 68 S Ct 1252, "this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue." Id., at 741, 92 L Ed at 1693. The record in the present case makes evident that the sentencing judge gave specific consideration to the respondent's previous convictions before imposing sentence upon him.[3]  Yet it is now clear that two of those convictions were wholly unconstitutional under Gideon v Wainwright, 372 US 335, 9 L Ed 2d 799, 83 S Ct 792, 93 ALR 2d 733.[4]

We need not speculate about whether the outcome of the respondent's 1938 and 1946 prosecutions would necessarily have been different if he had had the help of a lawyer.[5]  Such speculation is not <*pg. 597> only fruitless, but

[404 US 448]

quite beside the point. For the real question here is not whether the results of the Florida and Louisiana proceedings might have been different if the respondent had had counsel, but whether

led2                                   6

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 1:20-cv-20385-CMA   Document 7   Entered on FLSD Docket 03/02/2020   Page 133 of 196
Case 1:06-cr-20758-CMA   Document 665   Entered on FLSD Docket 04/04/2016   Page 118 of
136

the sentence in the 1953 federal case might have been different if the sentencing judge had known that at least two of the respondent's previous convictions had been unconstitutionally obtained.[6]

[5]  We agree with the Court of Appeals that the answer to this question must be "yes."  For if the trial judge in 1953 had been aware of the constitutional infirmity of two of the previous convictions, the factual circumstances of the respondent's background would have appeared in a dramatically different light at the sentencing proceeding.  Instead of confronting a defendant who had been legally convicted of three previous felonies, the judge would then have been dealing with a man who, beginning at age 17, had been unconstitutionally imprisoned for more than ten years, including five and one-half years on a chain gang.[7]  We cannot agree with the Government that a re-evaluation of the respondent's

### [404 US 449]

sentence by the District Court even at this late date will be either "artificial" or "unrealistic."[8]

[6]  The Gideon case established an unequivocal rule "making it unconstitutional to try a person for a felony in a state court unless he had a lawyer or had validly waived one."  Burgett v Texas, 389 US 109, 114, 19 L Ed 2d 319, 324, 88 S Ct 258.  In Burgett we said that "[t]o permit a conviction obtained in violation of Gideon v Wainwright to be used against a person either to support guilt or enhance punishment for another offense ... is to erode the principle of that case."  Id., at 115, 19 L Ed 2d at 324.  Erosion of the Gideon principle can be prevented here only by affirming the judgment of the Court of Appeals remanding this case to the trial court for reconsideration of the respondent's sentence.

The judgment is affirmed.

Mr. Justice *Powell* and Mr. Justice *Rehnquist* took no part in the consideration or decision of this case.<*pg. 598>

### SEPARATE OPINION

Mr. Justice *Blackmun,* with whom The *Chief Justice* joins, dissenting.

The Court's opinion, of course, is a fine and acceptable exposition of abstract law.  If I felt that it fit Tucker's

### [404 US 450]

case, I would join it.  The Court, however, fails to mention and to give effect to certain facts that for me, are controlling:

led2                                         7

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

1. At his armed bank robbery trial in May 1953 Tucker was no juvenile. He was 32 years of age and was represented by counsel. A reading of his trial testimony discloses that he was very knowledgeable indeed. Tucker testified on cross-examination at that trial not only as to the fact of three prior state felony convictions, but, as well, as to his engaging in the proscribed conduct underlying two of those convictions. He stated flatly (a) that in 1938 he broke into a garage and took a man's automobile, and (b) that in 1946 he broke into a jewelry store at night.[1] He also acknowledged that, while waiting for transportation to prison in Florida after the third conviction,

**[404 US 451]**

he escaped and went to California using an assumed name.[2] Thus, wholly apart from formal convictions, Tucker conceded criminal conduct on his part on three separate prior occasions.

2. The judge who presided at Tucker's pre-Gideon trial for armed bank robbery in 1953 was the Honorable George B. Harris of the United States District Court for the Northern District of California. After Tucker's conviction by a jury Judge Harris imposed the 25-year maximum sentence prescribed by 18 USC §§ 2113(a) and 2113(d). Despite the interim passage of 16 years, Tucker's present petition, filed pursuant to 28 USC § 2255, also came before the very same Judge Harris, then Chief Judge of the Northern District. The judge denied relief on the ground that the error in the use, for impeachment purposes, of two constitutionally invalid prior convictions<*pg. 599> was harmless beyond a reasonable doubt (a) because the issue of guilt or innocence was not at all close, (b) because Tucker's testimony "had been successfully impeached by prior inconsistent statements made to the Federal Bureau of Investigation agents, and by rebuttal testimony which demonstrated that portions of [his] testimony [were] improbable and untrue," and

**[404 US 452]**

(c) because his "testimony was successfully impeached, and in fact, demolished by additional items." 299 F Supp 1376, 1378 (ND Cal 1969). As to all this, on the issue of guilt, the Court of Appeals agreed, 431 F.2d 1292, 1293 (CA9 1970), and this Court today does not rule otherwise.

Chief Judge Harris' § 2255 ruling translates for me into something completely inescapable, namely, that in 1953, wholly apart from the 1938 and 1946 convictions, he would have imposed the 25-year maximum sentence anyway. Surely Judge Harris, of all people, is the best source of knowledge as to the effect, if any, of those two convictions in his determination of the sentence to be imposed. Yet the Court speculates that, despite his identity and despite his obvious disclaimer, Judge Harris might have been influenced in his sentencing by the fact of the two prior convictions, rather than by the three criminal acts that Tucker himself acknowledged.

On remand the case presumably will go once again to Judge Harris, and undoubtedly the same sentence once again will be imposed. Perhaps this is all worthwhile and, if so, I must be content

lcd2                                                    8

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_119-000000

with the Court's disposition of the case on general principles. I entertain more than a mild suspicion, however, that this is an exercise in futility, that the Court is merely marching up the hill only to march right down again, and that it is time we become just a little realistic in the face of a record such as this one.

I would reverse the judgment of the Court of Appeals insofar as it remands the case to the District Court for resentencing.

## FOOTNOTES

[1] An FBI agent was present at the sentencing proceeding. The District Judge began the proceeding by stating, "I would like to have the Agent's testimony with respect to the prior convictions."

The agent testified, in relevant part, as follows: "As the defendant said, when he was a juvenile, I believe it was in 1938, he received a ten- year sentence in Florida. ...

. . . . .

"... He said there was five years and four months on the chain gang. ... and he said he actually served two years beyond that. ...

. . . . .

"In 1950 Mr. Tucker was sentenced to a five year term in the State of Florida, for, I believe it was burglary, and on January the 5, 1951, while in custody in the hospital, he escaped.

. . . . .

"In 1946 he was convicted in the State of Louisiana on a felony charge and given a term of 4 years.

. . . . .

"... I believe it was a burglary."

[2] The decision of the Superior Court of Alameda County is unreported, but the accuracy of that court's determination is not questioned. See In re Tucker, 64 Cal 2d 15, 409 P2d 921; Tucker v Craven, 421 F.2d 139.

[3] See n 1, supra.

[4]

[4] The respondent's convictions occurred years before the Gideon case was decided, but the impact of that decision was fully retroactive. Pickelsimer v Wainwright, 375 US 2, 11 L Ed 2d 41, 84 S Ct 80.

[5] It is worth pointing out, however, that to make the contrary assumption, i. e., that the prosecutions would have turned out exactly the same even if the respondent had had the assistance of counsel, would

led2                                    9

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_120-000000

Case 1:20-cv-20385-CMA   Document 7   Entered on FLSD Docket 03/02/2020   Page 136 of 196
Case 1:06-cr-20758-CMA   Document 665   Entered on FLSD Docket 04/04/2016   Page 121 of
136

be to reject the reasoning upon which the Gideon decision was based:

"[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. ... That government hires lawyers to prosecute and defendants who have the money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries." 372 US, at 344, 9 L Ed 2d at 805, 93 ALR2d 733.

[6] The constitutional validity of the respondent's third conviction-in Florida in 1950-has not been determined.  The Government states in its brief that it has been informed by the clerk of the Criminal Court of Records of Dade County, Florida, that the respondent had counsel at that trial.  The respondent's brief states that the respondent has advised his present counsel that at the 1950 Florida proceeding he specifically asked the judge to appoint counsel for him because of his indigence and that the request was denied.

[7] See n 1, supra.

[8] As noted above, at 445, 30 L Ed 2d at 595, and emphasized in the dissenting opinion, the trial judge, in ruling upon the respondent's present § 2255 motion, held that the wrongful use of the invalid previous convictions to impeach the respondent's testimony at the 1953 trial was harmless error, in view of the overwhelming evidence that he was guilty of the bank robbery.  But the respondent's guilt of that offense hardly "translates" into a "inescapable" assumption that the trial judge would have imposed a maximum 25-year prison sentence if he had known that the respondent had already been unconstitutionally imprisoned for more than 10 years.  It would be equally callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that the trial judge will upon reconsideration "undoubtedly" impose the same sentence he imposed in 1953.

[1] "Q. .... You were convicted in Florida, were you not?

"A. Yes, I was.

"Q. For what?

"A. Automobile theft, breaking and entering.

"Q. What do you mean 'automobile theft, breaking and entering'?

"A. It boils down to this, I was 17 years old, broke into a man's garage, took his automobile, went joy riding in it, received a ten year sentence for it.

"Q. At the age of 17 you received a ten year sentence?

"A. Yes.

"Q. When was that?

"A. 1938.

"Q. You broke into a place and stole a car?

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_121-000000

"A. Yes.

"Q. What kind of car did you steal?

"A. '36 Ford.

"Q. Tell us about your other convictions.

"A. 1946 I broke into a jewelry store.

. . . . .

"Q. Where?

"A. New Orleans.

"Q. Night or day?

"A. Night."  Trial Transcript 161-162.

[2] "Q. Why did you use the name of Rick Bellew, if you did?

"A. Because I was a fugitive from Florida.

"Q. You were a what?

"A. A fugitive.

"Q. A fugitive from what?

"A. I had been sentenced to a term in Florida for the third conviction that you just brought up, and while waiting transportation to prison I was given a chance to-nobody was watching me, and I walked off down there and came out to California.

"Q. Where did you walk away from?

"A. I was having my appendix removed in the hospital ...."  Trial Transcript 166.

"... [H]e found me guilty and subsequently I escaped and came out here.  ..."  Sentencing Transcript 230.

led2                                    11

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_122-000000

> **UNITED STATES OF AMERICA, Plaintiff-Appellee v. ROBERT A. MACKAY, also known as Fat Boy, also known as Bob Mackay, also known as Fatman, Defendant-Appellant**
> **UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT**
> **757 F.3d 195; 2014 U.S. App. LEXIS 12049**
> **No. 13-10521**
> **June 26, 2014, Filed**

**Editorial Information: Prior History**

Appeal from the United States District Court for the Northern District of Texas.United States v. Mackay, 339 Fed. Appx. 367, 2009 U.S. App. LEXIS 15251 (5th Cir. Tex., 2009)

**Counsel**          For United States of America, Plaintiff - Appellee: Leigha Amy Simonton, Assistant U.S. Attorney, James Wesley Hendrix, Assistant U.S. Attorney U.S. Attorney's Office, Northern District of Texas, Dallas, TX.
                     Robert A. Mackay, also known as: Fat Boy, also known as: Bob Mackay, also known as: Fatman, Defendant - Appellant, Pro se. Fort Worth, TX.

**Judges:** Before SMITH, WIENER, and PRADO, Circuit Judges.

Opinion

**Opinion by:**          EDWARD C. PRADO

Opinion

{757 F.3d 196} EDWARD C. PRADO, Circuit Judge:

**I. INTRODUCTION AND BACKGROUND**

Defendant-Appellant Robert A. **Mackay** ("**Mackay**") pled guilty to conspiracy to distribute and to possession with intent to distribute marijuana-not cocaine. But the cover sheet of his presentence report ("**PSR**") erroneously listed his offense as conspiracy to possess with intent to distribute, and distribution of, *cocaine*, and so did his judgment. The clerical error had no effect on Mackay's conviction or sentence. Mackay's counsel neglected to object to the misstatement on the **PSR** under Federal Rule of Criminal Procedure 32(f) or to file a postjudgment motion to correct the misstatement in the judgment. Thirteen years after the entry of judgment, **Mackay** filed a pro se motion with the district court under Federal Rule of Criminal Procedure ("Rule") 36 to correct these errors. Rule 36 provides that the district court may "at any time correct a clerical error in a judgment, order, or other part of the record." The district court corrected the judgment, but refused to correct the misstatement on the **PSR** because it concluded the "**PSR** is not a court order that can be corrected under Rule 36," citing *United States v. Llanos*, 59 F. App'x 412, 414 (2d Cir. 2003).

**Mackay**, proceeding pro se, timely appealed, and this Court granted him leave to proceed in forma pauperis. **Mackay** argues the **PSR** is "part of the record," and that this error is not harmless because the Bureau of Prisons ("BOP") uses his **PSR** for classification and designations. The government concedes in its brief that Mackay's **PSR** contains a clerical error and that "the BOP records do reflect

A05_11CS                                   I

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 1:20-cv-20385-CMA   Document 7   Entered on FLSD Docket 03/02/2020   Page 139 of 196
Case 1:06-cr-20758-CMA   Document 665   Entered on FLSD Docket 04/04/2016   Page 124 of
136

a conviction for cocaine rather than marijuana," but argues the **PSR** is not a "part of the record" within the meaning of Rule 36, and that the error is harmless. We reverse.

## II. DISCUSSION

The district court had jurisdiction under 18 U.S.C. § 3231, and this Court has jurisdiction {757 F.3d 197} under 28 U.S.C. § 1291 to review the district court's final decision, denying Mackay's Rule 36 motion.

### A. Standard of Review

The parties dispute the applicable standard of review. **Mackay** contends the district court's decision should be reviewed for abuse of discretion, relying on our unpublished decision in *United States v. Harrill*, 91 F. App'x 356, 357 (5th Cir. 2004) (concluding "the district court did not abuse its discretion in denying Harrill's Rule 36 motion"). The government suggests the district court's decision turned on its interpretation of the phrase "other part of the record" as used in Rule 36, and its decision should therefore be reviewed de novo. The government also argues "harmless-error analysis applies," citing Rule 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

We review the district court's final order denying Mackay's Rule 36 motion de novo because the facts are undisputed, leaving only questions of law. *United States v. Clayton*, 613 F.3d 592, 595 (5th Cir. 2010); *see also United States v. Brown*, 303 F.3d 582, 589 (5th Cir. 2002) ("We review the district court's interpretation of [Federal] Rule [of Criminal Procedure] 16(a)(1) de novo.").

### B. The **PSR** as a "Judgment, Order, or Other Part of the Record"

Mackay's appeal raises a question of interpretation of Rule 36 that, the parties agree, presents an issue of first impression. **Mackay** contends that, as a matter of common sense, the district court should have corrected the clerical error in the **PSR** under Rule 36 because the **PSR** is a "part of the record." The government counters that two canons of construction govern this appeal: (1) *ejusdem generis* and (2) *generalia specialibus nonderogant*. Under *ejusdem generis* (Latin for "of the same kind"), the government contends "other part of the record" must be interpreted in reference to the preceding terms "judgment" and "order"; thus, the general language "other part of the record" is limited to court-created documents that are similar to orders and judgments. Because the **PSR** is "created by probation officers, not the court, and [is] submitted to the court and the parties under seal, rather than entered by the court like judgments and orders," the government argues the **PSR** is "more like documents filed by the parties than judgments or orders." Under *generalia specialibus nonderogant* (Latin for "the specific governs the general"), the government points to Rule 32, which specifically governs PSRs and requires the parties to file written objections to the **PSR** within fourteen days. The government argues this specific rule trumps the general terms contained in Rule 36. Thus, the government contends, "Mackay's lack of objection to the PSR's error within the time limit Rule 32 provides is fatal to his claim." **Mackay** did not address these arguments in his reply.

Courts "typically use *ejusdem generis* to ensure that a general word will not render specific words meaningless." *CSX Transp., Inc. v. Ala. Dep't of Revenue*, 131 S. Ct. 1101, 1113, 179 L. Ed. 2d 37 (2011). "This rule is based on the theory that, if the Legislature had intended the general words to be used in their unrestricted sense, it would have made no mention of the particular classes." *In re Bush Terminal Co.*, 93 F.2d 659, 660 (2d Cir. 1938). "The words 'other' or 'any other' following an enumeration of particular classes ought to be read as 'other such like' and to include only those of like kind or character." *Id.* (citing *United States v. Stever*, 222 U.S. 167, 32 S. Ct. 51, 56 L. Ed. {757 F.3d 198} 145 (1911), among other sources). "'But this is only a rule of construction to aid us in

A05_11CS                                           2

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

arriving at the real legislative intent. It is not a cast-iron rule, it does not override all other rules of construction, and it is never applied to defeat the real purpose of the statute." *United States v. Mescall*, 215 U.S. 26, 27, 30 S. Ct. 19, 54 L. Ed. 77, Treas. Dec. 30131 (1909).

With this principle in mind, we turn to the specific words "judgment" and "order" to interpret the general words "other part of the record." *Black's Law Dictionary* defines "judgment" as "[a] court's final determination of the rights and obligations of the parties in a case." *Black's Law Dictionary* 918 (9th ed. 2009). *Black's Law Dictionary* defines "order" as "1. A command, direction, or instruction," or "2. A written direction or command delivered by a court or judge. The word generally embraces final decrees as well as interlocutory directions or commands." *Id.* at 1206. We conclude that a **PSR** is "of like kind or character." *See Bush Terminal*, 93 F.2d at 660. Like a judgment, the **PSR** determines the rights and obligations of the defendant going forward. As the Eighth Circuit observed, the **PSR** "not only affects the length of the sentence, but might also determine the defendant's place of incarceration, chances for parole, and relationships with social service and correctional agencies after release from prison." *United States v. Brown*, 715 F.2d 387, 389 n.2 (8th Cir. 1983).1 Further, like an order, the **PSR** contains "directions or instruction" about the defendant's sentence. Because the **PSR** affects the rights and obligations of the defendant, we conclude it is of like kind or character as a "judgment" or "order" and that it is embraced by the terms "other part of the record" as used in Rule 36.

We reject the government's argument to the contrary because the government's focus on the PSR's creator contradicts our precedent interpreting identical language in the civil version of Rule 36. The government contends PSRs are not "part of the record" because they "are created by probation officers, not the court." The government does not cite authority in support of this interpretation, and we are aware of none. Further, the government's argument runs contrary to our interpretation of Rule 36's civil twin, Federal Rule of Civil Procedure 60(a) ("The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a *judgment, order, or other part of the record*." (emphasis added)).2 **{757 F.3d 199}** Under Federal Rule of Civil Procedure 60(a), we remanded for correction of a clerical error contained in a settlement agreement drafted by the parties. *Matter of W. Tex. Mktg. Corp.*, 12 F.3d 497, 498 (5th Cir. 1994). There, under the terms of a settlement agreement, the IRS overpaid Kellogg by over $500,000 due to a clerical error. *Id.* at 499-500. We explained that: "A mistake correctable under Rule 60(a) need not be committed by the clerk or the court and Rule 60(a) is even available to correct mistakes by the parties." *Id.* at 503-04. We held "the relevant test for the applicability of Rule 60(a) is whether the change affects substantive rights of the parties . . . or is instead a clerical error, a copying or computational mistake, which is correctable under the Rule." *Id.* at 504. "As long as the intentions of the parties are clearly defined and all the court need do is employ the judicial eraser to obliterate a mechanical or mathematical mistake, the modification will be allowed." *Id.* at 504-05. Here, it is undisputed the mistake is a clerical error, and therefore, remand for correction of the **PSR** is warranted.

The government's argument based on Rule 32 is also unavailing. Rule 32(f)(1) provides: "Within 14 days after receiving the presentence report, the parties must state in writing any objections, including objections to material information, sentencing guideline ranges, and policy statements contained in or omitted from the report." But, as the Supreme Court observed, "the ancient interpretive principle that the specific governs the general (*generalia specialibus non derogant*) applies only to *conflict* between laws of equivalent dignity." *Nitro-Lift Techs., L.L.C. v. Howard*, 133 S. Ct. 500, 504, 184 L. Ed. 2d 328 (2012) (emphasis added). Here, there is no conflict. The focus of Rule 32 is on substantive "material information" such as "sentencing guideline ranges" and "policy statements." Thus, there is no conflict between Rule 32's time limit to raise substantive objections to material information and Rule 36's provision that clerical errors may be raised "at any time." The relationship

A05_11CS                                                    3

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

between Rules 32 and 36 of the criminal rules is similar in this regard to that between Federal Rules of Civil Procedure 59(e) or 60(b), which impose time limits, and Federal Rule of Civil Procedure 60(a), which allows a motion at any time. *See* 11 Charles A. Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 2854 (3d ed. 2013) ("Errors of a more substantial nature are to be corrected by a motion under [Federal] Rules [of Civil Procedure] 59(e) or 60(b)"; whereas, "[Federal Rule of Civil Procedure 60](a) deals solely with the correction of errors that properly may be described as clerical or as arising from oversight or omission."). Because Rule 32 and Rule 36 address two separate categories of errors, they do not conflict. Thus, Rule 32 does not bear on our interpretation of Rule 36.

We note that our conclusion is consistent with persuasive authority. In *United States v. Knockum*, 881 F.2d 730 (9th Cir. 1989), the Ninth Circuit directed the district court "to forward a transcript of the sentencing hearing to the Bureau of Prisons to be attached to the presentence report on Knockum" under Rule 36. *Id.* at 733. The court explained:

> There is . . . a ready remedy for failure of the district court . . . to attach the transcript of the sentencing hearing to the presentence report. That remedy is provided by Fed. R. Crim. P. 36, which {757 F.3d 200} provides that clerical mistakes in judgments, orders or other parts of the record "may be corrected by the court at any time."*Id.* at 732. Our conclusion is also consistent with the view of a leading treatise,3 which states that, although Rule 36's civil twin, Federal Rule of Civil Procedure 60(a), "does not define what constitutes the 'record' for purposes of the application of the rule," "[t]he interests of judicial administration call for a broad interpretation of the term 'record,' and a few courts have given such a broad interpretation of the term." 12 James Wm. Moore et al., *Moore's Federal Practice* § 60.10 (3d ed. 2014) (collecting sources).

Further, the case relied on by the district court, *United States v. Llanos*, 59 F. App'x 412 (2d Cir. 2003), is not to the contrary, as the government itself concedes in its brief. There, the defendant argued his **PSR** erroneously stated he was an "alien" even though he is a United States national. *Id.* at 413. The Second Circuit rejected his appeal because Rule 36 was "not a proper vehicle for his motion." *Id.* at 414. The court explained that the defendant's citizenship status was disputed and was based on a citizenship application that had been denied. Thus, the court concluded the defendant's "claim involves more than the 'mechanical' correction of a clerical error." *Id.* at 414. Thus, *Llanos* is irrelevant because it concerned a material error, whereas all parties agree that the error here is clerical.

Finally, we note the limits of our holding. As under Federal Rule of Civil Procedure 60(a), "[l]et it be clearly understood that Rule [36] is not a perpetual right to apply different legal rules or different factual analyses to a case. It is only mindless and mechanistic mistakes . . . and no new additional legal perambulations which are reachable through" Rule 36. *See W. Tex. Mktg.*, 12 F.3d at 505.

Therefore, we conclude the **PSR** is a "part of the record" within the meaning of Rule 36. Further, we conclude this error is not harmless because it affects Mackay's substantial rights.4

## III. CONCLUSION

For the foregoing reasons, we REVERSE the district court and REMAND with instructions to the district court to correct the clerical error in the **PSR**.

### Footnotes

1

A05_11CS                                    4

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

The Eighth Circuit relied on an empirical law review article that the authors wrote under a contract with the Federal Judicial Center. The authors concluded that, if the defendant is incarcerated, the **PSR**

> is used in determining both the proper institution and the defendant's classification within the institution. The **[PSR]** also plays a crucial role in parole decisions and in aiding parole supervision when the defendant returns to the community. Finally, the **[PSR]** serves as a source of information beyond its use in the treatment and supervision of the offender: it is requested frequently by correctional, social service, and law enforcement agencies, by researchers, and by others who come into contact with the offender.

Stephen A. Fennell & William N. Hall, *Due Process at Sentencing: An Empirical and Legal Analysis of the Disclosure of Presentence Reports in Federal Courts*, 93 Harv. L. Rev. 1615, 1628 (1980) (footnotes omitted). Further, here, the government concedes in its brief that "some of Mackay's BOP records do reflect a conviction for cocaine rather than marijuana." The government goes on to argue **Mackay** has not exhausted his administrative remedies, but the availability of administrative remedies is not in the record on appeal and is therefore not properly before this Court.

2

Rule 36 and Federal Rule of Civil Procedure 60(a) codified the same existing common law rule. Rule 36, advisory committee notes ("This rule continues existing law. The rule is similar to rule 60(a) of the Federal Rules of Civil Procedure." (citations omitted)).

3

The advisory committee notes to Federal Rule of Civil Procedure 60(a) state: "The amendment incorporates the view expressed in . . . *Moore's Federal Practice*."

4

*See supra* note 1 and accompanying text.

A05_11CS                           5

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_127-000000

---

## 92 LED 1690, 334 US 736  TOWNSEND v. BURKE

**FRANK TOWNSEND, Petitioner,**

*vs.*

**C. J. BURKE, Warden, Eastern State Penitentiary**

### [92 L Ed 1690] (334 US 736-741.)

[No. 542.]

**Argued April 27, 1948.  Decided June 14, 1948.**

### SUMMARY

One held virtually incommunicado for a period of forty hours after his arrest, during which he was several times interrogated but not beaten, misused, threatened or intimidated, was convicted in a state court on his plea of guilty.  He was not offered or advised of his right to assistance of counsel.  In imposing sentence the court, either through misinformation or misreading of the record, acted on certain assumptions concerning his criminal record which were materially untrue.

Six members of the Supreme Court, in an opinion by *Jackson*, J., held (1) that in the absence of any allegation that it induced the plea of guilty, any illegality in holding him incommunicado was immaterial; (2) that the disadvantage from the absence of counsel who might have corrected the court's mistaken assumptions regarding his criminal record amounted to a failure to accord due process.

*Vinson*, Ch. J., and *Reed* and *Burton*, JJ., dissented without opinion.

HEADNOTES

### Classified to U.S. Supreme Court Digest, Lawyers' Edition

**Constitutional Law,  § 831 - due process - conviction on plea of guilty by one held incommunicado.**

1. The holding of one charged in the state courts with crime virtually incommunicado for a period of 40 hours between his arrest and plea of guilty, during which he was subjected to

LED                                        1

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

questioning from time to time, does not, though illegal, violate his constitutional rights, where it does not appear that it induced the plea (distinguishing McNabb v. United States, 318 US 332, 87 L ed 819, 93 S Ct 608, and Haley v. Ohio, 332 US 596, ante, 224, 68 S Ct 302).

**Criminal Law, § 46 1/2 - due process - failure to offer assistance of counsel.**

2. Although failure to offer, to one charged in a state court with a non-capital offense, assignment of counsel, or to advise him of his right to counsel before accepting a plea of guilty, may not render his conviction invalid for lack of due process, the requirement of due process is violated where while disadvantaged by lack of counsel he was sentenced under the basis of assumptions concerning his criminal record which were materially untrue.<*pg. 1691>

**Constitutional Law, § 831 - due process - erroneous judgment.**

3. An erroneous judgment of a court in a criminal case, based on a scrupulous and severe search for the truth, may yet be due process of law.


ON WRIT of Certiorari to the Supreme Court of the Commonwealth of Pennsylvania to review the denial of a writ of habeas corpus sought by one alleging that his conviction of crime was in violation of constitutional rights.

*Held:*

Reversed.

### APPEARANCES OF COUNSEL ARGUING CASE

*Archibald Cox,* of Boston, Massachusetts, argued the cause and filed a brief for petitioner:

Petitioner was arraigned and sentenced without due process of law.

In reviewing a conviction alleged to result from the denial of the fundamental right of an opportunity to meet the accusation against the accused, this court will not confine itself to the judicial proceeding but will scrutinize the prior conduct of the state authorities in dealing with the petitioner to ascertain whether it vitiated a proceeding which was formally correct. Frank v. Mangum, 237 US 309, 327, 59 L ed 969, 980, 35 S Ct 582; Smith v. O'Grady, 312 US 329, 85 L ed 859, 61 S Ct 572; Mooney v. Holohan, 294 US 103, 79 L ed 791, 55 S Ct 340, 98 ALR 406; Carter v. Illinois, 329 US 173, 175, 91 L ed 172, 174, 67 S Ct 216. Cf. Von Moltke v. Gillies, 332 US 708, ante, 309, 68 S Ct 316; Brown v. Mississippi, 297 US 278, 80 L ed 682, 56 S Ct

LED                                              2

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_129-000000

461; Malinski v. New York, 324 US 401, 89 L ed 1029, 65 S Ct 781.  See also Moore v. Dempsey, 261 US 86, 67 L ed 543, 43 S Ct 265.

The fundamental unfairness which vitiates the sentence under which petitioner is held resulted from the concurrence of three factors:  (a) the complexity of the accusations; (b) the misconduct of the police; and (c) the indifference of the trial court towards petitioner's rights.  See Williams v. Kaiser, 323 US 471, 89 L ed 398, 65 S Ct 363.

The misconduct of the state authorities increased petitioner's need for the assistance of counsel. See McNabb v. United States, 318 US 332, 342, 343, 87 L ed 819, 825, 826, 63 S Ct 608; Haley v. Ohio, 332 US 596, ante, 224, 68 S Ct 302.

The trial court omitted any measures which might have protected petitioner against unfairness.

*Franklin E. Barr,* of Philadelphia, Pennsylvania, argued the cause, and, with John H. Maurer, also of Philadelphia, Pennsylvania, filed a brief for respondent:

In crimes other than murder, accused has a right to be heard by counsel, but it has never been the law that he must be supplied with counsel.  Com. ex rel. McGlinn v. Smith, 344 Pa 41, 24 A2d 1.

When a defendant pleads guilty the court is not bound to appoint counsel to represent him.  Com. ex rel. Curtis v. Ashe, 139 Pa Super 417, 12 A2d 500; Com. ex rel. Cook v. Ashe, 144 Pa Super 1, 19 A2d 532; Com. ex rel. Billings v. Ashe, 144 Pa Super 209, 211, 19 A2d 749; Com. ex rel. Shaw v. Smith, 147 Pa Super 423, 24 A2d 724; Com. ex rel. Uveges v. Ashe, 161 Pa Super 58, 61, 62, 53 A2d 894.

## OPINION

Mr. Justice *Jackson* delivered the opinion of the Court.

The Commonwealth of Pennsylvania holds petitioner prisoner under two indeterminate sentences, not exceeding 10 to 20 years, upon a plea of guilty to burglary and robbery.  On review here of the State Supreme Court's denial of habeas corpus,[1] the prisoner demands a discharge by this Court on federal constitutional grounds.<*pg. 1692>

Petitioner, while a fugitive, was indicted on June 1, 1945, for burglary and armed robbery. Four of his alleged accomplices had been arrested on May 18, 1945, and signed a joint confession,

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_130-000000

while a fifth had been arrested on May 21, 1945, and had also confessed.  Petitioner was arrested on June 3, 1945, and confessed on June 4.  On June 5, after pleading guilty to two charges of robbery and two charges of burglary and not guilty to other charges, he was sentenced.

[1]Petitioner now alleges violation of his constitutional rights in that, except for a ten-minute conversation with his wife, he was held incommunicado for a period of 40

[334 US 738]

hours between his arrest and his plea of guilty.  He does not allege that he was beaten, misused, threatened or intimidated, but only that he was held for that period and was several times interrogated.  He does not allege that the questioning was continuous or that it had any coercive effect.

The plea for relief because he was detained, as he claims, unlawfully is based on McNabb v. United States, 318 US 332, 87 L ed 819, 63 S Ct 608.  But the rule there applied was one against use of confessions obtained during illegal detention and it was limited to federal courts, to which it was applied by virtue of our supervisory power.  In this present case no confession was used because the plea of guilty in open court dispensed with proof of the crime.  Hence, lawfulness of the detention is not a factor in determining admissibility of any confession and if he were temporarily detained illegally, it would have no bearing on the validity of his present confinement based on his plea of guilty, particularly since he makes no allegation that it induced the plea.

Petitioner also relies on Haley v. Ohio, 332 US 596, ante, 224, 68 S Ct 302, in which this Court reversed a state court murder conviction because it was believed to have been based on a confession wrung from an uncounseled 15-year-old boy held incommunicado during questioning by relays of police for several hours late at night.  Even aside from the differing facts, that case provides no precedent for relief to this prisoner since, as has been said, no confession was used against him, and he does not allege that his pleas of guilty resulted from his allegedly illegal detention.

[2]Petitioner also says that when he was brought into court to plead, he was not represented by counsel, offered assignment of counsel, advised of his right to counsel or instructed with particularity as to the nature of the crimes with which he was charged.  This, he says, under the circumstances deprived his conviction and sentence

[334 US 739]

of constitutional validity by reason of the due process clause of the Fourteenth Amendment.[2]

Only recently a majority of this Court reaffirmed that the due process clause of the Fourteenth

LED                                                    4

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Amendment does not prohibit a State from accepting a plea of guilty in a non-capital case from an uncounseled defendant. Bute v. Illinois, 333 US 640, ante, 986, 68 S Ct 763. In that, and in earlier cases, we have indicated, however, that the disadvantage from absence of counsel, when aggravated by circumstances showing that it resulted in the prisoner actually being taken advantage of, or <*pg. 1693> prejudiced, does make out a case of violation of due process.

The proceedings as to this petitioner, following his plea of guilty, consisted of a recital by an officer of details of the crimes to which petitioner and others had pleaded guilty and of the following action by the court: [Italics supplied].

"By the Court (addressing Townsend):

"Q. Townsend, how old are you?

"A. 29.

"Q. You have been here before, haven't you?

"A. Yes, sir.

"Q. 1933, larceny of automobile. 1934, larceny of produce. 1930, larceny of bicycle. 1931, entering to steal and larceny. 1938, entering to steal and larceny in Doylestown. Were you tried up there? No, no, Arrested in Doylestown. That was up on Germantown

[334 US 740]

Avenue, wasn't it? You robbed a paint store.

"A. No. That was my brother.

"Q. You were tried for it, weren't you?

"A. Yes, but I was not guilty.

"Q. And 1945, this. 1936, entering to steal and larceny, 1350 Ridge Avenue. Is that your brother too?

"A. No.

"Q. 1937, receiving stolen goods, a saxophone. What did you want with a saxophone? Didn't hope to play in the prison band then, did you?

"The Court: Ten to twenty in the Penitentiary."

The trial court's facetiousness casts a somewhat somber reflection on the fairness of the

LED                                                    5

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

proceeding when we learn from the record that actually the charge of receiving the stolen saxophone had been dismissed and the prisoner discharged by the magistrate. But it savors of foul play or of carelessness when we find from the record that, on two others of the charges which the court recited against the defendant, he had also been found not guilty. Both the 1933 charge of larceny of an automobile, and the 1938 charge of entry to steal and larceny, resulted in his discharge after he was adjudged not guilty. We are not at liberty to assume that items given such emphasis by the sentencing court, did not influence the sentence which the prisoner is now serving.

We believe that on the record before us, it is evident that this uncounseled defendant was either overreached by the prosecution's submission of misinformation to the court or was prejudiced by the court's own misreading of the record. Counsel, had any been present, would have been under a duty to prevent the court from proceeding on such false assumptions and perhaps under a duty to seek remedy elsewhere if they persisted. Consequently, on this record we conclude that, while disadvantaged by

[334 US 741]

* lack of counsel, this prisoner was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. Such a result, whether caused by carelessness or design, is inconsistent with due process of law, and such a conviction cannot stand.

We would make clear that we are not reaching this result because of petitioner's allegation that his sentence was unduly severe. The sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus. It is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process.

[3]Nor do we mean that mere error in resolving a question of fact on a plea of guilty by an uncounseled defendant in a non-capital case would necessarily indicate a want of due process of law. Fair prosecutors and conscientious judges sometimes <*pg. 1694> are misinformed or draw inferences from conflicting evidence with which we would not agree. But even an erroneous judgment, based on a scrupulous and diligent search for truth, may be due process of law.

In this case, counsel might not have changed the sentence, but he could have taken steps to see that the conviction and sentence were not predicated on misinformation or misreading of court records, a requirement of fair play which absence of counsel withheld from this prisoner.

LED                                             6

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

Case 1:20-cv-20385-CMA   Document 7   Entered on FLSD Docket 03/02/2020   Page 149 of 196
Case 1:06-cr-20758-CMA   Document 665   Entered on FLSD Docket 04/04/2016   Page 134 of
136

Reversed.

**The *Chief Justice*, Mr. Justice *Reed*, and Mr. Justice *Burton*, dissent.**

## FOOTNOTES

[1] Respondent raised no procedural or jurisdictional issues in this Court or in the State Supreme Court. Since petitioner has throughout based his claim for relief solely on alleged deprivation of federal constitutional rights, we assume that those questions were considered by the Supreme Court of Pennsylvania and are therefore open here. Herndon v. Lowry, 301 US 242, 247, 81 L ed 1066, 1069, 57 S Ct 732.

[2] The Supreme Court of Pennsylvania has frequently held that the state constitutional provision according defendants the right to be heard by counsel does not require appointment of counsel in non-capital cases. See, for example, Com. ex rel. McGlinn v. Smith, 344 Pa 41, 24 A2d 1; Com. ex rel. Withers v. Ashe, 350 Pa 493, 39 A2d 610. See also Betts v. Brady, 316 US 455, 465, 86 L ed 1595, 1603, 62 S Ct 1252. The Pennsylvania statutes require only that destitute defendants accused of murder shall be assigned counsel. Act of March 22, 1907, 19 Pa Stat Anno § 784.

LED                           7

© 2016 Matthew Bender & Company, Inc., a member of the LexisNexis Group. All rights reserved. Use of this product is subject to the restrictions and terms and conditions of the Matthew Bender Master Agreement.

A0091980_134-000000

CERTIFIED MAIL

7014 1820 0002 1285 8852

Roy Belfast Jr 76556-004
Federal Correctional Complex - USP 2
P.O. Box 1055, Coleman FL 33521

1006

33128

U.S. POSTAGE
COLEMAN, FL
MAR 30, 16
AMOUNT
$0.00
R2305H127076-99

Clerk of Courts Room 5
Wilkie Ferguson U.S. Civil House
400 North Miami Ave.
Miami, FL 33128

By





A0091980_135-000000

FILE
MA





RECEIVED

MAR 2 9 2016

A0091980_136-000000

From: Roy Belfast Jr                                    3/7/16
Inmate: 76556-004
Criminal Case #: 06-20758-CR-CMA
Address: Federal Correctional Complex - USP1
P.O. Box 1033, Coleman Fl 33521

FILED by _____ D.C.
APR 04 2016
STEVEN M. LARIMORE
CLERK U.S. DIST. CT.
S.D. of FLA - MIAMI

To: District Court Judge Cecilia Altonaga


Honorable Altonaga,
                      I recently dispatched a letter to
prosecutors Karen Rochlin, Caroline Heck Miller, via my
mother. Ms. Miller signed her return reciept acknowledging
reciept of her copy of the letter. In it I underscore
the clear prosecutorial misconduct done by them both
most especially Karen Rochlin, and secondly the interest
on my part for a resolution quitely from the prying eyes
of the public.


        Rochlin clearly knew prior to going before a Grand
Jury in the superseding indictment, as well as the
second superseding indictment that co-conspirators B,C,D,
were unindictable, as they did not meet Statutes
jurisdictional section 18 U.S.C. § 2340 A (b)(1),(2); The
other clear realities being that alleged victims were not
U.S. citizens, nor were they green card holders, not to
mention co-conspirators B,C,D were instrumentalities of
the Liberian State putting the indictment

A0091980_1-000000

in violation of the Foreign Sovereign Immunities Act, as none of them meet the FSIA exceptions under 28 U.S.C. § 1605-1607.

Roehlin committed further perjury on the certificate of Attorney. I know now that the increased charges under the superseding and second superseding indictment charges vuds designed to induce a plea, that the U.S. Government could use as a foreign policy instrument in Liberia to target the Taylor Regime members, putting them under U.S. jurisdiction, had I taken a plea ~~xxxx~~ which they attempted on the eve of trial.

The trial record is absent of any evidence to prove 18 U.S.C. § 2340 A (c), no evidence was ever entered under 801 (d)(2)(E), no depo's or affidavits, firmly placing petitioner in the orbit of a "one man" conspiracy. Nor can any other judicial standard be used, this is a clear case of the government willingly violating Congression Intent, with extreme prejudice.

They knowingly, willingly, and intentionally betrayed the "Public Trust", creating "hypothetical Jurisdiction", "Advisory Opinion", and "Hypothetical Judgment"

2

A0091980_2-000000

I have taken additional steps if indeed the prosecutors fail to move for an internal review by the United States Attorneys Office under Wilfredo Ferrer, of the prosecution that violated 18 U.S.C. § 4001(a)

1. I have made FOIA requesting that DOJ/EOUSA challenging the evidence used to find me guilty under count 1  18 U.S.C. § 2340A(c)  (Tracking # TUIH 8200 0002 1285 8876)

2. A Privacy Act Request has been made under "Correction of Records" regarding the prosecution memorandum, supporting affidavit, case initiation report, regard the Conspiracy to Commit Torture count, as there is no evidence within the judicial record to support the charge ; this error led to misappropriations, and fraud by Karen Rochlin and others. Tracking no. Have not recieved yet.

3. Criminal Investigation request (which has been launched) under Program Statements 3420.11 and 1210.24, based upon concealment, failure to report and investigate by Bureau of Prison Officials, based upon the destruction and false statements by U.S.P.O Orlando Burgos in his Feb. and Aug responses in a federal investigation launched under Program Statements 1330.18, 5800.11 (15)(c) [now 5800.17 (11)(c)] and 28 C.F.R 542.10 et seq., due to a violation of 18 U.S.C. § 4001.

A0091980_3-000000

**4.** The month of march, my family will be contacting the F.B.I., Civil Rights Divison, Attorney Generals Office, Office of Inspector, Bureau of Prisons Office of Internal Affairs, Director of Bureau of Prisons Charles Samuels, on the fraud, conspiracy against rights, 4th 14th 18 U.S.C. § 4001(a) violations, misappropriations by D.O.J officials and the United States Probation of the Southern District of Florida

5. My congress person and senator's constituency services will be contacted to reinforce the call for a criminal probe/investigation on prosecutorial misconduct, and "fraud upon the court" that took place, which led to the violation of the citizens non-detention act 18 U.S.C. § 4001(a).

6. I'm due to file a motion before the Chief Judge of the Southern District of Florida, on the prosecutor misconduct in my case

Judge I know that your powerless in the federal executive area, I am demonstrating all the efforts being made to move by myself to get this overturned, but more importantly to encourage a review by the United States Attorney Office. The fraud that they have been perpetuating is unsustainable, this no longer makes sense.

A0091980_4-000000

Judge Altonaga the last thing I want to do is go public. I have generated a couple hundred pages of documents since 2014 outlining how my right to redress under the 1st Amendment has been denied to me. You do have the power to conduct a judicial review of the record, but I believe that the government should take the lead on this.

I have made it clear Judge I have no intention on remaining in the United States or remaining a United States Citizen. I would like to resolve this on amicable terms, not with the Gov. kicking screaming. In fact upon my return to Africa I am prepared to contribute in any way to U.S. counter terrorism efforts. I'm not at odds with the U.S. Gov., I am indifferent to this illegal, unlawful incarceration

Ma'am I request you support an internal review by the United States Attorneys Office, regarding case no. 06-20758-CR-CMA-ALT

Thankyou for your time and attention

A0091980_5-000000



Roy M. Belfast 76556-004/Solitary Confinement, SHU
Federal Correctional Complex - USP 1, P.O. Box
Coleman FL 33521

USMS INSPECTED

RECEIV

Attn: Hon. Judge Cecilia Altonaga
Wilkie Ferguson Federal Courthouse
400 N. Miami Ave
Miami, Fl 33128, USA

"LEGAL"
MAIL

"LEGAL" MAIL"

U.S. POSTAGE
COLEMAN, FL
33521
$0.00

MAR 22 2016
RECEIVED

"LEGAL MAIL"

A0091980_6-000000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 06-20758-CR-ALTONAGA(s)(s)

UNITED STATES OF AMERICA

v.

ROY M. BELFAST, JR.
_____/

UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT BELFAST'S
MOTION FOR REVIEW AND OR THE AMENDMENT OF THE PSR

The United States of America respectfully submits that
defendant Roy M. Belfast's Motion For Review And Or The Amendment Of
The PSR, DE 665, should be dismissed for lack of jurisdiction. Insofar
as the defendant attempts to attack a conviction which became final
years ago, he cannot establish jurisdiction over claims which are
otherwise untimely and which result, not for the first time, from
profoundly erroneous legal and factual misconceptions.  Insofar as
the defendant takes issue with his failure to obtain administrative
remedies from the Bureau of Prisons (BOP), he has raised his
objections in the wrong venue, relied on authorities abrogated by
later regulations, and has not presented a valid basis for any relief.
For the reasons explained below, the Court lacks jurisdiction to
consider the motion, which is also meritless.

INTRODUCTION

A second superseding indictment charged the defendant with

1

A0091980_1-000000

conspiring to commit acts of torture, in violation of 18 U.S.C. §2340A(c); conspiring to use and carry a firearm during and in relation to a crime of violence, pursuant to 18 U.S.C. §924(o); committing acts of torture in violation of 18 U.S.C. §2340A; and using and carrying a firearm during and in relation to a crime of violence, pursuant to 18 U.S.C. §924(c). DE 257.   While the indictment addressed the defendant's role in conspiracies to violate torture and firearms statutes, only the defendant was charged.

The statute criminalizing torture provides that:

> Whoever *outside the United States* commits or attempts to commit torture shall be fined under this title or imprisoned not more than 20 years
> . . .

18 U.S.C. §2340A(a) (emphasis added).   Congress has also made conspiring to commit torture an offense.   18 U.S.C. §2340A(c).

In a paragraph separate from both of the statutory provisions establishing the substantive offense of torture and the corresponding conspiracy offense, Section 2340A provides grounds for jurisdiction where:

> (1) the alleged offender is a national of the United States; or

> (2) the alleged offender is present in the United States, irrespective of the nationality of the victim or the alleged offender.

18 U.S.C. §2340A(b).

Count 1 of the second superseding indictment, which alleged that

2

A0091980_2-000000

the defendant conspired to commit torture, included a section describing acts in furtherance of the conspiracy. DE 257:4-11. In accordance with Department of Justice policy, neither the victims referenced in this section nor unindicted co-conspirators were identified by name. Certain specific unindicted co-conspirators were referred to with the letters B, C, or D. In a letter dated September 10, 2007, the United States provided the defendant's counsel with the names of the unindicted co-conspirators referenced in the indictment as co-conspirator B, C, and D.

Before his trial, the defendant moved to dismiss the charges against him on various constitutional grounds and under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. §1604 *et seq.* DE 38. This Court rejected his arguments, including those based on the FSIA. DE 148. The order denying the motion to dismiss cited *United States v. Noriega*, 117 F.3d 1206, 1212 (11th Cir. 1997) in connection with the observation that the FSIA did not apply in criminal cases. DE 148:24.

The defendant's jury trial went forward in September, 2008. During the trial, the United States presented evidence of the Court's jurisdiction establishing that the defendant was a natural-born United States citizen and that he was present in the United States. DE 587:66 (the defendant was born in the United States); GX CE 5 (defendant's birth certificate); DE 591:36, 38 (defendant's

A0091980_3-000000

statement to defense attaché that he was American); GX CE 10 (message from defendant stating he is American); GX CE 11 (electronic mail message from defendant stating "I am an American first"); DE 595:113-16, 155-158, 170 (defendant's arrest at Miami International Airport and statement that he was born in Boston, Massachusetts); GX CE 1 (defendant's United States passport); GX CE 16 (defendant's arrest warrant executed in the Southern District of Florida).

Evidence that the defendant committed and conspired to commit the charged torture and firearms offenses is not, for the most part, relevant to his pending claims, but has been summarized in the Eleventh Circuit's opinion affirming his conviction. *United States v. Belfast*, 611 F.3d 783 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1511 (2011). During presentation of its case-in-chief, however, the United States elicited evidence that co-conspirator "D," David Compari, was Gambian, and that co-conspirator C, Charles Taylor, was born in Africa.   DE 586:34;  DE 587:132;  DE 590:174;  595:176. Nothing in record from the defendant's trial suggests that any conspirator, referenced in the indictment or not, was a United States citizen or present in the United States.

The jury found the defendant guilty on all counts of the indictment. DE 581.   Prior to sentencing, the defendant filed objections to the PSR.   DE 614.   In those objections, the defendant disputed the choice of the guideline offense section used to

4

determine his sentencing range, and objected to the PSR's application of rules for grouping multiple counts of conviction. He also sought to reduce his exposure under the guidelines by seeking a variance based on factors enumerated in 18 U.S.C. § 3553(a). Nothing in his objections addressed the PSR's description of the offense conduct, and no objection claimed that any facts were omitted from that description. None of the objections the defendant makes now were raised before sentencing pursuant to Fed.R.Crim.P. 32 or otherwise. This Court imposed a sentence of incarceration for 1164 months. DE 618.

The defendant appealed his conviction and sentence. His direct appeal, in summary, challenged congressional authority to enact Sections 2340 and 2340A; argued that the conspiracy provision of Section 2340A(c) violated international law; disputed the extraterritorial application of Section 924(c); protested numerous purported evidentiary, discovery and instructional errors; objected that the court unfairly deprived the defense of an interpreter's services; and claimed that the court misapplied the United States Sentencing Guidelines.

The court of appeals affirmed the defendant's conviction and sentence. *Belfast*, 611 F.3d 783 (11th Cir. 2010), *cert. denied*, 131 S.Ct. 1511 (2011). The Supreme Court denied his petition for *certiorari* on February 22, 2011. 131 S.Ct. 1511.

5

A0091980_5-000000

After his conviction was affirmed, the defendant collaterally attacked his conviction and sentence pursuant to 28 U.S.C. §2255.[1] CIVDE 1. He contended that his trial and appellate counsel were ineffective for failing to challenge a jury instruction defining action under color of law on the ground that it resulted in a fatal variance from the indictment, appearing to claim as well that the United States presented insufficient evidence to prove such action and thus to convict. The defendant also claimed ineffective assistance of appellate counsel because counsel did not pursue relief for the absence of a jury instruction addressing the object of the conspiracy to torture. The defendant objected that his trial counsel's supposed lack of hearsay objections to the October 8, 2000 testimony of witness Wesley Sieh constituted ineffective assistance. In a supplemental filing, CIVDE 6, the defendant attempted to raise additional claims that appellate counsel was ineffective for challenging certain "hearsay" statements in a cursory fashion, and for not challenging the Section 924(c) conviction because the United States did not offer proof that the charged firearms affected interstate or foreign commerce. He also expanded his color-of-law claim, applying it to trial as well as appellate counsel as grounds for finding ineffective assistance. All of his arguments were rejected, first in a magistrate judge's report and recommendation,

---

1 The collateral attack was docketed as Case No. 12-20754-CIV-ALTONAGA, and filings from that case are referred to herein with the prefix "CIVDE."

6

CIVDE 13, and then in an order from this Court. CIVDE 21.  That order denied a certificate of appealability.  The court of appeals denied his application for reconsideration of that order. CIVDE 29.

After the conclusion of his collateral attack, the defendant moved for judicial notice of arguments rejected before the verdict, during his direct appeal, and in connection with his Section 2255 petition, along with arguments he raises now in the motion at bar. DE 657.  This Court denied the defendant's application on the basis that "There are no proceedings pending in this closed case for which the Court needs to take judicial notice."  DE 658.

The defendant next submitted a cover letter and letter to the Court, DE 659, 660, insisting that his letter not be construed as a motion, DE 660:1, and outlining contentions similar to those in the motion at issue here, DE 665.[2]  The defendant later sent the Court a copy of what appears to be a demand letter addressed to the prosecution, DE 663, followed by another letter addressed to the Court, DE 664, where the defendant objected to purported errors in his PreSentence Investigation Report (PSR).

The defendant has now submitted the above-captioned motion, DE 665, and this Court has ordered the United States to respond.  DE 666.  In the motion, the defendant attempts to challenge the sufficiency of the evidence supporting his conviction, and asks this

---

2 A party seeking relief from a United States District Court, however, "must do so by motion."  Fed.R.Crim.P. 47(a).

A0091980_7-000000

Court to vacate his conviction.  He does so in the context of seeking to correct supposed errors in his PSR.

More specifically, the defendant protests that at trial the United States failed to prove, and the PSR does not show, facts supporting his conviction for conspiracy to torture because no facts were alleged or proved that: 1) the offense conduct occurred in the United States; 2) victims of the offense were United States citizens or residents; 3) co-conspirators had minimum contacts with the United States or were persons as defined in the fourteenth amendment; 4) the conspiracy was formed or had effects in the United States; and 5) the case was subject to an exemption under the FSIA.

The defendant also objects that his trial counsel erred by seeking to apply the FSIA to the defendant himself rather than his unindicted co-conspirators.  He raises various claims of prosecutorial misconduct, arguing that the prosecution somehow committed fraud because the defendant's conspirators were not United States citizens and because federal funds were used to further prosecution of his case.  He accuses a United States Probation Officer of fraud, apparently for no more than his disagreement with the defendant's assertions regarding the validity of his conviction. He also accuses BOP officials of fraud based on their response to the defendant's pursuit of administrative remedies premised on challenges to his conviction similar to those he makes here.

8

A0091980_8-000000

It appears that the defendant is attempting to fashion all of his claims under the auspices of the Privacy Act of 1974, 5 U.S.C. § 552a et seq., and related authorities. Thus, he asks the Court to amend purported inaccuracies in his PSR, and also demands an unspecified writ; vacation of his conviction; and investigation of prosecutors, a Probation Officer, and the BOP conducted by the Federal Bureau of Investigation, the same agency he has elsewhere accused of misconduct. DE 664:6; 670:2.

Regardless of how the defendant characterizes his claims, insofar as they challenge the validity of his conviction, they amount to an untimely and unauthorized successive application under 28 U.S.C. § 2255 which the Court lacks jurisdiction to adjudicate, in addition to having no legal or factual merit. Insofar as the defendant challenges the conditions of his confinement or the denial of administrative remedies under the Privacy Act or otherwise, he seeks relief in an inappropriate venue under authority that is no longer valid. Accordingly, as explained below, his motion should be dismissed for lack of jurisdiction and otherwise denied.

LEGAL ANALYSIS

I.  This Court Lacks Jurisdiction Over The Defendant's Motion

Courts routinely construe prisoner petitions without regard for labeling to determine what if any relief the petitioner is entitled to.  *E.g.*, *United States v. Harris*, 546 Fed.Appx. 898, 900 (11th Cir. 2013); *Chambers v. United States*, 106 F.3d 472, 474 (2d Cir. 1997).

9

Although the defendant captions his pending motion as one seeking to amend his PSR, in the body of his motion, he challenges the validity of his conviction and sentence, claiming they are based on "misinformation of a constitutional magnitude[,]" DE 665:1. He asserts that the Court lacked jurisdiction over his case, challenges the sufficiency of the evidence supporting his conviction, invokes the due process clause of the "fourth" (presumably meaning the fifth) and fourteenth amendments, claims trial counsel made the wrong argument when seeking dismissal of the indictment, and objects that the Court relied on erroneous information at sentencing. He asks the Court to vacate his conviction.

Such post-conviction challenges to the legality of a conviction should be brought in a motion to vacate under 28 U.S.C. §2255. *Gonzalez v. Crosby*, 545 U.S. 524, 530-32 (2005)(an action collaterally attacking the validity of the conviction or imposition of the sentence should be filed as a motion to vacate under Section 2255); *United States v. Jordan*, 915 F.2d 622, 629 (11th Cir. 1990)(same); *United States v. Spellissy*, 346 Fed.Appx. 446, 450-51 (11th Cir. 2009)(a petitioner making a collateral challenge to his conviction on any ground other than newly discovered evidence demonstrating actual innocence may do so only through a § 2255 motion). In *Spellissy*, the Eleventh Circuit explained that once a conviction has been affirmed on direct appeal, any argument challenging that conviction, including arguments dealing with prosecutorial

10

A0091980_10-000000

misconduct, ineffective assistance of counsel, and sufficiency of the evidence, can only be raised in the context of a proper § 2255 motion. Because these are precisely the kind of claims the defendant makes, his motion is properly construed as an application under that statute. A motion to amend a PSR may be construed as a § 2255 petition or a § 2241 petition directed at an agency's use of supposedly false information. *United States v. Peloso*, 824 F.2d 914, 915 (11th Cir. 1987).

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), however, requires that:

> Before a second or successive application permitted by this section is filed in the district court, the applicant shall move in the appropriate court of appeals for an order authorizing the district court to consider the application.

28 U.S.C. § 2244(b)(3)(A).

A three-judge panel of the court of appeals may authorize a second or successive application only if it presents a claim not previously raised (a) that relies on a new retroactive rule of constitutional law that was previously unavailable, or (b) for which the factual predicate could not have been previously discovered through the use of due diligence and the facts underlying the claim would establish by clear and convincing evidence that no reasonable fact finder would have found the petitioner guilty but for the constitutional error. 28 U.S.C. § 2244(b)(2)(A), (B)(I)-(ii); 2244(b)(3)(B); *see* 28 U.S.C. § 2255(h). If a petitioner files a second

11

or successive habeas petition without first seeking permission from the appellate court, however, the District Court is "without jurisdiction to entertain it." *Burton v. Stewart*, 549 U.S. 147, 153 (2007).

The defendant has already sought relief under § 2255. That petition was denied. The claims in the instant motion attacking his conviction could have been raised in the earlier § 2255 motion, but were not. Indeed, the defendant's claims could have been raised during his trial or sentencing, but were not. Critically, the defendant has not sought, let alone obtained, permission from the appellate court to submit those claims. Thus, he has filed a successive and unauthorized § 2255 petition, leaving the Court without jurisdiction over his ill-conceived motion. *United States v. McCray*, 567 Fed.Appx. 859, 860 (11th Cir. 2014)(district court lacked jurisdiction over post-conviction motion to amend PSR filed after collateral attack); *United States v. Greenwood*, 322 Fed.Appx. 693, 694-95 (11th Cir.)(same), *cert. denied*, 558 U.S. 929 (2009). Accordingly, the motion should be dismissed.

## II. The Defendant May Not Seek Relief Under 28 U.S.C. § 2241

The defendant seeks an unspecified writ. DE 665:15. He may not, however, avoid the restrictions and jurisdictional bars to Section 2255 claims by seeking a writ of habeas corpus under § 2241, assuming that is the writ he demands. To seek relief under § 2241, the defendant must establish that the remedy provided under Section 2255

A0091980_12-000000

is "inadequate or ineffective to test the legality of his detention."

28 U.S.C. § 2255(e). The petitioner bears the burden of presenting

evidence that affirmatively shows the Section 2255 remedy is

inadequate or ineffective. *Brown v. Warden,* No. 15-11335 at *4

---F.3d --- (11th Cir. Apr. 1, 2016)(available at 2016 WL 1273019).

Restrictions on Section 2255 motions, standing alone, do not render

Section 2255 "inadequate or ineffective" within the meaning of the

savings clause. *See Darby v. Hawk-Sawyer,* 405 F.3d 942, 945 (11th

Cir.2005).

To challenge his sentence, the defendant must establish that

he meets each of five specific requirements a Section 2241 petitioner

must satisfy to proceed under Section 2255(e), that: (1) throughout

the petitioner's sentencing, direct appeal and first § 2255

proceeding, this Court's precedent had specifically and squarely

foreclosed the claim raised in the § 2241 petition; (2) after the

petitioner's first § 2255 proceeding, the Supreme Court overturned

that binding precedent; (3) that Supreme Court decision applies

retroactively on collateral review; (4) as a result of that Supreme

Court decision applying retroactively, the petitioner's current

sentence exceeds the statutory maximum; and (5) the savings clause

of § 2255(e) reaches his claim. *Bryant v. Warden, FCC Coleman-Medium,*

738 F.3d 1253, 1274 (11th Cir.2013).

The defendant makes no showing that the so-called savings clause

applies, permitting him to seek relief under Section 2241.  He does

A0091980_13-000000

not argue that precedent foreclosed his current claims, or that such precedent was overturned and made retroactively applicable on collateral review, or that his sentence exceeds a statutory maximum. He cannot show any basis for this Court to adjudicate his claims.

III.   The Defendant's Claims Are Time-Barred

The AEDPA imposes a one-year statute of limitations on § 2255 motions:

> A 1-year period of limitation shall apply to a motion under this section. The limitation period shall run from the latest of –
>
> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(f). A federal conviction becomes final under AEDPA when the Supreme Court either denies a *certiorari* petition or issues a decision on the merits. *Washington v. United States*, 243 F.3d 1299, 1300 (11th Cir. 2001).

14

A0091980_14-000000

More than one year has passed since the Supreme Court's February 22, 2011 denial of the defendant's petition for *certiorari* and the April 4, 2016 filing of the instant motion.  The defendant does not proffer newly discovered facts in support of his claim, or any other basis for extending the AEDPA's one-year limitations period.  His claims are accordingly time-barred and should be rejected by this Court.

IV.   <u>The Defendant Has Defaulted On His Claims</u>

A defendant who fails to object at the trial court level to error he believes the court has committed or who fails to raise such objection on appeal is procedurally barred from presenting his objection in a motion subsequently filed under Section 2255 absent a showing of cause and prejudice or a fundamental miscarriage of justice.  *See United States v. Frady*, 456 U.S. 152, 166-68 (1982); *Mills v. United States*, 36 F.3d 1052, 1055 (11th Cir.1994).  The defendant acknowledges that the issues raised in his pending motion have "never been raised in pre-trial motions, direct appeal, and or 2255 motion".  DE 665:3.  He makes no attempt to show cause or prejudice.

To show a fundamental miscarriage of justice excusing default, the defendant must show he is factually innocent of the offenses of conviction, as opposed to "mere legal insufficiency." *McKay v. United States*, 657 F.3d 1190, 1197-98 (11th Cir. 2011).  The defendant's objections to his conviction concern supposed bars to

A0091980_15-000000

prosecution rather than factual innocence.   Because he has not shown cause and prejudice or the requisite miscarriage of justice, the defendant has not preserved his claims and is therefore not entitled to relief.

IV.   The Defendant's Arguments Fail On The Merits

Most of the defendant's objections address the absence of evidence that any aspect of his offenses occurred in the United States.   Yet this is exactly what the United States was required to show.   18 U.S.C. § 2340A(a)(criminalizing torture "outside the United States").   The defendant's complaints are foreclosed by the Eleventh Circuit's ruling affirming his conviction and stating that "It has long been established that Congress has the power to regulate the extraterritorial acts of U.S. citizens." 611 F.3d at 810. Moreover, Section 2340A(a) "evinces an unmistakable congressional intent to apply the statute extraterritorially." *Id.* at 811.   The court of appeals determined that all of the defendant's "substantive convictions under the Torture Act are fully consonant with the United States Constitution." *Id.*   It further determined that "extraterritorial jurisdiction over a conspiracy charge exists whenever the underlying substantive crime applies to extraterritorial conduct" and thus, "it follows that there is extraterritorial jurisdiction to prohibit conspiracy to commit violations of the Torture Act as well." *Id.* at 813.

16

A0091980_16-000000

The defendant either misapprehends or ignores the extraterritorial nature of his offenses. Proof of an offense outside the United States in conformity with statutory requirements does not show any evidentiary deficiency or establish the defendant's factual innocence. Similarly, the nature of such proof does not support claims of fraud or other forms of misconduct by prosecutors, probation officers, or BOP personnel. The defendant's claim is frivolous.

His FSIA objections fare no better. This Court has already decided that the FSIA does not apply in the context of the criminal prosecution of the defendant. DE 148:24. The defendant did not appeal that determination, which remains the law of this case. Under the law of the case doctrine, an issue decided at one stage of a case is binding at later stages of the same case. *United States v. Escobar-Urrego*, 110 F.3d 1556, 1560 (11th Cir. 1997). The doctrine exists "to maintain consistency and avoid reconsideration of matters decided during the course of a single continuing lawsuit." *Id.* The prior determination that the FSIA does not apply in this case should preclude further consideration of arguments that it does.

Here, the defendant argues that his unindicted co-conspirators are immune from prosecution under the FSIA. He has no standing to assert such a claim. *See Aquamara S.A. v. Del Monte Fresh Produce N.A., Inc.*, 179 F.3d 1279, 1290 (11th Cir. 1999)(parties other than a foreign sovereign ordinarily lack standing to raise the defense

17

A0091980_17-000000

of sovereign immunity); *Republic of Philippines v. Marcos,* 806 F.2d 344, 360 (2d Cir.1986) (holding that parties in the case did not have standing to raise sovereign immunity on behalf of another party); *Rubin v. Islamic Republic of Iran*, 408 F.Supp.2d 549, 562 (N.D. Ill. 2005) (university could not invoke Iran's sovereign immunity by proxy in action to execute judgment against Iranian antiquities loaned to university) (citing *Powers v. Ohio,* 499 U.S. 400, 410-11 (1991)); *see also Farnsworth v. Zerbst*, 98 F.2d 541, 544-45 (5th Cir. 1938) (diplomatic immunity of foreign nationals who conspired with defendant, a U.S. citizen, did not excuse that defendant's conduct; all conspirators did not have to be prosecuted or prosecutable, and defendant had no right to liberty because of the status of his named co-conspirators).

Whatever the status of this defendant's conspirators, they were not charged; thus, even if they possessed immunity pursuant to the FSIA, it is a moot point.   Immunity, if any, for a conspirator confers no benefit or protection from prosecution upon the defendant. *See Farnsworth*, 98 F.2d at 544-45. His FSIA objections have no merit.

In an analogous fashion, the defendant confuses elements of the crime of torture with facts establishing the Court's jurisdiction. The two categories are not synonymous. *E.g.*, *United States v. Tinoco*, 304 F.3d 1088, 1108 (11th Cir. 2002) (distinguishing between facts that are elements of an offense from those that address the court's jurisdiction), *cert. denied*, 538 U.S. 909 (2003); *see also United*

A0091980_18-000000

*States v. Yermian*, 468 U.S. 64, 68 (1984)("Jurisdictional language need not contain the same culpability requirement as other elements of the offense"); *United States v. Bryant*, 766 F.3d 370, 375 (8th Cir. 1985)(requirement of interstate nexus in criminal and civil statutes is most often solely for purpose of conferring federal jurisdiction rather than of defining substantive elements of an offense), *cert. denied*, 474 U.S. 1054 (1986).

The alternative citizenship and present-in requirements of Section 2340A(b) are jurisdictional requirements, not elements of the criminal offenses of torture or conspiracy to torture. The defendant is simply wrong when he argues his conspiracy conviction was deficient because his conspirators were beyond the Court's jurisdiction.   The statute only requires proof regarding the citizenship or presence of "the offender," not each, or even any, unindicted coconspirator.   The United States presented overwhelming evidence that the offender, namely the defendant, was both a U.S. citizen and present in this country.   There was no requirement to show that conspirators who were not even charged came within the jurisdiction of the Court.   The defendant's contention is meritless.

V.   No Prosecutorial Or Other Misconduct Occurred In This Case

The defendant fails to support any claim of prosecutorial misconduct.   His case for misconduct depends on his erroneous theories concerning non-existent evidentiary requirements, as set forth above.   Because the United States did not offer proof of

A0091980_19-000000

unnecessary or irrelevant facts, the defendant baselessly asserts that agents, prosecutors, and others have misrepresented those facts.

His assertions are contradicted by the record from his trial, where prosecutors, during direct examinations in the government's case-in-chief, elicited testimony that certain unindicted conspirators were foreign nationals. The trial record is devoid of any statement that any conspirators were citizens of or present in the United States. The defendant, if he did not know the information already, received disclosure of the identity of his conspirators well in advance of trial, yet raised no objection, meritorious or not, based on the status of his conspirators. The record from his trial refutes any claim of government misrepresentation or other misconduct. Similarly, the defendant offers no documentation or factual support for speculation that any misrepresentation occurred before the grand jury. Moreover, a conviction at trial cures any defect in the indictment process. *United States v. Mechanik*, 475 U.S. 66, 73 (1986); *United States v. Flanders*, 752 F.3d 1317, 1333 (11th Cir. 2014)(even if allegations of deception before the grand jury were true, petit jury's verdict rendered it harmless). The United States rejects any assertion of misconduct before the grand

A0091980_20-000000

jury or this Court.   The defendant has failed to show such misconduct, or any basis for relief.[3]

Since the defendant's conviction was legally valid and not the result of misconduct before the grand jury or this Court, his accusations against a Probation Officer and BOP personnel must similarly fail on the merits as well as for lack of jurisdiction.

VI.   <u>There Is No Basis For Amending The PSR</u>

As noted above, this Court no longer has jurisdiction to amend the defendant's PSR.  *McCray*, 567 Fed.Appx. at 860.  Even if the pending motion is viewed as an outgrowth of the defendant's efforts to obtain administrative remedies from the BOP, the relief he demands is unavailable.

Although his claims are difficult to interpret, the defendant appears to seek relief pursuant to *Sellers v. Bureau of Prisons*, 959 F.2d 307 (D.C. Cir. 1992), or to complain about BOP's response to his attempts to obtain administrative remedies pursuant to that case. In *Sellers*, an inmate sought relief under the Privacy Act, 5 U.S.C. §§ 552a(e)(5) and (g)(1)(C), claiming that BOP and the United States Parole Commission did not comply with requirements to maintain accurate records or amend erroneous information, because a

---

3 The defendant also asserts that the undersigned has engaged in a "pattern of misconduct in International Cases" based on no more than a motion filed in *United States v. Israel Lazaro Abel*, Case No. 91-413-CR-WPD (S.D. Fla.)(DE 1128).  The defendant overlooks or chooses to ignore the response to that motion, *id.* at DE 1314, and the district court's order denying the motion, *id.* at DE 1328.

21

presentence report stated that Sellers had been convicted of a prior bank robbery charge that in fact had been dismissed. 959 F.2d at 308-09. The D.C. Circuit ruled that since the challenged information was capable of being verified, the BOP and Parole Commission were obligated to do more than merely note the inmate's dispute with the contested material.

A complaint that a PSR does not contain accurate information is not a challenge to the validity of a conviction or sentence. Instead, such an objection concerns at most the conditions of confinement or the execution of the defendant's sentence, and may only be brought, if at all, under Section 2241. *See Bishop v. Reno,* 210 F.3d 1295, 1304 n. 14 (11th Cir.2000). Actions under Section 2241, however, must be filed in the district where the prisoner is incarcerated. *Fernandez v. United States*, 941 F.2d 1488, 1495 (11th Cir. 1991); *United States v. Kinsey*, 393 Fed.Appx. 663, 664 (11th Cir. 2010); *see also* 5 U.S.C. § 552a(g)(5)(venue under Privacy Act lies in district where complainant resides, or has principal place of business, or in which agency records are situated, or in the District of Columbia). Insofar as the defendant seeks merely to amend his PSR pursuant to *Sellers* or otherwise, he has filed his motion in an incorrect forum.[4]

---

4 As a practical matter, if the defendant filed the instant motion in his district of incarceration, it would likely be construed as exactly what it is: an untimely, unauthorized, procedurally barred § 2255 motion to be dismissed or denied on the same grounds as the

A0091980_22-000000

Even if this Court somehow had venue over the defendant's claim, relief would not be available. The *Sellers* decision has been abrogated by later regulations where the BOP has exempted material, including PSR's, maintained in central inmate files from the Privacy Act obligations the defendant invokes. *Rush v. Samuels*, 82 F.Supp.3d 470, 483-84 (D.D.C. 2015)(and cases cited therein)(a remedy under the Privacy Act is no longer available to correct information in a PSR or Central Inmate File); *see* 28 C.F.R. § §16.97(a)(1), 16.97(j), 16.97(k)(2). The defendant does not actually identify inaccuracies in his PSR. Instead, he disputes the PSR's reporting of his conviction because of misconceived legal arguments that the conviction is not valid. Regardless, any purported factual inaccuracies in his PSR or other BOP records provide no basis for relief under the Privacy Act or changes to his PSR. There is no merit to his claims.

CONCLUSION

Finality is essential to the operation of the criminal justice system. *Spencer v. United States*, 773 F.3d 1132, 1144 (11th Cir. 2014)(citing *Teague v. Lane,* 489 U.S. 288, 309, (1989), *cert. denied*, 1315 S.Ct. 2836 (2015)). The defendant provides this Court with no reason to disregard principles upholding the finality of criminal convictions. His motion depends on legal and factual misconceptions which, apart from their lack of merit, were not raised or preserved

motion now before this Court.

A0091980_23-000000

before this Court or on appeal. In everything but its name, the defendant's application constitutes an unauthorized and untimely successive Section 2255 petition beyond the jurisdiction of this Court that relies on invalid or inapplicable legal authorities. His motion should be dismissed for lack of jurisdiction, or alternatively, for failure to state a claim.

Respectfully submitted,

WIFREDO A. FERRER
UNITED STATES ATTORNEY

By:  s/ _____
KAREN E. ROCHLIN
ASSISTANT U.S. ATTORNEY
99 N.E. 4th Street
Miami, Florida 33132
(305) 961-9234
karen.rochlin@usdoj.gov
Court I.D. No. A5500050

CHRISTOPHER GRAVELINE
ASSISTANT U.S. ATTORNEY
211 Fort Street, Suite 2001
Detroit, Michigan 48226
(313) 226-9155

JOHN-ALEX ROMANO
Criminal Division
U.S. Department of Justice
950 Pennsylvania Avenue, NW
Room 1264
Washington, D.C. 20530
(202) 353-0249

A0091980_24-000000

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing was served by CM/ECF and by mail this ___21st___ day of <u>April</u>, 2016, on Roy Belfast, Jr., No. 76556-004, Lewisburg USP, 2400 Robert F. Miller Drive, Lewisburg, PA 17837.

s/ _____
KAREN E. ROCHLIN

A0091980_25-000000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.  06-20758-CR-ALTONAGA

UNITED STATES OF AMERICA,

      Plaintiff,

v.

ROY M. BELFAST, JR.,

      Defendant.

_____/

## ORDER

THIS CAUSE came before the Court on Defendant, Roy Belfast's Motion for the Review, and or Amendment of the PSR . . . ("Motion") [ECF No. 665], the Government's Response in Opposition . . . [ECF No. 673], and the Defendant's Motion in Response to United States Response in Opposition . . . [ECF No. 676].  For the reasons carefully explained in the Government's Response [ECF No. 673], it is

**ORDERED AND ADJUDGED** that the Motion [ECF No. 665] is **DENIED.**

**DONE AND ORDERED** in Chambers at Miami, Florida this 3rd day of May, 2016.

_Cecilia M. Altonaga_

**CECILIA M. ALTONAGA**
**UNITED STATES DISTRICT JUDGE**

cc:    counsel of record
       Defendant, *pro se*

Exhibit # 3

Petitioners Appeal to the FOIA-2016-02166 release and
May 17th 2017 letter

From: Roy M. Belfast, Jr.
Inmate: 76556-004
Address: U.S.P. LEE COUNTY
P.O. Box 305
Jonesville, VA, 24263-0305
Criminal Case No.: 1:06-cr-20758-CMA
To: Office of Information Policy (OIP), Director
Address: United States Department of Justice, Suite
11050, 1425 New York Avenue, N.W., Washington, D.C., 20530
Date: June 18th, 2017
sent via certified        no.: 7016 1370 0001 7627 6226        7016 1370 0001 7627 6226
sent via return receipt no:


O.I.P.

     Petitioner dispatched a FOIA request to the E.O.U.S.A./Freedom of
Information & Privacy Staff, who dispatched a letter dated on April 20th, 2016
(see Exhibit "A"). The initial request to the E.O.U.S.A. was the Department of
Justice, provide the petitioner the evidence relied upon to prove a violation of
18 U.S.C. § 2340A(c) before the grand jury and at trial which is count one in
second superseding indictment.

     Petitioner received a letter dated May 17th, 2017 (Ex. "A1") with the
release of a 168 pages. The contents released are after indictment date
11/08/2007, see Criminal case no: 1:06-cr-20758-CMA, Document 257 on Docket
Sheet, and trial verdict Oct 30th 2008.

     Statute 18 U.S.C. § 2340A(b)(1)(2) states: (b) Jurisdiction. There is
jurisdiction over the activity prohibited in subsection (a) if - -
(1) the alleged offender is a national of the United States; or
(2) the alleged offender is present in the United States, irrespective of the
nationality of the victim or alleged offender. (see Exhibit B).

     The recent declaration dated in the May 17, 2017 letter "No other
responsive records were located" and the release of 168 pages of documents
produced after indictment and trial, suggest a substantive "due process"
violation.

     In addition prosecutor recently declared in docket entry: 673 dated
04/21/2016 of petitioner's criminal docket sheet, page 20 of 25 "The trial record
is devoid of any statement that any co-conspirators were citizens of or present
in the United States" (see Exhibit "C"), proves a violation of 18 U.S.C. §
4001(a) and 28 C.F.R. 2635.101 et seq. as well as misconduct
Appeal: The records released are non responsive to request by petitioner
(originally), as the records released by the E.O.U.S.A. are post grand jury and
trial, which means the records presented cannot have been evidence used in prior
proceedings. The FOIA request FOIA-2016-02166 is directly connected to a
substantive due process violation and misconduct by prosecution including but not
limited to 18 U.S.C. § 1001.

1.

Petitioner seeks a release of FOIA information & expedited request based upon original request found in FOIA-2016-02166, and notification to an investigatory body that handles misconduct by prosecutors, as well as notification to the A.G.'s office on the violation of 18 U.S.C. § 4001(a).

Thank you for your time and attention in this matter.

Sincerely,

Roy Belfast, Jr.

2.

Exhibit # 4

Office of Information Policy finding concerning

appeal made as provided in Exhibit # 3



**U.S. Department of Justice**
Office of Information Policy
*Suite 11050*
*1425 New York Avenue, NW*
*Washington, DC 20530-0001*

*Telephone: (202) 514-3642*

Mr. Roy M. Belfast, Jr.
Register No. 76556-004
United States Penitentiary          Re:     Appeal No. DOJ-AP-2017-005286
Post Office Box 305                          Request No. FOIA-2016-02166
Jonesville, VA 24263-0305                    MWH:ADF

**VIA: U.S. Mail**

Dear Mr. Belfast:

        You appealed from the action of the Executive Office for United States Attorneys
(EOUSA) on your Freedom of Information Act request for access to records located in the
United States Attorney's Office for the Southern District of Florida concerning co-conspirators in
your criminal case and evidence relied on to prove violations of 18 U.S.C. Section 2340(c).

        After carefully considering your appeal, I am affirming EOUSA's action on your request.
By letter dated May 19, 2017, EOUSA released to you one hundred sixty-eight pages of
responsive records in full. I have determined that EOUSA's response was correct and that it
conducted an adequate, reasonable search for responsive records subject to the FOIA.

        Regarding your request for "notification to an investigatory body that handles misconduct
by prosecutors, as well as notification to the A.G.'s office on the violation of 18 U.S.C. Section
4001(a)," please note that the principal administrative function of the Office of Information
Policy is the adjudication of appeals from the denial of access to information pursuant to the
FOIA and the Privacy Act of 1974 by components of the Department of Justice. This Office
does not have the authority to review or assist in your criminal case. I regret that I cannot be of
any further assistance to you in this matter.

        Please be advised that this Office's decision was made only after a full review of this
matter. Your appeal was assigned to an attorney with this Office who thoroughly reviewed and
analyzed your appeal, your underlying request, and the action of EOUSA in response to your
request. If you have any questions regarding the action this Office has taken on your appeal, you
may contact this Office's FOIA Public Liaison for your appeal. Specifically, you may speak with
the undersigned agency official by calling (202) 514-3642.

        If you are dissatisfied with my action on your appeal, the FOIA permits you to file a
lawsuit in federal district court in accordance with 5 U.S.C. § 552(a)(4)(B).

- 2 -

For your information, the Office of Government Information Services (OGIS) offers mediation services to resolve disputes between FOIA requesters and Federal agencies as a non-exclusive alternative to litigation.  Using OGIS services does not affect your right to pursue litigation.  The contact information for OGIS is as follows:  Office of Government Information Services, National Archives and Records Administration, Room 2510, 8601 Adelphi Road, College Park, Maryland 20740-6001; email at ogis@nara.gov; telephone at 202-741-5770; toll free at 1-877-684-6448; or facsimile at 202-741-5769.

Sincerely,

10/12/2017

X

Matthew Hurd, Associate Chief, for
Sean O'Neill, Chief, Administrative Appeals Staff
Signed by: MATTHEW HURD

Exhibit # 5

Reuters press release, sourced from the Department of Justice

REUTERS

Print | Close this window

## Roy Belfast Jr., a/k/a Chuckie Taylor, Sentenced on Torture Charges

Fri Jan 9, 2009 3:42pm EST

WASHINGTON, Jan. 9 /PRNewswire-USNewswire/ -- Roy M. Belfast Jr. was sentenced
by U.S. District Court Judge Cecilia M. Altonaga today to 97 years in prison
for crimes related to the torture of people in Liberia between April 1999 and
July 2003, announced Acting Assistant Attorney General Matthew Friedrich of
the Criminal Division and U.S. Attorney R. Alexander Acosta for the Southern
District of Florida.

Belfast, a/k/a Chuckie Taylor, Charles Taylor Jr., Charles Taylor II and
Charles McArther Emmanuel, was convicted on October 30, 2008, by a federal
jury after a six-week trial of five counts of torture, one count of conspiracy
to torture, one count of using a firearm during the commission of a violent
crime and one count of conspiracy to use a firearm during the commission of a
violent crime.

"The lengthy prison term handed down today justly reflects the horror and
torture that Taylor Jr. visited upon his victims. This case was made in no
small part by the courage of individual victims who had the mettle to come
forward and speak the truth about what had been done to them," Acting
Assistant Attorney General Matthew Friedrich of the Criminal Division said.
"Our message to human rights violators, no matter where they are, remains the
same: We will use the full reach of U.S. law, and every lawful resource at the
disposal of our investigators and prosecutors, to hold you fully accountable
for your crimes."

According to trial testimony, Belfast, who was born in the United States and
is the son of the former Liberian dictator Charles Taylor, commanded a
paramilitary organization known as the Anti-Terrorist Unit, which was directed
to provide protection for the Liberian president and additional dignitaries of
the Liberian government. Between 1999 and 2003, in his role as commander of
that unit, Belfast and his associates committed numerous and varied forms of
torture, including burning victims with molten plastic, lit cigarettes,
scalding water, candle wax and an iron; severely beating victims with
firearms; cutting and stabbing victims; and shocking victims with an electric
device.

"There is justice today for the many victims of Chuckie Taylor," said John P.
Torres, Department of Homeland Security Acting Assistant Secretary for
Immigration and Customs Enforcement. "This sentence ensures that he pays for
his barbaric acts. I want to thank the more than one hundred ICE agents,
attorneys, victim advocates and other federal partners whose meticulous
investigative work and coordination led to this landmark conviction."

"This sentence sends a resounding message that torture will not be tolerated
here at home or by U.S. nationals abroad," said Executive Assistant Director
Arthur M. Cummings, II, of the FBI National Security Division. "The FBI and
our law enforcement partners will continue to investigate such acts wherever
they occur."

On March 30, 2006, Belfast attempted to enter the United States with a
passport obtained through false statements submitted on his passport
application, and was arrested. Belfast pleaded guilty on Sept. 15, 2006, to
passport fraud and was sentenced on Dec. 7, 2007, to 11 months in prison on
that charge.

Belfast's prosecution on the torture charges was the first ever under a
statute that criminalizes torture and provides U.S. courts jurisdiction to
hear cases involving acts of torture committed outside the United States if

the offender is a U.S. national or is present in the United States, regardless of nationality.

The case was jointly investigated by ICE and the FBI. The case was prosecuted by Assistant U.S. Attorneys Karen Rochlin and Caroline Beck Miller of the U.S. Attorney's Office for the Southern District of Florida and Trial Attorney Chris Graveline of the Criminal Division's Domestic Security Section. National Security Division Trial Attorney Brenda Sue Thornton and Criminal Division Attorneys John Cox, John-Alex Romano, Michael Surgalla, and Pragna Soni also provided assistance.

SOURCE  U.S. Department of Justice

U.S. Department of Justice Office of Public Affairs, +1-202-514-2007, TDD, +1-202-514-1888

© Thomson Reuters 2009. All rights reserved. Users may download and print extracts of content from this website for their own personal and non-commercial use only. Republication or redistribution of Thomson Reuters content, including by framing or similar means, is expressly prohibited without the prior written consent of Thomson Reuters. Thomson Reuters and its logo are registered trademarks or trademarks of the Thomson Reuters group of companies around the world.

Thomson Reuters journalists are subject to an Editorial Handbook which requires fair presentation and disclosure of relevant interests.

Exhibit # 6

Document # 14, Filed 11/26/18, Page 6 of 8, civil case 7:18-cv-00453-JLK-JCH, Belfast v. Bruton, US District Court, Western District of Virginia, Fourth Circuit

(1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* at 333.

In this case, Petitioner does not allege that any of the prongs of the *Jones* test are met. He challenges the legality of underlying conviction, but does not allege an intervening change of law that decriminalized his underlying conviction. While the Petition could be liberally read to assert that information recently obtained through a FOIA request allegedly shows evidence that Petitioner was wrongfully convicted, (Compl., ECF No. 1 at 24), that allegation is not properly brought in a § 2241 petition. Rather, a claim of actual innocence based on allegedly new facts must be brought in a § 2255 petition. 28 U.S.C. § 2255(h). In order for a claim to be properly brought pursuant to § 2241, *Jones* requires a substantive change in the law such that the conduct of which the prisoner was convicted is deemed not to be criminal. *In re Jones*, 226 F.3d at 333. Because Petitioner does not allege a change of law decriminalizing his underlying conduct, he cannot challenge his conviction under § 2241 pursuant to the savings clause in § 2255(e).

Petitioner is incarcerated at USP Lee located in this district. This district, however, is not the district of Petitioner's conviction, and therefore this Court has subject matter jurisdiction only over issues properly pled under § 2241. 28 U.S.C. § 2241(a). Petitioner cannot proceed under § 2241 to attack his underlying conviction because he does not meet the *Jones* test for invoking the savings clause in § 2255(e). As such, this case is properly construed as yet another motion under § 2255, and the Court lacks subject matter jurisdiction to hear that § 2255 petition because it is not in the district of conviction. 28 U.S.C. § 2255(a).

Page 6 of 8



CERTIFIED MAIL

7019 0700 0000 8732 6093

Roy Belfast Jr.
#76556-004
U.S.P. LEE
P.O. Box 305
Jonesville, Va 24263

U.S. PENITENTIARY - LEE COUNTY
PO Box 900 - Jonesville, VA 24263

THIS INSPECTED
DATE 3-25-20

United States District C
Southern District of Flor
Office of the Clerk Ro
400 North Miami Avenu
Miami, Florida 33128

"LEGAL MAIL"

U.S. PENITENTIARY - LEE COUNTY
PO Box 900 - Jonesville, VA 24263
DATE _____ 2/26/2020
*Special Legal Mail*

The enclosed letter was processed through special mailing
procedures for forwarding to you. This letter has been
neither opened or inspected. If the writer raises a question
or problem over which this facility has jurisdiction, you
may wish to return the material for further information
or clarification. If the writer encloses correspondence for
forwarding to another address, please return the enclosure to the above address.