# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

David J. Smith
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

February 26, 2020



Clerk - Southern District of Florida
U.S. District Court
400 N MIAMI AVE
MIAMI, FL 33128-1810

Appeal Number:  20-10327-E
Case Style:  In re: Roy Belfast, Jr.
District Court Docket No:  1:06-cr-20758-CMA-1

The enclosed order has been entered. No further action will be taken in this matter.

Sincerely,

DAVID J. SMITH, Clerk of Court

Reply to: Gloria M. Powell, E/caw
Phone #: (404) 335-6184

Enclosure(s)

DIS-4 Multi-purpose dismissal letter

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 20-10327-E

———————————

IN RE: ROY BELFAST, JR.,

Petitioner.

———————————

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

———————————

Before: JORDAN, NEWSOM, and JULIE CARNES, Circuit Judges

BY THE PANEL:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Roy Belfast, Jr., has filed an

application seeking an order authorizing the district court to consider a second or successive

motion to vacate, set aside, or correct his federal sentence under 28 U.S.C. § 2255.  Such

authorization may be granted only if this Court certifies that the second or successive motion

contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the
> evidence as a whole, would be sufficient to establish by clear and convincing
> evidence that no reasonable factfinder would have found the movant guilty of the
> offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral
> review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).  "The court of appeals may authorize the filing of a second or successive

application only if it determines that the application makes a prima facie showing that the

application satisfies the requirements of this subsection."  *Id.* § 2244(b)(3)(C); *see Jordan v.*

*Sec'y, Dep't of Corr.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that our determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

A grand jury charged Belfast in a second superseding indictment with conspiracy to commit torture, in violation of 18 U.S.C. § 2340A(a) and (c) (Count 1); conspiracy to use and carry firearms during and in relation to, and possess in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(o) (Count 2); five counts of torture, in violation of 18 U.S.C. §§ 2340(1), 2340A, and 2 (Counts 3-7); and using and carrying a firearm during and in relation to, and possessing in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 8). Notably, the indictment alleged that the § 924(o) and (c) charges in Counts 2 and 8 both related to the charges in Counts 1 and 3 through 7. A jury found Belfast guilty on all counts, but its general verdict did not specify predicate offenses for Counts 2 or 8. The district court sentenced Belfast to a total term of 1,164 months' imprisonment that consisted of 240 months each as to Counts 1 and 2, 120 months each as to Counts 3 through 7, and 84 months as to Count 8, with each term of imprisonment to run consecutively to the others.

We affirmed Belfast's convictions and sentences on direct appeal. *United States v. Belfast*, 611 F.3d 783, 828 (11th Cir. 2010). In our decision, we noted that Belfast had not argued that torture was not a crime of violence under § 924(c). *Id.* at 814 n.7. However, in determining that a § 924(c) charge may arise out of extraterritorial conduct that is in violation of the Torture Act, 18 U.S.C. §§ 2340-2340B, we stated that "[t]orture is unquestionably a crime of violence" under § 924(c)(3)'s elements clause and cited the Act's definition of torture. *Id.* at 814 & n.7.

In 2012, Belfast filed his original § 2255 motion, which the district court denied on the merits. He subsequently applied for leave to file a second or successive motion challenging his

2

§ 924(o) and (c) convictions based on *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016).   We denied Belfast's application because we had already determined in his direct appeal that his conviction for torture qualified as a crime of violence under § 924(c)(3)'s elements clause.

In his present application, Belfast asserts that his § 924(o) and (c) convictions in Counts 2 and 8 must be vacated in light of *United States v. Davis*, 139 S. Ct. 2319 (2019).   In an attached memorandum of law, he argues that his conviction for conspiracy to commit torture is not a valid predicate offense under § 924(c)(3)'s elements clause because a conspiracy does not by its nature pose a serious risk of physical force.   He contends that, because the jury returned a general verdict, it cannot be determined whether his § 924(o) and (c) convictions were predicated on his conspiracy to torture or substantive torture charges.   He also asserts that the jury was not instructed that it had to find that he committed an overt act in furtherance of the conspiracy.   Belfast also asserts that the substantive act of torture does not necessarily require a physical act of violence.

In addition, Belfast contends that the validity of his conspiracy conviction as a predicate offense was further undermined by the government's statement, in another proceeding, that his 28 U.S.C. § 2241 petition could be liberally construed to assert that information obtained through a Freedom of Information Act ("FOIA") request showed that he had been wrongfully convicted. He asserts that the government's failure to respond to his objections to the magistrate judge's report and recommendation divested the court in his § 2241 proceeding of subject matter jurisdiction.

Belfast submits a number of documents along with his memorandum.   He submits a proposed § 2255 motion containing the same claim and supporting arguments as in his application. He also submits a "Motion to Supplement Issues upon Grant of 28 U.S.C. § 2255."   In the motion, he argues that his conviction on Count 1 is unconstitutional because the jury was not instructed as

to the conspiracy charge's overt act element, his conviction under Count 1 was not supported by sufficient evidence, due process would require the vacatur of his convictions on Counts 3 through 7 following the vacatur of his conviction on Count 1, and he was doubly punished on Counts 3 through 7 by the application of a special assessment on each count.   As support, Belfast cites, in relevant part, our order on his prior successive application, the jury instructions that were given at his trial, the government's statement in its filing in his § 2241 proceeding, the document that he obtained through his FOIA request, and the following decisions by the Supreme Court: *Rutledge v. United States*, 517 U.S. 292 (1996), *Ball v. United States*, 470 U.S. 856 (1985), *Jackson v. Virginia*, 443 U.S. 307 (1979), *Morrison v. California*, 291 U.S. 82 (1934), and *Pettibone v. United States*, 148 U.S. 197 (1893).   In addition, Belfast submits our order denying his prior *Johnson*-based successive application, excerpts from the jury instructions from his trial, an excerpt from the government's motion to dismiss in his § 2241 proceeding, and his prior *Johnson*-based successive application.

On June 24, 2019, the Supreme Court in *Davis* extended its holdings in *Johnson* and *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), to § 924(c) and held that § 924(c)(3)(B)'s residual clause, like the residual clauses in the Armed Career Criminal Act and 18 U.S.C. § 16(b), is unconstitutionally vague.   *Davis*, 139 S. Ct. at 2324-25, 2336.   The Court resolved a circuit split on the issue, rejecting the position that § 924(c)(3)(B)'s residual clause could remain constitutional if read to encompass a case-specific, conduct-based approach, rather than a categorical approach. *Id.* at 2325 & n.2, 2332-33.   The Court in *Davis* emphasized that there was no "material difference" between the language or scope of § 924(c)(3)(B) and the residual clauses struck down in *Johnson* and *Dimaya*, and, therefore, concluded that § 924(c)(3)(B) was unconstitutional for the same reasons.   *Id.* at 2326, 2336.

4

In *In re Hammoud*, we recently resolved several preliminary issues with respect to successive applications involving proposed *Davis* claims.   931 F.3d 1032, 1036-37 (11th Cir. 2019).   First, we held that *Davis*, like *Johnson*, announced a new rule of constitutional law within the meaning of § 2255(h)(2), as the rule announced in *Davis* was both "substantive"—in that it "restricted for the first time the class of persons § 924(c) could punish and, thus, the government's ability to impose punishments on defendants under that statute"—and "new"—in that it extended *Johnson* and *Dimaya* to a new statutory context and its result was not necessarily "dictated by precedent." *Id.* at 1038.   Second, we held that, even though the Supreme Court in *Davis* did not expressly discuss retroactivity, the retroactivity of *Davis*'s rule was "necessarily dictated" by the holdings of multiple cases, particularly the Court's holding in *Welch*, 136 S. Ct. at 1264-65, 1268, that *Johnson*'s substantially identical constitutional rule applied retroactively to cases on collateral review.   *Id.* at 1038-39 (quoting *Tyler v. Cain*, 533 U.S. 656, 662-64, 666 (2001)).

In *In re Gomez*, we granted a *Johnson*-based successive application, holding that the applicant had made a *prima facie* showing that his § 924(c) conviction might implicate § 924(c)(3)(B)'s residual clause and *Johnson* where (1) the § 924(c) count in the indictment had referenced multiple potential predicate offenses, and the jury had returned a general guilty verdict; (2) our precedent at the time had not yet indicated whether two of the potential predicate offenses—conspiracy to commit Hobbs Act robbery and attempted Hobbs Act robbery—otherwise qualified under § 924(c)(3)(A)'s elements clause; and (3) it was unclear which crime or crimes had served as the predicate offense for the § 924(c) conviction.   830 F.3d 1225, 1227-28 (11th Cir. 2016).   *But see United States v. St. Hubert*, 909 F.3d 335, 351-52 (11th Cir. 2018) (holding, after *Gomez*, that attempted Hobbs Act robbery categorically qualifies as a crime of violence under § 924(c)(3)(A)), *cert. denied*, 139 S. Ct. 1394 (2019).

5

More recently, in *In re Cannon*, we addressed a similar *Davis*-based successive application challenging § 924(c)-related counts tied to multiple potential predicate offenses. 931 F.3d 1236, 1238-43 (11th Cir. 2019). As to two § 924(c) counts, which were tied only to drug-trafficking, substantive Hobbs Act robbery, and carjacking predicate offenses, we concluded that Cannon had not made a *prima facie* showing that he was entitled to relief under *Davis*, as all were qualifying predicates without resort to § 924(c)(3)(B)'s invalidated residual clause. *Id.* at 1242-43. However, as to a separate § 924(o) firearm-conspiracy count, which was tied to two carjackings, four drug-trafficking crimes, and one count of conspiracy to commit Hobbs Act robbery, we noted that we had not yet decided whether Hobbs Act conspiracy categorically qualified under § 924(c)(3)(A)'s elements clause, and the jury had returned a general guilty verdict. *Id.* at 1243. Because the limited record available was "somewhat unclear" about which crime or crimes served as the predicate offense for the § 924(o) count, we concluded that Cannon had made the requisite *prima facie* showing that his § 924(o) conviction might implicate § 924(c)(3)(B)'s residual clause and *Davis*. *Id.* Accordingly, we granted his application in part as to the § 924(o) count but denied the application as to his two § 924(c) counts. *Id.* at 1245. We emphasized that our authorization was a "threshold determination" that was "narrowly circumscribed" and that the district court must still determine *de novo* whether Cannon's *Davis* challenge to his § 924(o) conviction met the requirements of § 2255(h)(2). *Id.* at 1244 (quotation marks omitted). If the district court finds that those requirements have been met, it should then "proceed to consider the merits," along with any defenses and arguments the government might raise. *Id.* at 1244-45 (quotation marks omitted).

Here, similar to *In re Gomez* and *In re Cannon*, Belfast's § 924(o) and (c) charges in Counts 2 and 8 referenced multiple, distinct predicate offenses and the jury returned a general guilty

verdict. *In re Cannon*, 931 F.3d at 1243; *In re Gomez*, 830 F.3d at 1227-28. In Belfast's direct appeal, we determined that the substantive offense of torture qualified as a predicate offense under § 924(c)(3)'s elements clause. *See Belfast*, 611 F.3d at 814 & n.7; 18 U.S.C. § 2340A(a), (c). To the extent that Belfast argues that substantive torture is not a crime of violence, *Belfast* remains the controlling law. *United States v. Ghertler*, 605 F.3d 1256, 1269 (11th Cir. 2010) (explaining that our prior decisions are binding unless overruled by the Supreme Court or this Court sitting *en banc* in a decision that actually overrules or directly conflicts with the prior decision). We have not otherwise addressed whether conspiracy to commit torture under the Torture Act qualifies as a predicate offense under § 924(c)(3). Our statement in denying Belfast's prior successive application does not affect our present analysis, as that statement was made before *Davis*, *In re Gomez*, and *In re Cannon* were decided and within the context of Belfast's *Johnson* claim, which is distinct from his present claim under *Davis*. *See In re Hammoud*, 931 F.3d at 1040 ("*Davis* announced a new substantive rule of constitutional law in its own right, separate and apart from . . . *Johnson*.").

Thus, it is unclear whether conspiracy to commit torture qualifies as a predicate offense. Accordingly, Belfast has made a *prima facie* showing that his claim satisfies the statutory criteria of § 2255(h)(2) on the basis that his § 924(o) and (c) convictions may be unconstitutional under *Davis*, as he potentially was sentenced under the now-invalid residual clause of § 924(c)(3). *See In re Cannon*, 931 F.3d at 1243-45; 28 U.S.C. § 2255(h)(2).

In addition, we deny Belfast's application as to the claims that he raises in his "Motion to Supplement Issues upon Grant of 28 U.S.C. § 2255." The documents that he cites are not newly discovered because they were all filed in his prior proceedings, and the Supreme Court decisions

that he cites are not new because they were all issued before he filed his original § 2255 motion in 2012.  *See* 28 U.S.C. § 2255(h)(1), (2).

Accordingly, because Belfast has made a *prima facie* showing of the existence of one of the grounds set forth in 28 U.S.C. § 2255, his application for leave to file a second or successive motion is GRANTED as to his *Davis*-based claim but DENIED as to his remaining claims.

# UNITED STATES COURT OF APPEALS
# ELEVENTH CIRCUIT

APPLICATION FOR LEAVE TO FILE A SECOND OR
SUCCESSIVE MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE
28 U.S.C. § 2255
BY A PRISONER IN FEDERAL CUSTODY

Name Roy Belfast              Prisoner Number 76556-004

Institution United States Penitentiary Lee (P.O. Box 305)

Street Address P.O. Box 305

City Jonesville        State Va        Zip Code 24263

## INSTRUCTIONS–READ CAREFULLY

(1)   This application must be legibly handwritten or typewritten and signed by the applicant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

(2)   All applicants seeking leave to file a second or successive motion to vacate should use this form. In capital cases, the use of this form is optional.

(3)   All questions must be answered concisely in the proper space on the form.

(4)   Additional pages are not permitted except with respect to identifying additional grounds for relief and facts on which you rely to support those grounds. To raise any additional claims, use the "Additional Claim" pages attached at the end of this application, which may be copied as necessary. DO NOT SUBMIT SEPARATE PETITIONS, MOTIONS, BRIEFS, ARGUMENTS, ETC., EXCEPT IN CAPITAL CASES.

(5)     In accordance with the "Antiterrorism and Effective Death Penalty Act of 1996," as codified at 28 U.S.C. § 2255, effective April 24, 1996, before leave to file a second or successive motion can be granted by the United States Court of Appeals, <u>it is the applicant's burden</u> to make a <u>prima facie</u> showing that satisfies either of the two conditions in 28 U.S.C. § 2255(h), stated below.

> A second or successive motion must be certified as provided in [28 U.S.C.] section 2244 by a panel of the appropriate court of appeals to contain—
>
>> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or
>>
>> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

(6)     When this application is fully completed, if it is being filed in paper, the original and three copies must be mailed to:

> **Clerk of Court**
> **United States Court of Appeals for the Eleventh Circuit**
> **56 Forsyth Street, N.W.**
> **Atlanta, Georgia  30303**

## APPLICATION

1.  (a)  Identify the United States District Court which entered the judgment of conviction being challenged:

Southern District of Florida, Eleventh Circuit

    (b)  Case number  06-20758-cr-ALTONAGA

2.  Date of judgment of conviction  January 9th 2009

3.  Length of sentence  1,167  Sentencing Judge  Cecilia Altonaga

4.  List all offenses for which you were convicted in the case identified above:

(1) Conspiracy to Commit Torture 18 U.S.C. § 2340A(c); (2) Conspiracy to use and carry a firearm.. 18 U.S.C. § 924(0); (3),(4),(5),(6),(7) 18 U.S.C. § 2340A (Substantive count; count (8) 18 U.S.C. § 924(c)(1)(A)

5.  Related to this conviction and sentence, have you ever filed a motion to vacate in any federal court?

Yes ✓ No ☐ If "yes," how many times? ___1___ (if more than one, complete 6 and 7 below as necessary)

(a) Name of court  Southern District of Florida

(b) Case number  12-cv-20754

(c) Nature of proceeding _____

(d) Grounds raised (list all grounds; use extra pages if necessary) Ineffective Assistance of Trial and Appellate Counsel

_____

(e) Did you receive an evidentiary hearing on your motion?   Yes ☐   No ☒

(f) Result  Denied

(g) Date of result  2/14/2013

6.      As to any second federal motion, give the same information:

(a) Name of court  Eleventh Circuit Court of Appeals

(b) Case number  16-13950

(c) Nature of proceeding  Second or Successive Application

_____

_____

_____

*28 U.S.C. § 2255 Application*                    Page 4                    *Revised: 12/18*

(d) Grounds raised (list all grounds; use extra pages if necessary) Convictions
under 18 U.S.C. § 924(c) and 18 U.S.C. § 924(o) are un-
constitutional, because the definition of crime of violence
contained in 18 U.S.C. § 924(c)(3)(B) is unconstitutionally
vague

(e) Did you receive an evidentiary hearing on your motion?   Yes ☐   No ☒

(f) Result Denied

(g) Date of result 7/27/2016

7.   As to any third federal motion, give the same information:
(a) Name of court Southern District of Florida
(b) Case number 18-21143-CIV-ALTONAGA

(c) Nature of proceeding  Second - n - Time § 2255

(d) Grounds raised (list **all** grounds; use extra pages if necessary)

(1) Violation of 18 v.s.c. § 4001 (a)

(2) Failure By Government to Demonstrate 18 v.s.c. § 2340 A(c)

(e) Did you receive an evidentiary hearing on your motion?    Yes ☐   No ☒

(f) Result  Denied

(g) Date of result  April 16th, 2018

8.  Did you appeal the result of any action taken on your federal motion? (Use extra pages to reflect additional motions if necessary)

(1) First motion     No ☐   Yes ☑  Appeal No. 13-11303-A

(2) Second motion    No ☒   Yes ☐  Appeal No. _____

(3) Third motion     No ☒   Yes ☐  Appeal No. _____

9.  If you did <u>not</u> appeal from the adverse action on any motion, explain briefly why you did not:

No appealable Issue and failure to prosecute based upon institutional issues

_____

_____

_____

10. State <u>concisely</u> every ground on which you <u>now</u> claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground.

A.  Ground one: Count 2 and 8 (18 U.S.C. § 924(c) and 924(o) must be vacated based upon Supreme Court Ruling in Davis v. United States 139 S.ct. 2319, 204 L.Ed 2d 757 (2019

Supporting FACTS (tell your story briefly without citing cases or law):

( See Memorandum )

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Was this claim raised in a prior federal petition, motion, or application for leave to file a second or successive motion to vacate?   Yes ☑ No ☐

Does this claim rely on a "new rule of constitutional law"?   Yes ☑ No ☐

If "yes," state the new rule of constitutional law (give case name and citation):

The Supreme Court ruled in Davis v. United States that 18 U.S.C. § 924 (c)(3)(B) is unconstitutional, 139 S.ct. 2319, 204 L. Ed 2d 757 (2019)

_____
_____
_____
_____
_____

Does this claim rely on "newly discovered evidence"?   Yes ☐   No ☒

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

B.      Ground two:_____

_____

_____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
_____
_____
_____
_____

Was this claim raised in a prior federal petition, motion, or application for leave to file a second or successive motion to vacate?   Yes ☐   No ☐

Does this claim rely on a "new rule of constitutional law"?   Yes ☐   No ☐

If "yes," state the new rule of constitutional law (give case name and citation):

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Does this claim rely on "newly discovered evidence"?   Yes ☐   No ☐

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_____
_____
_____
_____
_____
_____
_____
_____

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

C.    Ground three: _____

_____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

*28 U.S.C. § 2255 Application*            Page 12            *Revised: 12/18*

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____

Was this claim raised in a prior federal petition, motion, or application for leave to file a second or successive motion to vacate?   Yes ☐ No ☐

Does this claim rely on a "new rule of constitutional law"?   Yes ☐   No ☐

If "yes," state the new rule of constitutional law (give case name and citation):

_____
_____

*28 U.S.C. § 2255 Application*          **Page 13**          *Revised: 12/18*

_____

_____

_____

_____

_____

_____

_____

_____

_____

Does this claim rely on "newly discovered evidence"?   Yes ☐   No ☐

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____
_____
_____
_____
_____

☐ **CHECK HERE IF ADDITIONAL CLAIM PAGES ARE ATTACHED.**

11.   Do you have any motion, petition, application, or appeal now pending in any court as to the judgment now being challenged?   Yes ☑   No ☐
      If "yes," name of court Western Dist. of Virginia   Case number 7:18-cv-00453-
      JLK-RSB

        Wherefore, applicant prays that the United States Court of Appeals for the Eleventh Circuit grant an Order Authorizing the District Court to Consider Applicant's Second or Successive Motion to Vacate under 28 U.S.C. § 2255.

                                        _Roy Belfast_____
                                        Applicant's Signature

I declare under Penalty of Perjury that my answers to all the questions in this Application are true and correct.
Executed on _1/12/2020_____
                [date]

                                        _Roy Belfast_____
                                        Applicant's Signature

_28 U.S.C. § 2255 Application_                    Page 15                    _Revised: 12/18_

**PROOF OF SERVICE**

Applicant must send a copy of this application and all attachments to the United States Attorney's office in the district in which you were convicted.

I certify that on  1 / 22 / 20 20 _____, I mailed a copy of this Application* and
                 [date]

all attachments to  United States Attorneys Office for the S.D. Fla.

at the following address:
   99 N.E. 4th Street, Miami Fla

_____
                 Ray Belfast
                 Applicant's Signature

---

   * Pursuant to Fed. R. App. P. 25(a)(2)(A)(iii), "If an institution has a system designed for legal mail, an inmate confined there must use that system to receive the benefit of this Rule 25(a)(2)(A)(iii). A paper not filed electronically by an inmate is timely if it is deposited in the institution's internal mail system on or before the last day for filing and:
- it is accompanied by: a declaration in compliance with 28 U.S.C. § 1746—or a notarized statement—setting out the date of deposit and stating that first-class postage is being prepaid; or evidence (such as a postmark or date stamp) showing that the paper was so deposited and that postage was prepaid; or
- the court of appeals exercises its discretion to permit the later filing of a declaration or notarized statement that satisfies Rule 25(a)(2)(A)(iii)."

*28 U.S.C. § 2255 Application*            **Page 16**           *Revised: 12/18*

## ADDITIONAL CLAIM

Ground _____ :

_____

_____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Was this claim raised in a prior federal petition, motion, or application for leave to file a second or successive motion to vacate?   Yes ☐   No ☐

Does this claim rely on a "new rule of constitutional law"?   Yes ☐   No ☐

If "yes," state the new rule of constitutional law (give case name and citation):

_____

_____

*28 U.S.C. § 2255 Application*   **(Continue to Page 2 to complete this claim)**

_____

_____

_____

_____

_____

_____

_____

_____

Does this claim rely on "newly discovered evidence"?    Yes ☐    No ☐

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*28 U.S.C. § 2255 Application*                    **Page 2**

Memorandum of Law

ARGUMENT

18 u.s.c. § 924(c) And 18 u.s.c. § 924(o) Must Be Vacated.

In light of the recent Supreme Court case Davis v. United States
139 s. Ct 2319, 204 L.Ed.2d 757 (2019) counts 2, and 8 under
18 u.s.c. § 924 (c)(1)(A) and 18 u.s.c. § 924 (o) must be vacated.
This court, the Eleventh Circuit Court of Appeals has ruled
that Davis v. United States, 204 L.Ed.2d 757 (2019) to
be retroactive in In re Hammoud, No. 19-12458, 2019 U.S. App.
LEXIS 21950 (11th cir. July 23, 2019) and In re Cannon, 931 F.3d
1236 (11th Cir. 2019). This court has also observed the fact that
18 u.s.c. § 924(o) accompanying 18 u.s.c. § 924 (c)(1)(a) must
be vacated. The court declares: "Although Davis did not
directly invalidate any part of § 924(o), because § 924 (o)
criminalizes conspiring to commit an offense under § 924 (c), it
follows that Davis applies to undermine § 924 (o) offenses

Case 1:20-cv-20385-CMA   Document 8   Entered on FLSD Docket 03/02/2020   Page 29 of 202
Case: 20-10327     Date Filed 02/07/2020     Page: 2 of 175

2

predicated on conspiring to commit an offense under §
924(c)(3)(B). See Davis, 139 S. ct. at 2324-25, 2336; 18 U.S.C.§
924(o)." (See In re: Jamaur Lewis, 2019 U.S. App. LEXIS
26949, No. 19-13065-C, Sept. 5th, 2019.)


18 U.S.C. § 2340A(c) Conspiracy to Commit Torture Has No
Elements of Force Attached To It's Language. It Can
Be Violated Without Any Act of Violence.

18 U.S.C. § 2340 A(c) states: " A person who conspires to
commit an offense under this section shall be subject to the
same penalties as the penalties prescribed for the offense,
the commission of which was the object of the conspiracy."

It is a well know fact the mere agreement towards a
specific conspiracy is sufficient to violate a given statute,
even when no substantial step other than _____ to meet again
was validated, or made.

The subsection of 18 u.s.c. 2340 A(c) like all other conspiracy statutes require knowledge, Agreement, Overt Act before the substantive act be violated, an overt act need not be the substantive act under a given statute. Conspiracy does not by it's nature present serious risk of physical force. In other words the conspiracy to commit torture does not meet the force or elements clause to facilitate sustaining the 18 u.s.c. § 924 (c)(1)(A). The substantive act of torture itself can be violated without any physical act of violence, example: " application of mind altering substances or other procedures calculated to disrupt profoundly the senses . . . . " (See 18 u.s.c. § 2340 (2)(D) ). Finally the jury was never instructed in petitioners case as it relates to an "overt act". In re: Roy Belfast, Case No. 16-13950, date filed: 07/27/2016 page 10 of 14 Judge Martin observes: "Mr. Belfast has a stronger argument with respect to his conspiracy conviction." It's a seperate Federal crime for anyone to conspire or agree with

someone else to do something that would be another Federal Crime if it was actually carried out." 11th Circuit Pattern Jury Instruction 13.1 (2010 ed.). In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture. However, the jury was not instructed that the defendant need take any "overt act" in furtherance of the conspiracy." (See Exhibit "A" In re: Roy Belfast, Case No. 16-13950). Also the court need be made aware the United States Department of Justice declares in active § 2241 proceedings that petitioner is wrongfully convicted concerning "Conspiracy to Commit Torture", count 1. In Belfast v. Breckon, Civil Docket # 7:18-cv-00453-JLK-RSB U.S. District Court, Western District of Virginia (Roanoke) Docket #14, Filed 11/26/18, Page 6 of 8, the government

states: "While the petition could be liberally read to assert that information recently obtained through a FOIA request allegedly shows evidence that petitioner was wrongfully convicted. (Compl., ECF No. 1 at 24), that allegation is not properly brought in a § 2241 petition. Rather a claim of actual innocence based on allegedly new facts must be brought in a § 2255 petition. 28 U.S.C. § 2255 (h)." (See Exhibit "C" Docket # 14, Page 6 of 8). Petitioner is presently under Rule 59(e) Reconsideration based upon the government failing to disclose in it's filings before the Habeas Court, petitioner satisfied 2255(e) criteria based on    In re: Roy Belfast Eleventh Circuit Court of Appeals U.S. App Lexis 15636, No. 18-12053-F, 2018. The admission in § 2241 proceeding by government proves further the unconstitutional nature of Count One, invalidating the relationship between Count 1, and 18 U.S.C. § 924 (c)(1)(A) as well as 18 U.S.C. § 924 (o).

After the governments firm concession and declaration in Document # 14, Page 6 of 8. The government chose to fully waive it's right to respond, and sustain a Article III, Section 2, Clause 1, case or controversy, issue, before the court. By defaulting, failing to respond to the Magistrates court imposed time frame, upon the government seeking a extension to respond to Petitioners objections to the 12(b)(1) motion, docket # 19. Magistrates court order found on Docket # 23, Civil case 7:18-cv-00453-JLK-RSB, Belfast v. Breckon, U.S. District Court, Western District of Virginia, 4th Cir. There is no longer a case or controversy. The District Court, or the Fourth Circuit Court of Appeals will have to dismiss for lack of subject matter jurisdiction.

Based Upon Jury Instructions, Petitioner Was Prejudiced In Relation To 18 U.S.C. § 924 (c)(1)(A). The Court Can't Determine If The Jury Convicted Under 924(c)(1)(A) In Connection To The Conspiracy Or Substantive Counts.

The jury instructions follow the same multiplicitous, duplicitous language of the indictment, thereby causing a general verdict in relation to 18 u.s.c. § 924 (c)(1)(a). No determination can be made, as to where petitioner used a alleged gun. Judge Martin observes in pages 11, 12, 13 of 14 in In re: Roy Belfast, Case No. 16-13950 a critical point regarding count 8 (see exhibit "A"). In ending analysis concerning 924(c)(1)(A) Judge Martin states: "Certainly, Mr. Belfast is prejudiced if he is not allowed to challenge his § 924 (cc) conviction by us guessing that the jury unanimously found that he used a gun during his torture crime, as opposed to his conspiracy crime. And as Mr. Belfast's indictment is written all we can do is guess. We simply cannot know on which companion conviction the jury relied." (See Ex. "B" Jury Instruc.)

Based upon the facts and the recent Supreme Court Ruling under Davis v. United States, petitioner meets the Prima Facie showing to be granted permission to file a § 2255 before the District Court.

Done Under The Penalty of Perjury 28 v.s.c. 1746

/s/ Roy Belfast
Date 1/12/2020

United States District Court
For The
Southern District of Florida


United States of America | Criminal Case:
                         | Civil Case:
v.                       |
                         |
Roy Belfast              |


Motion To Correct Sentence Under 28 U.S.C. § 2255


Introduction


I Roy Belfast, Pro-se litigant, hereby file a motion to set aside the judgment in this case and correct sentence pursuant to 28 U.S.C. § 2255 and United States Constitution.

On Jan 9th, Petitioner was sentenced to 240 months count 1 Conspiracy to Commit Torture ; 240 months count two, 18 U.S.C. § 924(o) ; 120 months as to counts 3 through 7 substantive acts of torture (18 U.S.C. § 2340 A) ; 84 months as to count 8, 18 U.S.C. 924(c)(1)(A), with all such terms to run consequtively to each other, with a court assessment fee of 800.⁰⁰ dollars, a hundred dollars for each count (See Case: 1:06-cr-20758-CMA Document 618, page 3 of 7 and 7 of 7). Sentenced to 1,164 months.

J1

In Light of Davis v. United States, 139 s.ct. 2319, 204 L.Ed 2d 757 (2019) (Count Eight) 18 u.s.c. § 924 (c)(1)(A); And Count Two 18 u.s.c. § 924 (c) Must Be Vacated.

In light of the Supreme Court case Davis v. U.S, 139 s.ct. 2319, 204 L.Ed. 2d 757 (2019); counts 8 and 2 must be vacated. The Supreme Court in Davis v. U.S. stated, 924 (c)(3)(B) is unconstitutionally vague. The Eleventh Circuit Court of Appeals has ruled that Davis v. U.S., 204 L.Ed. 2d 757 (2019) to be retroactive in In Re: Hamoud, No. 19-12458, 2019 U.S. App LEXIS 21950 (11th Cir. July 23, 2019) and In RE: Cannon, 931 F.3d 1236 (11th Cir. 2019). The Eleventh Circuit also observed any 18 u.s.c. § 924 (c) accompanying 18 u.s.c. § 924 (c)(1)(A) must be vacated as well. (See In RE: Jamour Lewis, 2019 U.S. App. LEXIS 26949, No. 19-13065-C (Sept 5th, 2019)

22

18 U.S.C. § 2340 A(c) Conspiracy To Commit Torture Has No Elements of Force Attached To It's Language. It Can Be Violated Without Any Act of Violence.

18 U.S.C. § 2340 A(c) states: "A person who conspires to commit an offense under this section shall be subject to the same penalties as the penalties prescribed for the offense, the commission of which was the object of the conspiracy." The mere agreement and any step towards a specific conspiracy is sufficient to violate a given statute, even when no substantial step other than a meeting, after agreement was initially made. Conspiracy does not by it's nature present serious risk of physical force. In other words the conspiracy to commit torture does not meet the force or elements clause to facilitate sustaining counts two or eight. The substantive act of torture itself can be violated without any physical act of violence, i.e. 18 U.S.C. § 2340 (2)(D) states: " application of mind altering substances or other procedures calculated......

to disrupt profoundly the senses…" Finally the jury was never instructed in petitioners case, as it relates to an "overt act". In RE: Roy Belfast, Case No. 16-13950, date filed: 07/27/2016, page 10 of 14 Court of Appeals Judge Martin observes: "Mr Belfast has a stronger argument with respect to his conspiracy conviction. It is a seperate Federal crime for anyone to conspire or agree with someone else to do something that would be another Federal Crime if it was actually carried out. 11th Circuit Pattern Jury Instruction 13.1 (2010 ed.). In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture. However, the jury was not instructed that defendant need take any "overt act" in furtherance of the conspiracy." (See Exhibit "A" In RE:(Roy)Belfast, Case No ….

16-13950.)

Based Upon Jury Instructions Petitioner Was Prejudiced In Relation To 18 U.S.C. § 924 (c)(1)(A). The Court Can Not Make A Determination Based Upon Instructions Where Count 8 Conviction Should Be Applied.

The jury instructions follow the same multiplicitous, duplicitous language of the indictment, thereby causing a general verdict in relation to 18 U.S.C. § 924 (c)(1)(a). The Professional, Venerable Judge Martin observes in pages 11, 12, 13 of 14 in In RE: Roy Belfast, Case No 16-13950, Ex. "A", a critical point, and confirms Petitioners argument (See Ex "A" In RE: Roy Belfast). In ending analysis concerning 18 U.S.C. § 924 (c)(1)(A) the Venerable Judge states: "Certainly Mr. Belfast is prejudiced if he is not allowed to challenge his § 924 (c) conviction by us guessing that the jury unanimously found that he used a gun during his torture crime, as opposed to his conspiracy crime. And as Mr. Belfast's indictment is written all we can do is guess. We simply . . .

cannot know on which companion conviction the jury relied."

(See Ex. "B" Jury Instruction)

## In Conclusion

Petitioner requests removal of counts Two and Eight, 18 U.S.C. §
924 (o) and 18 U.S.C. § 924 (c)(1)(A), in light of Davis v United
States, 204 L. Ed. 2d 757, as well as rulings by the Eleventh
Circuit Court of Appeals in In RE: Hammoud, No. 19-12458,
2019 U.S. App. LEXIS            21950 (11th Cir. July 23, 2019);
In RE: Cannon, 931 F. 3d 1236 (11th Cir. 2019); In RE: Jamaur
Lewis, 2019 U.S. App. LEXIS 26949, No. 19-13065, (Sept 5th
2015) at minimum, and supplement motion be given consideration.

Done Under The Penalty of Perjury 28 U.S.C. § 1746

/s/ Roy Belfast

Certificate of Service

I hereby certify that a said copy was mailed to
U.S.A , S. D. FL  99 N.E Street, Miami FL 33132 , on
1/22/2020

/s/ Roy Belfast

United States District Court
For The
Southern District of Florida


United States of America | Criminal Case No. :
                         | Civil Case :
                         |
v.                       |
                         |
Roy Belfast _____ ___ |


Motion To Supplement Issues Upon Grant
of 28 U.S.C. § 2255


Here comes Roy Belfast, Pro-se before the court

seeking to supplement issues relevant to the 28 U.S.C.§

2255 proceedings regarding issues of Due Process, that

will impact any revised judgment.

## The Jury Was Never Instructed In Relation To A Overt Act Concerning Count 1 Conspiracy to Commit Torture Violating Petitioners "Due Process"

Failure by the District Court to have instructed the jury

regarding the "overt act" carried out by Petitioner in

furtherance of 18 U.S.C. § 2340A(c) violates "Due Process",

the jury did not find Petitioner guilty as a result. The

present conviction under count One is unconstitutional,

leaving Petitioner prejudiced; count One must be vacated.

"The Jury was never instructed in petitioners case as it

relates to an overt act". (See Ex. "A" In RE: Belfast,

Page 10 of 14, Case No. 16-13950)

1A

Case 1:20-cv-20385-CMA   Document 8   Entered on FLSD Docket 03/02/2020   Page 45 of 202
Case: 20-10327      Date Filed: 06/01/2020      Page: 18 of 175

2A

The Government Failed To Prove Beyond A Reasonable Doubt
Petitioner Violated Count 1


The government failed to prove beyond a reasonable doubt

that plaintiff conspired to commit torture, in violation of

Jackson v. Virginia, 61 LED 2D 560. Placing petitioner, in a

"one man" conspiracy in violation of Pettibone v. United States,

37 L.ED. 419 and Morrison v. California, 78 L.ED 664.

In addition in Belfast v. Breckon, Civil Case: 7:18-cv-00453-

JLK-RSB, U.S. District, Western District of Virginia,

Docket # 14, Page 6 of 8, the government concedes Petitioner

is wrongfully convicted, factually innocent, based upon

FOIA submitted in Docket # 1 exhibits, Civil Case 7:18-cv-

00453-JLK-RSB (see Exhibit "C" Docket # 14 Page 6 of 8),

concerning 18 u.s.c. § 2340 A (c). Which is now official DOJ

Policy based upon Office of Information Policy findings and FOIA

initial release. Count 1 now violates 18 u.s.c. § 4001 (a)

Removal of Count 1 Requires The Dismissal of Counts
3 Through 7 Based Upon How The Jury Was Instructed

The jury was instructed to convict regarding substantive
acts of torture, once determining that a conspiracy existed.
In 1:06-cr-20758-CMA, Document 580, page 5 of 11, Jury
instructions states: " if you first found the defendant
guilty of the conspiracy offense as charged in count one
of the Second Superseding indictment, you may also find
the defendant guilty of any of the offenses charged in
counts three through seven even though defendant did not
personally participate in such offenses if you find beyond
a reasonable doubt......" (See Ex. "   " Jury Instructions)

A re-issuance of a new judgment reflecting counts three
through seven as convictions would violate "Due Process"
and prejudice Petitioner.

District Court Created Collateral Consequences When Issuing A
$800.00 Assessment Fee. Requiring The Removal of Counts
Three Through Seven

Petitioner was charged 100.00 for each count. The blockburger
test should have been applied during sentencing. Same evidence
in count one, proved counts three through eight. 100.00
assessment of counts three through seven amounted to
double punishment. "When this assessment is imposed twice
for the same act, the Supreme Court has held that it is
a collateral consequence amounting to double punishment."
Rutledge v U.S., 517 U.S. 292, 302-63, 134 L.Ed. 2d 419,
116 s. ct. 1241 (1996) (U.S. v. Brown, Sept 22 1999, 202
F.3d 691 U.S., 4th Cir.) "Second conviction, even if results
in no greater sentence it is an impermissable punishment."
Ball v. U.S. 470 U.S. 856, 105 s. ct. 1668, 84 L.Ed 2d 740
(1985)

4A

" The Supreme Court has ruled that the concurrent sentence doctrine does not apply where defendant was assessed cumulative money assessments for each count of conviction. Rutledge, 517 U.S. at 301, 116 s. ct 1247 ("As long as § 3013 stands, a second conviction will amount to a second punishment). "

(see 717 Fed. Appx. 954 Crazy v. U.S. Dec 7th, 2017 Eleventh Circuit Court of Appeals.)

Counts Three through Seven will have to be vacated as a result.

In Conclusion

Based upon facts in the original 2255 motion, Supplemental motion, Petitioner requests dismissal of the present Judgment and Commitment in full, and immediate release from Federal Custody. " Ordinarily vacation of sentence is tantamount to vacation of the judgment of conviction", 315 U.S. 513.

Done Under Penalty of Perjury 28 u.s.c.§ 1746

/s/ Roy Belfast

Certificate of Service

I hereby certify that a said copy was mailed to U.S.A.
SD. FL   99 N.E Street, Miami FL 33132, on 1/22/2020

/s/ Roy Belfast

Ex "A"   In re: Roy Belfast
Case No: 16-13950
Date Filed: 07/27/2016

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

———————————

No. 16-13950-J

IN RE: ROY BELFAST, JR.,

Petitioner.

———————————

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

———————————

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

BY THE PANEL:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Roy Belfast, Jr. has filed an

application seeking an order authorizing the district court to consider a second or successive

motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255.   Such authorization

may be granted only if this Court certifies that the second or successive motion contains a claim

involving:

> (1) newly discovered evidence that, if proven and viewed in light of the
> evidence as a whole, would be sufficient to establish by clear and convincing
> evidence that no reasonable factfinder would have found the movant guilty of the
> offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral
> review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h).   "The court of appeals may authorize the filing of a second or successive

application only if it determines that the application makes a prima facie showing that the

application satisfies the requirements of this subsection." *Id.* § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corrs.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

In his application, filed with the assistance of counsel, Belfast indicates that he wishes to raise one claim in a second or successive § 2255 motion, relying upon the new rule of constitutional law announced in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d. 569 (2015). Belfast argues that his 18 U.S.C. §§ 924(c) and (o) convictions are no longer valid, because neither torture nor conspiracy to commit torture is a crime of violence after *Johnson.*

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

(i)    has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii)   is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

In *Johnson*, the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. *Johnson*, 576 U.S. at ___, 135

2

S. Ct. at 2557-58, 2563.   The Court explained that, to determine whether a crime qualifies as a violent felony under the ACCA's residual clause, courts must apply the categorical approach.   *Id.* at __, 135 S. Ct. at 2557.   Under that approach, the court must first decide what kind of conduct the crime involves "in the ordinary case," and then determine degree of risk posed by that conduct. *Id.*   The Court first concluded the residual clause offered no reliable method to determine what the "ordinary case" of a crime entailed, leaving "grave uncertainty about how to estimate the risk posed by a crime."   *Id.* at __, 135 S. Ct. at 2257-58.   The Court next explained the residual clause also leaves uncertainty about the degree of risk necessary for a crime to qualify as a violent felony because it requires judges to apply the "serious potential risk" standard to the imagined "ordinary case."   *Id.* at __, 135 S. Ct. at 2558.   Furthermore, the residual clause requires courts to interpret "serious potential risk" in light of the ACCA's four enumerated offenses, which are "far from clear in respect to the degree of risk each poses."   *Id.* (quotation omitted).   The Court concluded that the combined indeterminacy about how to measure the risk posed by a crime and how much risk is necessary to qualify as a violent felony "produces more unpredictability and arbitrariness than the Due Process Clause tolerates."   *Id.*   The Court stated the "hopeless indeterminacy" of the residual clause was confirmed both by its own repeated attempts and failures to craft a meaningful standard and the numerous divisions that had arisen among the lower federal courts.   *Id.* at __, 135 S. Ct. at 2558-60.   The Court also noted that, although many criminal statutes use terms like "substantial risk," the Court's holding in *Johnson* did not cast constitutional doubt on such statutes because the majority of those statutes (1) did not link a phrase such as "substantial risk" to a "confusing list of examples" and (2) applied the substantial risk standard to real-world conduct rather than an idealized "ordinary case."   *Id.* at __, 135 S. Ct. at 2561.   Finally, the Court clarified

3

Case: 16-13950    Date Filed: 07/27/2016    Page: 4 of 14

that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony.  *Id.* at ___, 135 S. Ct. at 2563.

In *Welch v. United States*, 578 U.S. ___, ___, 136 S. Ct. 1257, 1264-65, 1268, 194 L. Ed. 2d 387 (2016), the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review.  In light of the Supreme Court's holdings in *Johnson* and *Welch*, federal prisoners who can make a *prima facie* showing that they previously were sentenced, at least in part, in reliance on the ACCA's now-voided residual clause are entitled to file a second or successive § 2255 motion in the district court.  *See In re Robinson*, No. 16-11304, manuscript op. at 2 (11th Cir. Apr. 19, 2016) (holding that *In re Franks*, 815 F.3d 1281 (11th Cir. 2016), which had held that *Johnson* claims brought by ACCA offenders cannot satisfy the statutory requirements of § 2255(h)(2), is no longer good law).  Merely alleging a basis that meets § 2255(h)'s requirements in the abstract only "represent[s] the minimum showing" necessary to file a successive § 2255 motion, however, because, under § 2244(b)(3)(C), the applicant also must make "a *prima facie* showing that the application satisfies the requirements of this subsection." *In re Holladay*, 331 F.3d 1169, 1173, 1177 (11th Cir. 2003) (granting a state death-row inmate's successive application because he had proffered detailed evidence, in satisfaction of § 2244(b)(3)(C), that showed "a reasonable likelihood that [he] is mentally retarded" to support his proposed *Atkins* claim).  Accordingly, it appears that it is not enough for a federal prisoner to simply identify *Johnson* as the basis for the claim or claims he seeks to raise in a second or successive § 2255 motion; rather, he also must show that he falls within the scope of the new substantive rule announced in *Johnson*.  *See, e.g., id.*; 28 U.S.C. § 2244(b)(3)(C).

4

Distinct from the provision in § 924(e), § 924(c) provides for a mandatory consecutive sentence for any defendant who uses a firearm during a crime of violence or a drug trafficking crime.  18 U.S.C. § 924(c)(1).  For the purposes of § 924(c), "crime of violence" means an offense that is a felony and:

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3).  We have not yet decided if *Johnson* extends to the residual clause found in § 924(c)(3)(B), but we have observed that some other circuits have concluded that it does extend to § 924(c) and the identically-worded 18 U.S.C. § 16(b), while other circuits have said it does not extend to those provisions.  *In re Pinder*, No. 16-12084 (11th Cir. June 1, 2016).

As to the facts of this case, in a second superseding indictment, Belfast was charged with conspiracy to commit torture, in violation of 18 U.S.C. § 2340A (Count 1); conspiracy to use, carry, and possess firearms during and in relation to the crime of violence set out in Counts 1, and 3-7, in violation of 18 U.S.C. § 924(o) (Count 2); torture, in violation of 18 U.S.C. § 2340(1) (Counts 3-7); and using, carrying, and possessing a firearm during and in relation to a crime of violence, as set out in Counts 1, and 3-7, in violation of 18 U.S.C. § 924(c)(1)(A).  Belfast was convicted by a jury of all counts, and sentenced to a total imprisonment term of 1,164 months.  That term consisted of 240 months as to Count 1; 240 months as to Count 2; 120 months as to each of Counts 3, 4, 5, 6, and 7; and 84 months as to Count 8, all terms running consecutively to each other.

5

Belfast's claim does not meet the statutory criteria for granting his application. We concluded in Belfast's direct appeal that torture was "unquestionably a crime of violence; its elements require an act 'specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within [the defendant's] custody or physical control." *United States v. Belfast*, 611 F.3d 783, 814 n.7 (11th Cir. 2010). Consequently, we have already held that Belfast's conviction for torture qualifies as a crime of violence under the elements clause, and Belfast's claim fails. Consequently, Belfast's convictions and sentences were not affected by *Johnson*, even if *Johnson* does extend to § 924(c) convictions.

Accordingly, because Belfast has failed to make a *prima facie* showing of the existence of either of the grounds set forth in 28 U.S.C. § 2255, his application for leave to file a second or successive motion is hereby DENIED.

MARTIN, Circuit Judge, dissenting:

The majority relies on a footnote from our decision in Mr. Belfast's direct

appeal, United States v. Belfast, 611 F.3d 783 (11th Cir. 2010), to say that Mr.

Belfast's conviction for torture under 18 U.S.C. § 2340(1) qualifies as a crime of

violence under § 924(c)'s "elements" clause. The text of that footnote is so brief

that I include it here in its entirety:

> [Mr. Belfast] does not argue that torture is not a "crime of violence"
> under § 924(c). A "crime of violence" is "an offense that is a felony
> and—(A) has as an element the use, attempted use, or threatened use
> of physical force against the person or property of another. . . ." 18
> U.S.C. § 924(c)(3). Torture is unquestionably a crime of violence; its
> elements require an act "specifically intended to inflict severe
> physical or mental pain or suffering (other than pain or suffering
> incidental to lawful sanctions) upon another person within [the
> defendant's] custody or physical control." 18 U.S.C. § 2340(1).

Id. at 814 n.7 (emphasis added). Mr. Belfast had not argued the point because, at

the time of his direct appeal, it would have been futile. Neither had our Court

acknowledged at that time that "the law is unsettled" as to whether § 924(c)'s

residual clause is unconstitutional.[1] In re Pinder, No. 16-12084-J, 2016 WL

3081954, at *2 (11th Cir. June 1, 2016). Because the residual clause was

---

[1] As the majority says, the residual clause defines a crime of violence as any felony that
"involves a substantial risk that physical force against the person or property of another may be
used in the course of committing the offense." We acknowledged in Pinder that this clause may
be invalidated by the Supreme Court's decision in Johnson v. United States, 576 U.S. __, 135
S.Ct. 2551 (2015).

7

inarguably in place at that time, there was little question that Mr. Belfast's torture

conviction would qualify as a crime of violence.

Now, however, we contemplate a § 924(c) that may be starkly different from

the statute that Congress enacted; that Mr. Belfast was sentenced under; and that

our Court considered at the time of his direct appeal.  If the Supreme Court's

decision in Johnson indeed invalidated § 924(c)'s residual clause, then Mr.

Belfast's convictions may only count as a crime of violence if they "ha[ve] as an

element the use, attempted use, or threatened use of physical force against the

person of another."  Like my colleagues, I am considering these motions on a tight

thirty-day deadline.  However, my limited review of this issue reveals that no other

Court of Appeals has even considered whether torture counts as a crime of

violence under either § 924(c)'s force or residual clause.  Indeed, I can't find any

cases considering whether torture counts as a "crime of violence" under analogous

clauses in other statutes.  As this question has not been given full consideration in

our Circuit or elsewhere, I would grant Mr. Belfast certification to file his § 2255

motion in the District Court.

I.

The panel that decided Mr. Belfast's direct appeal concluded, in dicta, that

"[t]orture is unquestionably a crime of violence."  This conclusion is appealingly

simple.  And it is tempting to consider the facts of Mr. Belfast's crimes, which

Case 1:20-cv-20385-CMA   Document 8   Entered on FLSD Docket 03/02/2020   Page 60 of 202
Case: 20-10327   Date Filed: (51 of 193)/2020   Page: 33 of 175
Case: 16-13950   Date Filed: 07/27/2016   Page: 9 of 14

certainly involved the use of violent physical force, in making this determination.

But, what Mr. Belfast actually did has no legal relevance to the question of

whether the crime he was convicted of is a "crime of violence" under § 924(c)'s

elements clause. What matters is whether his crime "has <u>as an element</u> the use,

attempted use, or threatened use of physical force against the person or property of

another." 18 U.S.C. § 924(c)(3)(A) (emphasis added). Indeed, whether a crime is

> within the ambit of 18 U.S.C. § 924(c) . . . is a question .
> . . we must answer "categorically"—that is, by reference
> to the elements of the offense, and not the actual facts of
> [the defendant]'" conduct. We employ this categorical
> approach because of the statute's terms: It asks whether
> [the defendant] committed "an offense" that "has <u>as an</u>
> <u>element</u> the use, attempted use, or threatened use of
> physical force against the person or property of another.

<u>United States v. McGuire</u>, 706 F.3d 1333, 1336 (11th Cir. 2013) (O'Connor, J.)

(citation omitted) (emphasis in original).

The Supreme Court has held that the term "physical force" as used in

§ 924(c)(3)(A) requires "violent force" which means "strong physical force" or

force "capable of causing physical pain or injury to another person." <u>Curtis</u>

<u>Johnson v. United States</u>, 559 U.S. 133, 139, 130 S. Ct. 1265, 1270 (2010). If

torture or conspiracy to commit torture can be committed without the type of

force described by <u>Curtis Johnson</u>, then those crimes obviously can't have "as an

element the use, attempted use, or threatened use of physical force." There is at

least an argument as to both crimes.

A.

18 U.S.C. § 2340(1) defines torture as "an act committed by a person

acting under the color of law specifically intended to inflict severe physical

or mental pain or suffering (other than pain or suffering incidental to lawful

sanctions) upon another person within his custody or physical control." There

are many ways to inflict severe physical or mental pain without employing

the use of physical force. For example, a prisoner could be subjected to stress

positions, sleep-deprivation, or extreme temperatures. These practices could

doubtlessly constitute torture even if they do not require violent physical force.

Mr. Belfast has a stronger argument with respect to his conspiracy

conviction. "It's a separate Federal crime for anyone to conspire or agree

with someone else to do something that would be another Federal crime if

it was actually carried out." 11th Circuit Pattern Jury Instruction 13.1 (2010

ed.). In this case, the jury was instructed that it only must find that two or more

persons came to a mutual understanding to accomplish a common unlawful plan,

that the defendant knowingly and voluntarily joined in that plan, and that the

object of the plan was to commit torture. However, the jury was not instructed

that the defendant need take any "overt act" in furtherance of the conspiracy.

In In re Pinder, No. 16-12084-J, 2016 WL 3081954, at *2 (11th Cir. June

1, 2016), we recently granted an application for a defendant to challenge a

§ 924(c) conviction based on the companion crime of conspiracy to commit

Hobbs Act robbery.  At least two district courts have already held that Hobbs Act

conspiracy is not a crime of violence precisely because the statute does not

expressly require as an element the commission of an overt act.  See United

States v. Luong, No. 2:99-00433, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20,

2016); United States v. Edmundson, No. PWG-13-15, __ F.Supp.3d __, __, 2015

WL 9311983, at *6 (D. Md. Dec. 23, 2015).  Without the requirement of an overt

act, conspiracy of any sort can be committed without the use, attempted use, or

threatened use of physical force.  If that element was also missing from Mr.

Belfast's conspiracy to commit torture charge, we would be aided by looking

into whether that crime satisfies § 924(c)'s force clause.[2]

## B.

There is an additional reason I believe Mr. Belfast's application should be

granted.  As best I can tell, Mr. Belfast's superseding indictment listed both his

substantive torture counts and his conspiracy to commit torture count as possible

predicate convictions for supporting his convictions under § 924(c) (and the

accompanying sentencing provision, § 924(o)), which criminalizes carrying a

firearm during a "crime of violence."  In United States v. Schlei, 122 F.3d 944

---

[2] The majority does not, and cannot, contend that our decision in Mr. Belfast's direct
appeal answers whether conspiracy to commit torture is a crime of violence under the elements
clause.

11

(11th Cir. 1997), we held that "[a] count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." Id. at 977. "Basic to criminal law principles is the concept that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses." United States v. Mothersill, 87 F.3d 1214, 1218 (11th Cir. 1996) (quotation omitted). If conspiracy to commit torture and the substantive offense of torture are separate offenses, then a § 924(c) charge that relies on conspiracy must likewise be distinct from a § 924(c) charge that relies on torture. By listing these two offenses in the same Count, Mr. Belfast's indictment commits the error Schlei was concerned about.

"A duplicitous count poses three dangers: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." Schlei, 122 F.3d at 977. Mr. Belfast's case demonstrates the dangers that lurk. Mr. Belfast may indeed have used a gun at some point in time during the conspiracy, but never during the substantive torture offense. However, "because the jurors have two crimes to consider in a single count, they may convict [on the § 924(c) offense] without reaching a unanimous agreement on [which crime Mr. Belfast "used" a firearm during]." § 142 Misjoinder, Duplicity, and Multiplicity, 1A Fed. Prac. &

12

Proc. Crim. § 142 (4th ed.). A general verdict of guilty "will not reveal whether the jury unanimously found the defendant guilty of either offense, both offenses, or guilty of one crime and not guilty of the other. This uncertainty could prejudice defendant in sentencing [and] appellate review." Id.

Certainly, Mr. Belfast is prejudiced if he is not allowed to challenge his § 924(c) conviction by us guessing that the jury unanimously found that he used a gun during his torture crime, as opposed to his conspiracy crime. And as Mr. Mr. Belfast's indictment is written, all we can do is guess. We simply cannot know on which companion conviction the jury relied.

II.

It may well be true that Congress intended torture (and conspiracy to commit torture) to count as crimes of violence under § 924(c). And, as I've said, these crimes certainly meet the § 924(c) residual clause definition because they ""involve[] a substantial risk that physical force against the person or property of another may be used." But, assuming Johnson applies to § 924(c), we are now faced with applying a statutory definition half of which is unconstitutional. The Supreme Court has told us how to determine whether a crime meets the "elements clause" definition— "by look[ing] only to the fact that the defendant had been convicted of crimes falling within certain categories, and not to the facts underlying the prior convictions," Descamps v. United States, 133 S. Ct. 2276,

2287 (2013) (quotation omitted). In so doing, we "must presume that the conviction rested upon nothing more than the least of the acts criminalized." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2011) (quotation omitted).

On its face, whether torture or conspiracy to commit torture is a "crime of violence" may seem easy. And, when the residual clause still operated as a catch-all, it certainly was. But, by denying this application, the majority has prevented a district court from looking into this question for the first time and denied us, a Court of Appeals, the opportunity to review the district court's resolution. I respectfully dissent.

Ex "B" Jury Instructions

Case No : 1:06-cr-20758-CMA
Document 580
Entered on FLSD Docket 10/30/2008

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 06-20758-CR-ALTONAGA

**UNITED STATES OF AMERICA,**

vs.

**ROY M. BELFAST, Jr.,**
a/k/a "Chuckie Taylor,"
a/k/a "Charles Taylor, Jr,"
a/k/a "Charles Taylor II,"
a/k/a "Charles McArther Emmanuel,"

     Defendant.

_____/

### COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

It is now my duty to instruct you on the rules of law that you must follow and apply in deciding this case. When I have finished you will go to the jury room and begin your discussions – what we call your deliberations.

It will be your duty to decide whether the Government has proved beyond a reasonable doubt the specific facts necessary to find the Defendant guilty of the crimes charged in the Second Superseding Indictment.

You must make your decision only on the basis of the testimony and other evidence presented here during the trial; and you must not be influenced in any way by either sympathy or prejudice for or against the Defendant or the Government.

You must also follow the law as I explain it to you whether you agree with that law or not; and you must follow all of my instructions as a whole. You may not single out, or disregard, any of the Court's instructions on the law.

The indictment or formal charge against any Defendant is not evidence of guilt. Indeed, every Defendant is presumed by the law to be innocent. The law does not require a Defendant to prove innocence or to produce any evidence at all; and if a Defendant elects not to testify, you cannot consider that in any way during your deliberations. The Government has the burden of proving a Defendant guilty beyond a reasonable doubt, and if it fails to do so you must find that Defendant not guilty.

Thus, while the Government's burden of proof is a strict or heavy burden, it is not necessary that a Defendant's guilt be proved beyond all possible doubt. It is only required that the

tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

When the Government offers testimony or evidence that a Defendant made a statement or admission to someone, after being arrested or detained, the jury should consider the evidence concerning such a statement with caution and great care.

It is for you to decide (1) whether the Defendant made the statement and (2) if so, how much weight to give to it. In making these decisions you should consider all of the evidence about the statement, including the circumstances under which the Defendant may have made it.

In any criminal case the Government must prove, of course, the identity of the Defendant as the person who committed the alleged crime.

When a witness points out and identifies a Defendant as the person who committed a crime, you must first decide, as with any other witness, whether that witness is telling the truth. Then, if you believe the witness was truthful, you must still decide how accurate the identification was. Again, I suggest that you ask yourself a number of questions: Did the witness have an adequate opportunity at the time of the crime to observe the person in question? What length of time did the witness have to observe the person? What were the prevailing conditions at that time in terms of visibility or distance and the like? Had the witness known or observed the person at earlier times?

You may also consider the circumstances surrounding the later identification itself including, for example, the manner in which the Defendant was presented to the witness for identification, and the length of time that elapsed between the incident in question and the witness' identification of the Defendant.

After examining all of the testimony and evidence in the case, if you have a reasonable doubt as to the identity of the Defendant as the perpetrator of the offense charged, you must find the Defendant not guilty.

You may not draw any inference, favorable or unfavorable, toward the Government or the Defendant on trial from the fact that any person in addition to the Defendant is not on trial here. You may also not speculate as to the reasons why other persons are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

In this case you have been permitted to take notes during the course of the trial, and most of you — perhaps all of you — have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

Second:    That the Defendant, knowingly and voluntarily joined or participated in the conspiracy; and

Third:    That the object of the unlawful plan was to commit torture, as charged.

An "act in furtherance of the conspiracy" is any transaction or event, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.

A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and voluntarily joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before and even though the Defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

In some instances a conspirator may be held responsible under the law for a substantive offense in which he or she had no direct or personal participation if such offense was committed by other members of the conspiracy during the course of such conspiracy and in furtherance of its objects.

So, in this case, with regard to Counts Three through Seven, insofar as the Defendant is concerned, if you have first found the Defendant guilty of the conspiracy offense as charged in Count One of the Second Superseding Indictment, you may also find the Defendant guilty of any of the offenses charged in Counts Three through Seven even though the Defendant did not personally participate in such offenses if you find, beyond a reasonable doubt:

First:    That the offense charged in such Count was committed by a conspirator during the existence of the conspiracy and in furtherance of its objects;

Second:    That the Defendant was a knowing and voluntary member of the conspiracy at the time of the commission of such offense; and

Third:    That the commission of any of the offenses charged in Counts Three through Seven by a co-conspirator was a reasonably foreseeable consequence of the conspiracy.

unit, if you find beyond a reasonable doubt that the essential facts constituting the offense charged have been established, as defined in these instructions, and that the Defendant was a willful participant together with the governmental unit or its agents in the doing of such acts.

Title 18, United States Code, Section 924(o), makes it a separate Federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of Section 924(c)(1). Section 924(c)(1) makes it a crime for anyone to carry a firearm during and in relation to a crime of violence, and to possess a firearm in furtherance of a crime of violence.

Again, under the law, a "conspiracy" is an agreement or a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

(In order to establish a conspiracy offense it is *not* necessary for the Government to prove that all of the people named in the indictment were members of the scheme, *or* that those who *were* members had entered into any formal type of agreement. Also, because the essence of a conspiracy offense is the making of the scheme itself, it is not necessary for the Government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.)

What the evidence in the case *must* show beyond a reasonable doubt is:

First:      That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment;

Second:    That the Defendant, knowingly and voluntarily joined or participated in the conspiracy; and

Third:     That the object of the unlawful plan was to carry a firearm during and in relation to a crime of violence, and to possess a firearm in furtherance of a crime of violence.

(A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and voluntarily joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before and even though the Defendant played only a minor part.)

(Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.)

In some instances a conspirator may be held responsible under the law for a substantive

7

carry a firearm "in relation to" an offense means that there must be a connection between the Defendant, the firearm, and the crime of violence so that the presence of the firearm was not accidental or coincidental, but facilitated the crime by serving some important function or purpose of the criminal activity. To possess a firearm "in furtherance" of an offense means something more than mere presence of a firearm; it must be shown that the firearm helped, furthered, promoted or advanced the offense in some way.

The Second Superseding Indictment charges that the Defendant knowingly carried a firearm during and in relation to a crime of violence and possessed a firearm in furtherance of a crime of violence. It is charged, in other words, that the Defendant violated the law as charged in Count Eight in two separate ways. It is not necessary, however, for the Government to prove that the Defendant violated the law in *both* of those ways. It is sufficient if the Government proves, beyond a reasonable doubt, that the Defendant knowingly violated the law in *either* way; but, in that event, you must unanimously agree upon the way in which the Defendant committed the violation.

The guilt of a Defendant in a criminal case may be proved without evidence that the Defendant personally did every act involved in the commission of the crime charged. The law recognizes that, ordinarily, anything a person can do for one's self may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort.

So, if the acts or conduct of an agent, employee or other associate of the Defendant are willfully directed or authorized by the Defendant, or if the Defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the Defendant responsible for the conduct of that other person just as though the Defendant had personally engaged in such conduct.

However, before any Defendant can be held criminally responsible for the conduct of others it is necessary that the Defendant willfully associate in some way with the crime, and willfully participate in it. Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime. You must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

During the trial you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques. You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the Defendant is guilty. However, you also are instructed that specific investigative techniques, such as DNA and fingerprints, are not required to be presented in order for you to find the Defendant guilty of the charges in this case. Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the Defendant's guilt has been proved beyond a reasonable doubt.

You will note that the Second Superseding Indictment charges that each offense was committed "on or about" certain dates. The Government does not have to prove with certainty the exact dates of the alleged offenses. It is sufficient if the Government proves beyond a reasonable

Case 1:20-cv-20385-CMA   Document 8   Entered on FLSD Docket 03/02/2020   Page 72 of 202
Case 1:06-cr-20758-CMA   Document 580   Entered on FLSD Docket 10/30/2008   Page 11 of 11
Case: 20-10327   Date Filed: 03/03/2020   Page: 45 of 175

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

Exhibit "C" Docket Entry # 14, Filed 11/26/18
Page 6 of 8
Case 7:18-cv-00453-JLK-JCH

> (1) at the time of conviction, settled law of this circuit or the
> Supreme Court established the legality of the conviction; (2)
> subsequent to the prisoner's direct appeal and first § 2255 motion,
> the substantive law changed such that the conduct of which the
> prisoner was convicted is deemed not to be criminal; and (3) the
> prisoner cannot satisfy the gatekeeping provisions of § 2255 because
> the new rule is not one of constitutional law.

*Id.* at 333.

In this case, Petitioner does not allege that any of the prongs of the *Jones* test are met. He challenges the legality of underlying conviction, but does not allege an intervening change of law that decriminalized his underlying conviction. While the Petition could be liberally read to assert that information recently obtained through a FOIA request allegedly shows evidence that Petitioner was wrongfully convicted, (Compl., ECF No. 1 at 24), that allegation is not properly brought in a § 2241 petition. Rather, a claim of actual innocence based on allegedly new facts must be brought in a § 2255 petition. 28 U.S.C. § 2255(h). In order for a claim to be properly brought pursuant to § 2241, *Jones* requires a substantive change in the law such that the conduct of which the prisoner was convicted is deemed not to be criminal. *In re Jones*, 226 F.3d at 333. Because Petitioner does not allege a change of law decriminalizing his underlying conduct, he cannot challenge his conviction under § 2241 pursuant to the savings clause in § 2255(e).

Petitioner is incarcerated at USP Lee located in this district. This district, however, is not the district of Petitioner's conviction, and therefore this Court has subject matter jurisdiction only over issues properly pled under § 2241. 28 U.S.C. § 2241(a). Petitioner cannot proceed under § 2241 to attack his underlying conviction because he does not meet the *Jones* test for invoking the savings clause in § 2255(e). As such, this case is properly construed as yet another motion under § 2255, and the Court lacks subject matter jurisdiction to hear that § 2255 petition because it is not in the district of conviction. 28 U.S.C. § 2255(a).

Page 6 of 8

Exhibit "D"

Prior Second or Successive Petition Filed Concerning
Johnson v. U.S., 135 s. ct. 2251 (2015) (Holding
ACCA residual clause unconstitutionally Vague)
Welch v. U.S. 135 s. ct. 1257 (2016) (Holding that
Johnson applies retroactively)

# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

APPLICATION FOR LEAVE TO FILE A SECOND OR
SUCCESSIVE MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE
28 U.S.C. § 2255
BY A PRISONER IN FEDERAL CUSTODY

Name Roy M. Belfast, Jr.               Prisoner Number 76556-004

Institution Lewisburg U.S.P.

Street Address 2400 Robert F. Miller Drive

City Lewisburg          State PA          Zip Code 17837

### INSTRUCTIONS—READ CAREFULLY

(1)   This application must be legibly handwritten or typewritten and signed by the applicant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

(2)   All questions must be answered concisely in the proper space on the form.

(3)   The Judicial Conference of the United States has adopted the 8½ x 11 inch paper size for use throughout the federal judiciary and directed the elimination of the use of legal size paper. All pleadings must be on 8½ x 11 inch paper, otherwise we cannot accept them.

(4)   All applicants seeking leave to file a second or successive petition are required to use this form, except in capital cases. In capital cases only, the use of this form is optional.

(5)   Additional pages are not permitted except with respect to additional grounds for relief and facts which you rely upon to support those grounds. DO NOT SUBMIT SEPARATE PETITIONS, MOTIONS, BRIEFS, ARGUMENTS, ETC., EXCEPT IN CAPITAL CASES.

*28 U.S.C. § 2255 Application*          **Page 1**          *Revised 1/02/01*

(6)    In accordance with the "Antiterrorism and Effective Death Penalty Act of 1996," as codified at 28 U.S.C. § 2255, effective April 24, 1996, before leave to file a second or successive motion can be granted by the United States Court of Appeals, <u>it is the applicant's burden</u> to make a <u>prima facie</u> showing that he satisfies either of the two conditions stated below.

>    A second or successive motion must be certified as provided in [28 U.S.C.] section 2255 by a panel of the appropriate court of appeals to contain—

>    >    (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

>    >    (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

(7)    When this application is fully completed, the original and three copies must be mailed to:

>    **Clerk of Court**
>    **United States Court of Appeals for the Eleventh Circuit**
>    **56 Forsyth Street, N.W.**
>    **Atlanta, Georgia  30303**

## APPLICATION

1.   (a)    State and division of the United States District Court which entered the judgment of conviction under attack <u>Southern District of Florida</u>

     (b)    Case number <u>1:06-cr-20758-CMA-1</u>

2.    Date of judgment of conviction <u>1/09/2009</u>

3.    Length of sentence <u>1,164 months</u>     Sentencing Judge <u>Cecilia M. Altonaga</u>

4.    Nature of offense or offenses for which you were convicted: <u>Conspiracy to commit torture</u> <u>(18 U.S.C § 2340A(c)); Conspiracy to use, carry, and possess firearms during and in relation to a crime of violence</u> <u>(18 U.S.C. § 924(o));  Torture (18 U.S.C. § 2340A; Using, carrying, and possessing a firearm during and in relation to a</u> <u>crime of violence (18 U.S.C. § 924(c)).</u>

5.    Related to this conviction and sentence, have you ever filed a motion to vacate in any federal court?
          Yes (x)  No ( )  If "yes", how many times? _____ (if more than one, complete 6 and 7 below as necessary)
    (a) Name of court <u>Southern District of Florida</u>
    (b) Case number <u>12-Cv-20754</u>
    (c) Nature of proceeding _____

    (d) Grounds raised (list <u>all</u> grounds; use extra pages if necessary) <u>Ineffective Assistance of</u> <u>trial and appellate counsel</u>

    (e) Did you receive an evidentiary hearing on your motion?  Yes ( )  No (x)
    (f) Result <u>Motion denied</u>

    (g) Date of result <u>2/14/2103</u>

6.    As to any second federal motion, give the same information:
    (a) Name of court _____
    (b) Case number _____
    (c) Nature of proceeding _____

(d) Grounds raised (list all grounds; use extra pages if necessary)_____

_____

_____

_____

_____

(e) Did you receive an evidentiary hearing on your motion?   Yes ( )  No ( )
(f) Result _____

_____

(g) Date of result _____

7.    As to any third federal motion, give the same information:
      (a) Name of court _____
      (b) Case number _____
      (c) Nature of proceeding _____

_____

_____

(d) Grounds raised (list all grounds; use extra pages if necessary)_____

_____

_____

_____

(e) Did you receive an evidentiary hearing on your motion?   Yes ( )  No ( )
(f) Result _____

_____

(g) Date of result _____

8.    Did you appeal the result of any action taken on your federal motion? (Use extra pages to
      reflect additional petitions if necessary)
            (1) First motion          No ( )  Yes (X) Appeal No. 13-11303-A_____
            (2) Second motion         No ( )  Yes ( ) Appeal No. _____
            (3) Third motion          No ( )  Yes ( ) Appeal No. _____

9.    If you did not appeal from the adverse action on any motion, explain briefly why you did
      not: _____

_____

_____

_____

_____

_____

*28 U.S.C. § 2255 Application*                **Page 4**                        *Revised 1/02/01*

10.     State <u>concisely</u> every ground on which you <u>now</u> claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground.

A.     Ground one: <u>Mr. Belfast's convictions under 18 U.S.C. §§ 924(c) and 924(o) are unconstitutional</u>
<u>because the definition of "crime of violence" contained in 18 U.S.C. 924(c)(3)(B) is unconstitutionally vague.</u>
Supporting FACTS (tell your story briefly without citing cases or law):
<u>The United States Supreme Court has declared the ACCA's (18 U.S.C. 924(e)) residual claue unconstutionally</u>
<u>vague.  Mr. Belfast was convicted of 18 U.S.C. §§ 924(c) and 924(o) which incorporate the same</u>
<u>unconstitutionally vague statutory language.  Accordingly, he was denied due process.</u>
PLEASE SEE ATTACHED.

Was this claim raised in a prior motion?     Yes ( ) No ( )

Does this claim rely on a "new rule of law?"     Yes ( )   No ( )
If "yes," state the new rule of law (give case name and citation):
<u>Johnson v. United States, 135 S. Ct. 2551 (2015) (holding ACCA residual clause unconstitutionally vague).</u>
<u>Welch v. United States, 136 S.Ct. 1257 (2016) (holding that Johnson applies retroactively).</u>

Does this claim rely on "newly discovered evidence?"     Yes ( )   No (×)
If "yes," briefly state the newly discovered evidence, and why it was not previously available to you _____

B.     Ground two: _____

Supporting FACTS (tell your story briefly without citing cases or law):

Was this claim raised in a prior motion?     Yes ( ) No ( )

Does this claim rely on a "new rule of law?"   Yes ( )   No ( )
If "yes," state the new rule of law (give case name and citation):

_____

_____

Does this claim rely on "newly discovered evidence?"   Yes ( )   No ( )
If "yes," briefly state the newly discovered evidence, and why it was not
previously available to you _____

_____

_____

_____

_____

_____

_____

**[Additional grounds may be asserted on additional pages if necessary]**

11.   Do you have any motion or appeal now pending in any court as to the judgment now under
attack?   Yes ( )   No (X)
If "yes," name of court _____ Case number _____

Wherefore, applicant prays that the United States Court of Appeals for the Eleventh Circuit
grant an Order Authorizing the District Court to Consider Applicant's Second or Successive
Motion to Vacate under 28 U.S.C. § 2255.

_____
Applicant's Signature
for Roy M Belfost Jr

I declare under Penalty of Perjury that my answers to all the questions in this Application are true
and correct.

Executed on   June 21 2016
[date]

_____
Applicant's Signature
for Roy m Belfast Jr.

*28 U.S.C. § 2255 Application*          **Page 6**          *Revised 1/02/01*

## PROOF OF SERVICE

Applicant must send a copy of this application and all attachments to the United States Attorney's office in the district in which you were convicted.

I certify that on  June 21, 2016 _____, I mailed a copy of this Application[*]  and
                                    [date]

all attachments to  United States Attorney's Office _____

at the following address:

99 N.E. 4th Street, Miami, FL 33132 _____

_____

Applicant's Signature

for Roy M Belfast JR

---

[*]  Pursuant to Fed.R.App.P. 25(a), "Papers filed by an inmate confined in an institution are timely filed if deposited in the institution's internal mail system on or before the last day of filing.  Timely filing of papers by an inmate confined in an institution may be shown by a notarized statement or declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid."

*28 U.S.C. § 2255 Application*          **Page 7**          *Revised 1/02/01*

## ADDITIONAL GROUNDS FOR RELIEF AND FACTS RELIED UPON TO SUPPORT THOSE GROUNDS FOR RELIEF

### I.   PROCEDURAL BACKGROUND

Applicant Roy M. Belfast, Jr., a/k/a Charles Taylor, Jr., is the American-born son of former Liberian President Charles Taylor.  He was charged in a Second Superseding Indictment ("the indictment") with offenses relating to an alleged conspiracy to commit torture as a means of keeping his father's administration in power in Liberia. DE:257. On October 30, 2008, Roy M. Belfast Jr. was found guilty of counts one through eight of the indictment.

Count one alleged that Emmanuel and others conspired to commit torture, in violation of 18 U.S.C. §§ 2340A and § 2340(1). Count two charged Emmanuel with conspiracy to use and carry firearms in furtherance of the crimes alleged in counts one and three through seven of the indictment,  in violation of 18 U.S.C. §§ 924(c) & (o).  Counts three through seven alleged substantive counts of torture, in violation of 18 U.S.C. §§ 2, 2340A,  and 2340(1).  Count eight alleged that on or about July 24, 2002, Emmanuel "did knowingly use and carry a firearm during and in relation to a crime of violence," and did possess a firearm in furtherance of a crime of violence, as set forth in counts one and three through seven of the indictment, in violation of 18 U.S.C. § 924(c)(1)(A).

1  .

For the reasons detailed below, the Supreme Court's ruling in *Johnson v. United*, 135 S. Ct. 2551 (205) – that the residual clause in 18 U.S.C. § 924(e) (the "ACCA") is void for vagueness -- has called into question the constitutionality of Mr. Belfast's convictions and consecutive sentences imposed under the similarly worded residual clause in 18 U.S.C. § 924(c)(3)(B). *See In re Ricardo Pinder, Jr.*, ___ F.3d ___, 2016 WL 3081954 (11th Cir. June 1, 2016) (No. 16-12084) (granting application to a second or successive § 2255 motion challenging a § 924(c) conviction in light of *Johnson*). Hence, the Court should grant Mr. Belfast's application to file a second or successive § 2255 motion to vacate his 924(c) conviction and consecutive sentence in light of *Johnson*.

## II.   The Scope of Review at the authorization Stage is Strictly Circumscribed.

Authorization for leave to file a second or successive motion to vacate, correct, or set aside a federal sentence pursuant to 28 U.S.C. § 2255 may be granted where this Court certifies that the proposed motion "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). This Court "may authorize the filing of a second or successive [motion] only if it determines that the

2

[motion] makes a prima facie showing that [it] satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C).

In performing this "gatekeeping" function, the scope of review is strictly circumscribed.  The plain language of the statute establishes that the only question at the authorization stage is whether the applicant has made a "prima facie showing" that the proposed § 2255 motion "contain[s] a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." The underlying merits of the § 2255 motion are "not relevant." *In re Joshua*, 224 F.3d 1281, 1282 n.2 (11th Cir. 2000) (noting that it was "unnecessary for this Court to answer" questions about the merits of a proposed *Apprendi* claim, because the inquiry under § 2255(h)(2) "addresses only whether *Apprendi* has been made retroactive to cases on collateral review").[1]  And, in that regard, "[a] prima facie showing is not a particularly high standard;" rather, "[a]n application need only show [a] sufficient likelihood of satisfying the strict

---

[1] *See also* Hertz & Liebman, 2 *Federal Habeas Corpus Practice & Procedure* § 28.3[d], at 1615 (6th ed. 2011) ("lack of merit" is "irrelevant" at the authorization stage); *Ochoa v. Simmons*, 485 F.3d 538, 541 (10th Cir. 2007) ("This statutory mandate does not direct the appellate court to engage in a preliminary merits assessment. Rather, it focuses our inquiry solely on the conditions specified in § 2244(b) that justify raising a new habeas claim."); *In re Turner*, 267 F.3d 225, 228 n.2 (3d Cir. 2001) (noting the absence of "any specific language in the statute that would support" requiring the applicant to "make a 'prima facie' showing that he has a meritorious [new rule of constitutional law] claim in the first place").

3

standards of § 2255[h][2] to warrant a fuller exploration by the district court." *In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003) (quotation omitted).

In this case, Mr. Belfast wishes to bring a second or successive § 2255 motion based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Thus, the only issue is whether he has made a "prima facie" showing that *Johnson* announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). That issue is no longer in doubt following the Supreme Court's holding in *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016), that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." In "making" *Johnson* retroactive for purposes of § 2255(h)(2), the Court also noted that "*Johnson* announced a new rule" of constitutional law. *Id.* at 1264. Indeed, it overruled prior Supreme Court precedent. *See Sykes v. United States*, 564 U.S. 1, 15 (2011); *James v. United States*, 550 U.S. 192, 210 n.6 (2007). In light of *Welch*, Mr. Belfast has done more than make the requisite "prima facie showing;" he has in fact satisfied the requirements of § 2255(h)(2). The statute requires nothing more. *See In re Pinder*, 2016 WL 3081954 at * 2 ("What's clear . . . is that Pinder has made a prima facie showing that his motion 'contain[]s a new rule of constitutional law, made

4

retroactive to cases on collateral review by the Supreme Court") (citations omitted).

Not only is that limited scope of review compelled by the plain statutory language, but it "is necessary for the proper implementation of the collateral review structure created by" Congress. *Tyler v. Cain*, 533 U.S. 656, 664 (2001). The statute requires this Court to adjudicate successive applications within 30 days, 28 U.S.C. § 2244(b)(3)(D), and "this stringent time limit thus suggests that the courts of appeals do not have to engage in the difficult legal analysis" that may be required to adjudicate the § 2255 motion, *Tyler*, 533 U.S. at 664. Rather, the statute leaves that analysis to the district court, which not only must adjudicate the merits of the § 2255 motion, but must also determine whether it in fact satisfies the gatekeeping requirements. *See In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) (stressing that the gatekeeping determination is "limited," and "the merits of the [§ 2255] motion, along with any defenses" are to be decided in the district court); 28 U.S.C. § 2244(b)(4).

*Johnson* claims require the courts to determine whether convictions continue to qualify as predicate offenses without the unconstitutionally vague and now void residual clause. And notably, that determination inevitably presents complex legal issues. Because the vast majority of previously-qualifying convictions satisfied the

5

residual clause, there is now great uncertainty about whether they continue to qualify after *Johnson*.

That inquiry will depend on intricacies and minutiae of state law, including hard-to-locate jury instructions. *See United States v. Howard*, 742 F.3d 1334, 1346 (11th Cir. 2014) (sentencing court is "bound to follow any state court decisions that define or interpret the statute's substantive elements"). And, in each case, the Court must ascertain what state law provided at the time the specific conviction occurred. Thus, it is possible that the very same offense may qualify as a predicate offense if committed in one year but not the next. Difficulties will also arise regarding whether offenses constitute a felony "conviction," which is also a matter state law, and whether prior convictions occurred on "occasions different from one another." *See* 18 U.S.C. §§ 921(a)(20), 924(e)(1). In addition to such legal complexities, *Johnson* claims will often involve factual and procedural complexities. In many cases, it will not be clear from the record which prior convictions were relied upon or which state statutory provisions are involved.

Furthermore, the sheer number of successive applications based on *Johnson* has been substantial, and the vast majority of applications to this point have been filed by *pro se* inmates. In most cases, the Court has not had the benefit of counseled briefing, and in no case has there been adversarial presentation or oral argument. Addressing the merits under these sub-optimal conditions will risk

6

erroneous and inconsistent rulings. Yet the stakes could not be higher: meritorious *Johnson* claims will result in substantial sentencing reductions; there is an ever-shortening statute of limitations, *see* 28 U.S.C. § 2255(f)(3); and unsuccessful applicants are unable to seek further review, *see* 28 U.S.C. § 2244(b)(3)(E). In short, it would be both impracticable and contrary to the administration of justice for the Court to resolve these myriad complexities on a limited record within 30 days. Fortunately, as this Court has recently confirmed, the statute does not require it to do so. *See In re Pinder*, ___ F.3d ___, 2016 WL 3081954 (citing with approval *In re Joshua*, 224 F.3d 1281, 1282 n. 2 (11th Cir. 2000) (per curiam) (noting that "the merits of this case . . . are not relevant to whether Joshua can obtain permission to bring a second or successive § 2255 motion to vacate;" authorizing the filing of a second or successive § 2255 motion, while emphasizing that whether the new rule of constitutional law set forth in *Johnson* invalidates Pinder's sentence "must be decided in the first instance by the District Court").

In any event, even if this Court were to consider the merits of the proposed *Johnson* claim Mr. Belfast has raised at the authorization stage, it should find that he has made a "prima facie showing" in that regard since there is, at the very least, a "reasonable likelihood" that his claims have "possible merit" "warrant[ing] fuller exploration by the district court." *Holladay*, 331 F.3d at 1173–74 (citations omitted). Again, "[a] prima facie showing is not a particularly high standard." *Id.*

7

(citation omitted).   At this stage, Mr. Belfast need not establish that he will ultimately prevail on the merits.   And any doubts in that regard should be resolved in his favor, lest he be forever barred from having his *Johnson* claim considered on the merits.   Instead, the proper course is to permit the district court to consider his claims in the first instance based on a complete record, full briefing, and adversarial presentation, as the statute's plain language and structure contemplate.

### III. THE CATEGORICAL AND MODIFIED CATEGORICAL APPROACHES

Although it is inappropriate at this stage for the Court to scrutinize the merits of Mr. Belfast's *Johnson* claim, if the Court nonetheless chooses to do so it must apply the methodology prescribed by the Supreme Court. That methodology, summarized below, was refined most recently in *Descamps v. United States*, 133 S. Ct. 2275 (2013), which this Court has recognized is "the law of the land" and "must be . . . followed." *United States v. Howard*, 73 F.3d 1334, 1344 n.2 (11th Cir. 2014).[2]

---

[2]  This Court has held that, because *Descamps* did not announce a "new" rule of law, but rather clarified existing precedent on the categorical approach, it applies to all *Johnson* claims on collateral review. *Mays v. United States*, __ F.3d __, 2016 WL 1211420, at *4–5 (11th Cir. Mar. 29, 2016).  In that context, the constitutional error is the court's reliance on the residual clause. *Descamps* merely clarified the long-standing analytical framework that will determine whether the prior convictions continue to qualify as a predicate offense absent the residual clause. Thus, it essentially goes to whether the *Johnson* error was prejudicial.  It is not an independent claim that is itself subject to the gatekeeping requirements.

In determining whether a prior conviction qualifies as a predicate offense under the ACCA, 18 U.S.C. § 924(c), or the Career Offender provision of the Guidelines, the Court must apply the "categorical approach." Under that approach, "courts may 'look only to the statutory definitions'"—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In adopting this approach, the Court emphasized both Sixth Amendment concerns (explained below) and the need to avert "'the practical difficulties and potential unfairness of a [daunting] factual approach.'" *Id.* at 2287 (quoting *Taylor*, 495 U.S. at 601). As a result, courts are to "look no further than the statute and judgment of conviction." *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014) (citation omitted). And, in doing so, they "must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2011) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

After *Johnson*, a conviction may still qualify as a predicate offense for an ACCA or a Career Offender enhancement if it is one of the offenses specifically "enumerated" as a violent felony or crime of violence in those provisions. In determining whether a prior conviction so qualifies, the court must ask whether "the relevant statute has the same elements as the 'generic' . . . crime." *Descamps*,

9

133 S. Ct. at 2283. If so, "then the prior conviction can serve as [a] predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is necessarily guilty of all the generic crime's elements." *Id.* (citation and ellipses omitted). However, "if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as [a] predicate, even if the defendant actually committed the offense in its generic form." *Id.* "The key . . . is elements, not facts." *Id.*

A prior conviction may also qualify as a predicate offense for the ACCA and Career Offender enhancements, as well as for a § 924(c) conviction, if it satisfies the "force" or "elements" clauses of these provisions. Indeed, this Court has specifically recognized that the categorical approach, as clarified in *Descamps*, applies equally in analyzing whether a prior "has as an element the use, attempted use, or threatened use of physical force against the person of another." *Estrella*, 758 F.3d at 1244. Again looking no further than the statute and judgment of conviction, a conviction will qualify as a "crime of violence" within the elements clause "only if the statute on its face requires the government to establish, beyond a reasonable doubt and without exception, an element involving the use, attempted use, or threatened use of physical force against a person *for every charge* brought under the statute." *Estrella*, 758 F.3d at 1244 (citation omitted; emphasis added). "Whether, in fact, the person suffering under this particular conviction actually

10

used, attempted to use, or threatened to use physical force against a person is quite irrelevant. Instead, the categorical approach focuses on whether *in every case* a conviction under the statute *necessarily* involves proof of the element." *Id.* (citations omitted; emphasis added).

To implement the categorical approach, the Supreme Court has "recognized a narrow range of cases in which sentencing courts" may look beyond the statute and judgment of conviction and employ what it is referred to as the "modified categorical approach." *Descamps*, 133 S. Ct. at 2283–84. Those cases arise where the statute of conviction contains alternative elements, some constituting a predicate offense and some not. In that scenario, "the statute is 'divisible,'" in that it "comprises multiple, alternative versions of the crime." *Id.* at 2284. As a result, "a later sentencing court cannot tell, without reviewing something more [than the statute and judgment of conviction], if the defendant's conviction" qualifies as a predicate offense. *Id.*

Two key points must be made about the modified categorical approach. First, *Descamps* made clear that "the modified categorical approach can be applied only when dealing with a divisible statute." *Howard*, 742 F.3d at 1344. Thus, where the statute of conviction "does not concern any list of alternative elements" that must be found by a jury, there is no ambiguity requiring clarification, and therefore the "modified approach . . . has no role to play." *Descamps*, 133 S. Ct. at

11

2285–86; *see Estrella*, 758 F.3d at 1245–46; *Howard*, 742 F.3d at 1345–46. "[I]f the modified categorical approach is inapplicable," then the court must limit its review to the statute and judgment of conviction. *Howard*, 742 F.3d at 1345. And, even if a statute is divisible, the court need not employ the modified categorical approach if none of the alternatives would qualify. *Id.* at 1346–47.

Second, even where the modified categorical approach does apply, it does not permit courts to consider the defendant's underlying conduct. Rather, "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature a focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S. Ct. at 2285. And, in order to ensure that the focus remains on the statutory elements rather than the defendant's underlying conduct, the court is restricted in what documents it may consider.

In *Shepard v. United States*, 544 U.S. 13, 15 (2005), the Supreme Court held that courts are "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." What these *Shepard* documents have in common is that they are "conclusive records made or used in adjudicating guilt." *Id.* at 21; *see id.* at 23 ("confin[ing]" the class of permissible

12

documents "to records of the convicting court approaching the certainty of the record of conviction"). That accords with their function in the modified categorical approach—namely, to permit the court to identify the elements for which the defendant was convicted. *Descamps*, 133 S. Ct. at 2284.

Importantly, that inexorable focus on the elements derives in large part from "the categorical approach's Sixth Amendment underpinnings." *Id.* at 2287–88. Other than the fact of a prior conviction, a jury must find beyond a reasonable doubt any fact that increases a defendant's sentence beyond the prescribed statutory maximum. *Id.* at 2288 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The reason for the "prior conviction" exception is that, during the earlier criminal proceeding, the defendant either had a jury or waived his constitutional right to one. *See Apprendi*, 530 U.S. at 488.

As the Supreme Court made clear in *Descamps*, the use of *Shepard* documents "merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits." 133 S. Ct. at 2288. This is so because "the only facts the court can be sure the jury . . . found [beyond a reasonable doubt] are those constituting elements of the offense;" and, similarly, "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements." *Id.* But where a court relies on non-*Shepard* documents to increase a defendant's sentence, it "extend[s] judicial

13

factfinding" "beyond merely identifying a prior conviction," violating the Sixth Amendment. *Id.*

In sum, in determining whether a conviction qualifies as a predicate offense, a court must generally consider only the statute and judgment of conviction. Only if the statute is divisible may the court consider *Shepard* documents, and it may do so only for the sole purpose of ascertaining the statutory elements for which the defendant was convicted. Once those elements are identified, the court must determine whether the least of the acts prohibited thereby constitutes a generic offense enumerated or necessarily requires the use, attempted use, or threatened use of violent, physical force against another. In no case may a court rely on non-*Shepard* documents or analyze whether the defendant's underlying conduct constituted a predicate offense.

## IV. MR. BELFAST HAS MADE A PRIMA FACIE SHOWING THAT HIS CONVICTIONS UNDER 18 U.S.C. §§ 924(C) & 924(O) REST ON THE RESIDUAL CLAUSE IN § 924(C)(3)(B), AND THAT § 924(C)(3)(B) IS VOID FOR VAGUENESS IN LIGHT OF *JOHNSON*

Mr. Belfast was convicted of a violation of 18 U.S.C. § 924(o) in count two, and 18 U.S.C. 924(c) in count eight. At the time of conviction, § 924(c)(1) provided:

> Whoever, during and in relation to any crime of violence . . . uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence . . . be sentenced to imprisonment for five years . . .

14

The term "crime of violence" as used therein was (and still is) defined in §924(c)(3) to mean an offense that is a felony and –

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(o) made it a separate crime to conspire to commit any of the offenses under subsection (c). Mr. Belfast has made a prima facie showing that the residual clause in § 924(c)(3)(B) is unconstitutionally vague after *Johnson*, and that his convictions on counts two and eight rests on that unconstitutionally vague residual clause, for the following reasons.

## A.  The residual clause in §924(c)(3)(B) is void for vagueness in light of *Johnson*

*Johnson* held the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii) ("otherwise involves conduct that presents a serious risk of physical injury to another") to be unconstitutionally vague because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by Judges." 135 S. Ct. at 2557. In the Supreme Court's view, the process espoused by *James v. United States*, 550 U.S. 192 (2007), of determining what is embodied in the "ordinary case" of an offense, and then of

15

quantifying the "risk" posed by that ordinary case, was constitutionally problematic: "[t]he residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. As a result, "[g]rave uncertainty" as to how to determine the risk posed by the "judicially imagined ordinary case" led the Court to conclude that the residual clause was void for vagueness. *Id.* at 2557.

Notably, the same "ordinary case" inquiry that in *Johnson* led the Supreme Court to conclude that the ACCA residual clause is unconstitutionally was previously applied to § 924(c)(3). *United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013). That is, like the ACCA, the residual clause of § 924(c)(3) requires courts to picture the "ordinary" case embodied by a felony, and then assess the risk posed by that "ordinary" case. *See id.*

The definition of "crime of violence" in the residual clause in § 924(c) is identical to that in 18 U.S.C. § 16(b). *Compare* § 924(c)(3)(B) (offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") *with* § 16(b) (offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used on the course of committing the offense"). And this Court previously held that the same "ordinary risk" analysis

16

applied in ACCA cases and § 924(c)(3), also applied in the § 16(b) context. *See United States v. Keelan*, 786 F.3d 865, 871 (11th Cir. 2015).

Since *Johnson*, three circuits have concluded that the statutory language and ordinary risk analysis applicable to § 16(b) is sufficiently similar to that applicable to the ACCA's residual clause that it suffers from the same constitutional defects. *See United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016); *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015). And that logically suggests that the same must also be true of § 924(c)(3)(B), with language identical to § 16(b), and to which the same "ordinary risk" analysis applies.

For this reason, several district courts have explicitly held that the residual clause of § 924(c)(3)(B) is unconstitutionally vague in light of *Johnson*. *See United States v. Thongsouk Theng Lattaphom*, ___ F.Supp.3d ___, 2016 WL 393545 (E.D. Cal. Feb. 2, 2016); *United States v. Bell*, ___ F.Supp.3d ___, 2016 WL 344749 (N.D. Ca. Jan. 28, 2016) ("I agree with defendants that the section 924(c)(3) residual clause cannot stand under *Johnson II*."); *United States v. Edmonton*, 2015 WL 9582736 at *5-6 (D. Md. Dec. 30. 2015) (granting motion to dismiss based on finding that "conspiracy to commit Hobbs Act robbery did not meet the requirements of 18 U.S.C. § 924(c)(3)(A) and that 18 U.S.C. § 924(c)(3)(B) is void for vagueness").

17

And most notably, in the recent case of *In re Ricardo Pinder, Jr.*, ___ F.3d ___, 2016 WL 3081954 (11th Cir. June 1, 2016) (No. 16-12084), this Court granted an application to file a second or successive §2255 motion challenging a § 924(c) conviction by a petitioner, after recognizing that even

> [t]hough § 924(c) is phrased a bit differently from § 924(e), the § 924(c) language also requires courts to decide if the offense in question "naturally involve[s] a person acting in disregard of the risk that physical force might be used against another in committing an offense." *Leocal v. Ashcroft*, 543 U.S. 1, 10, 125 S.Ct. 377, 383 (2004).

*Id.* at *2.

The Court noted with significance that:

> Given the similarity between §924(c) and §924(e), other Courts of Appeals have authorized successive § 2255 petitions based on *Johnson* in § 924(c) cases. *See, e.g., Freeman v. United States*, No. 15-3687 (2d Cir. Jan. 26, 2016); *In re Chapman*, No. 16-246 (4th Cir. May 3, 2016); *Ruiz v. United States*, No. 16-1193 (7th Cir. Feb. 19, 2016) (rejecting the argument "that § 924(c)(3)(B) differs enough from [§ 924(e)(2)(B)(ii)]'s residual clause that it was not invalidated by *Johnson*"). And though the Sixth Circuit has held that § 924(c)(3)(B) is not unconstitutionally vague, *see United States v. Taylor*, 1814 F.3d 340, 379 (6th Cir. 2016), the Seventh and Ninth Circuits have held that identically worded language in 18 U.S.C. § 16(b) is unconstitutionally vague, *see United States v. Vivas-Ceja*, 808 F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015).

*Id.*

18

Ultimately, the Court concluded that "the law is unsettled on whether the rule announced in *Johnson* invalidates Pinder's sentence, but that "[w]hat's clear" is that

> Pinder has made a prima facie showing that his motion "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court. 28 U.S.C.2255(h); *see also In re Joshua*, 224 F.3d 1281, 1282 n. 2 (11th Cir. 2000) (per curiam) (noting that "the merits of this case . . . are not relevant to whether Joshua can obtain permission to bring a second or successive § 2255 motion to vacate').

*Id.* at *2.

For the reasons stated in the Court's now-precedential decision in *In re Pinder*, it should find that Mr. Belfast has likewise made the requisite prima facie showing here that the residual clause in § 924(c)(3)(B) is unconstitutionally void for vagueness, and that Mr. Belfast– like Mr. Pinder – may file a second or successive § 2255 motion challenging his §§ 924(c) and 924(o) convictions on that basis.

## B. Neither torture nor conspiracy to commit torture "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

In *In re Pinder*, the Court did not definitively determine whether the new rule of constitutional law of *Johnson* invalidated Pinder's sentence. It emphasized – as dictated by circuit precedent – that that issue "must be decided in the first instance by the District Court." *Pinder*, 2016 WL 3081954 at *2. Nonetheless,

19

for the reasons below, the predicate offenses listed in the indictment – conspiracy to commit torture and torture – do not qualify as "crimes of violence" without reliance on the unconstitutional residual clause of 18 U.S.C. § 924(c)(3)(B).

Under § 924(c)(3)(A), an offense is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The term "physical force" in § 924(c)(3)(A) has the meaning given to it by the Supreme Court in *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010), which notably is "violent force," *i.e.*, "strong physical force" "capable of causing physical pain or injury to another person." *Id.* (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004), where the Court had previously construed the elements clause in 18 U.S.C. § 16(a), a "very similar" provision to §924(e)(2)(B)(i)).   Neither torture, as defined by 18 U.S.C. § 2340(1), nor conspiracy to commit torture under 18 U.S.C. 2340A(c) requires any such force.

As detailed in Part III *supra*, in determining whether an offense qualifies as a "crime of violence" under the "elements" clause, sentencing courts must employ the categorical approach. *Descamps*, 133 S. Ct. at 2283; *Estrella*, 758 F.3d at 1244-1245.   And application of the post-*Descamps*, elements-driven categorical approach yields the conclusion that it torture not a "crime of violence" under the elements clause in § 924(c)(3)(A).

20

18 U.S.C. § 2340(1) defines torture as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." Because "severe mental pain and suffering" is defined in § 2340(2), Mr. Belfast assumes the statute is divisible within the meaning of *Descamps* and acknowledges that the indictment charged physical pain and suffering in this case. It is still clear that the definition of torture provided by the statute, even with respect to the infliction of sever physical pain or suffering, does not require the use of violent physical force. The statute only requires the government to prove an act (1) committed by a person acting under color of law, (2) specifically intended (3) to cause severe physical pain or suffering, (4) upon an person within his custody or control. There are many ways in which this could be accomplished without employing the use of physical force.

As just a few examples, a prisoner could be subjected to stress positions, sleep-deprivation, extreme temperatures, pain-inducing drugs, or starvation. Poison, anthrax, and chemical weapons may also cause severe pain and suffering -- as well as death -- without the "use" of "physical force." Other courts have declared convictions overbroad and outside the elements clause for this reason. *See, e.g,, United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005); *United*

21

*States v. Torres-Miguel*, 701 F.3d 165, 168-169 (4th Cir. 2012); *Matter of Guzman-Polanco*, 26 I & N Dec. 713, 717-718 (BIA Feb. 24, 2016). Each of these methods could constitute "torture" within the meaning of 18 U.S.C. § 2340(1), without requiring the active employment of violent physical force. Wherefore, torture, categorically, is not a "crime of violence" under the elements clause of 18 U.S.C. § 924(c)(3)(A).

The lack of force is even more apparent with respect a conspiracy to commit torture in violation of 18 U.S.C. § 2340A(c). In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture. *See* DE 580 at 4-5 (jury instructions). *See also* 11th Circuit Pattern Jury Instruction 13.1 (2010 ed.) ("It's a separate Federal crime for anyone to conspire or agree with someone else to do something that would be another Federal crime if it was actually carried out."). Hence, a conspiracy to commit torture does not have "as an element the use, attempted use, or threatened us of physical force against a person or property of another," and therefore, does not fall within the §924(c) force clause.

22

It is clear, therefore, that Mr. Belfast's convictions in counts two and eight must rest solely on the residual clause of 18 U.S.C. § 924(c)(3)(B).   For   the above reasons, Mr. Belfast has made a prima facie showing that after *Johnson*, the residual clause of § 924(c)(3)(B) is unconstitutionally vague; that his convictions for torture and conspiracy to commit torture fail to qualify as crimes of violence under the elements clause in § 924(c)(3)(A); and that therefore, his § 924(c) and § 924(o) convictions rely on the unconstitutional residual clause in § 924(c)(3)(B) and should be vacated following *Johnson*.   At the very least, the arguments raised herein should be sufficient to warrant further review by the district court, and the Court should grant this application on that basis.

23



# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

APPLICATION FOR LEAVE TO FILE A SECOND OR
SUCCESSIVE MOTION TO VACATE, SET ASIDE
OR CORRECT SENTENCE
28 U.S.C. § 2255
BY A PRISONER IN FEDERAL CUSTODY

Name **Roy Belfast**                    Prisoner Number **76556-004**

Institution **United States Penitentiary Lee (P.O. Box 305)**

Street Address **P.O. Box 305**

City **Jonesville**            State **Va**            Zip Code **24263**

## INSTRUCTIONS–READ CAREFULLY

(1)   This application must be legibly handwritten or typewritten and signed by the applicant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

(2)   All applicants seeking leave to file a second or successive motion to vacate should use this form. In capital cases, the use of this form is optional.

(3)   All questions must be answered concisely in the proper space on the form.

(4)   Additional pages are not permitted except with respect to identifying additional grounds for relief and facts on which you rely to support those grounds. To raise any additional claims, use the "Additional Claim" pages attached at the end of this application, which may be copied as necessary. DO NOT SUBMIT SEPARATE PETITIONS, MOTIONS, BRIEFS, ARGUMENTS, ETC., EXCEPT IN CAPITAL CASES.

*28 U.S.C. § 2255 Application*          Page 1          *Revised: 12/18*

(5)    In accordance with the "Antiterrorism and Effective Death Penalty Act of 1996," as codified at 28 U.S.C. § 2255, effective April 24, 1996, before leave to file a second or successive motion can be granted by the United States Court of Appeals, <u>it is the applicant's burden</u> to make a <u>prima facie</u> showing that satisfies either of the two conditions in 28 U.S.C. § 2255(h), stated below.

> A second or successive motion must be certified as provided in [28 U.S.C.] section 2244 by a panel of the appropriate court of appeals to contain—

>> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

>> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

(6)    When this application is fully completed, if it is being filed in paper, the original and three copies must be mailed to:

**Clerk of Court**
**United States Court of Appeals for the Eleventh Circuit**
**56 Forsyth Street, N.W.**
**Atlanta, Georgia  30303**

*28 U.S.C. § 2255 Application*              Page 2             *Revised: 12/18*

**APPLICATION**

1.  (a)  Identify the United States District Court which entered the judgment of conviction being challenged:

_Southern District of Florida, Eleventh Circuit_

(b)  Case number _06-20758-cr-ALTONAGA_

2.  Date of judgment of conviction _January 9th 2009_

3.  Length of sentence _1,167_   Sentencing Judge _Cecilia Altonaga_

4.  List all offenses for which you were convicted in the case identified above:

_(1) Conspiracy to Commit Torture 18 U.S.C. § 2340 A(c); (2) Conspiracy to use and carry a firearm .. 18 U.S.C. § 924 (O); (3), (4), (5), (6), (7) 18 U.S.C. § 2340 A (substantive count; count (8) 18 U.S.C. § 924 (c)(1)(A)_

5.  Related to this conviction and sentence, have you ever filed a motion to vacate in any federal court?

Yes [✓] No [ ]  If "yes," how many times? _1_  (if more than one, complete 6 and 7 below as necessary)

(a) Name of court _Southern District of Florida_

(b) Case number _12-cv-20754_

(c) Nature of proceeding _____

(d) Grounds raised (list all grounds; use extra pages if necessary) _Ineffective Assistance of Trial and Appellate Counsel_

---

*28 U.S.C. § 2255 Application*                Page 3                *Revised: 12/18*

(e) Did you receive an evidentiary hearing on your motion?   Yes [ ]   No [X]

(f) Result _Denied_

(g) Date of result _2/14/2013_

6.    As to any second federal motion, give the same information:

(a) Name of court _Eleventh Circuit Court of Appeals_

(b) Case number _16-13950_

(c) Nature of proceeding _Second or Successive Application_

(d) Grounds raised (list **all** grounds; use extra pages if necessary) Convictions under 18 u.s.c. § 924(c) and 18 u.s.c. § 924(c) are un-constitutional, because the definition of crime of violence contained in 18 u.s.c. § 924 (c)(3)(B) is unconstitutionally vague

(e) Did you receive an evidentiary hearing on your motion?   Yes ☐   No ☒

(f) Result Denied

(g) Date of result 7/27/2016

7.    As to any third federal motion, give the same information:

(a) Name of court Southern District of Florida

(b) Case number 18- 21143 -CIV - ALTONAGA

(c) Nature of proceeding _Second - n - Time § 2255_

_____

_____

_____

(d) Grounds raised (list <u>all</u> grounds; use extra pages if necessary)_____

(1) Violation of 18 U.S.C. § 4001 (a)_____

(2) Failure By Government to Demonstrate 18 U.S.C. § 2340 A (c)

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

(e) Did you receive an evidentiary hearing on your motion?   Yes ☐   No ☒

(f) Result _Denied_____

_____

(g) Date of result _April 16th, 2018_____

_28 U.S.C. § 2255 Application_               **Page 6**               _Revised: 12/18_

8.  Did you appeal the result of any action taken on your federal motion? (Use extra pages to reflect additional motions if necessary)

    (1) First motion      No ☐ Yes ☑ Appeal No. 13-11303-A

    (2) Second motion    No ☒ Yes ☐ Appeal No. _____

    (3) Third motion     No ☒ Yes ☐ Appeal No. _____

9.  If you did not appeal from the adverse action on any motion, explain briefly why you did not:

No appealable Issue and failure to prosecute based upon institutional issues

10. State concisely every ground on which you now claim that you are being held unlawfully. Summarize briefly the facts supporting each ground.

    A.   Ground one: Count 2 and 8 (18 U.S.C. § 924(c) and 924(o) must be vacated based upon Supreme Court Ruling in Davis v. United States 139, S.ct. 2319, 204 L.Ed 2d 757 (2019

    Supporting FACTS (tell your story briefly without citing cases or law):

    ( See Memorandum )

Was this claim raised in a prior federal petition, motion, or application for leave to file a second or successive motion to vacate?   Yes ✓  No ☐

Does this claim rely on a "new rule of constitutional law"?   Yes ✓   No ☐

If "yes," state the new rule of constitutional law (give case name and citation):

The Supreme Court ruled in Davis v. United States that 18 u.s.c. § 924 (c)(3)(B) is unconstitutional. 139, S.Ct. 2319, 204 L.Ed 2d 757 (2019)

Does this claim rely on "newly discovered evidence"?   Yes ☐   No ☒

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*28 U.S.C. § 2255 Application*                    **Page 9**                    *Revised: 12/18*

_____

_____

**B.**     Ground two:_____

_____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Was this claim raised in a prior federal petition, motion, or application for leave to file a second or successive motion to vacate?   Yes ☐ No ☐

Does this claim rely on a "new rule of constitutional law"?   Yes ☐   No ☐

If "yes," state the new rule of constitutional law (give case name and citation):

_____

_____

_____

_____

_____

_____

_____

_____

_____

Does this claim rely on "newly discovered evidence"?   Yes ☐   No ☐

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_____

_____

_____

_____

_____

_____

_____

*28 U.S.C. § 2255 Application*                    Page 11                    *Revised: 12/18*

C.   Ground three: _____

_____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Was this claim raised in a prior federal petition, motion, or application for leave to
file a second or successive motion to vacate?    Yes☐  No☐

Does this claim rely on a "new rule of constitutional law"?    Yes☐    No☐

If "yes," state the new rule of constitutional law (give case name and citation):

_____

_____

*28 U.S.C. § 2255 Application*                **Page 13**                        *Revised: 12/18*

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Does this claim rely on "newly discovered evidence"?     Yes ☐     No ☐

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

*28 U.S.C. § 2255 Application*                    **Page 14**                    *Revised: 12/18*

_____

_____

_____

_____

_____

⬜ **CHECK HERE IF ADDITIONAL CLAIM PAGES ARE ATTACHED.**

11.   Do you have any motion, petition, application, or appeal now pending in any court as to the judgment now being challenged?   Yes ☑  No ⬜
If "yes," name of court Western Dist. of Virginia  Case number 7:18-cv-00453-
                                                                        JLK-RSB

        Wherefore, applicant prays that the United States Court of Appeals for the Eleventh Circuit grant an Order Authorizing the District Court to Consider Applicant's Second or Successive Motion to Vacate under 28 U.S.C. § 2255.

                                            _Ray Belfast_____
                                            Applicant's Signature

I declare under Penalty of Perjury that my answers to all the questions in this Application are true and correct.

Executed on  1/12/2020
                    [date]

                                            _Ray Belfast_____
                                            Applicant's Signature

*28 U.S.C. § 2255 Application*          **Page 15**          *Revised: 12/18*

## PROOF OF SERVICE

Applicant must send a copy of this application and all attachments to the United States Attorney's office in the district in which you were convicted.

I certify that on ___1/22/2020___, I mailed a copy of this Application[*] and
        [date]

all attachments to __United States Attorneys Office for the S.D. Fla.__

at the following address:
__99 N.E. 4th Street, Miami Fla__

_Ray Belfast_
Applicant's Signature

---

[*] Pursuant to Fed. R. App. P. 25(a)(2)(A)(iii), "If an institution has a system designed for legal mail, an inmate confined there must use that system to receive the benefit of this Rule 25(a)(2)(A)(iii). A paper not filed electronically by an inmate is timely if it is deposited in the institution's internal mail system on or before the last day for filing and:
• it is accompanied by: a declaration in compliance with 28 U.S.C. § 1746—or a notarized statement—setting out the date of deposit and stating that first-class postage is being prepaid; or evidence (such as a postmark or date stamp) showing that the paper was so deposited and that postage was prepaid; or
• the court of appeals exercises its discretion to permit the later filing of a declaration or notarized statement that satisfies Rule 25(a)(2)(A)(iii)."

## ADDITIONAL CLAIM

Ground _____:

_____

_____

_____

Supporting FACTS (tell your story briefly without citing cases or law):

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

Was this claim raised in a prior federal petition, motion, or application for leave to file a second or successive motion to vacate?    Yes ☐ No ☐

Does this claim rely on a "new rule of constitutional law"?    Yes ☐    No ☐

If "yes," state the new rule of constitutional law (give case name and citation):

_____

_____

*28 U.S.C. § 2255 Application*    **(Continue to Page 2 to complete this claim)**

Does this claim rely on "newly discovered evidence"?     Yes ☐     No ☐

If "yes," briefly state the newly discovered evidence, why it was not previously available to you, and how it establishes by clear and convincing evidence that no reasonable factfinder would have found you guilty of the offense.

_28 U.S.C. § 2255 Application_                    **Page 2**

## Memorandum of Law

## ARGUMENT

### 18 U.S.C. §924(c) And 18 U.S.C. § 924 (o) Must Be Vacated.

In light of the recent Supreme Court case Davis v. United States 139 S. Ct 2319, 204 L.Ed.2d 757 (2019) counts 2, and 8 under 18 U.S.C. § 924 (c)(1)(A) and 18 U.S.C. § 924 (o) must be vacated This court, the Eleventh Circuit Court of Appeals has ruled that Davis v. United States, 204 L.Ed.2d 757 (2019) to be retroactive in In re Hammond, No. 19-12458, 2019 U.S. App. LEXIS 21950 (11th Cir. July 23, 2019) and In re Cannon, 931 F.3d 1236 (11th Cir. 2019). This court has also observed the fact that 18 U.S.C. § 924(o) accompanying 18 U.S.C. § 924 (c)(1)(a) must be vacated. The court declares: "Although Davis did not directly invalidate any part of § 924(o), because § 924 (o) criminalizes conspiring to commit an offense under § 924(c), it follows that Davis applies to undermine § 924 (o) offenses

predicated on conspiring to commit an offense under §
924(c)(3)(B). See Davis, 139 S. ct. at 2324-25, 2336; 18 U.S.C. §
924(0)." (See In re: Jamaur Lewis, 2019 U.S. App. LEXIS
26949, No. 19-13065-C, Sept. 5th, 2019.)

18 U.S.C. § 2340A(c) Conspiracy to Commit Torture Has No
Elements of Force, Attached To It's Language. It Can
Be Violated Without Any Act of Violence.

18 U.S.C. § 2340 A (c) states: "A person who conspires to
commit an offense under this section shall be subject to the
same penalties as the penalties prescribed for the offense,
the commission of which was the object of the conspiracy."

It is a well know fact the mere agreement towards a
specific conspiracy is sufficient to violate a given statute,
even when no substantial step other than                to meet again
was validated, or made.

Case 1:20-cv-20385-CMA   Document 8   Entered on FLSD Docket 03/02/2020   Page 126 of 202
Case: 20-10327   Date Filed: 11/01/93/2020   Page: 99 of 175

3

The subsection of 18 U.S.C. 2340 A(c) like all other conspiracy statutes require knowledge, Agreement, Overt Act before the substantive act be violated, an overt act need not be the substantive act under a given statute. Conspiracy does not by it's nature present serious risk of physical force. In other words the conspiracy to commit torture does not meet the force or elements clause to facilitate sustaining the 18 U.S.C. § 924 (c)(i)(A). The substantive act of torture itself can be violated without any physical act of violence, example: " application of mind altering substances or other procedures calculated to disrupt profoundly the senses .... " (See 18 U.S.C. § 2340 (2)(D)). Finally the jury was never instructed in petitioners case as it relates to an "overt act". In re: Roy Belfast, Case No. 16-13950, date filed: 07/27/2016 page 10 of 14 Judge Martin observes: "Mr. Belfast has a stronger argument with respect to his conspiracy conviction." It's a seperate Federal crime for anyone to conspire or agree with

someone else to do something that would be another Federal Crime if it was actually carried out." 11th Circuit Pattern Jury Instruction 13.1 (2010 ed.). In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture. However, the jury was not instructed that the defendant need take any "overt act" in furtherance of the conspiracy." (See Exhibit "A" In re: Roy Belfast, Case No. 16-13950). Also the court need be made aware the United States Department of Justice declares in active § 2241 proceedings that petitioner is wrongfully convicted concerning "Conspiracy to Commit Torture", count 1. In Belfast v. Breckon, Civil Docket # 7:18-cv-00453-JLK-RSB U.S. District Court, Western District of Virginia (Roanoke) Docket #14, Filed 11/26/18, Page 6 of 8, the government

states: "While the petition could be liberally read to assert that information recently obtained through a FOIA request allegedly shows evidence that petitioner was wrongfully convicted. (Compl., ECF No. 1 at 24), that allegation is not properly brought in a § 2241 petition. Rather a claim of actual innocence based on allegedly new facts must be brought in a § 2255 petition. 28 u.s.c. § 2255 (h)." (See Exhibit "C" Docket # 14, Page 6 of 8). Petitioner is presently under Rule 59(e) Reconsideration based upon the government failing to disclose in it's filings before the Habeas Court, petitioner satisfied 2255(e) criteria based on  In re: Roy Belfast Eleventh Circuit Court of Appeals U.S. App Lexis 15636, No. 18-12053-F, 2018. The admission in § 2241 proceeding by government proves further the unconstitutional nature of count One, invalidating the relationship between count 1, and 18 u.s.c. § 924 (c)(1)(A) as well as 18 u.s.c. § 924 (o).

After the governments firm concession and declaration in Document # 14, page 6 of 8. The government chose to fully waive its right to respond, and sustain a Article III, Section 2, Clause 1, case or controversy, issue, before the court. By defaulting, failing to respond to the Magistrates court imposed time frame, upon the government seeking a extension to respond to Petitioners objections to the 12(b)(i) motion, docket # 19. Magistrates court order found on Docket # 23, Civil Case 7:18-cv-00453-JLK-RSB, Belfast v. Breckon, U.S. District Court, Western District of Virginia, 4th Cir. There is no longer a case or controversy. The District Court, or the Fourth Circuit Court of Appeals will have to dismiss for lack of subject matter jurisdiction.

Based Upon Jury Instructions, Petitioner Was Prejudiced In Relation To 18 U.S.C. § 924 (c)(1)(A). The Court Can't Determine If The Jury Convicted Under 924(c)(1)(A) In Connection To The Conspiracy Or Substantive Counts.

---

The jury instructions follow the same multiplicitous, duplicitous language of the indictment, thereby causing a general verdict in relation to 18 U.S.C. § 924 (c)(1)(a). No determination can be made, as to where petitioner used a alleged gun. Judge Martin observes in pages 11, 12, 13 of 14 in In re: Roy Belfast, Case No. 16-13950 a critical point regarding count 8 (see exhibit "A"). In ending analysis concerning 924(c)(1)(A) Judge Martin states: "Certainly, Mr. Belfast is prejudiced if he is not allowed to challenge his § 924 (c) conviction by us guessing that the jury unanimously found that he used a gun during his torture crime, as opposed to his conspiracy crime. And as Mr. Belfast's indictment is written all we can do is guess. We simply cannot know on which companion conviction the jury relied." (See Ex. "B" Jury Instruction)

Based upon the facts and the recent Supreme Court Ruling

under Davis v. United States , petitioner meets the Prima

Facie showing to be granted permission to file a

§ 2255 before the District Court.

Done Under The Penalty of Perjury 28 u.s.c. 1746

/s/ Roy Belfast

Date 1/12/2020

United States District Court
For The
Southern District of Florida


United States of America | Criminal Case :
                         | Civil Case
V.                       |
  Roy Belfast            |



        Motion To Correct Sentence Under 28 u.s.c. § 2255



              Introduction

I Roy Belfast, Pro-se litigant, hereby file a motion to set
aside the judgment in this case and correct sentence pursuant
to 28 u.s.c. § 2255 and United States Constitution.

Jan 9th, 2009. Petitioner was sentenced to 240 months
count 1 Conspiracy to Commit Torture ; 240 months as to
count 2, 18 u.s.c. § 924 (0) ; 120 months as to counts 3
through 7 substantive acts of torture (18 u.s.c. § 2340 A) ;
84 months as to count 8, 18 u.s.c. § 924 (c)(1)(A), with all
such terms to run consecutively to each other, with a court
assessment fee of 800·⁰⁰ dollars, a hundred dollars for each
count (See Case 1:06-cr-20758-CMA Document 618, page 3 of 7
and 7 of 7). Sentenced to 1,164 months.


                        J1

In Light of Davis v. United States, 139 S. ct. 2319, 204 L.Ed 2d 757 (2019) Count Eight 18 u.s.c. § 924 (C)(1)(A); And Count Two, 18 u.s.c. § 924(o) Must Be Vacated.

In light of the recent Supreme Court case Davis v. United States, 139 S. ct. 2319, 204 L.Ed. 2d 757 (2019); counts 8 and 2 must be vacated. The Supreme in Davis v. U.S. stated, 924(c)(3)(B) is unconstitutionally vague. The Eleventh Circuit Court of Appeals has ruled that Davis v. U.S., 204 L.Ed. 2d 757 (2019) to be retroactive in In Re: Hammoud, No 19-12458, 2019 U.S. App. LEXIS App. 21950 (11th Cir. July 23, 2019) and In RE: Cannon, 931 F.3d 1236 (11th Cir. 2019). The Eleventh Circuit also observed any 18 u.s.c. § 924 (o) accompanying 18 u.s.c. § 924 (c)(1)(A) must be vacated as well. (see In Re: Jamaur Lewis, 2019 U.S. App. LEXIS 26949, No. 19-13065-c (Sept 5th, 2019)

18 U.S.C. § 2340 A (c) Conspiracy To Commit Torture Has No Elements of Force Attached To It's Language. It Can Be Violated Without Any Act of Violence.

18 U.S.C. § 2340 A (c) states: "A person who conspires to commit an offense under this section shall be subject to the same penalties, as the penalties prescribed for the offense, the commission of which was the object of the conspiracy." The mere agreement and any step towards a specific conspiracy is sufficient to violate a given statute, even when no substantial step other than a meeting, after agreement was initially made. Conspiracy does not by it's nature present serious risk of physical force. In other words the conspiracy to commit torture does not meet the force or elements clause to facilitate sustaining counts two or eight. The substantive act of torture itself can be violated without any physical act of violence, i.e. 18 U.S.C. § 2340 (2)(0) states: " application of mind altering substances or other procedures calculated....

Case 1:20-cv-20385-CMA   Document 8   Entered on FLSD Docket 03/02/2020   Page 135 of 202
Case: 20-10327      Date Filed: 01/23/2020 (126 of 193)      Page: 108 of 175

J4

to disrupt profoundly the senses..." Finally the jury was never instructed in petitioners case, as it relates to an "overt act". In RE: Roy Belfast, Case No. 16-13950, date filed: 07/27/2016, page 10 of 14 Court of Appeals Judge Marlin observes: "Mr Belfast has a stronger argument with respect to his conspiracy conviction. It is a seperate Federal crime for anyone to conspire or agree with someone else to do something that would be another Federal crime if it was actually carried out. 11th Circuit Pattern Jury Instruction 13.1 (2010. ed). In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture. However, the jury was not instructed that defendant need take any "overt act" in furtherance of the conspiracy." (see Exhibit "A" In RE:(Roy) Belfast, Case No...

16 - 13950.)

Based Upon Jury Instructions Petitioner Was Prejudiced In Relation
To 18 u.s.c. § 924 (c)(1)(A). The Court Can Not Make A
Determination Based Upon Instructions Where Count 8
Conviction Should Be Applied.

The Jury instructions follow the same multipicitous,

duplicitous language of the indictment, thereby causing a

general verdict in relation to 18 u.s.c. § 924 (c)(1)(a). The

Professional, Venerable Judge Martin observes in pages

11, 12, 13 of 14 in In Re: Roy Belfast, Case No. 16-13950, Ex. "A",

a critical point, and confirms Petitioners argument (See Ex "

A" In Re: Roy Belfast). In ending analysis concerning

18 u.s.c. § 924 (c)(1)(A) the Venerable Judge States: "Certainly

Mr. Belfast is prejudiced if he is not allowed to challenge

his § 924 (c) conviction by us guessing that the jury unanimously

found that he used a gun during his torture crime, as

opposed to his conspiracy crime. And as Mr. Belfast's

indictment is written all we can do is guess. We simply . . .

cannot know on which companion conviction the jury relied."
(See Ex. "B" Jury Instruction)

In Conclusion

Petitioner requests removal of counts Two and Eight, 18 U.S.C. §
924 (o) and 18 U.S.C. § 924 (c)(1)(A), in light of Davis v.
United States, 204 L. Ed. 2d 757, as well as rulings by the
Eleventh Circuit Court of Appeals in In Re: Hammoud, No. 19-
12458, 2019 U.S. App. LEXIS US App. 21950 (11th Cir. July 23, 2019);
In RE: Cannon, 931 F. 3d 1236 (11th Cir. 2019); In Re: Jamaur
Lewis, 2019 U.S. App. Lexis 26949, No. 19-13065, (Sept 5th
2015) at minimum, and supplement motion be given consideration.

Done Under The Penalty of Perjury 28 U.S.C. § 1746

/s/ Roy Belfast

J6

Certificate of Service

I hereby certify that a said copy was mailed to U.S.A
S.D. FL   99 N.E Street, Miami FL   33132, on 1/22/2020


/s/ Roy Belfast

United States District Court
For The
Southern District of Florida

United States of America | Criminal Case No:
                        | Civil Case:
                        |
v.                      |
                        |
Roy Belfast             |
_____|


Motion To Supplement Issues Upon Grant
of 28 U.S.C. § 2255


Here comes Roy Belfast, Pro-se before the court seeking
to supplement issues relevant to the 28 U.S.C. § 2255
proceedings regarding issues of "Due Process", that will impact
any revised judgment.

The Jury Was Never Instructed In Relation To A Overt Act
Concerning Count 1 Conspiracy to Commit Torture Violating
Petitioners "Due Process".


Failure by the District Court to have instructed the jury regarding

the "overt act" carried out by Petitioner in furtherance of 18

U.S.C. § 2340 A (c) violates "Due Process", the jury did not find

Petitioner guilty as a result. The present conviction under

count One is unconstitutional, leaving Petitioner prejudiced;

count One must be vacated. "The jury was never instructed

in petitioners case as it relates to an overt act". (See

Ex. "A" In RE: BELFAST, Page 10 of 14, Case No. 16-13950)

1A

2A

**The Government Failed To Prove Beyond A Reasonable Doubt
Petitioner Violated Count 1**

The government failed to prove beyond a reasonable doubt

that plaintiff conspired to commit turture, in violation of

Jackson v. Virginia, 61 L.ED. 2D. 560. Placing petitioner in

a "one man" conspiracy in violation of Petibone v. United,

37 L.ED. 419 and Morrison v. California, 78 L.ED 664.

In addition in Belfast v. Breckon, civil case : 7:18-cv-00453-

JLK-RSB, U.S. District, Western District of Virginia, docket #

14, Page 6 of 8, the government concedes Petitioner is

wrongfully convicted, factually innocent, based upon FOIA

submitted in Docket # 1 exhibits, civil case 7:18-cv-

00453-JLK-RSB (see Exhibit "C" Docket # 14 page 6 of

8, concerning 18 u.s.c. § 2340 A (c). Which is now official

DOJ Policy based upon office of Information Policy Findings

and FOIA initial release. Count 1 now violates 18 u.s.c. §

4001 (a)

Removal of Count 1 Requires The Dismissal of Count 3 Through 7 Based Upon How The Jury Was Instructed

The jury was instructed to convict regarding substantive acts of torture, once determining that a conspiracy existed. In 1:06-cr-20758-CMA, Document 580, page 5 of 11, jury instructions states: "if you first found the defendant guilty of the conspiracy offense as charged in count one of the Second Superseding indictment, you may also find the defendant guilty of any of the offenses charged in counts three through seven even though defendant did not personally participate in such offenses if you find beyond a reasonable doubt..." (See "  " Jury Instructions). A re-issuance of a new judgment reflecting counts three through seven as convictions would violate "Due Process" and prejudice Petitioner.

District Court Created Collateral Consequences
When Issuing A $800.00 Assessment Fee. Requiring
The Removal of Counts Three Through Seven


Petitioner was charged 100.00 for each count. The blockburger

test should have been applied during sentencing. Same evidence

in count One, proved counts three through eight. 100.00 assessment

of counts three through seven amounted to double punishment.

"When this assessment is imposed twice for the same act,

the Supreme court has held that it is a collateral consequence

amounting to double punishment." Rutledge v. U.S., 517 U.S.

292, 302-03, 134 L.Ed.2d 419, 116 S. ct 1241 (1996) (U.S. v.

Brown, Sept 22 1999, 202 F.3d 691 U.S., 4th Cir.).

"Second conviction, even if it results in no greater sentence it

is an impermissable punishment." Ball v. U.S. 470 U.S.

856, 105 s.ct 1668, 84 L.Ed 2d 740 (1985)

" The Supreme Court has ruled that the concurrent sentence doctrine does not apply where defendant was assessed cumulative money assessments for each count of conviction. Rutledge, 517 U.S. at 301, 116 S.ct. 1247 ("As long as § 3013 stands, a second conviction will amount to a second punishment)."
( See 717 Fed Appx. 954 Crazy v. U.S. Dec 7th, 2017 Eleventh Circuit Court of Appeals )

   Counts Three through Seven will have to be vacated as a result.

In Conclusion

Based upon facts in the original 2255 motion, Supplemental motion, Petitioner requests dismissal of the present Judgment and Commitment in full, and immediate release from Federal Custody. " Ordinarily vacation of sentence is tantamount to vacation of the judgment of conviction", 315 US 513.

Done Under Penalty of Perjury 28 u.s.c. § 1746

/s/ Roy Belfast

Certificate of Service

I hereby Certify that a said copy was mailed to U.S.A
S.D. FL   99 N.E Street, Miami FL 33132, on 1/22/2020

/s/ Roy Belfast

7A

Ex "A" In re: Ray Belfast
Case No: 16-13950
Date Filed: 07/27/2016

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 16-13950-J

IN RE: ROY BELFAST, JR.,

Petitioner.

Application for Leave to File a Second or Successive
Motion to Vacate, Set Aside,
or Correct Sentence, 28 U.S.C. § 2255(h)

Before MARCUS, MARTIN, and ROSENBAUM, Circuit Judges.

BY THE PANEL:

Pursuant to 28 U.S.C. §§ 2255(h) and 2244(b)(3)(A), Roy Belfast, Jr. has filed an application seeking an order authorizing the district court to consider a second or successive motion to vacate, set aside, or correct his federal sentence, 28 U.S.C. § 2255. Such authorization may be granted only if this Court certifies that the second or successive motion contains a claim involving:

> (1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

> (2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

28 U.S.C. § 2255(h). "The court of appeals may authorize the filing of a second or successive application only if it determines that the application makes a prima facie showing that the

application satisfies the requirements of this subsection." *Id* . § 2244(b)(3)(C); *see also Jordan v. Sec'y, Dep't of Corrs.*, 485 F.3d 1351, 1357-58 (11th Cir. 2007) (explaining that this Court's determination that an applicant has made a *prima facie* showing that the statutory criteria have been met is simply a threshold determination).

In his application, filed with the assistance of counsel, Belfast indicates that he wishes to raise one claim in a second or successive § 2255 motion, relying upon the new rule of constitutional law announced in *Johnson v. United States*, 576 U.S. ___, 135 S. Ct. 2551, 192 L. Ed. 2d. 569 (2015). Belfast argues that his 18 U.S.C. §§ 924(c) and (o) convictions are no longer valid, because neither torture nor conspiracy to commit torture is a crime of violence after *Johnson*.

The Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e), defines the term "violent felony" as any crime punishable by a term of imprisonment exceeding one year that:

> (i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)  is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B). The first prong of this definition is sometimes referred to as the "elements clause," while the second prong contains the "enumerated crimes" and, finally, what is commonly called the "residual clause." *United States v. Owens*, 672 F.3d 966, 968 (11th Cir. 2012).

In *Johnson*, the Supreme Court held that the residual clause of the ACCA is unconstitutionally vague because it creates uncertainty about how to evaluate the risks posed by a crime and how much risk it takes to qualify as a violent felony. *Johnson*, 576 U.S. at ___, 135

2

S. Ct. at 2557-58, 2563.   The Court explained that, to determine whether a crime qualifies as a violent felony under the ACCA's residual clause, courts must apply the categorical approach.   *Id.* at __, 135 S. Ct. at 2557.   Under that approach, the court must first decide what kind of conduct the crime involves "in the ordinary case," and then determine degree of risk posed by that conduct.   *Id.*   The Court first concluded the residual clause offered no reliable method to determine what the "ordinary case" of a crime entailed, leaving "grave uncertainty about how to estimate the risk posed by a crime."   *Id.* at __, 135 S. Ct. at 2257-58.   The Court next explained the residual clause also leaves uncertainty about the degree of risk necessary for a crime to qualify as a violent felony because it requires judges to apply the "serious potential risk" standard to the imagined "ordinary case."   *Id.* at __, 135 S. Ct. at 2558.   Furthermore, the residual clause requires courts to interpret "serious potential risk" in light of the ACCA's four enumerated offenses, which are "far from clear in respect to the degree of risk each poses."   *Id.* (quotation omitted).   The Court concluded that the combined indeterminacy about how to measure the risk posed by a crime and how much risk is necessary to qualify as a violent felony "produces more unpredictability and arbitrariness than the Due Process Clause tolerates."   *Id.*   The Court stated the "hopeless indeterminacy" of the residual clause was confirmed both by its own repeated attempts and failures to craft a meaningful standard and the numerous divisions that had arisen among the lower federal courts.   *Id.* at __, 135 S. Ct. at 2558-60.   The Court also noted that, although many criminal statutes use terms like "substantial risk," the Court's holding in *Johnson* did not cast constitutional doubt on such statutes because the majority of those statutes (1) did not link a phrase such as "substantial risk" to a "confusing list of examples" and (2) applied the substantial risk standard to real-world conduct rather than an idealized "ordinary case."   *Id.* at __, 135 S. Ct. at 2561.   Finally, the Court clarified

3

Case 1:20-cv-20385-CMA   Document 8   Entered on FLSD Docket 03/02/2020   Page 151 of 202
Case: 20-10327   Date Filed: 02/19/2020   Page: 124 of 175

Case: 16-13950   Date Filed: 07/27/2016   Page: 4 of 14

that, in holding that the residual clause is void, it did not call into question the application of the elements clause and the enumerated crimes of the ACCA's definition of a violent felony. *Id.* at ___, 135 S. Ct. at 2563.

In *Welch v. United States*, 578 U.S. __, __, 136 S. Ct. 1257, 1264-65, 1268, 194 L. Ed. 2d 387 (2016), the Supreme Court held that *Johnson* announced a new substantive rule that applies retroactively to cases on collateral review.   In light of the Supreme Court's holdings in *Johnson* and *Welch*, federal prisoners who can make a *prima facie* showing that they previously were sentenced, at least in part, in reliance on the ACCA's now-voided residual clause are entitled to file a second or successive § 2255 motion in the district court.   *See In re Robinson*, No. 16-11304, manuscript op. at 2 (11th Cir. Apr. 19, 2016) (holding that *In re Franks*, 815 F.3d 1281 (11th Cir. 2016), which had held that *Johnson* claims brought by ACCA offenders cannot satisfy the statutory requirements of § 2255(h)(2), is no longer good law).   Merely alleging a basis that meets § 2255(h)'s requirements in the abstract only "represent[s] the minimum showing" necessary to file a successive § 2255 motion, however, because, under § 2244(b)(3)(C), the applicant also must make "a *prima facie* showing that the application satisfies the requirements of this subsection." *In re Holladay*, 331 F.3d 1169, 1173, 1177 (11th Cir. 2003) (granting a state death-row inmate's successive application because he had proffered detailed evidence, in satisfaction of § 2244(b)(3)(C), that showed "a reasonable likelihood that [he] is mentally retarded" to support his proposed *Atkins* claim).   Accordingly, it appears that it is not enough for a federal prisoner to simply identify *Johnson* as the basis for the claim or claims he seeks to raise in a second or successive § 2255 motion; rather, he also must show that he falls within the scope of the new substantive rule announced in *Johnson*.   *See, e.g., id.*; 28 U.S.C. § 2244(b)(3)(C).

4

Case 1:20-cv-20385-CMA  Document 8  Entered on FLSD Docket 03/02/2020  Page 152 of 202
Case: 20-10327    Date Filed: (143 of 193)/2020    Page: 125 of 175

Case: 16-13950    Date Filed: 07/27/2016    Page: 5 of 14

Distinct from the provision in § 924(e), § 924(c) provides for a mandatory consecutive sentence for any defendant who uses a firearm during a crime of violence or a drug trafficking crime.  18 U.S.C. § 924(c)(1).  For the purposes of § 924(c), "crime of violence" means an offense that is a felony and:

(A)    has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(B)    that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id.* § 924(c)(3).  We have not yet decided if *Johnson* extends to the residual clause found in § 924(c)(3)(B), but we have observed that some other circuits have concluded that it does extend to § 924(c) and the identically-worded 18 U.S.C. § 16(b), while other circuits have said it does not extend to those provisions.  *In re Pinder*, No. 16-12084 (11th Cir. June 1, 2016).

As to the facts of this case, in a second superseding indictment, Belfast was charged with conspiracy to commit torture, in violation of 18 U.S.C. § 2340A (Count 1); conspiracy to use, carry, and possess firearms during and in relation to the crime of violence set out in Counts 1, and 3-7, in violation of 18 U.S.C. § 924(o) (Count 2); torture, in violation of 18 U.S.C. § 2340(1) (Counts 3-7); and using, carrying, and possessing a firearm during and in relation to a crime of violence, as set out in Counts 1, and 3-7, in violation of 18 U.S.C. § 924(c)(1)(A).  Belfast was convicted by a jury of all counts, and sentenced to a total imprisonment term of 1,164 months. That term consisted of 240 months as to Count 1; 240 months as to Count 2; 120 months as to each of Counts 3, 4, 5, 6, and 7; and 84 months as to Count 8, all terms running consecutively to each other.

5

Belfast's claim does not meet the statutory criteria for granting his application. We concluded in Belfast's direct appeal that torture was "unquestionably a crime of violence; its elements require an act 'specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within [the defendant's] custody or physical control." *United States v. Belfast*, 611 F.3d 783, 814 n.7 (11th Cir. 2010). Consequently, we have already held that Belfast's conviction for torture qualifies as a crime of violence under the elements clause, and Belfast's claim fails. Consequently, Belfast's convictions and sentences were not affected by *Johnson*, even if *Johnson* does extend to § 924(c) convictions.

Accordingly, because Belfast has failed to make a *prima facie* showing of the existence of either of the grounds set forth in 28 U.S.C. § 2255, his application for leave to file a second or successive motion is hereby DENIED.

6

MARTIN, Circuit Judge, dissenting:

The majority relies on a footnote from our decision in Mr. Belfast's direct appeal, United States v. Belfast, 611 F.3d 783 (11th Cir. 2010), to say that Mr. Belfast's conviction for torture under 18 U.S.C. § 2340(1) qualifies as a crime of violence under § 924(c)'s "elements" clause. The text of that footnote is so brief that I include it here in its entirety:

> [Mr. Belfast] does not argue that torture is not a "crime of violence" under § 924(c). A "crime of violence" is "an offense that is a felony and—(A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another. . . ." 18 U.S.C. § 924(c)(3). Torture is unquestionably a crime of violence; its elements require an act "specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within [the defendant's] custody or physical control." 18 U.S.C. § 2340(1).

Id. at 814 n.7 (emphasis added). Mr. Belfast had not argued the point because, at the time of his direct appeal, it would have been futile. Neither had our Court acknowledged at that time that "the law is unsettled" as to whether § 924(c)'s residual clause is unconstitutional.[1]  In re Pinder, No. 16-12084-J, 2016 WL 3081954, at *2 (11th Cir. June 1, 2016). Because the residual clause was

---

[1] As the majority says, the residual clause defines a crime of violence as any felony that "involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." We acknowledged in Pinder that this clause may be invalidated by the Supreme Court's decision in Johnson v. United States, 576 U.S. __, 135 S.Ct. 2551 (2015).

inarguably in place at that time, there was little question that Mr. Belfast's torture

conviction would qualify as a crime of violence.

Now, however, we contemplate a § 924(c) that may be starkly different from

the statute that Congress enacted; that Mr. Belfast was sentenced under; and that

our Court considered at the time of his direct appeal.  If the Supreme Court's

decision in Johnson indeed invalidated § 924(c)'s residual clause, then Mr.

Belfast's convictions may only count as a crime of violence if they "ha[ve] as an

element the use, attempted use, or threatened use of physical force against the

person of another."  Like my colleagues, I am considering these motions on a tight

thirty-day deadline.  However, my limited review of this issue reveals that no other

Court of Appeals has even considered whether torture counts as a crime of

violence under either § 924(c)'s force or residual clause.  Indeed, I can't find any

cases considering whether torture counts as a "crime of violence" under analogous

clauses in other statutes.  As this question has not been given full consideration in

our Circuit or elsewhere, I would grant Mr. Belfast certification to file his § 2255

motion in the District Court.

I.

The panel that decided Mr. Belfast's direct appeal concluded, in dicta, that

"[t]orture is unquestionably a crime of violence."  This conclusion is appealingly

simple.  And it is tempting to consider the facts of Mr. Belfast's crimes, which

certainly involved the use of violent physical force, in making this determination.

But, what Mr. Belfast actually did has no legal relevance to the question of

whether the crime he was convicted of is a "crime of violence" under § 924(c)'s

elements clause.  What matters is whether his crime "has <u>as an element</u> the use,

attempted use, or threatened use of physical force against the person or property of

another." 18 U.S.C. § 924(c)(3)(A) (emphasis added).  Indeed, whether a crime is

> within the ambit of 18 U.S.C. § 924(c) . . . is a question .
> . . we must answer "categorically"—that is, by reference
> to the elements of the offense, and not the actual facts of
> [the defendant]'" conduct.  We employ this categorical
> approach because of the statute's terms: It asks whether
> [the defendant] committed "an offense" that "has <u>as an</u>
> <u>element</u> the use, attempted use, or threatened use of
> physical force against the person or property of another.

<u>United States v. McGuire</u>, 706 F.3d 1333, 1336 (11th Cir. 2013) (O'Connor, J.)

(citation omitted) (emphasis in original).

The Supreme Court has held that the term "physical force" as used in

§ 924(c)(3)(A) requires "violent force" which means "strong physical force" or

force "capable of causing physical pain or injury to another person."  <u>Curtis</u>

<u>Johnson v. United States</u>, 559 U.S. 133, 139, 130 S. Ct. 1265, 1270 (2010).  If

torture or conspiracy to commit torture can be committed without the type of

force described by <u>Curtis Johnson</u>, then those crimes obviously can't have "as an

element the use, attempted use, or threatened use of physical force."  There is at

least an argument as to both crimes.

## A.

18 U.S.C. § 2340(1) defines torture as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control." There are many ways to inflict severe physical or mental pain without employing the use of physical force. For example, a prisoner could be subjected to stress positions, sleep-deprivation, or extreme temperatures. These practices could doubtlessly constitute torture even if they do not require violent physical force.

Mr. Belfast has a stronger argument with respect to his conspiracy conviction. "It's a separate Federal crime for anyone to conspire or agree with someone else to do something that would be another Federal crime if it was actually carried out." 11th Circuit Pattern Jury Instruction 13.1 (2010 ed.). In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture. However, the jury was not instructed that the defendant need take any "overt act" in furtherance of the conspiracy.

In In re Pinder, No. 16-12084-J, 2016 WL 3081954, at *2 (11th Cir. June 1, 2016), we recently granted an application for a defendant to challenge a

10

§ 924(c) conviction based on the companion crime of conspiracy to commit Hobbs Act robbery.  At least two district courts have already held that Hobbs Act conspiracy is not a crime of violence precisely because the statute does not expressly require as an element the commission of an overt act.  See United States v. Luong, No. 2:99-00433, 2016 WL 1588495, at *3 (E.D. Cal. Apr. 20, 2016); United States v. Edmundson, No. PWG-13-15, __ F.Supp.3d __, __, 2015 WL 9311983, at *6 (D. Md. Dec. 23, 2015).  Without the requirement of an overt act, conspiracy of any sort can be committed without the use, attempted use, or threatened use of physical force.  If that element was also missing from Mr. Belfast's conspiracy to commit torture charge, we would be aided by looking into whether that crime satisfies § 924(c)'s force clause.[2]

## B.

There is an additional reason I believe Mr. Belfast's application should be granted.  As best I can tell, Mr. Belfast's superseding indictment listed both his substantive torture counts and his conspiracy to commit torture count as possible predicate convictions for supporting his convictions under § 924(c) (and the accompanying sentencing provision, § 924(o)), which criminalizes carrying a firearm during a "crime of violence."  In United States v. Schlei, 122 F.3d 944

_____

[2] The majority does not, and cannot, contend that our decision in Mr. Belfast's direct appeal answers whether conspiracy to commit torture is a crime of violence under the elements clause.

11

(11th Cir. 1997), we held that "[a] count in an indictment is duplicitous if it charges two or more 'separate and distinct' offenses." Id. at 977. "Basic to criminal law principles is the concept that the commission of a substantive offense and a conspiracy to commit it are separate and distinct offenses." United States v. Mothersill, 87 F.3d 1214, 1218 (11th Cir. 1996) (quotation omitted). If conspiracy to commit torture and the substantive offense of torture are separate offenses, then a § 924(c) charge that relies on conspiracy must likewise be distinct from a § 924(c) charge that relies on torture. By listing these two offenses in the same Count, Mr. Belfast's indictment commits the error Schlei was concerned about.

"A duplicitous count poses three dangers: (1) A jury may convict a defendant without unanimously agreeing on the same offense; (2) A defendant may be prejudiced in a subsequent double jeopardy defense; and (3) A court may have difficulty determining the admissibility of evidence." Schlei, 122 F.3d at 977. Mr. Belfast's case demonstrates the dangers that lurk. Mr. Belfast may indeed have used a gun at some point in time during the conspiracy, but never during the substantive torture offense. However, "because the jurors have two crimes to consider in a single count, they may convict [on the § 924(c) offense] without reaching a unanimous agreement on [which crime Mr. Belfast "used" a firearm during]." § 142 Misjoinder, Duplicity, and Multiplicity, 1A Fed. Prac. &

12

Proc. Crim. § 142 (4th ed.).  A general verdict of guilty "will not reveal whether

the jury unanimously found the defendant guilty of either offense, both offenses,

or guilty of one crime and not guilty of the other.  This uncertainty could

prejudice defendant in sentencing [and] appellate review."  Id.

Certainly, Mr. Belfast is prejudiced if he is not allowed to challenge his

§ 924(c) conviction by us guessing that the jury unanimously found that he used

a gun during his torture crime, as opposed to his conspiracy crime.  And as Mr.

Mr. Belfast's indictment is written, all we can do is guess.  We simply cannot

know on which companion conviction the jury relied.

## II.

It may well be true that Congress intended torture (and conspiracy to commit

torture) to count as crimes of violence under § 924(c).  And, as I've said, these

crimes certainly meet the § 924(c) residual clause definition because they

""involve[] a substantial risk that physical force against the person or property of

another may be used."  But, assuming Johnson applies to § 924(c), we are now

faced with applying a statutory definition half of which is unconstitutional.  The

Supreme Court has told us how to determine whether a crime meets the "elements

clause" definition— "by look[ing] only to the fact that the defendant had been

convicted of crimes falling within certain categories, and not to the facts

underlying the prior convictions," Descamps v. United States, 133 S. Ct. 2276,

2287 (2013) (quotation omitted). In so doing, we "must presume that the conviction rested upon nothing more than the least of the acts criminalized." Moncrieffe v. Holder, 133 S. Ct. 1678, 1684 (2011) (quotation omitted).

On its face, whether torture or conspiracy to commit torture is a "crime of violence" may seem easy. And, when the residual clause still operated as a catch-all, it certainly was. But, by denying this application, the majority has prevented a district court from looking into this question for the first time and denied us, a Court of Appeals, the opportunity to review the district court's resolution. I respectfully dissent.

Ex "B" Jury Instructions

Case No : 1:06-cr-20758-CMA
Document 580
Entered on FLSD Docket 10/30/2008

Exhibit "B"

Jury Instructions

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 06-20758-CR-ALTONAGA

UNITED STATES OF AMERICA,

vs.

**ROY M. BELFAST, Jr.,**
a/k/a "Chuckie Taylor,"
a/k/a "Charles Taylor, Jr,"
a/k/a "Charles Taylor II,"
a/k/a "Charles McArther Emmanuel,"

      Defendant.

_____/

## COURT'S INSTRUCTIONS TO THE JURY

Members of the Jury:

It is now my duty to instruct you on the rules of law that you must follow and apply in deciding this case. When I have finished you will go to the jury room and begin your discussions – what we call your deliberations.

It will be your duty to decide whether the Government has proved beyond a reasonable doubt the specific facts necessary to find the Defendant guilty of the crimes charged in the Second Superseding Indictment.

You must make your decision only on the basis of the testimony and other evidence presented here during the trial; and you must not be influenced in any way by either sympathy or prejudice for or against the Defendant or the Government.

You must also follow the law as I explain it to you whether you agree with that law or not; and you must follow all of my instructions as a whole. You may not single out, or disregard, any of the Court's instructions on the law.

The indictment or formal charge against any Defendant is not evidence of guilt. Indeed, every Defendant is presumed by the law to be innocent. The law does not require a Defendant to prove innocence or to produce any evidence at all; and if a Defendant elects not to testify, you cannot consider that in any way during your deliberations. The Government has the burden of proving a Defendant guilty beyond a reasonable doubt, and if it fails to do so you must find that Defendant not guilty.

Thus, while the Government's burden of proof is a strict or heavy burden, it is not necessary that a Defendant's guilt be proved beyond all possible doubt. It is only required that the

tend to forget some things or remember other things inaccurately. So, if a witness has made a misstatement, you need to consider whether it was simply an innocent lapse of memory or an intentional falsehood; and the significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.

When the Government offers testimony or evidence that a Defendant made a statement or admission to someone, after being arrested or detained, the jury should consider the evidence concerning such a statement with caution and great care.

It is for you to decide (1) whether the Defendant made the statement and (2) if so, how much weight to give to it. In making these decisions you should consider all of the evidence about the statement, including the circumstances under which the Defendant may have made it.

In any criminal case the Government must prove, of course, the identity of the Defendant as the person who committed the alleged crime.

When a witness points out and identifies a Defendant as the person who committed a crime, you must first decide, as with any other witness, whether that witness is telling the truth. Then, if you believe the witness was truthful, you must still decide how accurate the identification was. Again, I suggest that you ask yourself a number of questions: Did the witness have an adequate opportunity at the time of the crime to observe the person in question? What length of time did the witness have to observe the person? What were the prevailing conditions at that time in terms of visibility or distance and the like? Had the witness known or observed the person at earlier times?

You may also consider the circumstances surrounding the later identification itself including, for example, the manner in which the Defendant was presented to the witness for identification, and the length of time that elapsed between the incident in question and the witness' identification of the Defendant.

After examining all of the testimony and evidence in the case, if you have a reasonable doubt as to the identity of the Defendant as the perpetrator of the offense charged, you must find the Defendant not guilty.

You may not draw any inference, favorable or unfavorable, toward the Government or the Defendant on trial from the fact that any person in addition to the Defendant is not on trial here. You may also not speculate as to the reasons why other persons are not on trial. Those matters are wholly outside your concern and have no bearing on your function as jurors.

In this case you have been permitted to take notes during the course of the trial, and most of you − perhaps all of you − have taken advantage of that opportunity and have made notes from time to time.

You will have your notes available to you during your deliberations, but you should make use of them only as an aid to your memory. In other words, you should not give your notes any precedence over your independent recollection of the evidence or the lack of evidence; and neither should you be unduly influenced by the notes of other jurors.

Second:     That the Defendant, knowingly and voluntarily joined or participated in the conspiracy; and

Third:     That the object of the unlawful plan was to commit torture, as charged.

An "act in furtherance of the conspiracy" is any transaction or event, even one which may be entirely innocent when considered alone, but which is knowingly committed by a conspirator in an effort to accomplish some object of the conspiracy.

A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and voluntarily joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before and even though the Defendant played only a minor part.

Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.

In some instances a conspirator may be held responsible under the law for a substantive offense in which he or she had no direct or personal participation if such offense was committed by other members of the conspiracy during the course of such conspiracy and in furtherance of its objects.

So, in this case, with regard to Counts Three through Seven, insofar as the Defendant is concerned, if you have first found the Defendant guilty of the conspiracy offense as charged in Count One of the Second Superseding Indictment, you may also find the Defendant guilty of any of the offenses charged in Counts Three through Seven even though the Defendant did not personally participate in such offenses if you find, beyond a reasonable doubt:

First:     That the offense charged in such Count was committed by a conspirator during the existence of the conspiracy and in furtherance of its objects;

Second:     That the Defendant was a knowing and voluntary member of the conspiracy at the time of the commission of such offense; and

Third:     That the commission of any of the offenses charged in Counts Three through Seven by a co-conspirator was a reasonably foreseeable consequence of the conspiracy.

5

unit, if you find beyond a reasonable doubt that the essential facts constituting the offense charged have been established, as defined in these instructions, and that the Defendant was a willful participant together with the governmental unit or its agents in the doing of such acts.

Title 18, United States Code, Section 924(o), makes it a separate Federal crime or offense for anyone to conspire or agree with someone else to do something which, if actually carried out, would be a violation of Section 924(c)(1). Section 924(c)(1) makes it a crime for anyone to carry a firearm during and in relation to a crime of violence, and to possess a firearm in furtherance of a crime of violence.

Again, under the law, a "conspiracy" is an agreement or a kind of "partnership in criminal purposes" in which each member becomes the agent or partner of every other member.

(In order to establish a conspiracy offense it is *not* necessary for the Government to prove that all of the people named in the indictment were members of the scheme, *or* that those who *were* members had entered into any formal type of agreement. Also, because the essence of a conspiracy offense is the making of the scheme itself, it is not necessary for the Government to prove that the conspirators actually succeeded in accomplishing their unlawful plan.)

What the evidence in the case *must* show beyond a reasonable doubt is:

First:        That two or more persons in some way or manner, came to a mutual understanding to try to accomplish a common and unlawful plan, as charged in the indictment;

Second:     That the Defendant, knowingly and voluntarily joined or participated in the conspiracy; and

Third:        That the object of the unlawful plan was to carry a firearm during and in relation to a crime of violence, and to possess a firearm in furtherance of a crime of violence.

(A person may become a member of a conspiracy without full knowledge of all of the details of the unlawful scheme or the names and identities of all of the other alleged conspirators. So, if a Defendant has a general understanding of the unlawful purpose of the plan and knowingly and voluntarily joins in that plan on one occasion, that is sufficient to convict that Defendant for conspiracy even though the Defendant did not participate before and even though the Defendant played only a minor part.)

(Of course, mere presence at the scene of a transaction or event, or the mere fact that certain persons may have associated with each other, and may have assembled together and discussed common aims and interests, does not, standing alone, establish proof of a conspiracy. Also, a person who has no knowledge of a conspiracy, but who happens to act in a way which advances some purpose of one, does not thereby become a conspirator.)

In some instances a conspirator may be held responsible under the law for a substantive

carry a firearm "in relation to" an offense means that there must be a connection between the Defendant, the firearm, and the crime of violence so that the presence of the firearm was not accidental or coincidental, but facilitated the crime by serving some important function or purpose of the criminal activity.  To possess a firearm "in furtherance" of an offense means something more than mere presence of a firearm; it must be shown that the firearm helped, furthered, promoted or advanced the offense in some way.

The Second Superseding Indictment charges that the Defendant knowingly carried a firearm during and in relation to a crime of violence and possessed a firearm in furtherance of a crime of violence.  It is charged, in other words, that the Defendant violated the law as charged in Count Eight in two separate ways.  It is not necessary, however, for the Government to prove that the Defendant violated the law in *both* of those ways.  It is sufficient if the Government proves, beyond a reasonable doubt, that the Defendant knowingly violated the law in *either* way; but, in that event, you must unanimously agree upon the way in which the Defendant committed the violation.

The guilt of a Defendant in a criminal case may be proved without evidence that the Defendant personally did every act involved in the commission of the crime charged.  The law recognizes that, ordinarily, anything a person can do for one's self may also be accomplished through direction of another person as an agent, or by acting together with, or under the direction of, another person or persons in a joint effort.

So, if the acts or conduct of an agent, employee or other associate of the Defendant are willfully directed or authorized by the Defendant, or if the Defendant aids and abets another person by willfully joining together with that person in the commission of a crime, then the law holds the Defendant responsible for the conduct of that other person just as though the Defendant had personally engaged in such conduct.

However, before any Defendant can be held criminally responsible for the conduct of others it is necessary that the Defendant willfully associate in some way with the crime, and willfully participate in it.  Mere presence at the scene of a crime and even knowledge that a crime is being committed are not sufficient to establish that a Defendant either directed or aided and abetted the crime.  You must find beyond a reasonable doubt that the Defendant was a willful participant and not merely a knowing spectator.

During the trial you have heard testimony of witnesses and argument by counsel that the government did not utilize specific investigative techniques.  You may consider these facts in deciding whether the government has met its burden of proof, because as I told you, you should look to all of the evidence or lack of evidence in deciding whether the Defendant is guilty. However, you also are instructed that specific investigative techniques, such as DNA and fingerprints, are not required to be presented in order for you to find the Defendant guilty of the charges in this case. Your concern, as I have said, is to determine whether or not, on the evidence or lack of evidence, the Defendant's guilt has been proved beyond a reasonable doubt.

You will note that the Second Superseding Indictment charges that each offense was committed "on or about" certain dates.  The Government does not have to prove with certainty the exact dates of the alleged offenses.  It is sufficient if the Government proves beyond a reasonable

When you go to the jury room you should first select one of your members to act as your foreperson. The foreperson will preside over your deliberations and will speak for you here in court.

A form of verdict has been prepared for your convenience.

You will take the verdict form to the jury room and when you have reached unanimous agreement you will have your foreperson fill in the verdict form, date and sign it, and then return to the courtroom.

If you should desire to communicate with me at any time, please write down your message or question and pass the note to the marshal who will bring it to my attention. I will then respond as promptly as possible, either in writing or by having you returned to the courtroom so that I can address you orally. I caution you, however, with regard to any message or question you might send, that you should not tell me your numerical division at the time.

Exhibit "C"   Docket Entry # 14 , Filed 11/26/18
Page 6 of 8
Case 7:18-cv-00453-JLK-JCH

(1) at the time of conviction, settled law of this circuit or the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; and (3) the prisoner cannot satisfy the gatekeeping provisions of § 2255 because the new rule is not one of constitutional law.

*Id.* at 333.

In this case, Petitioner does not allege that any of the prongs of the *Jones* test are met. He challenges the legality of underlying conviction, but does not allege an intervening change of law that decriminalized his underlying conviction. While the Petition could be liberally read to assert that information recently obtained through a FOIA request allegedly shows evidence that Petitioner was wrongfully convicted, (Compl., ECF No. 1 at 24), that allegation is not properly brought in a § 2241 petition. Rather, a claim of actual innocence based on allegedly new facts must be brought in a § 2255 petition. 28 U.S.C. § 2255(h). In order for a claim to be properly brought pursuant to § 2241, *Jones* requires a substantive change in the law such that the conduct of which the prisoner was convicted is deemed not to be criminal. *In re Jones*, 226 F.3d at 333. Because Petitioner does not allege a change of law decriminalizing his underlying conduct, he cannot challenge his conviction under § 2241 pursuant to the savings clause in § 2255(e).

Petitioner is incarcerated at USP Lee located in this district. This district, however, is not the district of Petitioner's conviction, and therefore this Court has subject matter jurisdiction only over issues properly pled under § 2241. 28 U.S.C. § 2241(a). Petitioner cannot proceed under § 2241 to attack his underlying conviction because he does not meet the *Jones* test for invoking the savings clause in § 2255(e). As such, this case is properly construed as yet another motion under § 2255, and the Court lacks subject matter jurisdiction to hear that § 2255 petition because it is not in the district of conviction. 28 U.S.C. § 2255(a).

Page 6 of 8

Exhibit "D"

Prior Second or Successive Petition Filed Concerning
Johnson v. U.S., 135 s. ct. 2251 (2015) (Holding
ACCA residual clause unconstitutionally vague).
Welch v. U.S. 135 s. ct. 1257 (2016) (Holding that
Johnson applies retro-actively)

# UNITED STATES COURT OF APPEALS
## ELEVENTH CIRCUIT

### APPLICATION FOR LEAVE TO FILE A SECOND OR
### SUCCESSIVE MOTION TO VACATE, SET ASIDE
### OR CORRECT SENTENCE
### 28 U.S.C. § 2255
### BY A PRISONER IN FEDERAL CUSTODY

Name **Roy M. Belfast, Jr.**                    Prisoner Number **76556-004**

Institution **Lewisburg U.S.P.**

Street Address **2400 Robert F. Miller Drive**

City **Lewisburg**          State **PA**          Zip Code **17837**

### INSTRUCTIONS—READ CAREFULLY

(1)    This application must be legibly handwritten or typewritten and signed by the applicant under penalty of perjury. Any false statement of a material fact may serve as the basis for prosecution and conviction for perjury.

(2)    All questions must be answered concisely in the proper space on the form.

(3)    The Judicial Conference of the United States has adopted the 8½ x 11 inch paper size for use throughout the federal judiciary and directed the elimination of the use of legal size paper. All pleadings must be on 8½ x 11 inch paper, otherwise we cannot accept them.

(4)    All applicants seeking leave to file a second or successive petition are required to use this form, except in capital cases. In capital cases only, the use of this form is optional.

(5)    Additional pages are not permitted except with respect to additional grounds for relief and facts which you rely upon to support those grounds. DO NOT SUBMIT SEPARATE PETITIONS, MOTIONS, BRIEFS, ARGUMENTS, ETC., EXCEPT IN CAPITAL CASES.

(6)    In accordance with the "Antiterrorism and Effective Death Penalty Act of 1996," as codified at 28 U.S.C. § 2255, effective April 24, 1996, before leave to file a second or successive motion can be granted by the United States Court of Appeals, <u>it is the applicant's burden</u> to make a <u>prima facie</u> showing that he satisfies either of the two conditions stated below.

A second or successive motion must be certified as provided in [28 U.S.C.] section 2255 by a panel of the appropriate court of appeals to contain—

(1) newly discovered evidence that, if proven and viewed in light of the evidence as a whole, would be sufficient to establish by clear and convincing evidence that no reasonable factfinder would have found the movant guilty of the offense; or

(2) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable.

(7)    When this application is fully completed, the original and three copies must be mailed to:

**Clerk of Court**
**United States Court of Appeals for the Eleventh Circuit**
**56 Forsyth Street, N.W.**
**Atlanta, Georgia  30303**

## APPLICATION

1.   (a)   State and division of the United States District Court which entered the judgment of conviction under attack <u>Southern District of Florida</u>

     (b)   Case number <u>1:06-cr-20758-CMA-1</u>

2.   Date of judgment of conviction <u>1/09/2009</u>

3.   Length of sentence <u>1,164 months</u>   Sentencing Judge <u>Cecilia M. Altonaga</u>

4.   Nature of offense or offenses for which you were convicted: <u>Conspiracy to commit torture</u>
<u>(18 U.S.C § 2340A(c)); Conspiracy to use, carry, and possess firearms during and in relation to a crime of violence</u>
<u>(18 U.S.C § 924(o));  Torture (18 U.S.C. § 2340A); Using, carrying, and possessing a firearm during and in relation to a</u>
<u>crime of violence (18 U.S.C. § 924(c)).</u>

5.   Related to this conviction and sentence, have you ever filed a motion to vacate in any federal court?
     Yes (x)  No ( )  If "yes", how many times? _____ (if more than one, complete 6 and 7 below as necessary)
   (a) Name of court <u>Southern District of Florida</u>
   (b) Case number <u>12-Cv-20754</u>
   (c) Nature of proceeding _____

   (d) Grounds raised (list <u>all</u> grounds; use extra pages if necessary) <u>Ineffective Assistance of</u>
<u>trial and appellate counsel</u>

   (e) Did you receive an evidentiary hearing on your motion?   Yes ( )   No (x)
   (f) Result <u>Motion denied</u>

   (g) Date of result <u>2/14/2103</u>

6.   As to any second federal motion, give the same information:
   (a) Name of court _____
   (b) Case number _____
   (c) Nature of proceeding _____

*28 U.S.C. § 2255 Application*      **Page 3**      *Revised 1/02/01*

(d) Grounds raised (list <u>all</u> grounds; use extra pages if necessary)_____
_____
_____
_____
_____

(e) Did you receive an evidentiary hearing on your motion?   Yes ( )   No ( )
(f) Result _____
_____
(g) Date of result _____

7.   As to any third federal motion, give the same information:
(a) Name of court _____
(b) Case number _____
(c) Nature of proceeding _____
_____
_____
_____

(d) Grounds raised (list <u>all</u> grounds; use extra pages if necessary)_____
_____
_____
_____
_____

(e) Did you receive an evidentiary hearing on your motion?   Yes ( )   No ( )
(f) Result _____
_____
(g) Date of result _____

8.   Did you appeal the result of any action taken on your federal motion? (Use extra pages to
reflect additional petitions if necessary)
     (1) First motion        No ( )   Yes (X) Appeal No. 13-11303-A_____
     (2) Second motion       No ( )   Yes ( ) Appeal No. _____
     (3) Third motion        No ( )   Yes ( ) Appeal No. _____

9.   If you did <u>not</u> appeal from the adverse action on any motion, explain briefly why you did
not: _____
_____
_____
_____
_____

10.   State <u>concisely</u> every ground on which you <u>now</u> claim that you are being held unlawfully. Summarize <u>briefly</u> the <u>facts</u> supporting each ground.

   A.   Ground one: <u>Mr. Belfast's convictions under 18 U.S.C. §§ 924(c) and 924(o) are unconstitutional</u>
   <u>because the definition of "crime of violence" contained in 18 U.S.C. 924(c)(3)(B) is unconstitutionally vague.</u>
   Supporting FACTS (tell your story briefly without citing cases or law):
   <u>The United States Supreme Court has declared the ACCA's (18 U.S.C. 924(e)) residual claue unconstutionally</u>
   <u>vague.  Mr. Belfast was convicted of 18 U.S.C. §§ 924(c) and 924(o) which incorporate the same</u>
   <u>unconstitutionally vague statutory language.  Accordingly, he was denied due process.</u>
   PLEASE SEE ATTACHED.

   Was this claim raised in a prior motion?     Yes ( ) No ( )

   Does this claim rely on a "new rule of law?"     Yes ( )    No ( )
   If "yes," state the new rule of law (give case name and citation):
   <u>Johnson v. United States, 135 S. Ct. 2551 (2015) (holding ACCA residual clause unconstitutionally vague).</u>
   <u>Welch v. United States, 136 S.Ct. 1257 (2016) (holding that Johnson applies retroactively).</u>

   Does this claim rely on "newly discovered evidence?"     Yes ( )    No (×)
   If "yes," briefly state the newly discovered evidence, and why it was not previously available to you _____

   _____
   _____
   _____
   _____
   _____
   _____

   B.   Ground two: _____

   _____

   Supporting FACTS (tell your story briefly without citing cases or law):

   _____
   _____
   _____
   _____
   _____

   Was this claim raised in a prior motion?     Yes ( ) No ( )

*28 U.S.C. § 2255 Application*                **Page 5**                        *Revised 1/02/01*

Does this claim rely on a "new rule of law?"   Yes ( )   No ( )
If "yes," state the new rule of law (give case name and citation):

_____

_____

Does this claim rely on "newly discovered evidence?"   Yes ( )   No ( )
If "yes," briefly state the newly discovered evidence, and why it was not
previously available to you _____

_____

_____

_____

_____

_____

_____

_____

**[Additional grounds may be asserted on additional pages if necessary]**

11.   Do you have any motion or appeal now pending in any court as to the judgment now under
attack?   Yes ( )   No (X)
If "yes," name of court _____ Case number _____

Wherefore, applicant prays that the United States Court of Appeals for the Eleventh Circuit
grant an Order Authorizing the District Court to Consider Applicant's Second or Successive
Motion to Vacate under 28 U.S.C. § 2255.

_____
Applicant's Signature

*for Roy M Belfast Jr*

I declare under Penalty of Perjury that my answers to all the questions in this Application are true
and correct.

Executed on   *June 21 2016*
[date]

_____
Applicant's Signature

*for Roy M Belfast Jr.*

*28 U.S.C. § 2255 Application*              **Page 6**                    *Revised 1/02/01*

PROOF OF SERVICE

Applicant must send a copy of this application and all attachments to the United States Attorney's office in the district in which you were convicted.

I certify that on  June 21, 2016 _____, I mailed a copy of this Application[*] and
                   [date]

all attachments to  United States Attorney's Office _____

at the following address:

 99 N.E. 4th Street, Miami, FL 33132 _____

_____

_____

_____
Applicant's Signature

*for Roy M Belfast JR*

---

[*] Pursuant to Fed.R.App.P. 25(a), "Papers filed by an inmate confined in an institution are timely filed if deposited in the institution's internal mail system on or before the last day of filing.  Timely filing of papers by an inmate confined in an institution may be shown by a notarized statement or declaration (in compliance with 28 U.S.C. § 1746) setting forth the date of deposit and stating that first-class postage has been prepaid."

*28 U.S.C. § 2255 Application*          **Page 7**          *Revised 1/02/01*

## ADDITIONAL GROUNDS FOR RELIEF AND FACTS RELIED UPON TO SUPPORT THOSE GROUNDS FOR RELIEF

### I.   PROCEDURAL BACKGROUND

Applicant Roy M. Belfast, Jr., a/k/a Charles Taylor, Jr., is the American-born son of former Liberian President Charles Taylor. He was charged in a Second Superseding Indictment ("the indictment") with offenses relating to an alleged conspiracy to commit torture as a means of keeping his father's administration in power in Liberia. DE:257. On October 30, 2008, Roy M. Belfast Jr. was found guilty of counts one through eight of the indictment.

Count one alleged that Emmanuel and others conspired to commit torture, in violation of 18 U.S.C. §§ 2340A and § 2340(1). Count two charged Emmanuel with conspiracy to use and carry firearms in furtherance of the crimes alleged in counts one and three through seven of the indictment, in violation of 18 U.S.C. §§ 924(c) & (o). Counts three through seven alleged substantive counts of torture, in violation of 18 U.S.C. §§ 2, 2340A, and 2340(1). Count eight alleged that on or about July 24, 2002, Emmanuel "did knowingly use and carry a firearm during and in relation to a crime of violence," and did possess a firearm in furtherance of a crime of violence, as set forth in counts one and three through seven of the indictment, in violation of 18 U.S.C. § 924(c)(1)(A).

1

For the reasons detailed below, the Supreme Court's ruling in *Johnson v. United*, 135 S. Ct. 2551 (205) – that the residual clause in 18 U.S.C. § 924(e) (the "ACCA") is void for vagueness -- has called into question the constitutionality of Mr. Belfast's convictions and consecutive sentences imposed under the similarly worded residual clause in 18 U.S.C. § 924(c)(3)(B). *See In re Ricardo Pinder, Jr.*, ___ F.3d ___, 2016 WL 3081954 (11th Cir. June 1, 2016) (No. 16-12084) (granting application to a second or successive § 2255 motion challenging a § 924(c) conviction in light of *Johnson*). Hence, the Court should grant Mr. Belfast's application to file a second or successive § 2255 motion to vacate his 924(c) conviction and consecutive sentence in light of *Johnson*.

## II.    The Scope of Review at the authorization Stage is Strictly Circumscribed.

Authorization for leave to file a second or successive motion to vacate, correct, or set aside a federal sentence pursuant to 28 U.S.C. § 2255 may be granted where this Court certifies that the proposed motion "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). This Court "may authorize the filing of a second or successive [motion] only if it determines that the

2

[motion] makes a prima facie showing that [it] satisfies the requirements of this subsection." 28 U.S.C. § 2244(b)(3)(C).

In performing this "gatekeeping" function, the scope of review is strictly circumscribed. The plain language of the statute establishes that the only question at the authorization stage is whether the applicant has made a "prima facie showing" that the proposed § 2255 motion "contain[s] a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." The underlying merits of the § 2255 motion are "not relevant." *In re Joshua*, 224 F.3d 1281, 1282 n.2 (11th Cir. 2000) (noting that it was "unnecessary for this Court to answer" questions about the merits of a proposed *Apprendi* claim, because the inquiry under § 2255(h)(2) "addresses only whether *Apprendi* has been made retroactive to cases on collateral review").[1] And, in that regard, "[a] prima facie showing is not a particularly high standard;" rather, "[a]n application need only show [a] sufficient likelihood of satisfying the strict

---

[1] *See also* Hertz & Liebman, 2 *Federal Habeas Corpus Practice & Procedure* § 28.3[d], at 1615 (6th ed. 2011) ("lack of merit" is "irrelevant" at the authorization stage); *Ochoa v. Simmons*, 485 F.3d 538, 541 (10th Cir. 2007) ("This statutory mandate does not direct the appellate court to engage in a preliminary merits assessment. Rather, it focuses our inquiry solely on the conditions specified in § 2244(b) that justify raising a new habeas claim."); *In re Turner*, 267 F.3d 225, 228 n.2 (3d Cir. 2001) (noting the absence of "any specific language in the statute that would support" requiring the applicant to "make a 'prima facie' showing that he has a meritorious [new rule of constitutional law] claim in the first place").

3

standards of § 2255[h][2] to warrant a fuller exploration by the district court." *In re Holladay*, 331 F.3d 1169, 1173 (11th Cir. 2003) (quotation omitted).

In this case, Mr. Belfast wishes to bring a second or successive § 2255 motion based on the Supreme Court's decision in *Johnson v. United States*, 135 S. Ct. 2551 (2015). Thus, the only issue is whether he has made a "prima facie" showing that *Johnson* announced "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2). That issue is no longer in doubt following the Supreme Court's holding in *Welch v. United States*, 136 S. Ct. 1257, 1268 (2016), that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." In "making" *Johnson* retroactive for purposes of § 2255(h)(2), the Court also noted that "*Johnson* announced a new rule" of constitutional law. *Id.* at 1264. Indeed, it overruled prior Supreme Court precedent. *See Sykes v. United States*, 564 U.S. 1, 15 (2011); *James v. United States*, 550 U.S. 192, 210 n.6 (2007). In light of *Welch*, Mr. Belfast has done more than make the requisite "prima facie showing;" he has in fact satisfied the requirements of § 2255(h)(2). The statute requires nothing more. *See In re Pinder*, 2016 WL 3081954 at * 2 ("What's clear . . . is that Pinder has made a prima facie showing that his motion 'contain[]s a new rule of constitutional law, made

4

retroactive to cases on collateral review by the Supreme Court") (citations omitted).

Not only is that limited scope of review compelled by the plain statutory language, but it "is necessary for the proper implementation of the collateral review structure created by" Congress. *Tyler v. Cain*, 533 U.S. 656, 664 (2001). The statute requires this Court to adjudicate successive applications within 30 days, 28 U.S.C. § 2244(b)(3)(D), and "this stringent time limit thus suggests that the courts of appeals do not have to engage in the difficult legal analysis" that may be required to adjudicate the § 2255 motion, *Tyler*, 533 U.S. at 664. Rather, the statute leaves that analysis to the district court, which not only must adjudicate the merits of the § 2255 motion, but must also determine whether it in fact satisfies the gatekeeping requirements. *See In re Moss*, 703 F.3d 1301, 1303 (11th Cir. 2013) (stressing that the gatekeeping determination is "limited," and "the merits of the [§ 2255] motion, along with any defenses" are to be decided in the district court); 28 U.S.C. § 2244(b)(4).

*Johnson* claims require the courts to determine whether convictions continue to qualify as predicate offenses without the unconstitutionally vague and now void residual clause. And notably, that determination inevitably presents complex legal issues. Because the vast majority of previously-qualifying convictions satisfied the

5

residual clause, there is now great uncertainty about whether they continue to qualify after *Johnson*.

That inquiry will depend on intricacies and minutiae of state law, including hard-to-locate jury instructions. *See United States v. Howard*, 742 F.3d 1334, 1346 (11th Cir. 2014) (sentencing court is "bound to follow any state court decisions that define or interpret the statute's substantive elements"). And, in each case, the Court must ascertain what state law provided at the time the specific conviction occurred. Thus, it is possible that the very same offense may qualify as a predicate offense if committed in one year but not the next. Difficulties will also arise regarding whether offenses constitute a felony "conviction," which is also a matter state law, and whether prior convictions occurred on "occasions different from one another." *See* 18 U.S.C. §§ 921(a)(20), 924(e)(1). In addition to such legal complexities, *Johnson* claims will often involve factual and procedural complexities. In many cases, it will not be clear from the record which prior convictions were relied upon or which state statutory provisions are involved.

Furthermore, the sheer number of successive applications based on *Johnson* has been substantial, and the vast majority of applications to this point have been filed by *pro se* inmates. In most cases, the Court has not had the benefit of counseled briefing, and in no case has there been adversarial presentation or oral argument. Addressing the merits under these sub-optimal conditions will risk

6

erroneous and inconsistent rulings. Yet the stakes could not be higher: meritorious *Johnson* claims will result in substantial sentencing reductions; there is an ever-shortening statute of limitations, *see* 28 U.S.C. § 2255(f)(3); and unsuccessful applicants are unable to seek further review, *see* 28 U.S.C. § 2244(b)(3)(E). In short, it would be both impracticable and contrary to the administration of justice for the Court to resolve these myriad complexities on a limited record within 30 days. Fortunately, as this Court has recently confirmed, the statute does not require it to do so. *See In re Pinder*, ___ F.3d ___, 2016 WL 3081954 (citing with approval *In re Joshua*, 224 F.3d 1281, 1282 n. 2 (11th Cir. 2000) (per curiam) (noting that "the merits of this case . . . are not relevant to whether Joshua can obtain permission to bring a second or successive § 2255 motion to vacate;" authorizing the filing of a second or successive § 2255 motion, while emphasizing that whether the new rule of constitutional law set forth in *Johnson* invalidates Pinder's sentence "must be decided in the first instance by the District Court").

In any event, even if this Court were to consider the merits of the proposed *Johnson* claim Mr. Belfast has raised at the authorization stage, it should find that he has made a "prima facie showing" in that regard since there is, at the very least, a "reasonable likelihood" that his claims have "possible merit" "warrant[ing] fuller exploration by the district court." *Holladay*, 331 F.3d at 1173–74 (citations omitted). Again, "[a] prima facie showing is not a particularly high standard." *Id.*

7

(citation omitted).   At this stage, Mr. Belfast need not establish that he will ultimately prevail on the merits.   And any doubts in that regard should be resolved in his favor, lest he be forever barred from having his *Johnson* claim considered on the merits.   Instead, the proper course is to permit the district court to consider his claims in the first instance based on a complete record, full briefing, and adversarial presentation, as the statute's plain language and structure contemplate.

### III. THE CATEGORICAL AND MODIFIED CATEGORICAL APPROACHES

Although it is inappropriate at this stage for the Court to scrutinize the merits of Mr. Belfast's *Johnson* claim, if the Court nonetheless chooses to do so it must apply the methodology prescribed by the Supreme Court. That methodology, summarized below, was refined most recently in *Descamps v. United States,* 133 S. Ct. 2275 (2013), which this Court has recognized is "the law of the land" and "must be . . . followed." *United States v. Howard,* 73 F.3d 1334, 1344 n.2 (11th Cir. 2014).[2]

---

[2] This Court has held that, because *Descamps* did not announce a "new" rule of law, but rather clarified existing precedent on the categorical approach, it applies to all *Johnson* claims on collateral review. *Mays v. United States,* __ F.3d __, 2016 WL 1211420, at *4–5 (11th Cir. Mar. 29, 2016). In that context, the constitutional error is the court's reliance on the residual clause. *Descamps* merely clarified the long-standing analytical framework that will determine whether the prior convictions continue to qualify as a predicate offense absent the residual clause. Thus, it essentially goes to whether the *Johnson* error was prejudicial. It is not an independent claim that is itself subject to the gatekeeping requirements.

8

In determining whether a prior conviction qualifies as a predicate offense under the ACCA, 18 U.S.C. § 924(c), or the Career Offender provision of the Guidelines, the Court must apply the "categorical approach." Under that approach, "courts may 'look only to the statutory definitions"—*i.e.*, the elements—of a defendant's prior offenses, and *not* 'to the particular facts underlying those convictions.'" *Descamps*, 133 S. Ct. at 2283 (quoting *Taylor v. United States*, 495 U.S. 575, 600 (1990)). In adopting this approach, the Court emphasized both Sixth Amendment concerns (explained below) and the need to avert "'the practical difficulties and potential unfairness of a [daunting] factual approach.'" *Id.* at 2287 (quoting *Taylor*, 495 U.S. at 601). As a result, courts are to "look no further than the statute and judgment of conviction." *United States v. Estrella*, 758 F.3d 1239, 1244 (11th Cir. 2014) (citation omitted). And, in doing so, they "must presume that the conviction 'rested upon nothing more than the least of the acts' criminalized." *Moncrieffe v. Holder*, 133 S. Ct. 1678, 1684 (2011) (quoting *Johnson v. United States*, 559 U.S. 133, 137 (2010)).

After *Johnson*, a conviction may still qualify as a predicate offense for an ACCA or a Career Offender enhancement if it is one of the offenses specifically "enumerated" as a violent felony or crime of violence in those provisions. In determining whether a prior conviction so qualifies, the court must ask whether "the relevant statute has the same elements as the 'generic' . . . crime." *Descamps*,

9

133 S. Ct. at 2283.  If so, "then the prior conviction can serve as [a] predicate; so too if the statute defines the crime more narrowly, because anyone convicted under that law is necessarily guilty of all the generic crime's elements." *Id.* (citation and ellipses omitted).  However, "if the statute sweeps more broadly than the generic crime, a conviction under that law cannot count as [a] predicate, even if the defendant actually committed the offense in its generic form." *Id.*  "The key . . . is elements, not facts." *Id.*

A prior conviction may also qualify as a predicate offense for the ACCA and Career Offender enhancements, as well as for a § 924(c) conviction, if it satisfies the "force" or "elements" clauses of these provisions.  Indeed, this Court has specifically recognized that the categorical approach, as clarified in *Descamps*, applies equally in analyzing whether a prior "has as an element the use, attempted use, or threatened use of physical force against the person of another."  *Estrella*, 758 F.3d at 1244.  Again looking no further than the statute and judgment of conviction, a conviction will qualify as a "crime of violence" within the elements clause "only if the statute on its face requires the government to establish, beyond a reasonable doubt and without exception, an element involving the use, attempted use, or threatened use of physical force against a person *for every charge* brought under the statute." *Estrella*, 758 F.3d at 1244 (citation omitted; emphasis added).  "Whether, in fact, the person suffering under this particular conviction actually

10

used, attempted to use, or threatened to use physical force against a person is quite irrelevant. Instead, the categorical approach focuses on whether *in every case* a conviction under the statute *necessarily* involves proof of the element." *Id.* (citations omitted; emphasis added).

To implement the categorical approach, the Supreme Court has "recognized a narrow range of cases in which sentencing courts" may look beyond the statute and judgment of conviction and employ what it is referred to as the "modified categorical approach." *Descamps*, 133 S. Ct. at 2283–84. Those cases arise where the statute of conviction contains alternative elements, some constituting a predicate offense and some not. In that scenario, "the statute is 'divisible,'" in that it "comprises multiple, alternative versions of the crime." *Id.* at 2284. As a result, "a later sentencing court cannot tell, without reviewing something more [than the statute and judgment of conviction], if the defendant's conviction" qualifies as a predicate offense. *Id.*

Two key points must be made about the modified categorical approach. First, *Descamps* made clear that "the modified categorical approach can be applied only when dealing with a divisible statute." *Howard*, 742 F.3d at 1344. Thus, where the statute of conviction "does not concern any list of alternative elements" that must be found by a jury, there is no ambiguity requiring clarification, and therefore the "modified approach . . . has no role to play." *Descamps*, 133 S. Ct. at

11

2285–86; *see Estrella*, 758 F.3d at 1245–46; *Howard*, 742 F.3d at 1345–46. "[I]f the modified categorical approach is inapplicable," then the court must limit its review to the statute and judgment of conviction. *Howard*, 742 F.3d at 1345. And, even if a statute is divisible, the court need not employ the modified categorical approach if none of the alternatives would qualify. *Id.* at 1346–47.

Second, even where the modified categorical approach does apply, it does not permit courts to consider the defendant's underlying conduct. Rather, "the modified approach merely helps implement the categorical approach when a defendant was convicted of violating a divisible statute. The modified approach thus acts not as an exception, but instead as a tool. It retains the categorical approach's central feature a focus on the elements, rather than the facts, of a crime." *Descamps*, 133 S. Ct. at 2285. And, in order to ensure that the focus remains on the statutory elements rather than the defendant's underlying conduct, the court is restricted in what documents it may consider.

In *Shepard v. United States*, 544 U.S. 13, 15 (2005), the Supreme Court held that courts are "limited to examining the statutory definition, charging document, written plea agreement, transcript of plea colloquy, and any explicit factual finding by the trial judge to which the defendant assented." What these *Shepard* documents have in common is that they are "conclusive records made or used in adjudicating guilt." *Id.* at 21; *see id.* at 23 ("confin[ing]" the class of permissible

12

documents "to records of the convicting court approaching the certainty of the record of conviction"). That accords with their function in the modified categorical approach—namely, to permit the court to identify the elements for which the defendant was convicted. *Descamps*, 133 S. Ct. at 2284.

Importantly, that inexorable focus on the elements derives in large part from "the categorical approach's Sixth Amendment underpinnings." *Id.* at 2287–88. Other than the fact of a prior conviction, a jury must find beyond a reasonable doubt any fact that increases a defendant's sentence beyond the prescribed statutory maximum. *Id.* at 2288 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)). The reason for the "prior conviction" exception is that, during the earlier criminal proceeding, the defendant either had a jury or waived his constitutional right to one. *See Apprendi*, 530 U.S. at 488.

As the Supreme Court made clear in *Descamps*, the use of *Shepard* documents "merely assists the sentencing court in identifying the defendant's crime of conviction, as we have held the Sixth Amendment permits." 133 S. Ct. at 2288. This is so because "the only facts the court can be sure the jury . . . found [beyond a reasonable doubt] are those constituting elements of the offense;" and, similarly, "when a defendant pleads guilty to a crime, he waives his right to a jury determination of only that offense's elements." *Id.* But where a court relies on non-*Shepard* documents to increase a defendant's sentence, it "extend[s] judicial

13

factfinding" "beyond merely identifying a prior conviction," violating the Sixth

Amendment. *Id.*

In sum, in determining whether a conviction qualifies as a predicate offense,

a court must generally consider only the statute and judgment of conviction. Only

if the statute is divisible may the court consider *Shepard* documents, and it may do

so only for the sole purpose of ascertaining the statutory elements for which the

defendant was convicted. Once those elements are identified, the court must

determine whether the least of the acts prohibited thereby constitutes a generic

offense enumerated or necessarily requires the use, attempted use, or threatened

use of violent, physical force against another. In no case may a court rely on non-

*Shepard* documents or analyze whether the defendant's underlying conduct

constituted a predicate offense.

### IV. Mr. Belfast has made a prima facie showing that His Convictions under 18 U.S.C. §§ 924(c) & 924(o) Rest on the Residual Clause in § 924(c)(3)(B), and that § 924(c)(3)(B) is Void for Vagueness in light of *Johnson*

Mr. Belfast was convicted of a violation of 18 U.S.C. § 924(o) in count two,

and 18 U.S.C. 924(c) in count eight. At the time of conviction, § 924(c)(1)

provided:

> Whoever, during and in relation to any crime of violence . . . uses or
> carries a firearm, shall, in addition to the punishment provided for
> such crime of violence . . . be sentenced to imprisonment for five
> years . . .

14

The term "crime of violence" as used therein was (and still is) defined in §924(c)(3) to mean an offense that is a felony and –

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

Section 924(o) made it a separate crime to conspire to commit any of the offenses under subsection (c).  Mr. Belfast has made a prima facie showing that the residual clause in § 924(c)(3)(B) is unconstitutionally vague after *Johnson*, and that his convictions on counts two and eight rests on that unconstitutionally vague residual clause, for the following reasons.

**A.  The residual clause in §924(c)(3)(B) is void for vagueness in light of *Johnson***

*Johnson* held the residual clause in 18 U.S.C. § 924(e)(2)(B)(ii) ("otherwise involves conduct that presents a serious risk of physical injury to another") to be unconstitutionally vague because the "indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice to defendants and invites arbitrary enforcement by Judges."  135 S. Ct. at 2557.  In the Supreme Court's view, the process espoused by *James v. United States*, 550 U.S. 192 (2007), of determining what is embodied in the "ordinary case" of an offense, and then of

15

quantifying the "risk" posed by that ordinary case, was constitutionally problematic: "[t]he residual clause offers no reliable way to choose between . . . competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. As a result, "[g]rave uncertainty" as to how to determine the risk posed by the "judicially imagined ordinary case" led the Court to conclude that the residual clause was void for vagueness. *Id.* at 2557.

Notably, the same "ordinary case" inquiry that in *Johnson* led the Supreme Court to conclude that the ACCA residual clause is unconstitutionally was previously applied to § 924(c)(3). *United States v. McGuire*, 706 F.3d 1333, 1337 (11th Cir. 2013). That is, like the ACCA, the residual clause of § 924(c)(3) requires courts to picture the "ordinary" case embodied by a felony, and then assess the risk posed by that "ordinary" case. *See id.*

The definition of "crime of violence" in the residual clause in § 924(c) is identical to that in 18 U.S.C. § 16(b). *Compare* § 924(c)(3)(B) (offense "that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense") *with* § 16(b) (offense "that, by its nature, involves a substantial risk that physical force against the person or property of another may be used on the course of committing the offense"). And this Court previously held that the same "ordinary risk" analysis

16

applied in ACCA cases and § 924(c)(3), also applied in the § 16(b) context. *See*

*United States v. Keelan*, 786 F.3d 865, 871 (11th Cir. 2015).

Since *Johnson*, three circuits have concluded that the statutory language and

ordinary risk analysis applicable to § 16(b) is sufficiently similar to that applicable

to the ACCA's residual clause that it suffers from the same constitutional defects.

*See United States v. Gonzalez-Longoria*, 813 F.3d 225 (5th Cir. 2016); *United*

*States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d

1110 (9th Cir. 2015).  And that logically suggests that the same must also be true

of § 924(c)(3)(B), with language identical to § 16(b), and to which the same

"ordinary risk" analysis applies.

For this reason, several district courts have explicitly held that the residual

clause of § 924(c)(3)(B) is unconstitutionally vague in light of *Johnson*. *See United*

*States v. Thongsouk Theng Lattaphom*, ___ F.Supp.3d ___, 2016 WL 393545 (E.D.

Cal. Feb. 2, 2016); *United States v. Bell*, ___ F.Supp.3d ___, 2016 WL 344749

(N.D. Ca. Jan. 28, 2016) ("I agree with defendants that the section 924(c)(3)

residual clause cannot stand under *Johnson II*."); *United States v. Edmonton*, 2015

WL 9582736 at *5-6 (D. Md. Dec. 30. 2015)  (granting motion to dismiss based on

finding that "conspiracy to commit Hobbs Act robbery did not meet the

requirements of 18 U.S.C. § 924(c)(3)(A) and that 18 U.S.C. § 924(c)(3)(B) is void

for vagueness").

17

And most notably, in the recent case of *In re Ricardo Pinder, Jr.*, ___ F.3d

___, 2016 WL 3081954 (11th Cir. June 1, 2016) (No. 16-12084), this Court

granted an application to file a second or successive §2255 motion challenging a §

924(c) conviction by a petitioner, after recognizing that even

> [t]hough § 924(c) is phrased a bit differently from § 924(e), the §
> 924(c) language also requires courts to decide if the offense in
> question "naturally involve[s] a person acting in disregard of the risk
> that physical force might be used against another in committing an
> offense." *Leocal v. Ashcroft*, 543 U.S. 1, 10, 125 S.Ct. 377, 383
> (2004).

*Id.* at *2.

The Court noted with significance that:

> Given the similarity between §924(c) and §924(e), other Courts of
> Appeals have authorized successive § 2255 petitions based on
> *Johnson* in § 924(c) cases. *See, e.g., Freeman v. United States*, No.
> 15-3687 (2d Cir. Jan. 26, 2016); *In re Chapman*, No. 16-246 (4th Cir.
> May 3, 2016); *Ruiz v. United States*, No. 16-1193 (7th Cir. Feb. 19,
> 2016) (rejecting the argument "that § 924(c)(3)(B) differs enough
> from [§ 924(e)(2)(B)(ii)]'s residual clause that it was not invalidated
> by *Johnson*"). And though the Sixth Circuit has held that §
> 924(c)(3)(B) is not unconstitutionally vague, *see United States v.
> Taylor*, 1814 F.3d 340, 379 (6th Cir. 2016), the Seventh and Ninth
> Circuits have held that identically worded language in 18 U.S.C. §
> 16(b) is unconstitutionally vague, *see United States v. Vivas-Ceja*, 808
> F.3d 719, 723 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120
> (9th Cir. 2015).

*Id.*

18

Ultimately, the Court concluded that "the law is unsettled on whether the rule announced in *Johnson* invalidates Pinder's sentence, but that "[w]hat's clear" is that

> Pinder has made a prima facie showing that his motion "contain[s] . . . a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court. 28 U.S.C.2255(h); *see also In re Joshua,* 224 F.3d 1281, 1282 n. 2 (11th Cir. 2000) (per curiam) (noting that "the merits of this case . . . are not relevant to whether Joshua can obtain permission to bring a second or successive § 2255 motion to vacate').

*Id.* at *2.

For the reasons stated in the Court's now-precedential decision in *In re Pinder*, it should find that Mr. Belfast has likewise made the requisite prima facie showing here that the residual clause in § 924(c)(3)(B) is unconstitutionally void for vagueness, and that Mr. Belfast– like Mr. Pinder – may file a second or successive § 2255 motion challenging his §§ 924(c) and 924(o) convictions on that basis.

### B. Neither torture nor conspiracy to commit torture "has as an element the use, attempted use, or threatened use of physical force against the person or property of another."

In *In re Pinder*, the Court did not definitively determine whether the new rule of constitutional law of *Johnson* invalidated Pinder's sentence. It emphasized – as dictated by circuit precedent – that that issue "must be decided in the first instance by the District Court." *Pinder*, 2016 WL 3081954 at *2. Nonetheless,

19

for the reasons below, the predicate offenses listed in the indictment – conspiracy to commit torture and torture – do not qualify as "crimes of violence" without reliance on the unconstitutional residual clause of 18 U.S.C. § 924(c)(3)(B).

Under § 924(c)(3)(A), an offense is a "crime of violence" if it "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." The term "physical force" in § 924(c)(3)(A) has the meaning given to it by the Supreme Court in *Curtis Johnson v. United States*, 559 U.S. 133, 140 (2010), which notably is "violent force," *i.e.*, "strong physical force" "capable of causing physical pain or injury to another person." *Id.* (citing *Leocal v. Ashcroft*, 543 U.S. 1 (2004), where the Court had previously construed the elements clause in 18 U.S.C. § 16(a), a "very similar" provision to §924(e)(2)(B)(i)).   Neither torture, as defined by 18 U.S.C. § 2340(1), nor conspiracy to commit torture under 18 U.S.C. 2340A(c) requires any such force.

As detailed in Part III *supra*, in determining whether an offense qualifies as a "crime of violence" under the "elements" clause, sentencing courts must employ the categorical approach. *Descamps*, 133 S. Ct. at 2283; *Estrella*, 758 F.3d at 1244-1245.   And application of the post-*Descamps*, elements-driven categorical approach yields the conclusion that it torture not a "crime of violence" under the elements clause in § 924(c)(3)(A).

20

18 U.S.C. § 2340(1) defines torture as "an act committed by a person acting under the color of law specifically intended to inflict severe physical or mental pain or suffering (other than pain or suffering incidental to lawful sanctions) upon another person within his custody or physical control."   Because "severe mental pain and suffering" is defined in § 2340(2), Mr. Belfast assumes the statute is divisible within the meaning of *Descamps* and acknowledges that the indictment charged physical pain and suffering in this case.   It is still clear that the definition of torture provided by the statute, even with respect to the infliction of sever physical pain or suffering, does not require the use of violent physical force. The statute only requires the government to prove an act (1) committed by a person acting under color of law, (2) specifically intended (3) to cause severe physical pain or suffering, (4) upon an person within his custody or control.   There are many ways in which this could be accomplished without employing the use of physical force.

As just a few examples, a prisoner could be subjected to stress positions, sleep-deprivation, extreme temperatures, pain-inducing drugs, or starvation. Poison, anthrax, and chemical weapons may also cause severe pain and suffering -- as well as death -- without the "use" of "physical force." Other courts have declared convictions overbroad and outside the elements clause for this reason. *See, e.g,, United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005); *United*

21

*States v. Torres-Miguel*, 701 F.3d 165, 168-169 (4th Cir. 2012); *Matter of Guzman-Polanco*, 26 I & N Dec. 713, 717-718 (BIA Feb. 24, 2016).  Each of these methods could constitute "torture" within the meaning of 18 U.S.C. § 2340(1), without requiring the active employment of violent physical force.  Wherefore, torture, categorically, is not a "crime of violence" under the elements clause of 18 U.S.C. § 924(c)(3)(A).

The lack of force is even more apparent with respect a conspiracy to commit torture in violation of 18 U.S.C. § 2340A(c).  In this case, the jury was instructed that it only must find that two or more persons came to a mutual understanding to accomplish a common unlawful plan, that the defendant knowingly and voluntarily joined in that plan, and that the object of the plan was to commit torture.  *See* DE 580 at 4-5 (jury instructions). *See also* 11th Circuit Pattern Jury Instruction 13.1 (2010 ed.) ("It's a separate Federal crime for anyone to conspire or agree with someone else to do something that would be another Federal crime if it was actually carried out." ).  Hence, a conspiracy to commit torture does not have "as an element the use, attempted use, or threatened us of physical force against a person or property of another," and therefore, does not fall within the §924(c) force clause.

22

It is clear, therefore, that Mr. Belfast's convictions in counts two and eight must rest solely on the residual clause of 18 U.S.C. § 924(c)(3)(B).     For     the above reasons, Mr. Belfast has made a prima facie showing that after *Johnson*, the residual clause of § 924(c)(3)(B) is unconstitutionally vague; that his convictions for torture and conspiracy to commit torture fail to qualify as crimes of violence under the elements clause in § 924(c)(3)(A); and that therefore, his § 924(c) and § 924(o) convictions rely on the unconstitutional residual clause in § 924(c)(3)(B) and should be vacated following *Johnson*.  At the very least, the arguments raised herein should be sufficient to warrant further review by the district court, and the Court should grant this application on that basis.